```
1              UNITED STATES DISTRICT COURT

2                DISTRICT OF CONNECTICUT

3  * * * * * * * *  *   *   *   *     *
                                      *
4  MICHAEL HALLORAN,            * Case No 16CV133(VAB)
   Individually and on behalf   *
5  of those similarly situated  *
                                *
6                Plaintiff,     *
                                *
7        vs.                    *
                                *
8  HARLEYSVILLE PREFERRED       * April 12, 2016
   INSURANCE COMPANY, ET AL     *
9                               *
                                *
10               Defendant.     *
                                *
   * * * * * * * *  * * * *  *

12          TRANSCRIPT OF STATUS CONFERENCE

13  BEFORE:  THE HONORABLE VICTOR A. BOLDEN, U.S.D.J.

14
   APPEARANCES:
15  FOR THE PLAINTIFFS:       ANTHONY SPINELLA, ESQ
                              RYAN BARRY, ESQ.
16                            BARRY & BARALL
                              202 WEST CENTER STREET
17                            MANCHESTER, CT 06040

18
   FOR THE DEFENDANT          PETER PONZIANI, ESQ.
19  MIDDLESEX MUTUAL          Litchfield Cavo
   ASSURANCE CO:             82 Hopmeadow Street
20                            Simsbury, CT 06089

21

22
   FOR THE DEFENDANT          JOSEPH BUSHER, ESQ.
23  PHARMACISTS MUTUAL        Jackson O'Keefe
   INSURANCE COMPANY:        433 Silas Deane Highway
24                            Wethersfield, CT 06109

25
```

```
 1
    FOR THE DEFENDANT        WYSTAN ACKERMAN, ESQ.
 2  BALBOA INSURANCE         STEPHEN GOLDMAN, ESQ.
    COMPANY, ELECTRIC        MICHAEL KELLER, ESQ.
 3  INSURANCE CO., GENERAL   ROBINSON & COLE
    CASUALTY COMPANY OF      280 TRUMBULL STREET
 4  WISCONSIN,               HARTFORD, CT 06103
    HANOVER INSURANCE
 5  COMPANY, HORACE MANN
    INSURANCE COMPANY,
 6  MASSACHUSETTS BAY
    INSURANCE COMPANY,
 7  MERITPLAN INSURANCE
    COMPANY, PRAETORIAN
 8  INSURANCE COMPANY,
    TEACHERS INSURANCE
 9  COMPANY, USAA CASUALTY
    INSURANCE COMPANY,
10  USAA GENERAL INDEMNITY
    COMPANY, UNITED
11  SERVICE AUTOMOBILE
    ASSOCIATION, QUINCY
12  MUTUAL FIRE INSURANCE
    COMPANY, STONINGTON
13  INSURANCE COMPANY, ACE
    AMERICAN INSURANCE
14  COMPANY, ACE FIRE
    UNDERWRITERS INSURANCE
15  COMPANY, AMERICAN
    INSURANCE COMPANY,
16  ASSOCIATED INDEMNITY
    CORPORATION, BANKERS
17  STANDARD INSURANCE
    COMPANY, CHUBB
18  NATIONAL INSURANCE
    COMPANY, FEDERAL
19  INSURANCE COMPANY,
    FIREMAN'S FUND
20  INSURANCE COMPANY,
    GREAT NORTHERN
21  INSURANCE COMPANY, IDS
    PROPERTY CASUALTY
22  INSURANCE COMPANY,
    INDEMNITY INSURANCE
23  COMPANY OF NORTH
    AMERICA, NATIONAL
24  SURETY CORP, PACIFIC
    INDEMNITY COMPANY,
25  UNIVERSAL NORTH
    AMERICAN INSURANCE
```

```
 1   COMPANY, VIGILANT
     INSURANCE COMPANY,
 2   CITIZENS INSURANCE
     COMPANY OF AMERICA,
 3   FARM FAMILY CASUALTY
     INSURANCE COMPANY,
 4   AUTOMOBILE INSURANCE
     COMPANY OF HARTFORD,
 5   STANDARD FIRE
     INSURANCE COMPANY,
 6   TRAVELERS HOME &
     MARINE INSURANCE
 7   COMPANY, TRAVELERS
     INDEMNITY COMPANY OF
 8   AMERICA, TRAVELERS
     PERSONAL SECURITY
 9   INSURANCE COMPANY:

10

11   FOR THE DEFENDANT        DANIEL BLOUIN, ESQ.
     HARLEYSVILLE PREFERRED   Seyfarth Shaw
12   INSURANCE COMPANY,       131 South Dearborn Street
     HARLEYSVILLE WORCESTER   Chicago, IL 60603
13   INSURANCE COMPANY,
     NATIONWIDE GENERAL
14   INSURANCE COMPANY,
     NATIONWIDE MUTUAL FIRE
15   INSURANCE COMPANY:

16   FOR THE DEFENDANT 21st   AUBREY BLATCHELY, ESQ.
     CENTURY PREMIER          Locke Lord
17   INSURANCE COMPANY,       20 Church Street
     FOREMOST INSURANCE       Hartford, CT 06103
18   COMPANY, GRAND RAPIDS,
     MICHIGAN, FOREMOST
19   PROPERTY AND CASUALTY
     INSURANCE COMPANY,
20   TRUCK INSURANCE
     EXCHANGE:

21

22   FOR THE DEFENDANTS:      DEBORAH ETLINGER, ESQ.
     AMERICAN MODERN HOME     Wolf, Horowitz & Etlinger
23   INSURANCE COMPANY,       99 Pratt Street
     CALIFORNIA CASUALTY      Hartford, CT 06013
24   INDEMNITY EXCH,
     CINCINNATI INSURANCE     MARK JOHNSON, ESQ.
25   COMPANY:                 Baker & Hostetler
                              65 East State Street
                              Columbus, OH 43215
```

```
 1
 2   FOR THE DEFENDANT        MATTHEW WAGNER, ESQ.
     PRIVILEGE                JONATHAN WHITCOMB, ESQ.
 3   UNDERWRITER'S            Diserio, Martin, O'Connor &
     RECIPROCAL EXCH:         Castiglioni
                              ONE Atlantic Street
 4                            Stamford, CT 06901

 5
     FOR THE DEFENDANTS       RICHARD FENTON, ESQ.
 6   ALLSTATE INSURANCE       Dentons US
     COMPANY OF AMERICA,      233 South Wacker Drive
 7   ALLSTATE INDEMNITY       Chicago, IL 60606
     CO., ALLSTATE PROPERTY
 8   AND CASUALTY INSURANCE
     COMPANY, ENCOMPASS
 9   INDEMNITY CO.,
     ENCOMPASS INSURANCE CO
10   OF AMERICA, KEMPER
     INDEPENDENCE INSURANCE
11   COMPANY, METROPOLITAN
     GROUP PROPERTY &
12   CASUALTY INSURANCE
     COMPANY, METROPOLITAN
13   PROPERTY & CASUALTY
     INSURANCE COMPANY,
14   PATRONS MUTUAL
     INSURANCE COMPANY OF
15   CONNECTICUT, ECONOMY
     PREMIER ASSURANCE CO.,
16   MERASTAR INSURANCE
     COMPANY, UNITRIN
17   PREFERRED INS. CO.
     UNITRIN DIRECT
18   PROPERTY & CASUALTY
     CO:
19

20   FOR THE DEFENDANT        BRYCE FRIEDMAN, ESQ.
     AFFILIATED FM            Simpson Thacher & Bartlett
21   INSURANCE COMPANY:       425 Lexington Avenue
                              New York, NY 10017
22

23
     FOR THE DEFENDANT        STEPHEN KLAFFKY, ESQ.
24   HOMESITE INSURANCE       Barrasso, Usdin, Kupperman,
     COMPANY:                 Freeman & Sarver
25                            909 Poydras Street
                              New Orleans, LA 70112
```

```
1

2   FOR THE DEFENDANT        MICHAEL LETTIERO, ESQ.
    AEGIS SECURITY           Goldberg Segalla
3   INSURANCE COMPANY:       100 Pearl Street
                             Hartford, CT 06103
4

5   FOR THE DEFENDANTS       DANIEL LEVIN, ESQ.
    GRAPHIC ARTS MUTUAL      Marshall, Dennehey, Warner,
6   COMPANY, REPUBLIC        Coleman & Goggin
    FRANKLIN INSURANCE       105 Maxess Road
7   COMPANY, UTICA MUTUAL    Melville, NY, 11747
    INSURANCE COMPANY:
8                            BRADEN FARBER, ESQ
                             Farber, Brocks & Zane
9                            400 Garden City Plaza
                             Garden City, NY 11530
10

11  FOR THE DEFENDANT        MATTHEW KENNEDY, ESQ.
    AMICA MUTUAL INSURANCE   ANTHONY ANTONELLIS, ESQ.
12  COMPANY:                 Sloane and Walsh
                             Three Center Plaza
13                           Boston, MA 02108

14  FOR THE DEFENDANT        MICHAEL AYLWARD, ESQ.
    AMERICAN COMMERCE        Morrison Mahoney
15  INSURANCE COMPANY,       250 Summer Street
    BEDIVERE INSURANCE       Boston, MA 02210
16  COMPANY, CENTRAL
    MUTUAL INSURANCE
17  COMPANY, EMPLOYERS
    MUTUAL CASUALTY CO.,
18  INTEGON NATIONAL
    INSURANCE COMPANY,
19  MASSACHUSETTS HOMELAND
    INSURANCE COMPANY,
20  MIDDLESEX INSURANCE
    COMPANY, ONEBEACON
21  AMERICAN INS. CO.,
    SENTRY INSURANCE A
22  MUTUAL CO., STILLWATER
    PROPERTY AND CASUALTY
23  INSURANCE COMPANY,
    TOWER INSURANCE
24  COMPANY OF NEW YORK:

25
```

```
 1   FOR THE DEFENDANT        JOHN CERRETA, ESQ.
     BUNKER HILL INS. CO.,    THOMAS FARRISH, ESQ.
 2   HARTFORD INSURANCE       Day Pitney
     COMPANY OF THE           242 Trumbull Street
 3   MIDWEST, PROPERTY &      Hartford, CT 06103
     CASUALTY INSURANCE
 4   COMPANY OF HARTFORD,
     TWIN CITY FIRE
 5   INSURANCE COMPANY,
     HARTFORD CASUALTY
 6   INSURANCE COMPANY,
     DANBURY INSURANCE
 7   COMPANY, HINGHAM
     MUTUAL FIRE INSURANCE
 8   COMPANY, HARTFORD
     ACCIDENT & INDEMNITY
 9   COMPANY, HARTFORD FIRE
     INSURANCE COMPANY,
10   HARTFORD INSURANCE
     COMPANY OF THE
11   SOUTHEAST, HARTFORD
     UNDERWRITERS INSURANCE
12   COMPANY, SENTINEL
     INSURANCE COMPANY,
13   TRUMBULL INSURANCE
     COMPANY, NEW LONDON
14   COUNTY MUTUAL
     INSURANCE COMPANY:
15

16
     FOR THE DEFENDANTS       DEREK DONNELLY, ESQ.
17   CAMBRIDGE MUTUAL FIRE    Law Office of Stuart
     INSURANCE COMPANY,       Blackburn
18   MERRIMACK MUTUAL FIRE    2 Concorde Way
     INSURANCE COMPANY,       Windsor Locks, CT 06069
19   UNION MUTUAL FIRE
     INSURANCE COMPANY,
20   VERMONT MUTUAL
     INSURANCE COMPANY:
21

22   FOR THE DEFENDANT        DOUGLAS DUNHAM, ESQ.
     STATE FARM FIRE &        GUYON KNIGHT, ESQ.
23   CASUALTY:                Quinn Emanuel Urquhart &
                              Sullivan
24                            51 Madison Avenue
                              New York, NY 10010
25
```

```
 1                               KAREN KARPIE, ESQ.
                                 ROBERT SICKINGER, ESQ.
 2                               Murphy Karpie
                                 350 Fairfield Avenue
 3                               Bridgeport, CT 06604

 4      FOR THE DEFENDANT        JOEL COHEN, ESQ.
        INSURANCE SERVICES       MICHAEL SCHEINKMAN, ESQ.
 5      OFFICE, INC:             Davis Polk & Wardell
                                 450 Lexington Avenue
 6                               New York, NY 10017

 7                               DAVID SLOSSBERG, ESQ.
                                 LAWRENCE GROSSMAN, ESQ.
 8                               Hurwitz, Sagarin Slossberg &
                                 Knuff
 9                               147 North Broad Street
                                 Milford, CT 06460
10

11

12      FOR THE DEFENDANT        ROBERT HELFAND, ESQ.
        AMERICAN BANKERS         JOHN PITBLADO, ESQ.
13      INSURANCE COMPANY OF     Carlton, Fields, Jorden,
        FLORIDA:                 Burt
14                               One State Street
                                 Hartford, CT 06103
15

16      FOR THE DEFENDANT        PHILIP NEWBURY, ESQ.
        GENERAL INSURANCE        Howd & Ludorf
17      COMPANY OF AMERICA, LM   65 Wethersfield Avenue
        INSURANCE CORP,          Hartford, CT 06114
18      LIBERTY INSURANCE
        CORP, LIBERTY MUTUAL
19      FIRE INSURANCE           AMOS SCOTT, ESQ.
        COMPANY, PEERLESS        Choate, Hall & Stewart
20      INSURANCE COMPANY,       100-150 Oliver Street
        SAFECO INSURANCE         Boston, MA 02110
21      COMPANY OF AMERICA,
        AMERICAN STATES
22      INSURANCE COMPANY:

23

24      FOR THE DEFENDANT        ASHLEY NOEL, ESQ.
        ARMED FORCES INSURANCE   Boyle, Shaughnessy & Campo
25      EXCH:                    280 Trumbull Street
                                 Hartford, CT 06103
```

```
 1
       FOR THE DEFENDANT NGM        SCOTT OBER, ESQ.
 2     INSURANCE COMPANY:           Hassett & Donnelly
                                    446 Main Street
 3                                  Worchester, MA 01608

 4

 5

 6     FOR THE DEFENDANT           JEFFREY PINGPANK, ESQ.
       CASCO INDEMNITY             Cooney, Scully & Dowling
 7     COMPANY:                    10 Columbus Blvd
                                   Hartford, CT 06106
 8

 9

10     FOR THE DEFENDANT          WILLIAM LALOR, ESQ.
       CONTINENTAL CASUALTY       Elenius Frost & Walsh
11     COMPANY, VALLEY FORGE      125 Broad Street
       INSURANCE COMPANY          New York, NY 1004
12
                                  DARREN RENNER, ESQ.
13                                Keidel, Weldon & Cunningham
                                  925 Westchester Avenue
14                                White Plains, NY 10604

15

16     FOR THE DEFENDANT          GREG KRIEGER, ESQ.
       AMERICAN STRATEGIC         Howard, Kohn, Sprague &
17     INSURANCE COMPANY:         Fitzgerald
                                  237 Buckingham Street
18                                Hartford, Ct 06126

19

20
       FOR THE DEFENDANT AIG      LAWRENCE KLEIN, ESQ.
21     PROPERTY CASUALTY          Sedgwick
       COMPANY:                   225 Liberty Street
22                                New York, NY 10281

23

24

25
```

```
 1

 2   FOR THE DEFENDANT         MICHELE WOJCIK, ESQ.
     PACIFIC SPECIALTY         Nuzzo & Roberts
 3   INSURANCE COMPANY:        One Town Center
                               Cheshire, CT 06410
 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1              THE COURT:  Please be seated.  Apparently
2    we have a full house today.  All right, let me do
3    this:  Let me start with counsel for plaintiffs, and
4    then I have to figure out a reasonable way to
5    identify all the counsel for the defendants.
6              MR. SPINELLA:  Good morning, your Honor.
7    Anthony Spinella on behalf of the plaintiffs.
8              MR. BARRY:  Good morning, your Honor.
9    Attorney Ryan Barry on behalf of the plaintiffs.
10             THE COURT:  All right.  Now with the
11   defendants, I think what I understand is that there
12   are a few defendants perhaps there aren't
13   appearances for, but the remainder are represented
14   by counsel.  Actually, let me go through what I
15   have.  I have got an appearance by Wystan Ackerman.
16             MR. ACKERMAN:  Yes, your Honor.
17             THE COURT:  Robinson & Cole.  And it
18   sounds like you've got a number of defendants you
19   are representing.
20             MR. ACKERMAN:  Total of 37 defendants.
21             THE COURT:  Okay.  I've got Mr.
22   Antonellis.
23             MR. ANTONELLIS:  Yes, your Honor.
24             THE COURT:  And you are representing --
25   is it just Amica Mutual Insurance Company?
```

```
 1              MR. ANTONELLIS:  Just Amica Mutual
 2    Insurance Company.
 3              THE COURT:  That's fine.  That's enough.
 4              And I have Mr. Aylward, is it?  Or
 5    Aylward?
 6              MR. AYLWARD:  Yes, your Honor.
 7              THE COURT:  And you've got --
 8              MR. AYLWARD:  11 and a half.
 9              THE COURT:  11 and a half.  Okay.
10              MR. AYLWARD:  I'm not sure if we're in
11    for Aspen or not.
12              THE COURT:  I thought it was like
13    children's ages, you ask how old they are and they
14    give you the half.
15              And I have Mr. Blatchley.  If I butcher
16    your name, correct me.  Ms. Blatchley.  Oh, Ms.
17    Blatchley.  I'm sorry.  And you've got four.
18              MS. BLATCHLEY:  I have four of the
19    defendants.  I'm also covering for my colleague who
20    couldn't be here who represents Providence Mutual.
21              THE COURT:  And Blouin.
22              MR. BLOUIN:  Blouin, your Honor.
23              THE COURT:  Okay.  And you've got four.
24              MR. BLOUIN:  Five.
25              THE COURT:  Five.  Sorry, five
```

```
1    defendants.

2              I've got Busher.

3              MR. BUSHER:  We've got Pharmacists

4    Mutual.

5              THE COURT:  You are in the back.

6              All right, Mr. Cerreta.  It sounds like

7    you've got a slew.

8              MR. CERRETA:  Yes, your Honor, a total

9    of 13.

10             THE COURT:  13.  Okay.

11             Mr. Cohen, you have one.  Is that right?

12   Or more than one?

13             MR. COHEN:  Yes, your Honor.

14             THE COURT:  Mr. Donnelly.

15             MR. DONNELLY:  Yes, your Honor.

16             THE COURT:  You've got four.

17             MR. DONNELLY:  I do, your Honor.

18             THE COURT:  Okay.  Mr. Dunham.

19             MR. DUNHAM:  That's correct, your Honor

20   one, State Farm.

21             THE COURT:  Ms. Etlinger.

22             MS. ETLINGER:  Three, your Honor.

23             THE COURT:  You have three.  All right.

24             Mr. Farrish.

25             MR. FARRISH:  Good morning, your Honor.
```

```
 1   13.
 2               THE COURT:  13.  So 37 is still the top
 3   one so far.
 4               Mr. Fenton.
 5               MR. FENTON:  Good morning, your Honor.
 6   I represent the Encompass, Allstate, Metropolitan,
 7   Patrons, and Kemper defendants, and we have not yet
 8   filed appearances for the Unitrin defendants or the
 9   common Premier defendant, but we will be shortly,
10   and I think that will bring us up to 10.
11               THE COURT:  All right.  Getting there.
12               Mr. Friedman.
13               MR. FRIEDMAN:  Good morning, your Honor.
14               THE COURT:  Good morning, sir.
15               MR. FRIEDMAN:  Just one.
16               THE COURT:  Just one.  All right.  You
17   don't have to say "just one."  You have one.
18               Mr. Goldman, you have five.
19               MR. GOLDMAN:  Yes, your Honor, but I
20   think I opted into the other 32 that Mr. Ackerman --
21               THE COURT:  I see.  You are
22   consolidating with him.  That's where you got the
23   37.  Okay, you guys have joined forces in the same
24   firm.
25               Mr. Grossmann.  I don't have Mr.
```

```
1    Grossman?  Mr. Grossmann is here for ISO.  I have
2    him marked as here.
3             MR. COHEN:  Your Honor, we represent
4    ISO.  Is this Joel Cohen, Davis Polk.  Mr. Grossman
5    is my partner.
6             MR. SLOSSBERG:  He's not here, but David
7    Slossberg for ISO.
8             THE COURT:  Hello, Mr. Slossberg.  Good
9    to see you.
10            All right, Mr. Helfand.
11            MR. HELFAND:  Just one, your Honor.
12            THE COURT:  Okay.
13            And Mr. Johnson?
14            MR. JOHNSON:  Good morning, your Honor.
15   We have three.
16            THE COURT:  All right, three.
17            All right, Ms. Karpie.
18            MS. KARPIE:  Good morning, your Honor.
19   One, State Farm.
20            THE COURT:  State Farm.  Then I've got
21   Mr. Keller.
22            MR. KELLER:  Good morning, your Honor.
23   I'm with Mr. Ackerman.
24            THE COURT:  Okay.  Fair enough.
25            Let's see, Mr. Kennedy is representing
```

```
 1   Amica, which someone has already stood up for that,

 2   Amica.  So you are jointly with them?

 3               MR. KENNEDY:  That's correct.

 4               THE COURT:  Mr. Klaffkey.

 5               MR. KLAFFKEY:  Good morning, your Honor.

 6   One Homesite insurance.

 7               THE COURT:  Mr. Klein.

 8               MR. KLEIN:  Good morning, your Honor.

 9   AIG Property Casualty.

10               THE COURT:  Great.  Mr. Knight.

11               MR. KNIGHT:  Good morning, your Honor.

12   Also representing State Farm.

13               THE COURT:  Mr. Krieger.

14               MR. KRIEGER:  Yes, representing one,

15   American Strategic ASI.

16               THE COURT:  And Lalor.

17               MR. LALOR:  Lalor.  Thank you for

18   pronouncing it correctly.  For two.  Thank you.

19               THE COURT:  Mr. Lettiero.

20               MR. LETTIERO:  Good morning, your Honor.

21   Just one.

22               THE COURT:  Just one.  So you've got

23   Aegis Security Insurance.

24               MR. LETTIERO:  Yes, your Honor.

25               THE COURT:  Mr. Levin.
```

16

```
1              MR. LEVIN:  Good morning, your Honor.
2    Three defendants.
3              THE COURT:  So it's Graphic Art Mutual,
4    Republic Franklin, and Utica.
5              Mr. Newbury.
6              MR. NEWBURY:  Yes.  Seven, your Honor.
7              THE COURT:  Seven.  So you've got LM,
8    Liberty Insurance, Liberty Mutual Fire Insurance
9    Peerless, Safeco Insurance Company, and American
10   States.
11             MR. NEWBURY:  And General Insurance
12   Company of America.
13             THE COURT:  Yes.  And General Insurance
14   Company of America.
15             All right, Mr. Ober.
16             MR. OBER:  Good morning, your Honor.
17   One defendant, NGM Insurance.
18             THE COURT:  Thank you, Mr. Ober.
19             Mr. Pingpank.  Is that right?
20             MR. PINGPANK:  Yes, your Honor.  Casco
21   Indemnity Incident.
22             THE COURT:  Mr. Pitblado.
23             MR. PITBLADO:  Yes, together with
24   Attorney Helfand, Bankers Insurance Company.
25             THE COURT:  Mr. Ponziani.
```

```
 1              MR. PONZIANI:  Good morning, your Honor.

 2    One defendant, Middlesex Insurance Mutual Insurance

 3    Company.

 4              THE COURT:  Good morning, sir.  And I

 5    think I mentioned -- I've got Mr. Farber for Utica,

 6    but did we mention Utica already?

 7              MR. FARBER:  Farber.

 8              THE COURT:  And you've got Utica

 9    Insurance Company.

10              MR. FARBER:  Correct.

11              THE COURT:  Then I have got Mr. Renner.

12              MR. RENNER:  Good morning, your Honor.

13    Two defendants.

14              THE COURT:  So you've got Continental

15    Casualty and Valley Forge.

16              MR. RENNER:  Correct.

17              THE COURT:  I've got Ms. Noel.  Is that

18    right?

19              MS. NOEL:  Noel, your Honor.

20              THE COURT:  Noel.

21              MS. NOEL:  Just for Armed Forces

22    Insurance Exchange.

23              THE COURT:  All right.

24              Mr. Scheinkman, are you jointly with

25    someone else?
```

18

```
 1                    MR. SCHEINKMAN:  Yes, your Honor, with

 2      Mr. Cohen and Mr. Slossberg.

 3                    THE COURT:  Did I great that right, Mr.

 4      Scheinkman?

 5                    MR. SCHEINKMAN:  Yes.

 6                    THE COURT:  Mr. Scott, I think you were

 7      joined with someone else.  Is that right?

 8                    MR. SCOTT:  Good morning, your Honor.

 9      Yes, Mr. Newbury and I represent seven Liberty

10      Mutual entities.

11                    THE COURT:  All right.  And Mr.

12      Sickinger, you are here with State Farm.  You are

13      joined with someone else.  Is that right, sir?

14                    MR. SICKINGER:  Yes, your Honor.

15                    THE COURT:  I've gotten Mr. Slossberg.

16      All right, Mr. Wagner?

17                    MR. WAGNER:  Yes, your Honor.

18                    THE COURT:  Attorney Wickcom for

19      Privilege Underwriters.

20                    MR. WICKCOM:  Good morning, your Honor.

21                    THE COURT:  Good morning.  I think the

22      last on my list -- is it Wojcik?

23                    MS. WOJCIK:  Yes, your Honor.  Good

24      morning.  I have one, Pacific Specialty.

25                    THE COURT:  Great.
```

1           All right, so I've gotten all the

2     counsel.  What we'll do, when I -- any of the

3     lawyers, for the sake of Ms. Montini, my court

4     reporter, even though I've gone through this list,

5     please state your name again and also state the

6     client you are representing when you speak.

7           All right, we are here to sort of figure

8     out how we want to resolve things.  I've gotten

9     dueling -- I'm sorry, I should be near the

10    microphone.  I've received dueling filings about

11    different approaches.  Why don't I hear from Mr.

12    Spinella and Mr. Barry first, and then I have a few

13    questions.

14          So, go ahead.

15          MR. SPINELLA:  Thank you, your Honor.

16    Good morning, your Honor.  Anthony Spinella on

17    behalf of the plaintiffs.

18          Your Honor, we filed a motion for

19    proposed case management that we think can

20    adequately address the voluminous amounts of

21    defendants we have and the representation that they

22    have as well.  We believe several things should be

23    done in order to help coordinate this lawsuit.

24          First and foremost, we think that a

25    liaison defense team or committee should be created

1  in order to not burden the Court with too much

2  paperwork and duplicative motions and the like.  It

3  would also make it much more streamlined, your

4  Honor.  And that's for any defendants who

5  essentially have the same defense, who don't have

6  conflicting stances on how they are going to

7  approach this case.

8           The second thing is, your Honor, that we

9  think -- we would ask the Court to appoint us -- it

10 doesn't seem like there is many other options at

11 this point -- to be pre-certified class counsel in

12 order to represent not only the plaintiffs that are

13 named, but also possible unnamed plaintiffs at this

14 point.

15          And the third thing, your Honor, is we

16 are asking the Court for some preliminary discovery

17 from the Court.  That third issue that I brought up

18 is probably going to be the one most contested, but

19 we are asking for preliminary discovery.  The reason

20 for that, your Honor, is many of the things that you

21 would think would be readily available in order for

22 us to put forth our argument for a concerted scheme

23 among the insurance companies and ISO are simply not

24 able to be as ascertained.

25          For example, your Honor, we've tried to

1   get specific ISO forms which are lodged with the

2   State of Connecticut, Department of Insurance, and

3   somehow one of the crucial documents, the 1984 ISO

4   form, has gone missing.  So simple things like that

5   that our government is supposed to have we can't

6   get.

7           So we believe some discovery is

8   necessary.  We would like to limit that discovery,

9   obviously.  While we've put forth the concept of

10  test discovery and included several different

11  categories of people we'd like to get discovery

12  from, I don't think in any way we're wedded to the

13  companies that we have chosen.  I know Attorney

14  Fenton is probably completely against the idea

15  because I think we chose all his clients, to be

16  honest with you.  We did that because we thought it

17  would even more streamline the process in that he

18  represents people who fit into every category we

19  have that we would like to get some preliminary

20  discovery on, and then he also could be the sole

21  point of contact.  So we thought we could, in

22  essence, streamline this entire case before we get

23  to the motions to dismiss.

24           Thank you.

25           THE COURT:  Just on that, and I'll

1   certainly hear from some of the defendants -- or all

2   of the defendants who want to speak, but I guess the

3   question is, in the filings they have, they have

4   raised some threshold issues of jurisdiction about

5   whether or not, you know, many of the defendants

6   shouldn't be in the case.  I mean, why wouldn't it

7   be appropriate to at least take up the schedule with

8   respect to a motion to dismiss and then we could

9   sort of figure out where the dust settles before we

10  get too far down the road with discovery with

11  respect to all of the defendants?  Why wouldn't we

12  be sort of more selective?

13          MR. SPINELLA:  There are simply some

14  things, your Honor, we cannot have access to, so we

15  can't put them in our complaint.  So we're at a

16  disadvantage.  For example, we can't even get our

17  clients' own policy from some of these companies.

18          THE COURT:  I understand, but some of

19  the standing really goes to the question of whether

20  or not many of the defendants have actually insured

21  any of the plaintiffs at all.  So why wouldn't

22  addressing that type of issue in the context of a

23  motion to dismiss -- is discovery going to shed any

24  light on those issues?

25          MR. SPINELLA:  I think that it may in

1    the fact that it may show that if these companies

2    were involved in some concerted scheme, as we've

3    alleged, it would -- in essence, we would need some

4    discovery to show that.  Communications between each

5    other; communications between the Department of

6    Insurance and insurance companies; communications

7    with ISO, who was, essentially, the coordinating

8    person in this event.  I think some discovery is

9    needed just to establish standing.

10              We are alleging a concerted scheme.  And

11   I know that the defense counsel has put forth in

12   their proposed case management plan that this case

13   is, in essence, ruled by the *Ticor*, or *Mahon*, case,

14   which is a Second Circuit case.  We don't believe

15   that's properly put forth to the Court for several

16   reasons.  Number one, we are not arguing juridical

17   links, as they've alleged.  Juridical link is

18   something that was brought up in a conversation

19   between two or three of the lawyers and my partner

20   as one of the possibilities that we could have

21   standing, but our main argument, Judge, is that all

22   of these companies collaborated together to lock

23   these people, these plaintiffs, out of the

24   homeowners insurance market if they have this

25   problem.  In essence, they can't go to the free

 1   market.  So they're all directly harmed by this

 2   concerted scheme.  So we believe some discovery is

 3   necessary to show that concerted scheme in order to

 4   get standing to show direct harm to our plaintiffs.

 5             THE COURT:  All right.  One of the

 6   things I want to do is, this question about amending

 7   the complaint or adding parties, adding more

 8   parties, what do you wish to do in terms of amending

 9   the complaint?

10             MR. SPINELLA:  Well, I know we have

11   other plaintiffs we'd like to add to it who have

12   been filtering in our door.  That may be the main

13   thing we'd like to do, Judge -- your Honor.  Excuse

14   me.

15             THE COURT:  But I guess the question is,

16   why wouldn't I, as a preliminary matter, basically

17   set some deadline for you amending your complaint

18   and then set a deadline following that deadline to

19   address these preliminary jurisdictional issues in

20   terms of any of the defendants who wish to file a

21   motion to dismiss?  Then we could -- and then after

22   the dust settles with all of that, we could then go

23   to a more fulsome Rule 26(f) filing and then have a

24   Rule 16 conference at that point.  It doesn't

25   necessarily preclude that -- I mean, I might be

```
1    inclined to sort of allow some very, very limited
2    discovery.  I'm not sure it would be with all of the
3    defendants, but go on.
4              MR. SPINELLA:  Right.  I don't think I
5    disagree -- or we disagree with anything that your
6    Honor just said as far as the schedule or the plan.
7    If your Honor would allow us some limited discovery
8    and allow us to amend our complaint, schedule a time
9    for a motion to dismiss, I think we would agree to
10   that right now and not say another word.  But we do
11   think some preliminary discovery is needed for us to
12   establish standing.
13             THE COURT:  And on the issue of
14   preliminary discovery, why wouldn't the preliminary
15   discovery be a little more narrower?  In essence, it
16   doesn't necessarily have to involve all the
17   defendants, but why wouldn't it at least in this
18   case involve only those defendants who sort of
19   directly or currently insure any of the named
20   plaintiffs?  I mean, at least in terms of --
21   particularly since we've got these significant
22   standing issues, why wouldn't it be more narrow in
23   scope to particular claims that they may have
24   vis-à-vis their respective insurance companies?
25             MR. SPINELLA:  And I think -- although
```

26

```
 1    it's not as broad as we'd like, obviously, but I
 2    think we'd be satisfied with that.
 3              THE COURT:  All right.  Thank you very
 4    much.
 5              MR. SPINELLA:  Thank you, your Honor.
 6              THE COURT:  All right, who wants to
 7    speak first?
 8              MR. FENTON:  May I take the podium, your
 9    Honor?
10              THE COURT:  Yes, you may.
11              MR. FENTON:  Good morning, your Honor.
12              THE COURT:  Good morning.
13              MR. FENTON:  Rick Fenton on behalf of
14    the Allstate, Metropolitan, Kemper and Patrons
15    defendants, and I have also been asked by the joint
16    defense group, which at this point includes about 80
17    or 90 percent of the defendants in this action, to
18    speak on behalf of the defendants as a whole,
19    although other counsel may have some additional
20    comments.
21              THE COURT:  Good morning again, Mr.
22    Fenton.
23              MR. FENTON:  Thank you, your Honor.
24    First, Judge, a little background.  I, along with a
25    number of the other lawyers who represent defendants
```

```
1    in this action, have been involved in a number of

2    class or mass actions that have been brought,

3    essentially, against the entire insurance industry.

4    So this kind of mass defendant case is familiar

5    territory to a number of us, and a number of us are

6    accustomed to working with large defense groups,

7    coordinating defense efforts among defendants who

8    from time to time may have differing interests, but

9    all of whom have as a priority efficient and

10   sensible case management, because that makes life a

11   lot easier for all of the parties as well as the

12   Court.

13            So when this action was filed, I reached

14   out to counsel for the defendants in this case, some

15   of whom I knew from prior representations, and I'm

16   pleased to report that at this time we do have, I

17   think, a very functional and quite sophisticated

18   joint defense group in place.  And we also reached

19   out to the plaintiffs, both to try to alert them to

20   some of the fundamental pleading problems that we

21   saw and to try to establish a working relationship

22   and perhaps some agreement.

23            THE COURT:  Hold on a second.  I guess

24   someone has a phone they need to silence.

25            All right.
```

1          AUDIENCE PARTICIPANT:  I'm sorry, your

2    Honor.

3          THE COURT:  It happens.  Hang on.  It's

4    a nice ring tone, by the way.

5          Go ahead, sir.

6          MR. FENTON:  Judge, just as an aside, I

7    know some jurists who are not quite as good natured

8    about that.

9          THE COURT:  I'm sorry, did you want me

10   to be stern?  Put that away.  You can't have that in

11   this courtroom.

12         Go ahead, Mr. Fenton.

13         MR. FENTON:  And, as I said, we also

14   reached out to the plaintiffs to try to alert them

15   to some of the threshold issues and to try to really

16   see if we could reach some agreement on how the

17   matter should proceed.  While agreement has alluded

18   us, I think your Honor has aptly described the

19   submissions between the parties and the differences

20   between the parties as to how the action should

21   proceed.  I think that Mr. Spinella has put forth

22   the plaintiffs' position pretty accurately.  Let me

23   put forth the defendants' position.

24         This is a case where 127 defendants have

25   been named, at least that's the current count, and

1    all of whom -- and let me emphasize that, your

2    Honor, all of whom have viable Rule 12 motions to

3    dismiss.  As to approximately 118 of those

4    defendants, there are threshold issues of Article

5    III jurisdiction and standing, which your Honor has

6    mentioned, based on the *Ticor* decision in which the

7    Second Circuit quite clearly ruled that a named

8    plaintiff in a class action has no standing to sue

9    insurance companies with whom they had no contract.

10   That is precisely the situation for at least 118 of

11   the 127 the defendants.

12          As to the remaining the defendants, your

13   Honor, some are the former, not present, insurers;

14   some are named simply because they are affiliates of

15   insurers; some are not alleged to have denied or

16   ever received a claim; and some have policy language

17   that unambiguously excludes this type of loss.  One

18   is not even an insurance company at all, but is

19   being sued under a statute that is applicable only

20   to insurance companies.

21          So to say that there are some problems

22   with the current amended complaint I think is an

23   understatement.  Now, that's not to say that the

24   Rule 12 motions necessarily will dispose of the

25   entire case, although they may, but it is to say

1    that this case is likely to look far different after

2    those motions than it does right now.  And it is

3    also to say that there are more than 100 defendants

4    before this Court as to whom, at least on the face

5    of the current record, there does not appear to be

6    any case or controversy and where the complaint

7    essentially seeks an advisory opinion.

8              All of those defendants, your Honor, are

9    the class defendants, so as a result of these

10   initial motions, it may be we aren't dealing with a

11   class action anymore.

12             To proceed with discovery in those

13   circumstances simply makes no sense.  As the Court

14   is well aware, discovery in a case like this can be

15   very expensive, very time consuming, and very

16   burdensome for all concerned.  To have all of that

17   move forward when we don't even know what the

18   parameters of the case will be, other than that they

19   are going to be very different than they are now, is

20   simply an invitation to needless and wasteful

21   expense, annoyance and inconvenience.  There is

22   ample authority to support the deferral of discovery

23   in these circumstances, some of which we've cited in

24   our memorandum, including the Supreme Court's

25   decision in *Twombly* and *Iqbal*, and the Second

1    Circuit's decision in the *Morgan Stanley* case.

2              I think placing a hold on any discovery

3    is particularly warranted given counsel's indication

4    that he may seek leave to file an amended complaint

5    in the next few weeks.  We've heard for the first

6    time that the nature of the amendment will be to add

7    plaintiffs, but we don't have the foggiest idea what

8    else it may contain.  We don't know what substantive

9    changes may be made or what may be alleged or

10   against whom, whether it will cast as wide a net as

11   the current complaint or, if it's even possible, one

12   that is even wider.

13             So from a case management perspective,

14   we are shooting in the dark.  We, as defendants,

15   would certainly like to know definitively whether an

16   amendment will be sought and what the nature of the

17   amendment is.  But whether we're dealing with the

18   current amended complaint or a further amendment, we

19   need to get the pleadings in order.  We need to know

20   what claims are proceeding and what are not.  We

21   need to know what parties are in and what parties

22   are out before we can really have any kind of

23   meaningful dialogue about discovery and larger case

24   management issues.

25             I can tell the Court that in a lot of

1   the industry-wide class and mass actions I've been

2   involved in those courts have, in fact, addressed

3   threshold jurisdictional and pleading issues at the

4   outset before any discovery, and in each of those

5   instances it saved the parties and the court a great

6   deal of time and expense because the pleadings were

7   streamlined at the very beginning.  That's what I

8   would recommend here.

9           Now, I did hear Mr. Spinella say that he

10  might need some discovery on these jurisdictional

11  issues, but as I think your Honor mentioned, the

12  question under the *Ticor* case is whether the named

13  plaintiff is asserting claims against insurance

14  companies that they did not contract with, and they

15  can take discovery from now until the end of the

16  century, that's not going to help inform that

17  question and that is not going to change.  So

18  plaintiffs know who their insurance companies were

19  and we don't need discovery on that.

20          He also alluded to concerted action.

21  Well, your Honor, this complaint contains absolutely

22  no factual allegations of any kind of conspiracy or

23  concerted action.  I think the word "conspiracy"

24  appears once, but there is no underlying factual

25  allegations, and under *Twombly*, your Honor, that

1  doesn't even get to first base.  That's not a basis

2  on which you can institute wide-scale discovery,

3  simply to throw the word "conspiracy" around.

4          So, for all of these reasons, your

5  Honor, we would urge the Court to adopt the

6  defendants' form of case management order.  The only

7  modification that we would suggest is that if the

8  plaintiffs are going to try to amend, and we would

9  like to know definitively whether that's going to

10  happen, give the plaintiffs until April 28th to file

11  their motion for leave, and then provide the

12  responsive pleadings or motions be due either to the

13  current pleading or, if amendment is allowed, the

14  amended pleading within 30 days after the Court

15  rules on the motion for leave.  We think the stay of

16  all discovery and other proceedings, including class

17  certification proceedings, should remain in effect

18  until further order of the Court.

19          As to liaison counsel, we have no

20  problem with liaison counsel.  We are currently

21  discussing an appropriate victim -- I mean

22  candidate, and we should have an answer to that

23  later this week.

24          Now, if I may take off my joint defense

25  hat for a moment, your Honor.

```
 1            THE COURT:  Sure.

 2            MR. FENTON:  And address a matter of

 3   particular importance to my own clients.  I was

 4   really quite flattered when I read counsel's motion

 5   for Rule 16 conference because Mr. Barry had some

 6   nice things to say about me in there and I actually

 7   thought he liked me, but apparently he doesn't like

 8   me all that much.

 9            THE COURT:  I'm sure there is still

10   time, Mr. Fenton.

11            MR. FENTON:  Well, I hope so.

12   Plaintiffs' proposed case management order includes

13   this request for test discovery.  I don't know what

14   that is, and I've been handling complex litigation

15   for almost 40 years, but of the 126 insurance

16   companies that are named in this complaint, the only

17   ones that he proposed, at least until this morning,

18   to take test discovery from are my clients, and the

19   only apparent reason that my clients were chosen is

20   that they are my clients, which also means that if

21   that kind of order is entered they may not be my

22   clients very long because my being their lawyer

23   isn't doing them much good, and, frankly, Judge,

24   I've already had some client pullback on that.

25            So we obviously have filed written
```

1    objections to that, your Honor, I don't need to

2    belabor the point, but I don't think there is any

3    basis for singling out my clients alone to be

4    subjected to the extraordinary expense and

5    disruption of unbridled discovery at this time when

6    it doesn't appear that a claim has been stated at

7    this point against them or anyone else.  Discovery

8    shouldn't be proceeding at all.

9            So with that, your Honor, I don't know

10   whether other counsel have any remarks to make, but

11   unless your Honor has any questions for me.

12           THE COURT:  Let me ask a couple of

13   questions and then anyone else who wants to chime in

14   certainly should feel free.

15           So what I was suggesting to Mr. Spinella

16   was this notion, which is not inconsistent with what

17   you have filed, although there are some wrinkles

18   there, A, it sounds like if there is going to be an

19   amended complaint, let's see that amended complaint,

20   and then, B, we should have a deadline, set a

21   deadline for you all to file motions to dismiss, and

22   then deferring any filing of a Rule 26(f) report or

23   Rule 16 conference until the motion to dismiss is

24   decided and we can figure out exactly what we are

25   looking at.

1          But in the interim, I was exploring this

2    notion of, well, why wouldn't there be limited

3    discovery that's limited to the named plaintiffs and

4    related to their particular insurance company, the

5    people who they have policies with?  And I might

6    further narrow that some more, but I guess -- and it

7    might be that it might make sense to have a stay on

8    discovery until this amended complaint is filed,

9    because it seems like we should figure out -- let

10   the dust settle so we can understand what exactly

11   we're dealing with.  So staying -- possibly staying

12   discovery until this amended complaint is filed, but

13   not necessarily staying discovery while the motion

14   to dismiss is pending, but allowing it to be very

15   limited to, as I said, those defendants who the

16   named plaintiffs have insurance coverage with

17   currently.  And I might narrow it further in terms

18   of certain aspects of those claims.

19          So do you have a position on that?  Is

20   that something I should --

21          MR. FENTON:  Well, I think my position

22   on that, your Honor, is I don't think it makes sense

23   to start any discovery right now.  Now certainly if

24   Mr. Barry needs a copy of one of his clients'

25   insurance policies, I'm sure he can call whatever

1    lawyer is representing that particular insurance

2    company and get it on an informal basis.  I would

3    certainly be receptive to that, and I can't imagine

4    that most of the lawyers in this room wouldn't be

5    receptive to that.  I don't think you need discovery

6    for that if all we're talking about is the insurance

7    policy.

8              The problem with opening up discovery,

9    let's say on one of the counts where -- and let me

10   give you an example, your Honor.  One of my clients,

11   Kemper, is a former insurer of one of the named

12   plaintiffs.  The policy in place at this point is

13   from a different company.  Let's say you open up

14   some discovery as against the company that is the

15   current insurer.  Well, there may be things that

16   take place that affect Kemper's interest, and our

17   position is Kemper should be out of the case

18   altogether.  And there are other parties who are

19   named in these counts who are not the current

20   insurers.  So once you start opening that door and

21   once that camel's nose is in the tent, there may be

22   other parties who are going to be forced to engage

23   in discovery who really shouldn't be in this case.

24             So I would not open that door, Judge, at

25   this juncture until we test the legal sufficiency of

1    these pleadings.

2            The other thing I would mention, your

3    Honor, is obviously we are not agreeing at this

4    point that an amended complaint should be filed.

5    Plaintiff obviously can move for leave, and that's

6    in your Honor's discretion, but we haven't even seen

7    the amended complaint at this point and we obviously

8    haven't had a chance to take a position on it.

9            THE COURT:  Okay.  Thank you.

10           MR. FENTON:  Thank you, your Honor.

11           THE COURT:  Anyone else on defendants'

12   side wish to speak?

13           MR. ACKERMAN:  Your Honor, Wystan

14   Ackerman.  I just want to address briefly the issue

15   that was raised by plaintiffs' counsel regarding

16   appointing them as interim class counsel.  At least

17   on behalf of my clients, we don't think there is any

18   need for that, any basis for that.  Rule 23 does not

19   provide for that.  The law on class actions

20   generally provides that once you certify a class,

21   you have an existing class, you appoint class

22   counsel at that point.  But to appoint him as

23   interim class counsel at the outset of the case,

24   where we're pretty far from any representations of a

25   class, we don't think is necessary or appropriate,

```
 1    and it potentially creates some problems down the

 2    road.

 3               THE COURT:  All right.  Anyone else?

 4               Yes, sir?

 5               MR. BLOUIN:  Good morning, your Honor.

 6    Dan Blouin on behalf of the Nationwide and

 7    Harleysville --

 8               THE COURT:  Do you want to just come

 9    closer?

10               MR. BLOUIN:  Sure.  I just want to

11    briefly address the concept of discovery against

12    some of the defendants for whom the named plaintiffs

13    have policies.  I happen to be in that situation.

14    Again, I represent the Harleysville entities and the

15    Nationwide entities.  I won't get into all of the

16    details here, but I think highlighting the

17    Nationwide situation is important because the only

18    allegation against Nationwide is that, essentially,

19    it's the parent of Harleysville.  If your Honor was

20    to open up discovery with regard to essentially the

21    Count One through Four defendants, in theory that

22    would subject Nationwide, and there is others, to

23    discovery, where we would submit there is absolutely

24    no basis in the current complaint or any basis to

25    amend to bring a viable claim against Nationwide.
```

1          So we would strenuously object to any

2     type of discovery, limited or otherwise, with

3     respect to any of the defendants because, as

4     Attorney Fenton said at the outset, we believe there

5     are very strong Rule 12 motions on behalf of all of

6     the defendants.

7               THE COURT:  Okay.  Any other defendants

8     wish to come forward at this time?  All right.

9     Thank you.

10              Mr. Spinella, do you have anything else

11    you want to add?

12              MR. SPINELLA:  Just to rebut several

13    points that were made, Judge.

14              Firstly, with respect to the interim

15    class counsel designation, the Second Circuit has

16    done that over and over in *In Re Bank of America v.*

17    *Corp. Securities*, which was ERISA litigation, 258

18    F.R.D. 260, and Federal Rule of Civil Procedure

19    23(g)(3).  These all allow for interim class

20    counsel.  23(g)(4) as well.

21              With respect to the preliminary

22    discovery, I would like to mention something I

23    forgot to say, which is I think that ISO, if your

24    Honor is considering that, should be part of that

25    interim discovery because I think they are really

1    the crux of this issue.

2              Again, the reference to *Mahon* has been

3    made.  I don't believe that's on point at all.  I

4    think, your Honor, I would point your Honor to the

5    *Gale v. Chicago Title Insurance Company*, which Judge

6    Droney decided in 2008 in the District Court of

7    Connecticut, which basically says, you know, what

8    we're doing in a class action is we're solving one

9    problem -- a large problem with one case.  If we

10   have this type of issue with standing and we can't

11   get discovery on it, it destroys the whole point of

12   having a class action.

13             And I'm not surprised that they don't

14   want us to get discovery, Judge, because they don't

15   want what they already know is going to happen, and

16   that's what already happened in the *Bacewicz* case in

17   this courthouse, and that's the insurance company

18   lost, and they lost, my recollection is, in ten

19   minutes.

20             So that's why they don't want discovery,

21   Judge.  And this is an allegation of concerted

22   scheme, direct harm.  To say it's not, it's nowhere

23   in the complaint, would mean you didn't read the

24   first paragraph of the complaint because the first

25   paragraph of the complaint refers to a concerted

1    scheme.   Under my count, it's referenced four times

2    further in that complaint.

3            So I do think there is a legitimate

4    allegation that it's a concerted scheme and that all

5    these plaintiffs are being directly harmed by this

6    concerted scheme by the insurance industry to keep

7    these people from being able to insure their homes

8    that are affected with this problem.

9            So I think to show concerted scheme,

10   your Honor, I think we do need -- or would like --

11   I'm not going to say we need it because we can

12   proceed without it, but I think it would be

13   beneficial and perhaps dispose of the whole case if

14   we can get some preliminary discovery.

15            THE COURT:  All right.  Now on this

16   whole issue -- and I'll give you a chance in a

17   minute, Mr. Fenton, if you want to respond to any of

18   that.

19            But in terms of you seeking leave to

20   file an amended complaint, when do you think we can

21   -- I mean the defendant proposed April 28th.  Is

22   that reasonable?

23            MR. SPINELLA:  We would request three

24   weeks, your Honor, if that's doable.

25            THE COURT:  Let's convert that into a

```
 1   date.

 2                  THE CLERK:  May 3rd.

 3                  THE COURT:  May 3rd.

 4             MR. SPINELLA:  That would be fine.

 5             THE COURT:  All right, May 3rd.  Let's

 6   do this:  Having practiced one time myself, a

 7   mid-week deadline I always found to be fraught with

 8   slight peril, so let's do this:  Why don't we do

 9   May 6th.  So May 6th you'll file an amended

10   complaint.  And I think that's all I need from you

11   at this point.

12             Mr. Fenton, does that date, May 6th, in

13   terms of --

14             MR. FENTON:  It's my wife's birthday,

15   Judge, but other than that, it's fine.

16             THE COURT:  Well, your wife was actually

17   born on a very good day.  That's actually my

18   birthday as well.  So she's in good company.

19             MR. FENTON:  Then happy birthday -- or

20   forthcoming birthday.

21             THE COURT:  Although I will make it

22   clear, Mr. Spinella, Mr. Barry, the fact that Mr.

23   Fenton's wife's birthday falls on mine will get no

24   special attention or privileges.

25             MR. FENTON:  Nor would I seek any, your
```

1   Honor.

2            Your Honor, just very briefly, to

3   address Mr. Spinella's point, the mere fact that the

4   word "concerted" or the word "conspiracy" appears in

5   this complaint almost proves our point, because that

6   is all that appears in the complaint.  There are no

7   underlying facts pleaded.  If the Supreme Court's

8   decision in *Twombly* stands for anything, it stands

9   for the proposition that bald allegations of

10  conspiracy, unsupported by factual allegations, does

11  not even get the plaintiff to first base, and

12  proceeding with discovery in the face of those kinds

13  of naked allegations is improper.  And that's all I

14  have to say.

15           THE COURT:  All right.  Just in terms of

16  -- so if we did a May 6th date for them filing an

17  amended complaint, should I set a June 10th date for

18  responding?

19           MR. FENTON:  I'm sorry, your Honor?

20           THE COURT:  If they're going to file an

21  amended complaint by May 6th, I'm thinking about --

22  do you want to do the motion to dismiss by

23  June 10th?

24           MR. FENTON:  Is your Honor essentially

25  granting leave to file an amended complaint at this

1   point?

2            THE COURT:  I haven't -- more likely

3   than not I will, but I think he should file the

4   complaint with the motion for leave and I'll take it

5   under advisement.  But I'm assuming I'll probably

6   grant leave.

7            MR. FENTON:  Your Honor, I think if we

8   have 30 days from whenever your Honor rules on the

9   amended complaint, I think that's --

10           THE COURT:  So do you want to do it that

11   way, 30 days from when I rule on the motion for

12   leave to file the complaint?

13           MR. FENTON:  That's fine, your Honor.

14           THE COURT:  That sounds fine.  Let me do

15   this on the discovery.  This is where I am on the

16   discovery issues.  I think what probably makes

17   sense -- certainly I'll have a stay in place until

18   the Court resolves whether or not it's going to

19   grant the motion for leave to file an amended

20   complaint.  So there will be a stay on all

21   discovery, and then at that point obviously I'll

22   rule on whether the amended complaint will stand.

23   Then that will trigger -- if I decide to permit the

24   amended complaint, that will trigger the 30 days.

25   Then I'll probably at that time decide whether or

1    not I think any discovery should occur at that time,

2    but we may -- but I may keep the same stay in place

3    longer.  We'll see.

4              I think from there what I'll do -- I'll

5    put this in a docket ruling later today.  What I

6    also will do is defer any -- A, we're going to have

7    the motion for leave to file amended complaint and

8    complaint filed on May 6th.  I will then issue some

9    ruling, and then 30 days from that any dispositive

10   motion on the amended complaint will be due.  I'll

11   probably withhold any decision on any further issues

12   with respect to discovery and process in the case.

13             Is there anything further, Mr. Spinella?

14             MR. SPINELLA:  Nothing from the

15   plaintiff.

16             MR. COHEN:  Joel Cohen.  Just, if there

17   is going to be a question of discovery, at some

18   point I would ask that we have a chance to brief the

19   issue or describe what our position is on discovery.

20             THE COURT:  I guess the question is, do

21   you want to have -- I mean, I'm going to rule on the

22   motion for leave to file the amended complaint.  I

23   mean, I can allow briefing time if you all want to

24   respond to that.

25             MR. COHEN:  Yes.

47

1            THE COURT:  In response to that,

2    certainly you could reiterate any motions with

3    respect to stay of discovery.

4            MR. COHEN:  That's fine.

5            MR. FENTON:  Thank you, your Honor.

6            THE COURT:  And then in that case we

7    would do that consistent with the local rules in

8    terms of response times.

9            All right, is there anything further?

10           MR. SPINELLA:  Nothing from the

11   plaintiff.

12           MR. FENTON:  Nothing, Judge.  Thank you

13   very much.

14           THE COURT:  Thank you all very much.  I

15   appreciate it.

16              (Proceeding concluded 11:30)

17

18

19

20

21

22

23

24

25

1

2              I certify that the foregoing is a correct

3     transcript from the record of proceedings in the

4     above-entitled matter.

5

6                                    4/19/16

7                                     Date

8

9                         /S/   Sharon Montini

10                          Official Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25