# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL AND JOYCE HALLORAN, ET AL,<br><br>       Plaintiffs,<br><br>  v.<br><br>HARLEYSVILLE PREFERRED INSURANCE COMPANY, ET AL.<br><br>      Defendants. | CIVIL ACTION NO: 3:16-CV-00133-VAB |

## MEMORANDUM OF LAW IN SUPPORT OF ALLSTATE'S MOTION TO DISMISS

Richard L. Fenton, phv08139
Mark L. Hanover, phv08143
Kristen C. Rodriguez, phv08145
DENTONS US LLP
233 S. Wacker Dr., Ste. 5900
Chicago, IL 60606
T:  (312) 876-8000
F:  (312) 876-7934
richard.fenton@dentons.com
mark.hanover@dentons.com
kristen.rodriguez@dentons.com

Elizabeth F. Flynn, CT03472
117 New London Turnpike
Glastonbury, CT 06033
T:  (860) 430-9993
F:  (860) 430-9899
Elizabeth@attyeflynn.com

*Attorneys for Allstate Insurance Company*

## INTRODUCTION

Allstate Insurance Co. ("Allstate") submits this memorandum of law in support of its Motion pursuant to Rule 12(b)(6) to dismiss the claims brought by Mark and Felice Pawelcyzk (the "Pawelczks") and Steven and Colleen Swart (the "Swarts") against Allstate in the Substituted Third Amended Class Action Complaint (Doc. 352) (the "TAC").  Allstate also hereby incorporates the Motion to Dismiss and Memorandum of Law to dismiss Counts 42-45, 54, and 57 of the Third Amended Complaint (Doc. 373).

Each of the Plaintiffs in this purported class action claim that their basement walls are deteriorating as a result of defective concrete used in the construction of their homes.  The Pawelcyzks and the Swarts allege that their basement walls are in a "state of collapse," and are therefore covered under their Allstate policy, because the walls are "cracking," "crumbling," "deteriorating," and "failing."  But the plain language of the Allstate policy excludes construction defects and by its terms does not cover such progressive conditions unless there is a "sudden" loss involving an "entire collapse" that occurs during the policy period.  According to Plaintiffs' own allegations, no such collapse has occurred.  Accordingly, and notwithstanding how sympathetic the Pawelcyzks' and the Swarts' circumstances may be, the clear and unambiguous terms of the Allstate policy do not cover the loss, and their claims against Allstate must be dismissed.  Specifically, this Court should dismiss the Pawelcyzks' and the Swarts' breach of contract claims against Allstate in Counts 35 and 37, respectively, as well as the Pawelcyzks' derivative and duplicative claims for breach of the implied covenant of good faith and fair dealing in Count 53, and their claims for violations of the Connecticut Unfair Trade Practices Act ("CUTPA") and the Connecticut Unfair Insurance Practices Act ("CUIPA") in Count 56.

# BACKGROUND

***The Pawelcyzks' Alleged Loss.***  The Pawelcyzks allege that they own and occupy the residential property at 44 Evans Crossing, Connecticut, which they allege was constructed in 1985 and purchased by them in 2001.  (TAC ¶¶  677-78.)  The Pawelcyzks claim that "on or about July 16, 2015, they discovered damage to their basement walls and on visible portions of the outside of their basement walls."  (*Id.* at ¶ 679.)  They hired William F. Neal ("Neal"), who is alleged to be a "Licensed Professional Engineer and a Licensed Connecticut Home Inspector" (*Id.* at ¶ 259) to "observe and document the defects in the concrete, including any cracks, spalls or other signs of deterioration" (*Id.* at ¶ 681.  According to the Pawelcyzks, "Neal concluded that [they] . . . had failing basement walls due to the defective concrete" as a result of a "chemical reaction resulting from incompatible materials used in the concrete mix."  (*Id.* at ¶¶ 682-83.)   The Pawelcyzks allege that Neal told them that the condition "'will continue to deteriorate the concrete and the foundation walls will very likely bulge inward until they structurally fail," and that the chemical  reaction "will continue to destroy the concrete until such time that the basement walls are deteriorated and the home caves into its basement."  (*Id.* at ¶¶ 685-86.)  The Pawelcyzks do not allege that their home has caved in, nor do they allege that it is imminent that their home will cave in, or that it is unsafe to presently occupy their home.

Nonetheless, the Pawelcyzks, along with the other plaintiffs, claim that their basement walls are "in a state of collapse because they were built with concrete containing deleterious iron sulfide minerals," the oxidation of which "causes the concrete to swell and crack and the concrete paste to break down."  (*Id.* at ¶ 2.)  They claim that the concrete "had hidden decay in it" and that the walls were made with "defective material or methods in construction, remodeling, or

renovation." (*Id.* at ¶¶ 123-124.)  The Pawelcyzks further allege that their basement walls "are irreversibly deteriorating and failing." (*Id.* at ¶ 4.)

***The Swarts' Alleged Loss.***  The Swarts allege they own and occupy the residential property at 60 Hall Hill Road in Willington, Connecticut, which they allege was constructed in 1985 and purchased by them in 2005.  (*Id.* at ¶ 710-11.)  The Swarts claim that in March 2016, they discovered "damage to their basement walls and on visible portions of the outside of their basement walls." (*Id.* at ¶ 712.)  They claim, on "information and belief," that their basement walls "contain a sulfide mineral known as pyrrhotite" which is a "chemical that, when exposed to water and air produces a chemical reaction, which expands and breaks apart the concrete in what is common referred to as a 'sulfate attack.'" (*Id.* at ¶¶ 713-14.)  The Swarts allege that this sulfate attack "will continue to deteriorate the concrete until the home caves into the basement." (*Id.* at 716.)  The Swarts do not allege that their home has in fact caved in, nor do they allege that it is imminent that their home will cave in, or that it is unsafe to presently occupy their home.

Nonetheless, the Swarts claim that their basement walls are "in a state of collapse." (*Id.* at ¶ 2.)  They claim that the concrete "had hidden decay in it" and that the walls were made with "defective material or methods in construction, remodeling, or renovation." (*Id.* at ¶¶ 123-124.) The Swarts further allege that their basement walls "are irreversibly deteriorating and failing." (*Id.* at ¶ 4.)

***The Plaintiffs' Policies with Allstate.***  Both the Pawelcyzks and the Swarts allege that their homes were insured by Allstate (TAC ¶¶ 687, 717 ), but neither allege when their coverage began or ended.  A copy of the Pawelcyzks' policy is attached hereto as Exhibit 1, and a copy of the Swarts' policy is attached hereto as Exhibit 2.  Although Plaintiffs did not attach their policies to their Complaint, this Court may consider it on this Motion to Dismiss because the

policies are incorporated by reference in the TAC and integral to Plaintiff's allegations. *U.S. ex rel. QSR Steel Corp., LLC v. Safeco Ins. Co. of Am.*, No. 3:14-CV-1017 VAB, 2015 WL 4393576, at *4 (D. Conn. July 16, 2015) (Bolden, J.).

Both the Pawelcyzks and the Swarts were insured under Allstate Policy Form AP472 (the "Allstate Policy").[1]  Three sections of the Allstate Policy are relevant to the allegations in the TAC.  First, In *Losses We Do Not Cover Under Coverages A and B,* the Allstate Policy states:

> In addition, **we do not cover** loss consisting of or caused by any of the following:
>
> 15.    a) wear and tear, aging, marring, scratching, ***deterioration***, inherent vice, or latent defect;
>
> ***
>
> g) settling, ***cracking***, shrinking, bulging or expansion of pavements, patios, foundations, ***walls***, floors, roofs or ceilings;

(Policy at p. 7 (Ex. 1 at p. 24; Ex. 2 at p. 28).)

Second, the Allstate Policy further states in *Losses We Do Not Cover Under Coverages A and B,* as follows:

> In addition, **we do not cover loss consisting of or caused by** any of the following:
>
> 22. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
>
>     a) planning, zoning, development, surveying, siting;
>
>     b) design, specifications, workmanship, repair, ***construction, renovation, remodeling,*** grading, compaction;
>
>     c) ***materials used in repair, construction, renovation or remodeling***; or
>
>     d) maintenance;
>
> of property whether on or off the residence premises by any person or organization.

(Policy at p.8, emphasis added (Ex. 1 at p. 25; Ex. 2 at p. 29).)

---

[1] Notably, the Allstate Policy does not track the language in any ISO policy form, and contains different policy language than other Defendants' policies at issue in this action.

Third, Allstate Policy Form AP472 specifically does not cover losses caused by "Collapse, except as specifically provided in Section I—Additional Protection under item 11, 'Collapse.'" (Policy at p. 7.) The relevant "Collapse" provisions under Additional Protection provides:

11. Collapse

We will cover:

a) the ***entire collapse*** of a covered building structure;
b) the ***entire collapse*** of part of a covered building structure; and
c) direct physical loss to covered property caused by (a) or (b) above.

For coverage to apply, ***the collapse*** of a building structure specified in (a) or (b) above ***must be*** a ***sudden and accidental*** direct physical loss caused by one or more of the following:

a) a loss we cover under Section I, Coverage C —Personal Property Protection;
b) hidden decay of the building structure;

***

f) defective methods or materials used in construction, repair, remodeling or renovation.

***Collapse does not include*** settling, ***cracking***, ***shrinking, bulging or expansion***.

(Policy at p.15; emphasis added (Ex. 1 at p. 32; Ex. 2 at p. 36).)

***Pawelcyzks' Claims against Allstate.*** On April 1, 2016, the Pawelcyzks filed a claim with Allstate, which Allstate denied on July 18, 2016. (TAC at ¶¶ 693-94.) In the TAC, the Pawelcyzks bring a breach of contract claim against Allstate in Count 35, a breach of the implied covenant of good faith and fair dealing against Allstate (and another defendant) in Count 53, and allege a violation of the Connecticut Unfair Trade Practices Act (CUTPA) and the Connecticut Unfair Insurance Practices Act (CUIPA) against Allstate and other defendants in Count 56.

*Swarts' Claim against Allstate*.  On September 22, 2016, the Swarts allege that they filed a claim for coverage with Allstate. (TAC ¶ According to the Swarts' allegations, "Allstate has neither affirmed nor denied the Swarts' claim."  (TAC ¶ 724.)[2]  Nonetheless, the Swarts bring a claim for breach of contract against Allstate in Count 37.  The Swarts have not alleged any other claims against Allstate in the TAC.

## LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's factual allegations must "assert a cause of action with enough heft to show entitlement to relief and 'enough facts to state a claim to relief that is plausible on its face.'"  *Vizio, Inc. v. Klee*, No. 3:15-cv-00929, 2016 WL 1305116, at *4 (D. Conn. March 31, 2016) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . .  [Courts] are not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 550 U.S. at 570 (internal quotation marks omitted).  Facial plausibility requires plaintiffs to "offer more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' or 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Vizio*, 2016 WL 1305116 at *4 (quoting  *Twombly*, 550 U.S. at 555, 557 (2007).  A complaint must have "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim.  *Twombly*, 550 U.S. at 556.

## ARGUMENT

**I.    The Breach of Contract Claims against Allstate (Counts 35 and 37) Must Be Dismissed**.

To determine whether the Pawelcyzks' or the Swarts' loss is covered, this Court's analysis should start and end with the policy language.  *United Techs. Corp. v. Am. Home Assur.*

---

[2] Allstate subsequently denied coverage on February 6, 2017, after the proposed TAC was filed with the Court.

*Co.*, 989 F. Supp. 128, 152 (D. Conn. 1997).  "[A]n insurance policy is a contract that is

construed to effectuate the intent of the parties as expressed by their words and

purposes."  *Metro. Life Ins. Co. v. Aetna Cas. & Sur. Co*., 765 A.2d 891, 896 (2001).

"Unambiguous terms are to be given their plain and ordinary meaning."  *Id.* at 896-97.  "If the

terms of the policy are clear and unambiguous, then the [contract] language . . . must be accorded

its natural and ordinary meaning."  *Schilberg Integrated Metals Corp. v. Cont'l Cas*. Co., 263

Conn. 245, 267, 819 A.2d 773, 789 (2003) (citations omitted).  "In determining whether the

terms of an insurance policy are clear and unambiguous, a court will not torture words to import

ambiguity where the ordinary  meaning leaves no room for ambiguity."  *Arrowood Indem. Co. v.

King*, 699 F.3d 735, 739–40 (2d Cir. 2012) (quoting *Conn. Med. Ins. Co*., 286 Conn. at 6, 942

A.2d at 338).

Here, the plain and unambiguous terms of the Allstate Policy simply do not cover the

progressive deterioration and cracking of the basement walls due to defective concrete for at

least three reasons.  *First*, losses caused by expansion or cracking of walls are specifically

excluded under the Allstate Policy.  (Policy at 7.)  *Second*, losses caused by defective materials

or methods in construction are also specifically excluded.  (*Id.*)  *Third*, losses caused by collapse

are also excluded, except as provided under limited additional coverage for certain "sudden and

accidental" losses due to an "entire collapse."  (*Id.* at 15.)  Plaintiffs, however, have not alleged

an "entire collapse," nor have they alleged that there has been any "sudden and accidental

collapse."  On the contrary, the TAC describes a structure, still standing and occupied, that is in a

state of gradual deterioration.  That is unfortunate, but it is not covered under the Allstate Policy.

### A.    Loss Caused By Cracking Of Walls Is Excluded Under The Policy.

There is nothing unclear or ambiguous about the Allstate Policy language that explicitly

excludes coverage for "cracking" of "foundations [or] walls."  (Policy at 7.)  The Pawelcyzks'

claimed loss consists of "pattern cracking" in their "deteriorating basement walls" caused by "a chemical reaction that causes the concrete to swell and crack and the concrete paste to break down." (TAC ¶¶ 2, 4, 62.) The Pawelcyzks further claim that the condition "will continue to deteriorate the concrete and the foundation walls will very likely bulge inward until they structurally fail." (*Id.* at ¶ 685.) Such a claim falls squarely within the exclusion for "deterioration" and the exclusion for "settling, cracking, shrinking, bulging or expansion of . . . foundations [or] walls . . ." (Policy at 7.)

Likewise, the Swarts also incorporate the same exact allegations as the Pawelcyzks in that they claim that they are suffering from "pattern cracking" in their "deteriorating basement walls" caused by "a chemical reaction that causes the concrete to swell and crack and the concrete paste to break down." (TAC ¶¶ 2, 4, 62.) The Swarts further claim that the "sulfate attack" they are experiencing in their basement walls "will continue to deteriorate the concrete until the home caves into the basement." (*Id.* at ¶ 716.) Just like the Pawelcyzks, the Swarts' claim falls squarely within the exclusion for "deterioration" and the exclusion for "settling, cracking, shrinking, bulging or expansion of . . . foundations [or] walls . . ." (Policy at 7.)

## B.   Loss Caused By Defective Materials Used In Construction Is Not Covered Under The Policies.

There is likewise nothing unclear or ambiguous about the Allstate Policy's exclusion for "faulty, inadequate or defective . . . construction" or "materials used in . . . construction." The policy simply does not cover loss caused by "materials used in . . . construction." Both sets of Allstate Plaintiffs claim that their basement walls were "built with concrete containing deleterious iron sulfide minerals," and that the oxidation of which "causes the concrete to swell and crack and the concrete paste to break down." (TAC ¶ 2.) They specifically allege that their basement walls "were made with defective material or methods in construction, remodeling or

renovation," and that the use of these defective materials caused their loss.  (*See id.* at ¶¶ 682, 691; ¶¶ 719-721.)   Indeed, the Pawelcyzks specifically state that the engineer they hired concluded that their basement walls were failing "due to *the defective concrete*" and that the "concrete forming the basement walls was *defective* due to a chemical reaction resulting from incompatible materials used in the concrete mix."  (*Id*. at ¶¶ 682-83.)

By Plaintiffs' own admissions in their pleading, their claimed loss is the result of faulty or defective materials used in the construction of the basement walls of their homes.  *See, e.g., Edmond v. Hartford Ins. Co.,* No. 3:98 CV 1653, 2008 WL 616092 (D. Conn. Mar. 3, 2008) (Droney, J.) (evidence showed that damage to home caused by faulty original construction, and therefore not covered under exclusion substantively identical to one at issue here).  Thus, because both the Pawelcyzks' and the Swarts' losses are specifically excluded by these provisions, their losses are not covered under the Policies unless they are the direct result of "collapse," as specifically provided in *Section I—Additional Protection* of the Allstate Policy – and they are not.

**C.      The Additional Coverage for "Collapse" Does Not Apply.**

To circumvent the clear exclusions for loss caused by "settling, cracking, shrinking, bulging or expansion of. . . walls," and "faulty, negligent, inadequate or defective . . . materials . . . used in . . . construction," the Complaint claims that Plaintiffs' basement walls are "in a state of collapse."  (TAC ¶ 2.)   But Plaintiffs' own allegations demonstrate that there has been no covered collapse here.

**1.      No "collapse" has occurred, much less an "entire collapse."**

According to Merriam-Webster's Dictionary of the English Language, the common, ordinary meanings of the word "collapse" include "to fall or shrink together abruptly or completely: fall into a jumbled or flattened mass through the force of external pressure" or "to

cave or fall in or give way."[3]  Applying that common, ordinary meaning of the word, Plaintiffs have not pled a "collapse" of their homes or any portions thereof.  Although Plaintiffs have pled that an "*eventual* failure of the foundation to function as originally intended" will ultimately occur someday, there are no allegations that the walls have failed or that failure is expected in the near term; only that the deterioration will continue "until *such time* that the basement walls are destroyed *and the home caves into its basement.*"  (TAC ¶ 686.)  That could be decades away.

Allstate acknowledges that in *Beach v. Middlesex Mutual Assurance Co.*, 532 A.2d 1297, 1300 (1987), the Connecticut Supreme Court held that the term "collapse" could be construed broadly enough to "include coverage for any substantial impairment of the structural integrity of a building," even if it had not yet caved in.  However, in that case, deterioration had progressed to where structural failure was imminent: the wooden support beams on top of the foundation wall had pulled apart, the concrete floor of the patio adjacent to the north side of the house had cracked and fallen in, and the foundation wall had tipped over into the basement from the top and was no longer supporting the house.  *Id.* at 248.[4]  There are no allegations even remotely similar here; in fact, both the Pawelcyzks and the Swarts continue to occupy their homes.  (TAC ¶¶ 677, 710.)  And neither the Pawelcyzks and the Swarts alleged that their homes, or any part of them, have fallen in or caved in, nor do they allege that it is imminent that their homes will cave in, or that it is unsafe to presently occupy their homes.  In fact, any of those conditions may be decades

---

[3] https://www.merriam-webster.com/dictionary/collapse

[4] Moreover, the "collapse" provision at issue in *Beach* differs significantly from the Allstate Policy at issue here.  In *Beach*, the policy stated:  "This policy does not insure against loss . . . [by] settling, cracking, shrinkage, bulging or expansion of pavements, patios, foundations, walls, floors roofs or ceilings . . . unless . . . collapse of a building . . . not otherwise excluded ensues, then this policy shall cover only such ensuing loss."  *Id.* at 250.  Reading the policy as a whole, the Court found the use of the term "ensues" to contemplate a "chronological succession" and, therefore, to be inconsistent with a collapse "of a sudden and catastrophic nature."  *Id.* at 252.

away.  To say that a "collapse" has occurred even though the structure may safely be occupied for the next 10, 20, or 30 years stretches the common-sense definition of "collapse" beyond any rational bounds.

Moreover, the Allstate Policy here, unlike the policy at issue in *Beach,* expressly provides that there must be an "entire collapse" to trigger coverage.  "Entire" means "having no element or part left out"; "complete in degree."[5]  The Pawelcyzks and the Swarts have not alleged that their basement walls are in a state of "entire" collapse, nor could they.  If their basement walls had in fact *entirely* collapsed, then their homes would have also caved in and they would not be able to live in them.  That has not occurred and may not occur for many years into the future.  At most, the Pawelcyzks and the Swarts have experienced cracking to certain *portions* of their basement walls; they do not even allege that the cracking appears across the entirety of basement walls.  But even if they had, "cracking" is specifically exempted from the definition of "collapse" under the Allstate Policy.  (Policy at p. 7 ("***Collapse does not include*** settling, ***cracking***, shrinking, bulging or expansion.") (emphasis added).)   As a result, there has not been an "entire collapse" to trigger coverage.

### 2.    Even if a "collapse" has occurred, which it has not, Plaintiffs have not pled a "sudden and accidental" event.

The plain and unambiguous language of the Allstate Policy requires that for coverage to apply, the "entire collapse" of a building structure or portion thereof "must be a ***sudden*** and accidental direct loss" caused by one of the six named perils.  (Policy at 15, emphasis added.) Even if one were to assume that these Plaintiffs' homes are in a state of so-called collapse, there is still no coverage because they have pled that the deterioration of the basement walls has been a gradual, "continuous" process, and not a "sudden" event.  For example, the Swarts allege that the

---

[5] "Entire."  Merriam-Webster Online, https://www.merriam-webster.com/dictionary/entire.

"sulfate attack" which they are experiencing will "ultimately cause[]" the failure of the concrete" and "will continue to deteriorate the concrete until the home caves into its basement." (TAC ¶ 715-716.) The Pawelcyzks similarly allege that their residence is facing a condition that "ultimately causes the failure of the concrete" and that the "chemical reaction will continue to destroy the concrete until such time that the basement walls are deteriorated and the home caves into its basement" (TAC ¶ 686.) Both plead that the condition is "continuous and irreversible." (TAC ¶ 2.)

This Court has noted that if an insurer "had intended to limit collapse coverage to situations involving sudden and catastrophic loss, it presumably could have done so." *Bacewicz v. NGM Ins. Co.*, No. 3:08-CV-1530 (JCH), 2010 WL 3023882, at *5 (D. Conn. Aug. 2, 2010) (finding that the alleged damage could be considered a "collapse" under the policy because a collapse was not limited to a situation of sudden and catastrophic loss when insurer did not so specify). That is precisely what Allstate did in the Policy at issue here by specifying that it will only cover a "sudden and accidental loss."

In fact, Judge Bryant recently ruled that the **same Allstate policy language** at issue here, which required a "sudden and accidental" loss, did not cover another insured in a crumbling concrete case because there was no dispute that the basement walls had deteriorated over time, rather than "suddenly." *Metsack v. Liberty Mut. Fire Ins. Co.*, No. 14-cv-1150, 2017 WL 706599, at *7-8 (D. Conn. Feb. 21, 2017).

Moreover, the Connecticut Supreme Court has held that the term "sudden," in the context of an insurance policy, means "temporally abrupt." *Buell Indus. Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 540 (2002). In *Buell,* the Court was asked to interpret the meaning and applicability of the "sudden and accidental" exception to the pollution exclusion in the defendant

insurers policies.  *Id*. at 529.  The plaintiff insured had sought coverage from the defendants for

contamination discovered at its properties in 1990 caused by releases of pollutants that had

occurred during and after 1966.  *Id*. at 530.  The plaintiff insureds argued that the term "sudden"

meant "unexpected," not necessarily quick and abrupt, and that if the pollutant releases over the

years were *unexpected* and accidental, the policies should provide coverage.  *Id.* at 536.

      The Connecticut Supreme Court disagreed, holding that the term "sudden" requires that

the release "occurs quickly or happens abruptly."  *Id.*  The Court rejected the plaintiffs' argument

that the term "sudden" was ambiguous because some dictionary definitions of the term "in

certain circumstances, include a sense that the event being described occurred unexpectedly."  *Id.*

at 546.  In so holding, the Supreme Court noted that "[t]he existence of more than one dictionary

definition is not the sine qua non of ambiguity.  If it were, few words would be unambiguous." *Id.*

The Court held that *"[w]e cannot reasonably call 'sudden' a process that occurs slowly and

incrementally over a relatively long time*, no matter how unexpected or unintended the process."

*Id.* at 544 (emphasis added; internal quotation omitted).

      Also instructive is Judge Underhill's recent decision in *Alexander v. General Ins. Co. of

America*, No. 3:16-cv-0059 (D. Conn. July 7, 2016). (Ex. 3 hereto.)  The policy at issue in

*Alexander* defined collapse, in part, as an "abrupt falling down or caving in."  Judge Underhill

emphasized the importance of the "abrupt" language and the need for the alleged damage to have

occurred in a sudden manner to trigger coverage, even if the damage was caused by a slow

process.  (*Id*. at p. 13-14, 18).

      Based on the rulings in *Metsack*, *Buell,* and *Alexander*, Plaintiffs' own allegations make it

clear that far from a "sudden" event, the circumstances that are the bases for their claims are

occurring over time and "will continue." (*Id.* at ¶ 210.)  Rather, they both allege that the

deterioration of their basement walls is a "continuous" condition that is ongoing and is a process

that progresses over many years or decades.  (TAC ¶ 2.)  As a result — and however sympathetic

the Plaintiffs' circumstances may be — there is simply not a "sudden" loss that would trigger

coverage here.

## II.   The Pawelcyzks' Breach of Implied Covenant of Good Faith and Fair Dealing Claim against Allstate Must Be Dismissed.  (Count 53)

Because the Pawelcyzks' breach of contract claims fail, so do their claims for breach of

the implied covenant of good faith and fair dealing.  The implied covenant of good faith and fair

dealing inherent to every contract under Connecticut law "require[s] that neither party [to a

contract] do anything that will injure the right of the other to receive the benefits of the

agreement."  *Home Ins. Co. v. Aetna Life & Cas. Co*., 235 Conn. 185, 200-01, 663 A.2d 1001,

1008 (1995).  Accordingly, the covenant of good faith and fair dealing "is not implicated by

conduct that does not impair contractual rights."  *Id.*

As a result, numerous courts have found that when an insurer has no obligation to pay

under its policy, its refusal to do so cannot form the basis for a claim of bad faith.[6]  *See, e.g.,*

*Chorches v. Stewart Title Guar. Co.*, 48 F. Supp. 3d 151, 157 (D. Conn. 2014) ("Because

plaintiff's contract claim fails, so too does his claim of bad faith denial of coverage."); *Capstone*

*Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 798, 67 A.3d 961 (2013) ("[B]ad faith is

not actionable apart from a wrongful denial of a benefit under the policy. . . ."); *McCarthy v.*

*Travelers Indemnity Company*, No. CV 970345443, 2000 WL 372801 at *8-10 (Conn. Super. Ct.

March 29, 2000) (noting that numerous trial courts have held that a plaintiff must show that she

---

[6] As recognized by the Connecticut Supreme Court, Connecticut courts "tend[] to use the terms 'bad faith,' 'lack of good faith' and 'breach of the covenant of good faith and fair dealing' interchangeably" and "appl[y] the same analysis to claims brought under each of these terms." *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 794, 67 A.3d 961, 986 (2013) (collecting cases).

is entitled to recover under an insurance policy before the insurer can be found to have acted in bad faith).  Thus, because there is no wrongful denial of a benefit due to the Pawelcyzks under the policies, there is no basis for the breach of the implied covenant of good faith and fair dealing.

Even if there was an incorrect denial of a benefit due under any of their policies (and there is not), the Pawelcyzks would need to plead and eventually prove that Allstate "engaged in conduct or a "design to mislead or to deceive . . . or a neglect or refusal to fulfill some duty or some contractual obligation not prompted by an honest mistake as to one's rights or duties . . . ." *E.g. De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 433, 849 A.2d 382 (2004).  Under Connecticut law, a bad faith claim "must be alleged in terms of wanton and malicious injury, evil motive and violence . . . ."  *Martin v. Am. Equity Ins. Co.*, 185 F. Supp. 2d 162, 165 (D. Conn. 2002).  At the pleading stage, the plaintiff must specify how, or in what manner, the defendant's actions were done in bad faith; how the defendant acted unreasonably, outrageously or maliciously; and how the defendant's conduct amounted to something more than mere negligence or more than an honest mistake.  *Id.* (holding that "conclusory allegations provide no basis for this Court to reasonably infer bad faith").

Here, the only supposed "bad faith" that the Pawelcyzks allege is their disagreement with Allstate as to the scope of the coverage of their policies—a disagreement to which they attach conclusory labels of bad faith.  For example, Plaintiffs claim that Allstate acted in bad faith by denying their claim on the basis that the property "did not collapse in whole or part, within the scope of [the] Additional Coverage."  (TAC ¶ 944.)  However, the fact that "Plaintiffs disagree with Defendant's belief that these provisions of the Policy bar coverage does not evince bad faith sufficient to support a breach of the implied duty of good faith and fair dealing, or to otherwise suggest that the Defendant acted in 'an arbitrary and unfounded' manner."  *Kim v. State Farm*

-15-

*Fire & Cas. Co.*, No. 3:15-cv-879 (VLB), 2015 WL 6675532, at *4 (D. Conn. Oct. 30, 2015) (granting an insurer's motion to dismiss a bad faith count).  Plaintiffs "cannot recover for bad faith if the insurer denies a claim that is 'fairly debatable,' *i.e.*, if the insurer had some arguably justifiable reason for refusing to pay or terminating the claim." *Id. See also Martin v. Am. Equity Ins. Co.,* 185 F. Supp. 2d at 165 ("[A] mere coverage dispute or negligence by an insurer in conducting an investigation . . . is not sufficient to state a claim of bad faith against an insurer.").

Thus, the Complaint contains no facts that, if proven, establish that Allstate's actions were undertaken with evil or dishonest motive or sinister intent and no conduct pursuant to which such intent can be inferred.  The facts as alleged are simply insufficient to support a bad faith cause of action.  Accordingly, Count 53 and the accompanying claim for relief should be dismissed for failure to state a claim.

**III.    Count 56 for Violation of CUTPA and CUIPA Should Be Dismissed against Allstate.**

The Pawelcyzks are one of six groups of plaintiffs who purport to bring a claim for a violation of CUTPA and CUIPA against their current or former insured in Count 56.  The Pawelcyzks' CUTPA/CUIPA claims are based solely on the alleged failure to conduct a "reasonable investigation based upon all available information, in violation of Conn. Gen. Stat. 38a-816(6)(D).  No other unfair insurance practice is alleged by the Pawelcyzks as a basis for this Count.

As an initial matter, CUIPA does not provide a private right of action.  *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 119 (2d Cir. 2001).  Instead, plaintiffs asserting a claim for unfair insurance practices must do so through CUTPA, Conn. Gen. Stat. § 42-110a *et seq*.  *See State v. Acordia, Inc.*, 310 Conn. 1, 37 (2013); *Mead v. Burns*, 199 Conn. 651, 663 (1986).  In pleading a claim under CUTPA, Plaintiffs must plead "with particularity to allow evaluation of the legal theory upon which the claim lies." *Ferrari v. U.S. Equities Corp.*, No. 13-

CV-395, 2014 WL 5144736, at *3 (D. Conn. Oct. 14, 2014) (quoting *Sorisio v. Lenox, Inc.,* 701 F. Supp. 950, 962 (D. Conn. 1988), *aff'd*, 863 F.2d 195 (2d Cir. 1988)).

Moreover, CUIPA is to be construed narrowly.  *Mead*, 199 Conn. at 658-59.  As the Connecticut Supreme Court has ruled, the legislature intended CUIPA to "occupy the field" in defining unfair insurance practices in Connecticut.  *State v. Acordia, Inc.,* 310 Conn. 1, 26 (2013).  Thus, allegedly unfair practices in the insurance industry are not actionable unless the defendant's conduct violates a specific provision of CUIPA.  *Acordia*, 310 Conn. at 37; *see also Nazami v. Patrons Mut. Ins. Co.*, 280 Conn. 619, 625 (2006) ("In order to sustain a CUIPA cause of action under CUTPA, a plaintiff must allege conduct that that is proscribed by CUIPA.").  In addition, as provided by the statute, an insurer can be held liable for unfair settlement practices under CUIPA only when it engages in specifically prohibited acts "with such frequency as to indicate a general business practice."  Conn. Gen. Stat. § 38a-816; *Lees v. Middlesex Ins. Co.*, 229 Conn. 842, 848 (1994) ("the legislature has manifested a clear intent to exempt from coverage under CUIPA isolated instances of insurer misconduct"); *Mead*, 199 Conn. at 666 ("Under CUTPA, as under CUIPA, a litigant is bound by this legislative determination.").

Here, Plaintiffs' CUTPA/CUIPA claims should be dismissed for three principal reasons: *First*, because Plaintiffs fail to state claims for coverage under their respective policies, their CUIPA claims fail as well.  *Second*, even if their coverage claims are not dismissed outright, there is still a reasonable and good faith dispute as to coverage such that Plaintiffs' CUTPA/CUIPA claims are not sustainable.  *Third*, in all events, Plaintiffs' conclusory allegations do not sufficiently allege a "general business practice" as required to state a claim under CUIPA.

A.      **The Pawelcyzks' CUTPA/CUIPA claims fail because they have no claim for coverage under the Allstate Policy.**

The Connecticut Supreme Court has recognized that when a plaintiff's breach of contract claims fail as a matter of law, their CUTPA/CUIPA claims premised on allegedly improper denials of coverage must fail as well.  *See, e.g., Zulick v. Patrons Mut. Ins. Co*., 287 Conn. 367, 378 (2008) (where insurer's interpretation of policy was correct, there could be no CUTPA/CUIPA violation); *see also Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 802-03 (2013) ("[I]mposing liability for bad faith investigation, even in the absence of any duty to defend or indemnify, would open a new avenue for the litigation of claims that, by definition, are outside of the policy's coverage, and burden our courts with litigation on peripheral issues"); *Rancourt v. Allstate Ins. Co*., No. CV065001222, 2008 WL 5255560, at *3 (Conn. Super. Ct. December 1, 2008) ("[S]ince the defendant [insurer] had no obligation to pay under the policy, the defendant could not have violated CUIPA or CUTPA.").  As addressed in Part I, *supra*, the Pawelcyzks have failed to state claim for coverage under the terms of their Allstate Policy and thus their corresponding claim of unfair settlement practices under CUIPA and CUTPA also fails.

This conclusion is supported by the plain language of CUTPA.  To state any claim under CUTPA, including one for an alleged violation of CUIPA, the plaintiff must have suffered an "ascertainable loss of money or property" caused by the CUTPA violation.  Conn. Gen. Stat. § 42-110g(a).  "The ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action seeking either actual damages or equitable relief. . . . Thus, to be entitled to any relief under CUTPA, a plaintiff must first prove that he has suffered an ascertainable loss due to a CUTPA violation."  *Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 287 Conn. 208, 217 (2008) (citation and internal quotation marks omitted); *see also Di*

*Teresi v. Stamford Health Sys., Inc.*, 149 Conn. App. 502, 512 (2014) (holding that emotional distress is not actionable under CUTPA because it does not constitute an ascertainable loss of money or property).

Because the Plaintiffs have not been deprived of any payment to which they are entitled under their respective policies, they have not alleged an ascertainable loss of money or property.[7] *Cf. Capstone*, 308 Conn. at 803 (holding that no action for bad faith exists absent coverage obligation because, among other reasons, "it would be difficult to calculate damages where the insured was, by definition, not deprived on any benefit under the policy"). Under *Zulick* as well as the plain language of Section 42-110g(a), the Pawelcyzks' CUIPA and CUTPA claims should be dismissed because the alleged losses are not covered by their policies. Accordingly, should the Court grant Allstate's Motion to Dismiss the Breach of Contract Claim brought by the Pawelcyzks in Count 35 of the TAC, it should also dismiss Count 56 against Allstate.

**B.     Even if the Pawelcyzks have stated a claim for coverage, their CUTPA/CUIPA claim still fails.**

Contesting coverage is not an unfair insurance practice under CUIPA even if the insurer's interpretation is ultimately unsuccessful. *See Kim v. State Farm and Cas. Co.*, No. 3:13-CV-879, 2015 WL 6675532, *4 (D. Conn. Oct. 30, 2015) ("That Plaintiffs disagree with Defendant's belief that these provisions of the Policy bar coverage does not evidence bad faith sufficient to support a breach of the implied duty of good faith and fair dealing, or to otherwise suggest that the Defendant acted in 'an arbitrary and unfounded manner.'"); *Lee v. AIG Cas. Co.*, 919 F.

---

[7] Although they allege that their loss is attributable to defective concrete, the Pawelcyzks have not alleged that Allstate participated in any way in the mining, mixing, or installation of the concrete. To be actionable under CUTPA, the defendants' allegedly improper conduct must be the proximate cause of the plaintiffs' loss. *Landmark Inv. Group, LLC v. CALCO Constr. and Dev. Co.*, 318 Conn. 847, 868 (2015). The alleged damage to the Pawelcyzks' home is not attributable to the actions of their insurers, which is yet another reason why their CUPTA/CUIPA claim must fail.

Supp. 2d 219, 233 (2013) ("[t]o contest a legal argument in the courts is not a reckless act, even when the law may eventually be construed unfavorably to the contesting party"); *L.A. Limousine, Inc. v. Liberty Mut. Ins. Co.*, 509 F. Supp. 2d 176, 182 (D. Conn. 2007) ("[an insurer] has a right to defend itself against claims asserted in courts of law, and should not be made fearful of doing so for violating CUIPA's general business practice provision"); *Martin v. Am. Equity Ins. Co.*, 185 F. Supp. 2d 162, 165 (D. Conn. 2002) ("Although plaintiff has included naked, conclusory allegations as to the legal status of defendant's acts, plaintiff never specifies how or in what manner defendant's denial of coverage or its refusal to provide her with a defense was 'unreasonable, outrageous, malicious and done in bad faith.'").

Here, Allstate's coverage position in this case was, at a minimum, fairly debatable, particularly given that no case had construed a policy similar to Allstate's to afford coverage under the circumstances alleged by the Pawelcyzks here.  Based on Allstate's reasonable coverage position, and  Plaintiffs' own account of the condition of their home, there would have been no facts that could have resulted from any further investigation that would have changed Allstate's coverage position, and therefore, a CUTPA/CUIPA claim for failure to conduct a reasonable investigation cannot stand.

### C.    The Pawelcyzks fail to adequately plead a "general business practice."

Under Connecticut law, a CUTPA claim against an insurer must be premised on a specific violation of CUIPA.  *See State v. Acordia, Inc.*, 310 Conn. 1, 37 (2013) ("unless an insurance related practice violates CUIPA or, arguably, some other statute regulating a specific type of insurance related conduct, it cannot be found to violate any public policy and, therefore, it cannot be found to violate CUTPA").  A plaintiff seeking to assert a claim that an insurer has violated CUTPA based on such a violation of CUIPA must plead both that: (1) the insurer engaged in unfair methods of competition or unfair or deceptive acts or practices in the business

of insurance; and (2) the insurer engaged in such unfair acts or practices with such frequency as to indicate a "general business practice."  Conn. Gen. Stat. § 38a-816(6); *see also Lees v. Middlesex Ins. Co.*, 229 Conn. 842 (1994); *Mead v. Burns*, 199 Conn. 651 (1986).  "[T]he law in Connecticut is clear that CUIPA . . . does not cover isolated instances of insurer misconduct." *Martin v. Am. Equity Ins. Co.*, 185 F. Supp. 2d 162, 168 (D. Conn. 2002); *see also Craig v. Colonial Penn Ins. Co.*, 335 F. Supp. 2d 296, 308 (D. Conn. 2004) ("claims of unfair settlement practices . . . require a showing of more than a single act of insurance misconduct").

Here, Plaintiffs' sole CUIPA allegation against Allstate in paragraph 993 of the TAC states generically that "Defendants have a general business practice of refusing to pay claims without conducting a reasonable investigation based upon all available information."  Therefore, the TAC only alleges a single instance of wrongful conduct as to Allstate—the refusal to pay the Pawelcyzks' claim without conducting a reasonable investigation based upon all available information.  *Id.*

Such a bare allegation of a general business practice is insufficient to state a claim under CUIPA.  *See Kim v. State Farm Fire & Cas. Co.*, 2015 WL  6675532 at *4-6 (granting insurer's motion to dismiss plaintiff's CUTPA/CUIPA claim under § 38a-816(6)(F) in a concrete deterioration case on the grounds that allegations that the insurer failed "to effectuate prompt, fair and equitable settlement of the [insured's] claim by failing to provide coverage despite the lack of an applicable policy exclusion" and that it was the insurer's "general business practice…to wrongfully deny coverage by relying upon inapplicable policy exclusions" only alleged one instance of wrongful conduct and were insufficient to state a claim under CUIPA); *see also Alqamus v. Pac. Specialty Ins. Co.*, No. 3:14-cv-00550 (VAB), 2015 WL 5722722, at *3 (D. Conn. Sept. 29, 2015) (noting that plaintiffs must plead enough facts to permit for the

reasonable inference that "the unfair insurance practice occurred with enough frequency for it to be deemed a 'general business practice.")" (quoting *Bacewicz v. NGM Ins. Co.*, No. 3:08-cv-1530, 2009 WL 1929098, at *2 (D. Conn. Jun. 30, 2009)); *Ensign Yachts, Inc. v. Arrigoni*, No. 3:09-cv-209 (VLB), 2010 WL 918107, at *7 (D. Conn. Mar. 11, 2010) ("[U]nder the *Iqbal* pleading standard, a mere assertion of general business practice without anything more is insufficient to sustain [plaintiff's] 'CUIPA through CUTPA' claims against [defendants] for violation of Conn. Gen. Stat. § 38a-816(6).").  Therefore, on this basis alone, the Pawelcyzks' CUTPA/CUIPA claim must be dismissed.

## IV.    Counts 42-45, 54, and 57 should be dismissed against Allstate.

Plaintiffs bring Counts 42-45, 54, and 57 against all Defendants, including Allstate.  For the reasons explained in the Motion to Dismiss Counts 42-45, 54, and 57 of the Third Amended Complaint and supporting Memorandum of Law filed at Doc. 373, which Allstate fully incorporates as if stated herein, this Court also should dismiss Counts 42-45, 54, and 57 against Allstate.

## CONCLUSION

For all of the foregoing reasons, Allstate respectfully requests that this Court dismiss Counts 35, 37, 42, 43, 44, 45, 53, 54, 56, and 57 against Allstate with prejudice.


Dated: June 2, 2017                          Respectfully submitted,


                                             */s/ Richard L. Fenton*
                                             Richard L. Fenton, phv08139
                                             Mark L. Hanover, phv08143
                                             Kristen C. Rodriguez, phv08145
                                             DENTONS US LLP
                                             233 S. Wacker Dr., Ste. 5900
                                             Chicago, IL 60606
                                             T:  (312) 876-8000

F:  (312) 876-7934
richard.fenton@dentons.com
mark.hanover@dentons.com
kristen.rodriguez@dentons.com

Elizabeth F. Flynn, CT03472
117 New London Turnpike
Glastonbury, CT 06033
T:  (860) 430-9993
F:  (860) 430-9899
Elizabeth@attyeflynn.com

*Attorneys for Allstate Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 2, 2017, a copy of the foregoing was filed electronically.

Notice of this filing will be sent by email to all parties by operation of the Court's electronic

filing system. Parties may access this filing through the Court's CM/ECF System.


/s/ *Richard L. Fenton*

103441638