UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL HALLORAN, et al., | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. 3:16-CV-00133-VAB |
| v. | ) | |
| | ) | |
| HARLEYSVILLE PREFERRED | ) | |
| INSURANCE COMPANY, et al., | ) | |
| Defendants. | ) | |

## DEFENDANT AMICA MUTUAL INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

Defendant Amica Mutual Insurance Company moves that this Honorable Court dismiss all five counts (Counts 14, 15, 28, 50, and 55) brought against it in Plaintiffs' Substituted Third Amended Complaint ("Complaint") and enter judgment for Defendant. Plaintiffs Michael and Sue Furlong ("Furlongs") and Robert and Jodi Mansfield ("Mansfields") each bring claims for Breach of Contract (Counts 14, 15, and 28) against Amica. Additionally, the Furlongs bring a claim for Violation of the Implied Covenant of Good Faith and Fair Dealing (Count 50) and a claim Violation of the Connecticut Unfair Trade Practices Act (CUTPA) and the Connecticut Unfair Insurance Practices Act (CUIPA) (Count 55), against Amica.

In an attempt to assist the Court in light of the Plaintiffs' 1,037 paragraph Complaint, Amica provides a summary of the grounds for dismissal immediately below. Following that summary, Amica will address the five counts brought against it in separate argument sections, setting forth with respect to each count (1) the Plaintiffs' allegations, (2) the relevant policy language, and (3) a detailed explanation regarding the grounds for dismissal of each count.

1

## SUMMARY OF GROUNDS FOR DISMISSAL

(1)   <u>Count 28</u>: The Mansfields' Breach of Contract claim (Count 28) fails because:

    a.   The Mansfields did not timely file suit. The Complaint on its face alleges a date of loss of September 22, 2011. The subject insurance policy required the Mansfields to file suit "within two years after" September 21, 2011. Plaintiffs' initial Complaint was not filed until January 29, 2016, and accordingly the Mansfields' claim is time barred; and

    b.   Assuming *arguendo* that the Mansfields had timely filed suit, Count 28 still fails as they have not alleged facts "plausibly suggesting" an entitlement to relief under the "collapse" provision of the subject insurance policies. Specifically, Connecticut State and Federal Courts have repeatedly held that Plaintiffs' claims fail as a matter of law where they have not alleged facts suggesting that: (1) the claimed damage was "abrupt," or (2) that "the [home] or any part of the [home] cannot be occupied for its intended purpose," as a result of the claimed damage. <u>Alexander v. General Ins. Co. of America</u>, No. 3:16-cv-00059 (SRU) (D. Conn. July 7, 2016); <u>Metsack v. Liberty Mut. Fire Ins. Co.</u>, 2017 WL 706599 (D. Conn. Feb. 21, 2017); <u>Jemiola v. Hartford Ins. Co.</u>, 2017 WL 1258778, *7-12 (Conn. Super. March 2, 2017) (Court's Memorandum of Decision on Defendant's Motion for Summary Judgment attached as <u>Exhibit 8</u>);

(2)   <u>Count 14</u>: The Furlongs' first Breach of Contract claim (Count 14) fails because the Furlongs seek coverage under a policy which provides <u>*no coverage whatsoever*</u> for the property which the Furlongs allege was damaged. In Count 14 the Furlongs

specifically seek coverage under Amica policy number 660706-21UN for alleged damage to a property located 68 Bakos Road, Tolland, Connecticut. However, Amica policy number 660706-21UN provides insurance coverage for property located at 473 Hills Street, East Hartford, Connecticut and provides _no_ coverage for property located at 68 Bakos Road, Tolland, Connecticut;

(3) <u>Count 15</u>: The Furlongs' second Breach of Contract claim (Count 15) fails as a matter of law because they have not alleged facts "plausibly suggesting" an entitlement to relief under the "collapse" provision of the subject insurance policy. <u>See</u> <u>Alexander</u>, <u>Metsack</u>, <u>Jemiola</u>, <u>supra</u>. Additionally, the Furlongs' attempt to avoid dismissal of their claim by alleging that they "did not receive notice of" the relevant "collapse" language in the subject policy fails because the Furlongs received explicit notice of the relevant "collapse" language in Amica Policy number 680306-21DZ, attached hereto as <u>Exhibit 4</u> as well as in Amica Policy number 640306-21MC, attached as <u>Exhibit 5</u>[1];

(4) <u>Counts 50 and 55</u>: The Furlongs' claims for Violation of the Implied Covenant of Good Faith and Fair Dealing (Count 50) and Violation CUTPA and CUIPA (Count 55) fail because their breach of contract claims fail, and accordingly Counts 50 and Counts 55 are futile. Alternatively, these claims fail because the Furlongs have failed to plead facts sufficient to show that Amica acted with the requisite bad faith to support a finding that they violated any implied covenant, CUTPA, and/or CUIPA.

---

[1]    The attached insurance policies are properly considered on a Fed. R. Civ. P. 12(b)(6) motion because the Plaintiff has, "actual notice of all the information… and has relied upon these documents in framing the complaint." <u>Cortec Indus., Inc. v. Sum Holding L.P.</u>, 949 F.2d 42, 47 (2d Cir.1991); Complaint at ¶ 309 (Plaintiff alleging that the "home was insured with Amica from 2005 through 2016").

**ARGUMENT**

I.   <u>STANDARD OF REVIEW</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. What is required at the pleading stage are factual "allegations plausibly suggesting (not merely consistent with)" an entitlement to relief, in order to "reflect[ ] the threshold requirement of [Fed.R.Civ.P.] 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w]' that the pleader is entitled to relief.'" <u>Twombly</u>, 550 U.S. at 556.

II.   <u>THE MANSFIELDS' CLAIM FOR BREACH OF CONTRACT (COUNT 28) FAILS AS A MATTER OF LAW BECAUSE (1) THE CLAIM IS TIME BARRED AND (2) EVEN IF IT WAS NOT TIME BARRED IT FAILS UNDER THE PLAIN LANGUAGE OF THE POLICY AND THE DECISIONS OF THIS COURT AND THE CONNECTICUT STATE COURTS.</u>

**a. The Mansfields' Allegations Relevant to Count 28.**

In Count 28 the Mansfields allege in relevant part as follows:

- Plaintiffs' basement walls are in a state of collapse because they were built with concrete containing deleterious iron sulfide minerals… This is a continuous and irreversible condition. Ultimately, the Plaintiffs' homes will fall into their basement. <u>See</u> Complaint at ¶2;

- The Plaintiffs, Robert and Jodi Mansfield are residents of Fort Myers, Florida. They owned a single-family home at 70 Bread and Milk Street in Coventry, Connecticut. At the time they owned the home, the home's basement walls were crumbling. Id. ¶20;

- On or about September 22, 2011, the Mansfield discovered damage to their basement walls and on visible portions of the outside of their basement walls. Id. ¶550;

- The Mansfields' home was insured by Amica. Id. ¶555;

- The failure of the basement walls was a direct physical loss. Pursuant to the terms of the Mansfields' Amica policy number 62020621YK which provided property coverage for the period of February 8, 2011 to February 8, 2012, Amica agreed to provide coverage,"[e]xcept for loss caused by settling, cracking, bulging or expansion…for "direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following…(b) Hidden decay;…or (e) Use of defective material or methods in construction, remodeling or renovating." The Collapse coverage "does not include loss to foundation, [or] retaining wall…unless the loss is a direct result of the collapse of a building." Id. ¶557;

- The policy does not further define Collapse. Id. ¶558;

- The concrete had hidden decay in it. Id. ¶559;

- The basement walls were made with defective material or methods in construction, remodeling or renovation. Id. ¶560;

- Direct physical loss occurred during the Travelers [sic] policy period. <u>Id</u>. ¶561;

- On September 22, 2011, the Mansfields filed a timely claim for coverage of the loss in accordance with the terms of their policy with Amica. <u>Id</u>. ¶562;

- Amica denied the claim on September 29, 2011. <u>Id</u>. ¶563;

- Amica's failure to affirm coverage damaged the Mansfields. Based on the estimates of contractors who have performed replacements to the basement walls of similar structures in the area of the Mansfields' home, the cost of replacing the basement walls is expected to be not less than $150,000. <u>Id</u>. ¶564.

**b. Policy Language Relevant to Count 28.**

In Count 28 of the Complaint the Mansfields seek coverage under Amica Insurance Policy number 620206-21YK with effective dates of February 8, 2011 through February 8, 2012 ("Mansfield 2011-2012 Policy"). <u>See</u> Complaint at ¶557. That Policy is attached hereto as <u>Exhibit 2</u>[2]. That policy states in relevant part as follows:

AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.
...

SECTION I – PROPERTY COVERAGES

A.      Coverage A – Dwelling

1.      We cover:

a.      The dwelling on the residence premises shown in the Declarations, including structures attached to the dwelling;
...

---

[2]      The attached insurance policies are properly considered on a Fed. R. Civ. P. 12(b)(6) motion. <u>See</u> fn. 1, <u>supra</u>; Complaint at ¶557.

E.     Additional Coverages

...

8.     Collapse [as amended by Endorsement HO 01 06 09 10]

...

b.  With respect to this Additional Coverage:

(1) Collapse means an abrupt falling down or caving in of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

(2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

(4) A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

c.  We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one of more of the following:

(1) The Perils Insured Against;

(2) Decay, of a building or any part of a building, that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

...

(6) Use of defective materials or methods in construction, remodeling or renovation.

d.  Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under c.(2) through (6) above, unless the loss is a direct result of the collapse of a building or any part of a building.

...

7

SECTION I - PERILS INSURED AGAINST

A.      Coverage A - Dwelling And Coverage B – Other Structures

  1.      We insure against direct physical loss to property described in Coverages A and B.

  2.      We do not insure, however, for loss:

    a.  Excluded under Section I - Exclusions;

    b.  Involving collapse, except as provided in E.8. Collapse under Section I – Property Coverages; and
  …

SECTION I - CONDITIONS
  …
G.      Suit Against Us

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.
  …
P.      Policy Period

This policy applies only to loss which occurs during the policy period.

Ex. 2 at 0017, 0019, 0021, 0024, 0029, 0031, 0032, 0041 and 0042,.[3]

### c. The Mansfields' Claim for Breach of Contract (Count 28) Fails Because it is Time Barred Under the Terms of the Subject Policy.

In order for the Mansfields' claim to be timely filed they must have served the Complaint on Amica "within two years after the date of loss." See Ex. 2 at 0031. The date of loss occurs when Plaintiffs "learned or should have learned that a different level of kind of damage (i.e., a substantial structural flaw) existed." Parker v. Worcester Ins. Co., 247 F.3d 1, 5 (1st Cir. 2001); Bacewicz v. NGM Ins. Co., 2010 WL 3023882, *7 (D.

---

[3]       The attached insurance policies have been Bates stamped continuously beginning with Exhibit 2 (Mansfield  2011-2012 Policy) and ending with Exhibit 6 (Furlong 2015-2016 Policy).

Conn. Aug. 2, 2010).

In the Substituted Third Amended Complaint, the Mansfields state that "[o]n or about September 22, 2011, the Mansfields discovered damage to their basement walls and on visible portions of the outside of their basement walls." See Complaint at ¶550. The Mansfields further allege that "[o]n September 22, 2011, the Mansfields filed a timely claim for coverage of the loss in accordance with the terms of their policy with Amica." Id. ¶562. Further, the Mansfields allege that "Amica denied the claim on September 29, 2011." Id. ¶563.  Based on the Mansfields' own allegations, in order for them to recover under the Amica insurance policy under which they seek coverage they were required to serve the Complaint on Amica by September 22, 2013.[4] The Mansfields' Complaint was filed on January 29, 2016, more than 28 months after the Mansfields were required to file suit against Amica. Accordingly, the Mansfields' breach of contract claim is time barred and should be dismissed. See Ex. 2; Complaint at ¶¶550, 562; Roberts, 2015 WL 7458510 at *5.

> **d. Assuming *arguendo* that the Mansfields had timely filed suit, but see supra, Count 28 still fails as the Mansfields have not alleged facts "plausibly suggesting" an entitlement to relief under the "collapse" provision of the subject insurance policies. Specifically, Connecticut State and Federal Courts have repeatedly held that Plaintiffs' claims fail as a matter of law where they have not alleged facts suggesting that: (1) the claimed damage was "abrupt," or (2) that "the [home] or any part of the [home] cannot be occupied for its intended purpose," as a result of the claimed damage. Alexander, Metsack, Jemiola, supra.**

The Mansfields mistakenly allege that "[t]he policy does not [] define Collapse." See Complaint ¶558.  To the contrary, the Mansfields' Amica Policy specifically defines

---

[4]    "Under Connecticut State law, an action is not commenced until the defendant is properly served." Roberts v. Amica Mut. Ins. Co., 2015 WL 7458510 at *5 (D.Conn. Nov. 24, 2015).

collapse and states that it only provides "collapse" coverage for "abrupt collapse," which is defined as "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purposes." Ex. 2 at 0041. This Court has already held that a complaint with allegations such as those in the Mansfields' Complaint is subject to dismissal under the terms of an insurance policy which defines "collapse" as it is defined in the Amica policy. In April M. Alexander v. General Insurance Company of America, No. 3:16-cv-00059 (SRU) (July 7, 2016) Judge Underhill held as follows:

> I'm going to grant the motion to dismiss in its entirety. The coverage issue I think is the one that's taken up the bulk of the argument today, and that's, I think, clearly barred; that is, coverage is barred by the terms of the collapse provision in the policy...
>
> So there's several problems for the plaintiff given the allegations in the complaint here. The first is that there has been no abrupt falling down or caving in of a building or any part of a building for which coverage applies, and there's not been a clear allegation that any building or part of a building cannot be occupied for its intended purpose.
>
> Even if that had been met, what we have here is a building that is in danger of falling down, and that is expressly excluded from collapse coverage; and similarly, there has been cracking bulging, etc. Those situations are also excluded ...

Exhibit 7, Transcript of Motion Hearing at 22:7- 23:25, April M. Alexander v. General Insurance Company of America, No. 3:16-cv-00059 (SRU) (July 7, 2016). On reconsideration, this Court reaffirmed its decision:

> Plaintiffs cannot avoid the fact that their basement walls are still standing. The only allegations of impairment to the structural integrity of the walls are allegations that the walls are "cracking" or—alleged at oral argument—that they are "bulging." Both conditions are expressly excluded under the definition of the policy and it is clear that no collapse has

occurred.

Alexander v. General Ins. Co. of America, 2017 WL 188134 (D. Conn. Jan. 17, 2017).

Just as in Alexander, the Mansfields' claim does not involve the definition of "collapse" at issue in the Beach v. Middlesex Mut. Assur. Co. case which the Supreme Court of Connecticut held was "sufficiently ambiguous to include coverage for any substantial impairment of the structural integrity of a building." 205 Conn. 246, 252, 532 A.2d 1297 (1987). Rather, this Court, along with several other jurisdictions, has held that the definition of "collapse" at issue here is not ambiguous. See Ex. 7, at 22:10-12; Metsack, supra; Jemiola, supra; see also Miller v. First Liberty Ins. Corp., 2008 WL 2468605, *4 (E. D. Penn. June 17, 2008) (ruling, in a case involving the nearly identical language to the definition of "collapse" in the Policy, "that the collapse provision in the Policy is unambiguous…"); Residential Management (N.Y.) Inc. v. Federal Ins. Co., 2012 WL 3288671, *9 (E.D.N.Y. Aug. 12, 2012) (holding that nearly identical policy language defining collapse not ambiguous); Mount Zion Baptist Church of Marietta v. Guideone Elite Ins. Co., 808 F.Supp.2d 1322, 1325 (N.D.Ga. 2011) (holding nearly identical policy language defining collapse not ambiguous); Rector St. Food Enterprise, LTD. v. Fire & Cas. Ins. Co. of Connecticut, 35 A.D.3d 177, 827 N.Y.S.2d 18 (2006) (holding term collapse was unambiguous when defined in policy).

Further, on March 2, 2017, in Jemiola v. Hartford Ins. Co., the Superior Court for the Judicial District of Tolland interpreted nearly identical "collapse" language to that set forth in the subject Amica insurance policy, in a nearly identical factual situation to that at issue here, and held that the plaintiff's claim for coverage under the "collapse"

11

provision of the policy failed as a matter of law because (1) "there has been no sudden or abrupt falling down or caving in," and (2) "the plaintiff's home can still be occupied 'for its intended current purposes.'" Ex. 8 at pgs. 22-23. The Court explicitly "agree[d] with the Connecticut Federal District Court in Alexander and the courts around the country that have held that the definition of collapse in the policy is unambiguous as applied to circumstances similar to this case." Ex. 8 at pg. 20.

On February 21, 2017, this Court entered judgment in favor of Allstate Insurance Company in Metsack v. Liberty Mut. Fire Ins. Co. 2017 WL 706599. In that case, the parties agreed that a "chemical reaction" caused concrete in the Plaintiff's basement walls to "expand and crack." Id. at *1. Plaintiff sought coverage under the "collapse" provision of the Allstate policy. Id. The Allstate policy required that a "collapse be 'a sudden and accidental direct physical loss'" in order for the insured to be entitled to coverage. Id. at *7. The Court entered judgment in favor of Allstate on plaintiff's breach of contract, bad faith, and CUIPA/CUTPA claims because the "basement walls deteriorated over time, rather than 'suddenly,'… [.]" Id. at *7.

In short, under the holdings of both this Court, the Connecticut State Court, and the majority of courts around the country which have addressed this issue, the Mansfields' claim fails as a matter of law where they have not plead facts which "plausibly suggest[ ]" that either (1) the claimed damage for which Plaintiffs seek coverage was "abrupt" or (2) or that "the [home] or part of the [home] cannot be occupied for its intended purposes," as a result of the claimed damage, and accordingly, the Mansfields' Complaint must be dismissed. Twombly, Alexander, supra;

see <u>Jemiola</u>, <u>Metsack</u>, <u>supra</u>.

> i.   *The Mansfields have not alleged facts plausibly suggesting that an
> "abrupt" collapse occurred.*

The Policy is explicit that in order for the Mansfields to be entitled to coverage there must be "an abrupt falling down or caving in of a building or any part of a building." <u>Ex. 2</u> at 0041.   The term "abrupt" is defined as "very sudden and not expected." <u>See</u> Merriam-Webster.com Merriam-Webster, n.d. Web. 29 Sept. 2015. http://www.merriam-webster.com/dictionary/abrupt (defining "abrupt" as "very sudden and not expected"); <u>see also</u> <u>New London Country Mut. Ins. V. Zachem</u>, 145 Conn. App. 160, 166 (2013) ("To determine the common, natural, and ordinary meaning of an undefined term, it is proper to turn to the definition found in the dictionary").

Plaintiffs' Complaint does not allege that the damage for which they seek coverage was "very sudden" in any manner. In fact, the Mansfields concede that the "sulfate attack will continue to deteriorate the concrete until the home caves into its basement." <u>See</u> Complaint at ¶ 554.   Accordingly, the Mansfields do not allege any set of facts "plausibly suggesting" that such claimed damage was "abrupt" and accordingly their claim for coverage fails. <u>Ex. 7</u> at 22:7- 23:25; <u>Twombly</u>, 550 U.S. at 556; <u>see</u> <u>Jemiola</u>, <u>Metsack</u>, <u>supra</u>.

> ii.   *The Mansfields have not alleged facts plausibly suggesting that "[their
> home] or any part of [their home] cannot be occupied for its intended
> purpose."*

The Amica Policy also requires that an insured demonstrate that there was "an abrupt falling down or caving in of a building or any part of a building *with the result that the building or part of the building cannot be occupied for its current intended*

*purpose*" in order to demonstrate an entitlement to coverage. Ex. 2 at 0041. (emphasis supplied). Here, the Mansfields have not plead that the building, or part of the building, cannot be occupied for its current purpose. See Complaint. Without such an allegation they cannot "plausibly suggest[]" an entitlement to relief under the collapse provision of the Policy and their claim for coverage fails. Ex. 7 at 22:7- 23:25; Twombly, 550 U.S. at 556; see Jemiola, Metsack, supra.

Other jurisdictions have agreed with this Court that the definition of "collapse" in the Amica policy is unambiguous. See Miller, Residential Management, Mount Zion, Rector St., supra. Here, the Mansfields have not pleaded, and cannot plead, that the home, or part of the home, cannot be occupied for its current purpose. See Complaint. Without such an allegation they cannot "plausibly suggest[]" an entitlement to relief under the terms of the Policy. Twombly, 550 U.S. at 556.

It is expected that the Mansfields will argue that other jurisdictions have found that language similar to that set forth in the Amica Policiy is ambiguous. See also Ken Johnson Properties, LLC v. Harleysville Worcester Summary Ins. Co., 2013 WL 5487444 (D. Minn. Sept. 30, 2013); Scorpio v. Underwriters at Lloyd's, London, 2012 WL 2020168 (D.R.I. June 5, 2012); Landmark Realty, Inc. v. Great American Ins. Co., 2010 WL 5055805 (D. Md. Dec. 3, 2010); Malbco Holding, LLC v. Amco Ins. Co., 629 F.Supp.2d 1185 (D. Or. 2009); 130 Slade Condo. Ass'n, Inc. v. Millers Capital Ins. Co., 2008 WL 2331048 (D. Md. June 2, 2008). The Mansfields' expected reliance on this line of cases fails for three reasons.

First, the Mansfields' argument was rejected by this Court in Alexander and the

Connecticut State Court in <u>Jemiola</u>. <u>Ex. 7</u> at 22:7- 23:25; <u>Ex. 8</u> at pg. 20-21.

Second, Amica contends that the analyses set forth in the cases cited by it above, which conclude that the Policy's definition of "collapse" is unambiguous, are more persuasive than those in the cases it expects the Mansfields' counsel to cite. <u>See</u> <u>Miller</u>, <u>Residential Management</u>, <u>Mount Zion</u>, <u>Rector St.</u>, <u>supra</u>.

Third, even if this Court were to apply the analysis set forth in <u>Scorpio</u>, <u>Landmark</u>, <u>Malbco</u>, <u>Ken Johnson</u>, or <u>130 Slade</u>, <u>supra</u>, Plaintiffs' claim would still fail as a matter of law. Accordingly, the Mansfields' Complaint does not "plausibly suggest[]" entitlement to relief even if this Court were to adopt the reasoning and analysis set forth in <u>Scorpio</u>, <u>Landmark</u>, <u>Malbco</u>, <u>Ken Johnson</u>, or <u>130 Slade</u>, <u>supra</u>. <u>Twombly</u>, 550 U.S. at 556.

In <u>130 Slade</u> the Court held that in order for an insured to be entitled to coverage for a collapse under language nearly identical to that at issue here, the Policy "require[d] an actual, abrupt, and major event that renders the building structure unusable." 2008 WL 2331048 at *4. Here the Mansfields have not pleaded facts "plausibly suggesting" that an "abrupt, and major event …render[ed] the building structure unusable," and therefore their claim fails under the analysis set forth in <u>130 Slade</u>. <u>Id.</u>[5]

In <u>Malbco</u>, the Court analyzed language nearly identical to that at issue here and arrived at a conclusion that was "consistent" with the Court's analysis in <u>130 Slade</u>, 629 F. Supp. 2d at 1197. Specifically, the Court held that "to obtain collapse coverage under

---

[5]   Additionally, it is noteworthy that Plaintiffs' claims would fail even under Maryland's "liberal minority view" regarding collapse coverage. <u>Id.</u>

the Policy, [the insured] must establish that during the policy period, at least part of the [building] (1) abruptly fell down or caved in, (2) such that it could not be occupied for its intended purposes, (3) due to decay [a cause of loss that is covered under the collapse coverage]." Id. Again, as in 130 Slade, the Mansfields' claim for coverage fails under the analysis set forth in Malbco because the Mansfields have not, and cannot, plead that their home abruptly fell down or caved in such that it cannot be occupied for its intended purpose.

In Landmark, the court held that the portion of the collapse definition upon which Amica now relies[6] "clearly applie[d]... because there is no dispute that the collapse of [the building] resulted in the entire building being unusable for its intended purpose." Accordingly, the Mansfields' claim would fail under the rationale of Landmark, where Plaintiffs have not and cannot allege facts "plausibly suggesting" that the building at issue cannot be occupied for its intended purpose. Twombly, supra.

Scorpio found the "rationale of Landmark and Malbco to be persuasive" and Ken Johnson relied on the holdings in Scorpio, Landmark Realty, and Malbco.  2012 WL 2020168, *6; 2013 WL 5487444 at *10-12. Therefore, under Scorpio, in order to "plausibly suggest[]" an entitlement to relief, the Plaintiffs would need to allege that the property or part of the property cannot be occupied for its intended purposes.

In summary, although some courts have found the definition of "collapse" similar to that at issue here to be ambiguous, such findings are of no avail to the Mansfields because they still cannot provide a reasonable interpretation of the policy which will

---

[6] The Policy in Malbco, like that at issue here, required "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose." See and compare 2010 WL 5055805, *5 with Ex. 2.

result in coverage for their claim based on the allegations in the Plaintiffs' Complaint. Heyman Associates No. 1 v. Insurance Company of the State of Pennsylvania, 231 Conn. 756, 770, 653 A.2d 122 (1995). Accordingly, they cannot "plausibly suggest[]" an entitlement to relief under the collapse provision of the Amica Policy and their claim fails. Twombly, 550 U.S. at 556.

III.   **THE FURLONGS' FIRST CLAIM FOR BREACH OF CONTRACT (COUNT 14) FAILS BECAUSE THEY SEEK COVERAGE UNDER A POLICY WHICH PROVIDES NO COVERAGE FOR THE PROPERTY WHICH THEY ALLEGED WAS DAMAMGED.**

**a. The Furlongs' Allegations Relevant to Count 14.**

In Count 14 of Plaintiffs' Complaint the Furlongs allege in relevant part as follows:

- Plaintiffs' basement walls are in a state of collapse because they were built with concrete containing deleterious iron sulfide minerals… This is a continuous and irreversible condition. Ultimately, the Plaintiffs' homes will fall into their basement. See Complaint at ¶2;

- Plaintiffs Michael and Sue Ann Furlong are residents of Tolland, Connecticut. They own and live in a single-family home at 68 Bakos Road in Tolland. The home was built in 1997 and the Furlongs purchased the home in 2006. The home's basement walls are crumbling. Id. ¶13;

- On July 27, 2015, the Furlongs discovered damage to their basement walls and on visible portions of the outside of their basement walls. Id. ¶300;

- After noticing the damage, the Furlongs notified Amica on August 15, 2015. Id. ¶301;

- The Furlongs' home was insured with Amica from 2005 through 2016. Id. ¶309;

- The failure of the basement walls was a direct physical loss. Pursuant to the terms of the Furlongs' Amica policy number 660706-21UN, which provided property coverage from 3/16/06-3/16/07, Section I – property Coverages, Paragraph 8. Collapse, as amended by the Special Provisions-Connecticut Endorsement No. HO 01 06 01 02, Amica agreed to provide coverage for "direct physical loss to covered property involving collapse of a building or part of building caused only by one more or more of the following:… b. hidden decay;…f. use of defective material or methods in construction, remodeling or renovation." Loss to foundations or retaining walls is not included in the coverage unless the loss is a direct result of the collapse of a building. Collapse does not include settling, cracking, shrinking, bulging or expansion. Id. ¶311;

- The concrete had hidden decay in it. Id. ¶¶313;

- The basement walls were made with defective material or methods in construction, remodeling or renovation. Id. ¶¶314;

- Direct physical loss occurred during Amica's policy period. Id. ¶315;

### b.  Policy Language Relevant to Count 14.

In Count 14 of the Complaint the Furlongs seek coverage under Amica Insurance Policy number 66076-21UN with effective dates of July 25, 2005 through July 25, 2006 ("Furlong 2005-2006 Policy"). See Complaint at ¶311. That Policy is attached hereto as Exhibit 3[7]. That policy states in relevant part as follows:

---

[7]     The attached insurance policies are properly considered on a Fed. R. Civ. P. 12(b)(6) motion. See fn. 1, supra; Complaint at ¶557.

AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy
…

DEFINITIONS
…

4.     "Insured location" means:

     a.     The residence premises
…

8.     "Residence premises" means:

     a.     The one family dwelling, other structures, and grounds; or

     b.     That part of any other building where you reside and which is shown as the residence premises in the Declaration.
…

SECTION I – PROPERTY COVERAGES

Coverage A – Dwelling

We cover:

1.     The dwelling on the residence premises shown in the Declarations, including structures attached to the dwelling;

Ex. 3 at 0080, 0082, and 0083.

The "residence premises" shown in the Declarations is located at 473 Hills Street, East Hartford, Connecticut. Ex. 3 at 0080. The Furlong 2005-2006 Policy provides no coverage for property located at 68 Bakos Road, Tolland, Connecticut.

    **c. The Furlongs' first Breach of Contract claim (Count 14) fails because the Furlongs seek coverage under a policy which provides _no coverage whatsoever_ for the property which the Furlongs allege was damaged.**

19

Amica policy number 66076-21UN provides coverage for the residence premises located at 473 Hills Street, East Hartford, Connecticut 06118 not the residence at 68 Bakos Road, Tolland Connecticut.   See Ex. 3 at 0080.   In Count 14 the Furlongs only allege damage to the residence premises located at 68 Bakos Road, Tolland, Connecticut. See Complaint at ¶¶297-321. Accordingly, the Furlongs do not allege any set of facts "plausibly suggesting" that the claimed damage to their property at 68 Bakos Road, Tolland Connecticut is covered under Amica policy number 660706-21UN and accordingly their claim for coverage fails. Twombly, 550 U.S. at 556.

IV.   THE FURLONGS' SECOND CLAIM FOR BREACH OF CONTRACT (COUNT 15) FAILS AS A MATTER OF LAW BECAUSE THEY HAVE NOT ALLEGED FACTS "PLAUSIBLY SUGGESTING" AN ENTITLEMENT TO RELIEF UNDER THE "COLLAPSE" PROVISION OF THE SUBJECT INSURANCE POLICIES. SEE ALEXANDER, METSACK, JEMIOLA, SUPRA. ADDITIONALLY, PLAINTIFFS' ATTEMPT TO AVOID DISMISSAL OF THEIR CLAIM BY ALLEGING THAT THEY "DID NOT RECEIVE NOTICE OF" THE RELEVANT "COLLAPSE" LANGUAGE IN THE SUBJECT POLICY FAILS BECAUSE THE FURLONGS RECEIVED EXPLICIT NOTICE OF THE RELEVANT "COLLAPSE" LANGUAGE FROM AMICA.

### a. The Furlongs' Allegations Relevant to Count 15.

In Count 15 of Plaintiffs' Complaint the Furlongs allege in relevant part as follows:

- Plaintiffs' basement walls are in a state of collapse because they were built with concrete containing deleterious iron sulfide minerals… This is a continuous and irreversible condition. Ultimately, the Plaintiffs' homes will fall into their basement. See Complaint at ¶2;

- Plaintiffs Michael and Sue Ann Furlong are residents of Tolland, Connecticut. They own and live in a single-family home at 68 Bakos Road in Tolland. The home was

built in 1997 and the Furlongs purchased the home in 2006. The home's basement walls are crumbling. Id. ¶13;

- The Furlong's home was insured with Amica with policy number 66030621QL, which provided property coverage from 3/16/15-3/16/16. Id. ¶323.

- The failure of the basement walls was a direct physical loss. Pursuant to the terms of the Furlongs' Amica policy, as amended by special Provisions-Connecticut Endorsement HO 01 06 01 13, Amica agreed to provide coverage for "direct physical loss to covered property involving abrupt collapse of a building or any part of a building is such collapse was caused by one or more of the following:…(2) hidden decay; [or](6) use of defective material or methods in construction, remodeling or renovation." Loss to foundations or retaining walls is not included in the coverage unless the loss is a direct result of the collapse of a building. Id. ¶325;

- The concrete had hidden decay in it. Id. ¶327;

- The basement walls were made with defective material or methods in construction, remodeling or renovation. Id. ¶328;

- Direct physical loss occurred during Amica's policy period. Id. ¶315;

- On August 15, 2015, the Furlongs filed a timely claim for coverage of the loss in accordance with the terms of their policy with Amica. Id. ¶330;

- Amica has neither affirmed nor denied the Furlong's claim. Id. ¶332;

- Amica's failure to affirm coverage damaged the Furlongs. The Furlongs received an estimate for the cost of replacing their basement walls of $149,000. Id. ¶334;

- Although the policy further defines Abrupt Collapse as "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose," the Furlongs did not receive adequate notice of this significant reduction in coverage, and therefore it is not effective. Id. ¶326.

**b.  Policy Language Relevant to Count 15.**

In Count 15 of the Complaint the Furlongs seek coverage under Amica homeowner's Policy Number 660306-21QL. See Complaint at ¶323. That Policy is attached hereto as Exhibit 6[8]. That policy states in relevant part as follows:

AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.
...
SECTION I – PROPERTY COVERAGES
...

E. Additional Coverages
...
[as amended by Endorsement HO 01 06 01 13].

  8.    Collapse
        ...
        b.  The coverage provided under this Additional Coverage –
            Collapse applies only to an abrupt collapse.

        c.  For the purpose of this Additional Coverage – Collapse,
            abrupt collapse means an abrupt falling down or caving
            in of a building or any part of a building with the result
            that the building or part of the building cannot be
            occupied for its intended purpose.

---

[8]    The attached insurance policies are properly considered on a Fed. R. Civ. P. 12(b)(6) motion. See fn. 1, supra; Complaint at ¶557.

d.  This Additional Coverage – Collapse does not apply to:

(1) A building or any part of a building that is in danger of falling down or caving in;

(2) A part of a building that is standing, even if it has separated from another part of the building; or

(3) A building or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

e.  We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if such collapse was caused by one or more of the following:

(1) The Perils Insured Against;

(2) Decay, of a building or any part of a building, that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;
...

(6) Use of defective material or methods in construction, remodeling or renovation.

f.  Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under e.(2) through (6) above, unless the loss is a direct result of the collapse of a building or any part of a building.
...

SECTION I – PERILS INSURED AGAINST

A. Coverage A – Dwelling And Coverage B – Other Structures

1.    We insure against direct physical loss to property described in Coverages A and B.

2.    We do not insure, however, for loss:

**a.** Excluded under Section I – Exclusions;

**b.** Involving collapse, including any of the following conditions of property or any part of the property:

(1) An abrupt falling down or caving in;

(2) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

(3) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to (1) or (2) above;

except as provided in E.8. Collapse under Section I – Property Coverage; or

…

SECTION I – CONDITIONS

…

H.   Suit Against Us. No action can be brought against us unless there has been full compliance with all the terms under Section I of this policy and the action is started within two years after the date of loss.

…

Q.   Policy Period. This policy applies only to loss which occurs during the policy period.

See Ex. 6 0291, 0293, 0295, 0299, 0303, 0305, 0306 and 0319.

Additionally, Amica issued a policy to the Furlongs, Amica Policy number 680306-21DZ for policy period 3/16/07 – 3/16/08, which is attached hereto as Exhibit 4[9]. That Policy included an "Important Notice to Policyholders" (Ex. 4 at 0129) during this renewal, which stated in part:

**REDUCED COVERAGE**

---

[9]   The attached insurance policies are properly considered on a Fed. R. Civ. P. 12(b)(6) motion. See fn. 1, supra; Complaint at ¶557.

<u>Collapse</u> – Many courts have interpreted collapse coverage to apply when a structure is, or is likely to be, in imminent danger of collapse because of loss to its structural integrity. Since these decisions are contrary to the long-standing intent of Collapse coverage, the definition and terms have been revised to more explicitly express intent. Additionally, language has been added to convey that hidden decay and hidden insect or vermin damage do not include decay and/or insect or vermin damage which the insured is aware of prior to collapse.

<u>Ex. 4</u> at 0129.

Moreover, Amica issued a policy to the Furlongs, Amica Policy number 640306-21MZ for policy period 3/16/13 – 3/16/14, which is attached hereto as <u>Exhibit 5</u>. That Policy included an "Advisory Notice to Policyholders" (<u>Ex. 5</u> at 0211) during this renewal, which stated in part:

*Other Changes*

Section **I** – Additional Coverages, has been revised in part, to generally reinforce that collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose. Also, it has been reinforced that this Additional Coverage applies to certain kinds of hidden decay and hidden insect or vermin damage ***to a building or any part of a building.*** *(Emphasis in original).*

<u>Ex. 5</u> at 0211**.**

> **c. Furlongs' second claim for Breach of Contract (Count 15) fails as a matter of law because they have not alleged facts "plausibly suggesting" an entitlement to relief under the "collapse" provision of the subject insurance policies. <u>See</u> <u>Alexander</u>, <u>Metsack</u>, <u>Jemiola</u>, <u>supra</u>.**

In Count 15 the Furlongs seek coverage under Amica Policy 66030621QL. <u>See</u> Complaint at ¶ 323. As noted above, this policy, like the Mansfields' 2011-2012 Policy, only provides "collapse" coverage for "abrupt collapse," which is defined as "an abrupt falling down or caving in of a building or any part of a building with the result that the

building or part of the building cannot be occupied for its intended purposes."   Ex. 6 at

0319. The Furlongs' breach of contract claim therefore fails for the same reasons set

forth above with respect to the Mansfields' breach of contract claim (Count 28). See

Section II.d., supra.

In brief summary:

(1)    This Court, along with the Connecticut Superior Court for the Judicial

District of Tolland, has already held that a complaint with allegations such as those in

the Furlongs' Complaint is subject to dismissal under the terms of an insurance policy

which defines "collapse" as it is defined in the Amica policy. Ex. 7 at 22:7- 23:25; see

Jemiola, Metsack, supra;

(2)    The Furlongs have not alleged facts plausibly suggesting that an "abrupt"

collapse occurred. The Policy is explicit that in order for the Furlongs to be entitled to

coverage there must be "an abrupt falling down or caving in of a building or any part of

a building." Ex. 6 at 0319.

(3)    The Furlongs have not alleged facts plausibly suggesting that "[their

home] or any part of [their home] cannot be occupied for its intended purpose." The

Amica Policies require that an insured demonstrate that there was "an abrupt falling

down or caving in of a building or any part of a building *with the result that the building

or part of the building cannot be occupied for its current intended purpose*" in order to

demonstrate an entitlement to coverage. Ex. 6 at 0319 (emphasis supplied); Complaint

at ¶¶322-335.

In summary, the Furlongs have not plead facts which "plausibly suggest[ ]" that

either (1) the claimed damage for which Plaintiffs seek coverage was "abrupt" or (2) or

that "the [home] or part of the [home] cannot be occupied for its intended purposes,"

as a result of the claimed damage, and accordingly, the Furlongs' Complaint must be

dismissed. Ex. 7 at 22:7- 23:25; Twombly, supra; see Jemiola, Metsack, supra.

> **d. Additionally, Plaintiffs' attempt to avoid dismissal of their claim by alleging that they "did not receive notice of" the relevant "collapse" language in the subject policy fails because the Furlongs received explicit notice of the relevant "collapse" language in Amica Policy number 680306-21DZ, attached hereto as <u>Exhibit 4,</u> as well as in Amica Policy number 640306-21MC, attached hereto as <u>Exhibit 5</u>.**

As an initial matter, the Furlongs concede that the policy defines abrupt collapse

as "an abrupt falling down or caving in of a building or any part of a building with the

result that the building or part of the building cannot be occupied for its intended

purpose." See Complaint ¶326. To the extent that notice of a coverage reduction is

required under the facts at issue here, (which Amica does not concede),[10] the Furlongs

mistakenly allege that "the Furlongs did not receive adequate notice of this significant

reduction in coverage, and therefore it is not effective." Id. ¶326.  This allegation does

not save their claim because, as noted above, when the Furlongs renewed their policy

on March 16, 2007, and again on March 16, 2013, Amica provided specific notice to the

Furlongs of the relevant "collapse" language in the Policy under which they seek

coverage in Count 15.  Ex. 4 and Ex. 5. Specifically, the Furlongs received, as part of

the March 16, 2007 policy, an "Important Notice to Policyholders" (Ex. 4 at 0129)

---

[10]     The enabling statute for the Conn. Insurance Bulletin PC-66 (Dec. 21, 2009), Conn. Gen. Stat §38a-323 provides the statutory notice requirements for non-renewals. The statute does not apply to renewals. See Royal Indemnity Co. v. King, 512 F.Sup.2d 117, 128 (D.Conn.2007). Moreover, Plaintiffs make no allegations in the Substituted Third Amended Complaint that the Conn. Insurance Bulletin PC-66 (Dec. 21, 2009) was subject to the requisite rulemaking requirements of the Uniform Administrative Procedure Act, Conn. Gen. Stat. 4-166, et. seq.

during this renewal, which stated in part:

## REDUCED COVERAGE

<u>Collapse</u> – Many courts have interpreted collapse coverage to apply when a structure is, or is likely to be, in imminent danger of collapse because of loss to its structural integrity. Since these decisions are contrary to the long-standing intent of Collapse coverage, the definition and terms have been revised to more explicitly express intent. Additionally, language has been added to convey that hidden decay and hidden insect or vermin damage do not include decay and/or insect or vermin damage which the insured is aware of prior to collapse.

Also, the Furlongs received, as part of the March 16, 2013 policy, an "Advisory Notice to Policyholders" (<u>Ex. 5</u> at 0211) during this renewal, which stated in part:

*Other Changes*

Section **I** – Additional Coverages, has been revised in part, to generally reinforce that collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose. Also, it has been reinforced that this Additional Coverage applies to certain kinds of hidden decay and hidden insect or vermin damage **to a building or any part of a building.** *(Emphasis as in original)*

The Furlongs' conclusory allegation that the "the Furlongs did not receive adequate notice" must be disregarded, as it is in direct conflict with the clear language of the policies. Count Fifteen is devoid of any specific facts on which a finding that Plaintiffs did not receive adequate notice of a significant reduction of coverage could be based. The Furlongs rely on a single conclusory statement (which is contradicted by the documents to which they refer) to support the allegation that they did not receive adequate notice. Furthermore, the Furlongs do not even allege that any notice, aside from the policy language itself, is required.

Moreover, the Furlongs do not attempt to address the unambiguous, clear notice

found in the "Important Notice to Policyholders" (Ex. 4 at 0129) as well as the "Advisory Notice to Policyholders" (Ex. 5 at 0211), but rather resort to providing a conclusory recitation of language from the Connecticut Insurance Bulletin PC-66 (Dec. 21, 2009) to support the allegation that the expanded definition of collapse is a significant reduction of coverage. The Furlongs provide no specific facts on which to base this conclusion. Complaint ¶87.  As noted above, Amica provided the Furlongs notice of the expanded collapse definition during the renewal of their policy in 2007. The Connecticut Ins. Bulletin PC-66 was not in effect at that time.  The law presumes that administrative agencies lack power to enact retroactive regulations without statutory authorization. See Bowen v. Georgetown University Hospital, 488 U.S. 204, 208–09 (1988) ("a statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms ..."); Royal Indemnity, 512 at 130–31  (citing Bowen to hold that the Connecticut Insurance Department lacked the statutory authority to promulgate an interpretive rule having retroactive effect), aff'd sub nom.; Arrowhead Indemnity Co. v. King,  699 F.3d 735, 740 (2d Cir.2012).

The Furlongs have failed to plead facts that plausibly demonstrate that they "did not receive notice of" the relevant "collapse" language in the subject policy, that the Connecticut Insurance Bulletin PC-66 (Dec. 21, 2009) has retroactive effect, or that the Connecticut Insurance Bulletin PC-66 (Dec. 21, 2009) is applicable to renewals and thus the Furlongs' claim should be denied.

   V.   THE FURLONGS' CLAIM FOR VIOLATION OF THE IMPLIED COVENANT OF
        GOOD FAITH AND FAIR DEALING (COUNT 50) AND VIOLATION CUTPA AND

CUIPA (COUNT 55) FAIL BECAUSE THEIR BREACH OF CONTRACT CLAIMS
FAIL, AND ACCORDINGLY COUNTS 50 AND COUNTS 55 ARE FUTILE.
ALTERNATIVELY, THESE CLAIMS FAIL BECAUSE THE FURLONGS HAVE
FAILED TO PLEAD FACTS SUFFICIENT TO SHOW THAT AMICA ACTED WITH
THE REQUISITE BAD FAITH TO SUPPORT A FINDING THAT THEY VIOLATED
ANY IMPLIED COVENANT, CUTPA,  AND/OR CUIPA.

### a.    The Furlongs' Allegations Relevant to Count 50 and Count 55.

In Count 50 and Count 55 of Plaintiffs' Complaint the Furlongs allege in relevant

part as follows:

- Plaintiffs Michael and Sue Ann Furlong are residents of Tolland, Connecticut. They

  own and live in a single-family home at 68 Bakos Road in Tolland. The home was

  built in 1997 and the Furlongs purchased the home in 2006. The home's basement

  walls are crumbling. Id. ¶13;

- Amica contracted with Geodesign Inc., Cianci engineering, and TEC Services to

  conduct an investigation regarding cracks. Id. ¶302;

- Geodesign Inc. concluded, among other things, that based on a March 7, 2016

  petrographic evaluation done on the Furlong's home;

  a. "The pyrrhotite content in the aggregate is high and unusual;"

  b. "The deterioration of the concrete in upper and lower levels of the house

     foundation is due to oxidation of the pyrrhotite in the aggregates;" and

  c. "Less than 20% of the pyrrhotite is completely oxidized, with the remaining

     pyrrhotite having a potential for causing additional detrimental reactions that

     may further deteriorate the concrete." Id. ¶303;

- TEC Services adopted these conclusions in its report. Id. ¶304;

- Cianci Engineering concluded that "the cause of the chemical condition at the

insured's residence, which consists of map cracking in the foundation, is indicative of a material defect with the original concrete used to pour the foundation. A coradual expansion reaction, which is dependent on the foundation's ongoing exposure to water and oxygen, has resulted in map cracking." Id. ¶ 305;

- The Furlongs filed their proof of loss on September 14, 2016. Id. ¶¶317;

- On or about July 27, 2015, the Furlongs filed insurance claims with Amica regarding the defective concrete in their basement walls. Id. ¶893;

- Despite the fact the Furlongs had an engineering firm prepare an extensive report indicating that they had defective concrete in their basement walls, Amica has refused to provide coverage for their claim, while knowing that it intends to deny the Furlongs' claim. Id. ¶895;

- Upon information and belief, Amica is intentionally misleading the Furlongs and is trying to convince them that the damage suffered to their basement walls is not covered, solely to avoid payment of a covered loss. Id. ¶896;

- Amica has deliberately delayed its coverage decisions despite the fact that it intends to deny the Furlongs' claim. Accordingly, Amica has impeded the Furlongs' right to receive benefits that they reasonably expected to receive under the contract for homeowners insurance. Id. ¶897.

- Amica has acted in bad faith and violated the implied covenant of good faith and fair dealing in the performance of its duties in deliberately delaying the denial of the Furlongs' claim for coverage under the homeowners Policy. Id. ¶898;

- Amica has breached the implied covenant of good faith and fair dealing under the

Policy by, among other things, knowingly, deliberately, consciously, intentionally, recklessly, negligently, and/or with dishonest, interested and/or sinister motive failing to act on the Furlongs; pending claim while knowing said claim will be rejected. Id. ¶899;

- As alleged in Count[] ... 50, the Defendant[] [has] a general business practice of failing to acknowledge and act with reasonable promptness upon communications with respect to claims arising under insurance policies in violation of Conn. Gen. Stat. § 38a-816(6)(B). Id. ¶980;

- The Defendant[] delays and failures to respond offend public policy because they violate the foregoing provisions of CUIPA. Id. ¶982.

- The Defendant[] delays and failures to respond are immoral, unscrupulous and unethical. Id. ¶983.

- The Plaintiffs have suffered an ascertainable loss. Not only do they not have the coverage to which they are entitled to repair their basement walls, the Plaintiffs cannot sell or refinance their homes. They are paying too much in taxes for homes that are essentially worthless. Id. ¶984;

- As a result of the above conduct that is prohibited by CUIPA, the Defendants also have violated the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b(a). Id. ¶985.

> **b.    The Furlongs' claims for Violation of the Implied Covenant of Good Faith and Fair Dealing (Count 50) and Violation CUTPA and CUIPA (Count 55) fail because their Breach of Contract claims (Counts 14 and 15) fail.**

The Furlongs also bring claims for Violation of the Implied Covenant of Good

Faith and Fair Dealing (Count 50) and Violation CUTPA and CUIPA (Count 55). In

Chorches v. Stewart Title Gar. Co., 48 F. Supp. 3d 151 (D. Conn. 2014) this Court held

that when a plaintiffs' claim for breach of an insurance contract for wrongfully denying

an insurance claim fails, its claims for violations of the underlying covenant of good

faith and fair dealing and CUTPA also fails as a matter of law. Specifically the court

stated:

> Because plaintiff's contract claim fails, so too does his claim of bad faith
> denial of coverage. As the Connecticut Supreme Court has recently
> concluded, "a bad faith action must allege denial of the receipt of an
> express benefit under the [insurance] policy." Capstone Bldg. Corp. v. Am.
> Motorists Ins. Co., 308 Conn. 760, 794, 67 A.3d 961, 986 (2013). And the
> underlying covenant of good faith and fair dealing in a contractual
> relationship "is not implicated by conduct that does not impair contractual
> rights." Id. at 795, 67 A.3d 961 (no bad faith claim against insurer for
> failure to investigate an insurance claim where the policy provided the
> insurer sole discretion as to whether to investigate); see also Renaissance
> Mgmt. Co. v. Conn. Hous. Fin. Auth., 281 Conn. 227, 240–41, 915 A.2d
> 290, 297–98 (2007) (defendant housing authority's refusal to help tenants
> by accepting mortgage prepayments did not violate the covenant of good
> faith and fair dealing because the agency was not contractually obligated
> to accept prepayments). Here, because plaintiff has failed to show that
> Coughlin did not receive any benefits to which he was entitled under the
> title policy, his bad faith claim fails by equal measure.

Id. at 157. The same rationale applies here.

For the reasons noted above the Furlongs' claims for breach of contract (Counts

14 and 15) fail as a matter of law. Therefore, Plaintiffs' claims for Violation of the

Implied Covenant of Good Faith and Fair Dealing (Count 50) and Violation CUTPA and

CUIPA (Count 55)  fail because there has been no "impair[ment] of contractual rights,"

where under the express terms of the contract Plaintiffs are not entitled to insurance

coverage. Chorches, 48 F. Supp. 3d at 157. Accordingly, Counts 50 and Counts 55

should be dismissed.

      **c.**      **Alternatively, the Furlongs' claim for Violation of the Implied Covenant of Good Faith and Fair Dealing (Count 50) and Violation CUTPA and CUIPA (Count 55) fail because they have failed to plead facts sufficient to show that Amica acted with the requisite bad faith to support a claim that they violated any implied covenant, CUTPA, and/or CUIPA.**

The Furlongs have failed to plead facts that plausibly demonstrate the type of dishonest purpose or sinister motive required to allege a bad faith claim. "To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impede[d] the plaintiff's right to receive benefits that he or she reasonable expected to receive under the contract must have been taken in bad faith." Alexandru v. Strong, 81 Conn.App. 68, 80-81 (2004), citing Gutpa v. New Britain General Hospital, 239 Conn. 574, 598, 687 A.2d 111 (1996). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive …. Bad faith means more than mere negligence; it involves a dishonest purpose." Id. (quoting Habetz v. Condon, 224 Conn. 231, 237-238 (1992)); see also De La Concha of Hartford, Inc. v. Aetna Life Ins. Co., 269 conn. 424, 433 (2004).

The Furlongs allege that Amica "is intentionally misleading the Furlongs and is trying to convince them that the damage suffered to their basement walls is not covered, solely to avoid payment of a covered loss." See Complaint ¶896. The Furlongs also allege that "Amica has deliberately delayed its coverage decisions despite the fact that it intends to deny the Furlongs' claim. Accordingly, Amica has impeded the

Furlongs' right to receive benefits that they reasonably expected to receive under the contract for homeowners insurance." Id. ¶ 897.

Under Connecticut law, "a plaintiff cannot recover for bad faith if the insurer denies a claim that 'is fairly debatable,' i.e. if the insurer had some arguably justifiable reason for refusing to pay or terminating the claim." McCulloch v. Hartford Life & Accident Ins. Co., 363 F.Supp.2d 169, 177 (D.Conn. 2005). Here, the claim alleged by the Furlongs is not only complex from an engineering perspective, but from a legal perspective as well.  Multiple engineering experts were dispatched to Plaintiffs' home to investigate the claim and subsequently analyze the data gathered. See Complaint ¶¶ 302 - 305.  An example of the complex reports that are generated from similar investigations is contained in Plaintiffs' Exhibit 1 – Fuss & O'Neill Report.

Moreover, in the absence of any controlling legal authority and the heavy fact dependent nature of the investigation and coverage analysis required, the claim alleged by the Furlongs is, at a minimum, fairly debatable. McCulloch, 363 F.Supp.2d at 177 (D.Conn. 2005); see also McNeill & Asocs., LLC v. Cont'l Cas. Co., 2010 WL 4456875, *6 (D.Conn. Nov. 1, 2010)(granting summary judgment in favor of insurer on bad faith claim because insurer was faced with a 'complicated factual and legal question" without a clear answer, and thus its denial of coverage could not be in bad faith); Maher & Williams v. Ace Am. Ins. Co., 2010 WL 3546234, *18 (D.Conn. Sept. 3, 2010)(granting insurer's motion for summary judgment on bad faith claim because coverage issue "was not a simple one, and although [the insurer] read the exclusion in a manner rejected by the Court, its having taken that position does not indicate that it acted in bad faith").

Likewise, the Furlongs have failed to plead facts that plausibly demonstrate a claim for unfair insurance practices to satisfy CUTPA / CUIPA pleading requirements. In pleading a claim under CUTPA, the Furlongs must plead "with particularity to allow evaluation of the legal theory upon which the claims lies." Ferrari v. U.S. Equities Corp., 2014 WL 5144736, at *3 (D.Conn. Oct. 14, 2014)(quoting Sorision v. Lenox, Inc., 701 F. Supp. 950, 962 (D.Conn. 1988), aff'd, 863 F.2d 195 (2d Cir. 1988)).

Also, as provided by the statute, an insurer can be held liable for unfair settlement practices under CUIPA only when it engages in specifically prohibited acts "with such frequency as to indicate a general business practice." Conn. Gen. Stat. §38a-816; Lees v. Middlesex Ins. Co., 229 Conn. 842, 848 (1994) (the legislature has manifested a clear intent to except from coverage under CUIPA isolated instances of insurer misconduct). Alleging and proving a general business practice requires more than simply alleging that the practice exists or citing to unrelated cases involving different insurers. See Ferrante v. Allstate Prop. & Cas. Ins. Co., 2011 WL 3890988 at *2 (Conn. Supr. 2011) (string citing cases asserting bad faith allegations "represents only a legal conclusion and does not constitute proper fact pleading"); Ellison v. Great Am. Spirit Ins. Co., 2006 WL 3491242 (Conn. Supr. 2006) ("Merely alleging that other lawsuits have been filed against the defendants is insufficient."); Rams II, LLC v. Mass Bay Ins. Co., 2015 WL 3554789 (Conn. Super. 2015 ("Citations to other cases in a cause of action attempting to plead a general business practice in violation of CUIPA are proper only if the decision maker in those cases found the defendant to be in violation of CUIPA.").

Here, the Furlongs allege only that the "Defendants have a general business practice of failing to acknowledge and act with reasonable promptness upon communications with respect to claims arising under insurance policies in violation of Conn. Gen. Stat. §38a-816(6)(B)." See Complaint ¶980.

Factors relevant to a court's determination of whether a practice is a "general business practice" include: "the degree of similarity between the alleged unfair practices in other instances and the practice allegedly harming the plaintiff; the degree of similarity between the insurance policy held by the plaintiff and the policies held by other alleged victims of the defendant's practices; the degree of similarity between claims made under the plaintiff's policy and those made by other alleged victims under their respective policies; and the degree to which the defendant is related to other entities engaging in similar practices." Belz v. Peerless Ins. Co., 46 F.Supp.3d 157, 166 (D.Conn.2014).

In the instant case, the Furlongs' own pleadings clearly demonstrate that Amica "acknowledge[d] and act[ed] with reasonable promptness upon communication with respect to claims arising under [the Furlongs] insurance policies." Amica contracted with multiple experts to fully investigate this complicate claim. Complaint ¶¶302 – 305. Although Plaintiffs submitted proof of loss statement on September 14, 2016, (Id. ¶317), Amica again acknowledged and acted on this communication with reasonable promptness, rejecting this proof of loss as inadequate.  See Exhibit 9.[11]

Moreover, nowhere in the complaint do the Furlongs allege that Amica is

---

[11]    The attached Proof of Loss Rejection is properly considered on a Fed. R. Civ. P. 12(b)(6) motion because the Plaintiffs have, "actual notice of all the information… and has relied upon [this] document[] in framing the complaint." Cortec Indus., Inc., 949 F.2d at 47.

"[c]ommitting or performing with such frequency as to indicate a general business practice … of … failing to acknowledge and act with reasonable promptness upon communications with respect to claims arising under insurance policies." See Conn. Gen. Stat. §38a-816(6)(B).  Indeed, the two cases cited, in which Amica is a party did not allege CUIPA/CUTPA or bad faith claims. Roberts v. Amica Mut. Ins. Co., 2015 WL 7458510 (D.Conn. Nov. 24, 2015)(Ruling from the bench in underlying action of Motion for Reconsideration, Plaintiff's motion for leave to amend complaint to add, inter alia, violations of CUIPA / CUTPA denied).

Likely, the Furlongs will argue that other Amica insureds have had similar claims denied.  As noted above, the claim alleged by the Furlongs, is at a minimum, fairly debatable. McCulloch, 363 F.Supp.2d at 177 (D.Conn. 2005); see also McNeill & Asocs., LLC v. Cont'l Cas. Co., 2010 WL 4456875, *6 (D.Conn. Nov. 1, 2010)(granting summary judgment in favor of insurer on bad faith claim because insurer was faced with a 'complicated factual and legal question" without a clear answer, and thus its denial of coverage could not be in bad faith); Maher & Williams v. Ace Am. Ins. Co., 2010 WL 3546234, *18 (D.Conn. Sept. 3, 2010)(granting insurer's motion for summary judgment on bad faith claim because coverage issue "was not a simple one, and although [the insurer] read the exclusion in a manner rejected by the Court, its having taken that position does not indicate that it acted in bad faith"). As the Furlongs concede, "the cause of the claimed condition at the insured's residence, which consists of map cracking in the foundation, is indicative of a material defect with the *original concrete used to pour the foundation*." See Complaint ¶305, emphasis added.  The Furlongs'

home was built in 1997. Id. ¶13. Each claim requires a proper and thorough investigation, often involving multiple subject matter experts investigating and testing various aspects of the property to determine the cause of the damaged foundation. Id. ¶¶ 302-305. For the Furlongs' Complaint to survive, they must allege facts that plead a general business practice is violation of CUIPA, specifically, that Amica did not act with reasonable promptness with respect to these complex claims. The Furlongs do not allege any set of facts "plausibly suggesting" that Amica did not act with reasonable promptness with respect to these complex claims and accordingly their claim for relief under CUIPA / CUTPA fails

The Furlongs have failed to plead facts that plausibly demonstrate a claim for unfair insurance practices to satisfy CUTPA / CUIPA pleading requirements, and thus their claim should be denied.

## CONCLUSION

For the foregoing reasons, Defendant Amica Mutual Insurance Company moves that this Honorable Court dismiss Counts 14, 15, 28, 50 and 55 as that count relates to Amica Mutual Insurance Company.

For the Defendant,
Amica Mutual Insurance Company,
By its Attorneys,

/s/ Anthony J. Antonellis

_____
Anthony J. Antonellis, BBO #29323
Sloane & Walsh, LLP
Three Center Plaza, 8th Floor

Boston, Massachusetts 02108
Tel:    617-523-6010
Fax:    617-227-0927
Email: AAntonellis@sloanewalsh.com

Date:  June 2, 2017


<u>CERTIFICATE OF SERVICE</u>

    I, Anthony J. Antonellis, Esq., do hereby certify that on this 2nd day of June, 2017, I caused the foregoing document to be filed via the ECF filing system copies of which will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent via email to those indicated as non-registered participants.


*/s/ Anthony J. Antonellis*

_____

Anthony J. Antonellis