1

1                  UNITED STATES DISTRICT COURT

2                     DISTRICT OF CONNECTICUT

3    * * * * * * * * * * *  *  *   X
                                   *
4    MICHAEL HALLORAN,             *  Case No 16cv133(VAB)
     Individually and on behalf    *
5    of those similarly situated   *
                                   *
6                     Plaintiff,   *
                                   *
7           vs.                    *
                                   *  915 Lafayette Blvd
8    HARLEYSVILLE PREFERRED        *  Bridgeport, CT
     INSURANCE COMPANY, ET AL,     *  June 30, 2017
9                                  *
                                   *
10                    Defendant.   *
                                   *
11   * * * * * * * * * * * *  *   X

12              TRANSCRIPT OF STATUS CONFERENCE

13   BEFORE:  THE HONORABLE VICTOR A. BOLDEN, U.S.D.J.

14
     APPEARANCES:
15   FOR THE PLAINTIFFS:        RYAN P. BARRY, ESQ.
                                Barry & Barall, LLC
16                              202 West Center Street
                                Manchester, CT 06040
17
                                MARILYN BETH FAGELSON, ESQ.
18                              MELISSA FEDERICO, ESQ.
                                Murtha Cullina - NH
19                              265 Church Street
                                New Haven, CT 06510
20

21
     FOR THE DEFENDANTS         RICHARD L. FENTON, ESQ.
22   KEMPER, METROPOLITAN,      Dentons US LLP - IL
     ALLSTATE:                  233 South Wacker Dr.
23                              Suite 5900
                                Chicago, IL 60606-6361
24

25

```
 1                      APPEARANCES CONTINUED:

 2

 3   FOR THE DEFENDANT            THOMAS FARRISH, ESQ.
     BUNKER HILL, TRUMBULL INS.   JOHN CERRETA, ESQ.
     NEW LONDON COUNTY MUTUAL:    DANIEL RACCUIA, ESQ.
 4                                Day Pitney
                                  242 Trumbull St.
 5                                Hartford, CT 06103-1212

 6   FOR THE DEFENDANT            DOUGLAS W. DUNHAM, ESQ.
     STATE FARM:                  Quinn Emanuel Urquhart &
 7                                Sullivan, LLP - NY
                                  51 Madison Avenue
 8                                New York, NY 10010

 9   FOR THE DEFENDANT            JOSEPH H. CARLISLE, ESQ.
     NGM INSURANCE:               Hassett & Donnelly, PC
10                                100 Pearl Street,
                                  Hartford, CT 06103
11
     FOR THE DEFENDANTS           DANIEL BLOUIN, ESQ.
12   NATIONWIDE &                 Seyfarth Shaw
     HARLEYSVILLE:                233 South Wacker Drive,
13                                Chicago, IL 60606

14   FOR THE DEFENDANT            MICHAEL F. AYLWARD, ESQ.
     AMERICAN COMMERCE:           MICHAEL KELLER, ESQ.
15                                Morrison Mahoney LLP-MA
                                  250 Summer Street
16                                Boston, MA 02210

17   FOR THE DEFENDANT            KATHLEEN ADAMS, ESQ.
     MIDDLESEX MUTUAL:            Litchfield Cavo
18                                82 Hopmeadow St.,
                                  Simsbury, CT 06089
19
     FOR THE DEFENDANTS           WYSTAN M. ACKERMAN, ESQ.
20   TRAVELERS & CITIZENS:        Robinson & Cole,
                                  280 Trumbull St.
21                                Hartford, CT 06103

22   FOR THE DEFENDANTS           CARL R. FICKS, ESQ.
     CSAA, KEMPER,                Halloran & Sage
23   METROPOLITAN:                225 Asylum St.
                                  Hartford, CT 06103
24

25
```

3

```
 1
 2    FOR THE DEFENDANT          STEPHEN R. KLAFFKY, ESQ.
      HOMESITE:                  Barrasso Usdin Kupperman
 3                               Freeman & Sarver, L.L.C.
                                 909 Poydras Street,
 4                               New Orleans, LA 70112

 5    FOR THE DEFENDANTS         ROBERT A. KOLE, ESQ.
      PEERLESS, SAFECO,          Choate, Hall & Stewart
      LIBERTY MUTUAL:            Two International Place
 6                               100-150 Oliver Street
                                 Boston, MA 02110
 7
      FOR THE DEFENDANT          SUSAN L. MILLER, ESQ.
 8    MERRIMACK & ANDOVER:       O'Connell, Attmore &
                                 Morris, LLC-Htfd
 9                               280 Trumbull St.
                                 Hartford, CT 06103-3598
10
11    FOR THE DEFENDANT AIG:     LAWRENCE J. KLEIN, ESQ.
                                 Sedgwick LLP - NY
12                               225 Liberty Street
                                 New York, NY 10281
13
14    FOR THE DEFENDANT          CHRISTOPHER REILLY, ESQ.
      AMICA:                     MICHAEL ANTONELLIS, ESQ.
15                               Sloane and Walsh, LLP
                                 Three Center Plaza
16                               Boston, MA 02108
17
18
19
20
21
22
23
24
25
```

```
1              THE COURT:  Good afternoon.  Please be

2     seated.  We're here in Halloran v. Harleysville, et

3     al.  Emphasis on the "et al."  Will counsel please

4     state their appearances for the record.

5              MS. FEDERICO:  Good afternoon, your

6     Honor.  Melissa Federico from the law firm of Murtha

7     Cullina on behalf of the plaintiffs.

8              THE COURT:  Good afternoon.

9              MS. FAGELSON:  I am Marilyn Fagelson,

10    Murtha Cullina, also on behalf of the plaintiffs.

11             MR. BARRY:  Attorney Ryan Barry on

12    behalf of the plaintiffs from Barry & Barall.

13             MR. FENTON:  Rick Fenton, your Honor, of

14    Dentons US LLP on behalf of Allstate, Metropolitan,

15    and Kemper.

16             MR. ACKERMAN:  Good afternoon, your

17    Honor.  Wystan Ackerman, Robinson & Cole, for

18    various companies that are part of Travelers, and

19    also Citizens Insurance Company of America.

20             MR. KOLE:  Good afternoon, your Honor.

21    Rob Kole from Choate, Hall, for Liberty Mutual Fire,

22    Peerless, and Safety.

23             MR. DUNHAM:  Good afternoon.  Douglas

24    Dunham from Quinn Emanuel for State Farm.

25             THE COURT:  All right.  Anyone else?  Is
```

```
1    that it?  Is that the remainder?  Are there other
2    people representing other defendants?  Why don't you
3    get your appearances on the record.
4              MR. CERRETA:  Good afternoon, your
5    Honor.  John Cerreta from Day Pitney on behalf of
6    Trumbull Insurance Company, Bunker Hill, and New
7    London County Mutual.
8              MR. BLOUIN:  Good afternoon.  Dan Blouin
9    from Seyfarth Shaw on behalf of Nationwide and
10   Harleysville.
11             MR. AYLWARD:  Good afternoon, your
12   Honor.  Michael Aylward and Michael Keller for
13   American Commerce Insurance Company.
14             MS. MILLER:  Good afternoon, your Honor.
15   Susan Miller from O'Connell, Attmore & Morris for
16   Merrimack and Andover Companies.
17             MR. KLEIN:  Good afternoon, your Honor.
18   Lawrence Klein from Sedgwick for AIG PC.
19             MR. KLAFFKY:  Good afternoon, your
20   Honor.  Steve Klaffky from Barrasso Usdin for
21   Homesite Insurance Company.
22             MR. FICKS:  Good afternoon, your Honor.
23   Carl Ficks for CSAA, Kemper, and Metropolitan from
24   Halloran & Sage.
25             MR. REILLY:  Good afternoon, your Honor.
```

1  Christopher Reilly from Sloane and Walsh on behalf

2  of Amica Mutual Insurance Company, and also Mike

3  Antonellis from Sloane and Walsh on behalf of Amica.

4      MS. ADAMS:  Good afternoon, your Honor.

5  Kathleen Adams from Litchfield Cavo for Middlesex

6  Mutual Insurance Company.

7      MR. CARLISLE:  Good afternoon, your

8  Honor.  Joe Carlisle, Hassett & Donnelly

9  representing the NGM Insurance Company.

10      THE COURT:  Anyone missing?  Did we get

11  everyone?

12      MR. FARRISH:  Tom Farrish, Day Pitney,

13  for Trumbull.

14      MR. RACCUIA:  And Dan Raccuia from Day

15  Pitney representing the same defendants.

16      THE COURT:  That is everyone?  All

17  right.  Well, I see the room is a little less people

18  than the last time we met, but we are here under the

19  Rule 16.  I do apologize for bringing everyone in.

20  I realize I brought everyone in right before a

21  holiday weekend, so my apologizes for that.

22  Ordinarily I would do the Rule 16 conference by

23  telephone, but I thought it was a little unwieldily

24  to do it that way with this many folks.

25      Let me deal with a couple of scheduling

7

```
 1   things and then I will back in to the schedule
 2   itself.  So we've got the motions to dismiss that
 3   have been filed.  I have granted the motion to allow
 4   response to be September 15th, and I understand that
 5   the defendants' replies will be 30 days after that.
 6   That would put us into October.  What I want to do
 7   is set a date for oral argument while we've got --
 8   actually, before I go too far, I am assuming
 9   everyone here is representing all of the defendants
10   that are remaining.  If we have one or two
11   spokespeople -- do we know that?  Can someone
12   confirm that?  Basically are all of the defendants
13   who are still in the case, they're represented here
14   today one way or the other?
15             MR. FENTON:  I believe that to be the
16   case, your Honor, but -- I haven't done a head count
17   to do a comparison, but I believe that I was advised
18   that each of the defendants did intend to have a
19   representative here.
20             THE COURT:  You are Mr. Fenton?
21             MR. FENTON:  Yes.
22             THE COURT:  That's fine.  Okay, so what
23   I want to do is I want to set a date for oral
24   argument for that motion.  Sorry, apparently they
25   decided to do work even though we're still doing
```

8

1   work, but that's okay.

2               I'm thinking about either November 16th

3   or 17th, depending on whether people prefer to have

4   a Thursday or a Friday.  I can do November 16th at

5   11:00.  Does that work?  Is there a preference to

6   have it on the Friday?  Someone should -- we'll

7   start with plaintiffs.

8               Ms. Federico?  Who is the spokesperson

9   for the plaintiff?  You are?

10              MS. FEDERICO:  Yes, your Honor.  We're

11  just coordinating scheduling right now to confirm.

12              THE COURT:  That's fine.  If folks need

13  to coordinate schedules, I will give you all a

14  couple of minutes.

15              MS. FEDERICO:  Yes, your Honor, 11/16 at

16  11:00 a.m. for the plaintiffs is fine.

17              THE COURT:  Okay.  All right, I will

18  start with you, Mr. Fenton.

19              MR. FENTON:  Speaking for the defendants

20  at the table, that would work for us, your Honor.

21              THE COURT:  Okay.  All right, defendants

22  in the gallery, does anyone have a problem with

23  November 16th at 11:00 a.m.?  No?  Okay, hearing no

24  objection, we will set that date for the oral

25  argument.  I will leave it to the defendants -- I

1    mean, I am assuming not everyone is going to need to

2    have time to speak.  I will do it this way, I will

3    let the defendants sort of coordinate.  It seems to

4    me certainly you can have more than one speaker, but

5    I don't think you need to have all of them.

6            So, I don't know, Mr. Fenton, have the

7    defendants talked about this?  Is there some

8    proposed way to handle oral argument?

9            MR. FENTON:  We can coordinate, I think,

10   your Honor.  I don't think it's going to be

11   necessary for each defendant to speak, but there are

12   certainly certain defendants who have some

13   specialized issues.  But we'll try to work that out

14   and we'll try to keep the number of speakers to a

15   minimum.

16           THE COURT:  Okay, I am comfortable with

17   that.  It seems to me as long as it doesn't get to

18   be more than four or five.  After that then I think

19   it gets to be a little unwieldily.  But also, at the

20   same time, if someone has a real compelling reason

21   to speak, we'll see, but I'll leave it to you all to

22   coordinate that.  So that will allow that to happen.

23           And I understand you all have agreed to

24   stay discovery until these motions are resolved.  So

25   that's why I do want to get that on the calendar and

1    set that up as soon as possible.

2              Now, there is the motion to strike class

3    allegations, and you all seem to have some

4    differences.  What is the -- where does everyone

5    stand?  I have seen what people are saying, but I

6    want to figure out where everyone lies on that.

7              Mr. Fenton, it's your motion.

8              MR. FENTON:  Yes, your Honor.  The

9    plaintiffs' position, if I may take the liberty of I

10   think fairly stating their position, is that the

11   motion to strike class allegation should await

12   resolution of the motions to dismiss.  Plaintiffs

13   have indicated that they believe they may need some

14   discovery in connection with the motion to strike

15   class allegations.

16             Our view, your Honor, is that the motion

17   to strike class allegations is really directed to

18   the four corners of the complaint and does not

19   require discovery.  But certainly if the Court

20   believes that discovery may be required, then

21   perhaps the motion is best decided later rather than

22   sooner.

23             THE COURT:  Ms. Federico?  Who is the

24   spokesperson?  Mr. Barry?

25             MR. BARRY:  Attorney Barry.

11

```
1              THE COURT:  Yes.

2              MR. BARRY:  Thank you, your Honor.  It's

3    our position that the motion to strike -- motions to

4    strike in general, as your Honor is no doubt aware,

5    are disfavored in general, and motions to strike

6    class allegations are even that much more

7    disfavored.  Courts around the country routinely

8    hold off on those -- as a case management mechanism,

9    hold off on those until after motions to dismiss,

10   until the class certification stage appears before

11   them.  It would allow my clients to -- us to have

12   some pre-trial -- or pre-certification discovery so

13   that you, your Honor, could do that rigorous

14   analysis that would be imposed upon you if we were

15   given an opportunity to argue for certification of a

16   class.

17              Right now, as you had said in your -- in

18   the transcript, reading that from last year, you had

19   indicated that -- your Honor had indicated that a

20   good course of action would be to hear the motions

21   to dismiss, decide those, and then when the dust

22   settles see how the case looks and what the

23   controversies of the case are.  That would help my

24   clients and myself determine what the boundaries of

25   the potential class or subclasses might be at that
```

1  point in time.  So, you know, I think that's all I

2  have to say on that.

3            THE COURT:  Sure.  And the one challenge

4  I am trying to sort of think through is that -- tell

5  me what discovery would you be looking for in order

6  to be able to address -- that is the one curious

7  piece I'm trying to understand.  What discovery

8  would you need in order to be able to effectively

9  respond to the motion to strike the class

10 allegations?

11           MR. BARRY:  So in the 26(f) report,

12 obviously I've listed all of the plaintiffs' class

13 discovery topics.  You know, these in here,

14 there's --

15           THE COURT:  So you are saying all of

16 this stuff would be needed before you could deal

17 with the motion to strike class allegations?

18           MR. BARRY:  No, I wouldn't say all of

19 it.  No.

20           THE COURT:  Okay.

21           MR. BARRY:  But a number of them would

22 be necessary.  I think we'd be prejudiced if we

23 didn't have an opportunity to do that.  If we were

24 -- if our class allegations were stricken prior to

25 us having the opportunity to get some of this

1  discovery and then propose a class to be certified,

2  for you to then enter into that rigorous analysis of

3  all you have to do, it -- I think justice would be

4  served better in that fashion.

5         THE COURT:  So what you are saying is of

6  the class discovery topics that are identified in

7  the 26(f) report, there is a subset of them that

8  actually might be pertinent to being able to respond

9  to the motion to strike class allegations.  Which

10  ones are those?

11         MR. BARRY:  I think the relationship of

12  the companies.  The first one, defendants'

13  relationship with any and all companies that create

14  industrywide homeowners policy language that is

15  uniformly adopted by the defendants, I think that

16  would be necessary.

17         Also the relationship with regulatory

18  bodies, which in this case would be Department of

19  Insurance, because the Department of Insurance

20  adopts -- puts the imprimatur on the language that's

21  given to them by the industry, whether it's ISO or

22  some other industry organization, and then my

23  understanding, from what the Department of Insurance

24  has told me, all they do is they approve of that

25  language and then give it to the insurance

1    companies.

2          The insurance companies, it's my

3    contention -- it's our contention that these are

4    just standard forms, and if there's a word that's

5    changed by the insurance company, I'm not so sure if

6    there is a violation of CUTPA there, but the

7    Department of Insurance has indicated to me that

8    they're not allowed to change anything on those

9    forms unless they send a letter of nonadoption back

10   to the Department of Insurance.

11         So these are pretty critical for me in

12   terms of establishing form documents, uniformity

13   among all common forms, rather than these, you know,

14   allegations you see in the motion to strike class

15   allegations that these are individualized contracts

16   that contain different language, so forth and so on.

17         THE COURT:  Any others?

18         MR. BARRY:  And I think that their

19   relationship with each other, the defendants'

20   relationship with each other regarding the policy

21   language, I'd like to know about because it's -- for

22   us, we're seeing a pattern of people who own homes

23   who file claims under insurance policies that are

24   underwritten by companies that are authorized to do

25   business in the state of Connecticut and they're all

1   denied.  They're all denied under this collapse

2   language.  And obviously they're coming -- the

3   language is not coming from the actual insurance

4   companies themselves, it's coming from the

5   organization that -- you know, whether it's ISO or

6   another organization that gives them the language,

7   but they're all uniformly denying these claims, and

8   to the extent they are talking to each other, I

9   would like to delve into that to establish, again,

10  uniformity so that -- to get at the generality

11  rather than individualization of the allegations.

12  It's hard for me to do that without that

13  information, your Honor.

14           I think that the item C, the defendants'

15  own independent research, aside from just getting

16  the language themselves from the Department of

17  Insurance, which had -- you know, my understanding

18  from talking to the commissioner and to the head of

19  property casualty of the Department of Insurance,

20  who has been there 32 years, it is that no one has

21  ever sent a nonadoption letter to the Department of

22  Insurance.  So the form is going to be the same for

23  every insurance company.  So in that category I am

24  wondering what independent research each insurance

25  company has done to create individual policies that

1  are different from each other that would generate

2  some kind of an individual determination rather than

3  what seems to be a common concerted effort to deny

4  based on some kind of common agreement among them

5  all.

6          THE COURT:  Let me flip my question.

7  Which one of these do you think you do not need in

8  terms of responding to the motion to strike?

9          MR. BARRY:  I don't think -- at this

10  time I am not so interested, in terms of the class,

11  regarding the defendants' claims processes, denial

12  processes, (h) and (i).  I am interested in -- well,

13  what I'm not interested in.  The training of

14  adjusters I'm not interested in.

15          THE COURT:  Not at this time.

16          MR. BARRY:  Not at this time.

17          THE COURT:  You are saying basically

18  everything else?

19          MR. BARRY:  I'd ask for everything else,

20  your Honor, yes.

21          THE COURT:  Mr. Fenton?

22          MR. FENTON:  Your Honor, notwithstanding

23  whatever conversations counsel may have had with the

24  Department of Insurance, I think that all one needs

25  to do is to take a look at the motions to dismiss

1   that have been filed on behalf of the various

2   defendants to understand that there is tremendous

3   variation in the policy language of different

4   defendants, both over time and at the same time.

5   That policy language is what is going to control

6   each individual claim.

7          The motion to strike class allegations,

8   your Honor, and it's really of a piece with the

9   motions to dismiss, focusses on the issues of the

10   plaintiffs' individual claims.  When did the

11   cracking occur?  When was it first noticed?  What

12   policy was in force at that time?  What policy was

13   in force at a later period of time?  It is all the

14   individual characteristics of the plaintiffs'

15   claims, before you even get to insurer conduct, that

16   establishes that there is no commonality here and

17   that there is no predominance of common issues.

18          So you don't even get to the question of

19   what communications did insurers have with one

20   another because there are too many other disparate

21   questions that have to be asked.

22          Again, your Honor, the sequence of these

23   motions is within your Honor's discretion.  We don't

24   believe that any of this discovery is going to

25   change the basic facts that if you look at the face

1   of this complaint there is no commonality or

2   predominance as a matter of law, and that's the

3   thrust of our motion.

4           THE COURT:  Well, I will ask one

5   question, and I will ask Mr. Barry the same

6   question.  Given right now the schedule we're on to

7   deal with the motion to dismiss, and given discovery

8   is sort of stayed at this point, should I be taking

9   up the argument in November and then -- I suppose

10  you will have it fully briefed by then, the motion

11  to strike the allegations.  Obviously Mr. Barry

12  would still have the argument that it would be

13  premature for me to do it because you would need

14  discovery, although discovery is being stayed.

15  Because one of my interests is that I do want to

16  make sure this case begins to move, and I am

17  wondering if that might make it more expeditious.

18          MR. FENTON:  As I indicated, your Honor,

19  I think that the motion to strike and the motions to

20  dismiss are really two sides of the same coin.

21          THE COURT:  So they're related in your

22  view.

23          MR. FENTON:  Very much so.  I do think

24  it could be taken up at the same time.

25          THE COURT:  Mr. Barry, does that make

1   sense?   In essence, we'd be able to address that in

2   argument, and then you would obviously in the

3   context of the motion to dismiss be able to address

4   the arguments about the discovery that would be

5   necessary.   I understand the general premise of it

6   being disfavored.   I'm just trying to think about

7   how we make sure the case is moving along.   Is there

8   going to be some undue prejudice by dealing with the

9   motion to strike the class allegations when we're

10  also arguing the motion to dismiss?

11           MR. BARRY:   I think the prejudice is

12  that we don't know what the case is going to look

13  like, your Honor.

14           THE COURT:   I understand, which is going

15  to be part and parcel of your response to that

16  particular motion, that regardless of whether or not

17  -- whatever I do on the motion to dismiss, the

18  motion to strike the allegations may not be

19  appropriate because of some of the reasons you are

20  articulating, that it may be premature in terms of

21  the discovery and so forth, but I'm just taking it

22  as a procedural matter of just addressing that in

23  one way or the other, at least putting you in a

24  position where you can argue that in a more fulsome

25  way in November so I can then decide.   Because right

1   now you all agree to have discovery stayed in any

2   event, so it's not as if anything is going to happen

3   between now and November, unless you are saying that

4   notwithstanding the notion that you want to have a

5   stay, you would have limited discovery to deal with

6   that.  So that's what I am just trying to figure

7   out.

8           MR. BARRY:  Your Honor, the reason why I

9   am concerned about this is because I think that my

10  clients are going to be prejudiced in their ability

11  to present their arguments for meeting the

12  requirements of a Rule 23, which is what at the end

13  of the day your Honor has to, you know, do that

14  rigorous analysis on.  Right now, on a motion to

15  strike, it's all about 1, 2, 3, 4, all the

16  requirements in 23 -- you know, the first half.  The

17  second half is commonality and superiority.  I'd be

18  dealing with that without any discovery.  So my

19  hands would be tied behind my back.  Plus, your

20  Honor back last March, I believe it was, you asked

21  me to -- ordered me to pull back my petition for

22  certification, which I did, stayed until the motion

23  to dismiss was decided.  So that's the prejudice.

24          THE COURT:  All right, I will take that

25  issue under advisement and I will figure out what I

1   want to do since we're going to have time between

2   now and then.   But I appreciate the arguments both

3   sides have presented.

4           All right.   Now, in terms of the

5   schedule, the reality is, in terms of moving the

6   case, a lot of the schedule is really pegged to the

7   ruling on the motion to dismiss.   So I mean really

8   there are probably two ways I could go, which is I

9   could adopt the schedule I have now, which puts a

10   time frame for this, or am I better off actually,

11   since I have now set an argument date and my hope is

12   to try to deal with it, to address this matter

13   before the end of the year, we could then see where

14   things are, and we can then have you all resubmit a

15   schedule depending on how the Court deals with it.

16   If there is a preference, I am happy to hear you all

17   out.

18           I will start with you, Mr. Barry or Ms.

19   Federico.   Is there a preference how you want to

20   deal with it?   You can confer.   I don't have a

21   problem with people conferring.

22           MS. FEDERICO:   Your Honor, I think we

23   would prefer to deal with scheduling after.   I think

24   that both parties will be focused on the briefing of

25   the motions to dismiss.

```
 1                    THE COURT:  Mr. Fenton?

 2                    MR. FENTON:  Your Honor, I think so.  I

 3    think the one thing, and perhaps the only thing, Mr.

 4    Barry and I can agree on today is this.

 5                    THE COURT:  That's it?  You can't agree

 6    on anything else?

 7                    MR. FENTON:  Well, it is Friday.  But --

 8                    THE COURT:  All right, so we got two

 9    things.  See, I knew if I worked a little.

10                    MR. FENTON:  It's progress.  Your Honor,

11    I do think that this case may look very different

12    after the motions to dismiss have been decided.  So

13    I do think that it makes sense to take a look at the

14    case at that point and then deal with the scheduling

15    issues.

16                    THE COURT:  All right, is there any

17    dissent either at the table or in the gallery?

18    Okay.  All right, that's what I will do.

19                    Are there any other issues you all wish

20    to take up at this point?  I will start with you,

21    Mr. Barry.

22                    MR. BARRY:  I do not have any other

23    issues to take up with you, your Honor.

24                    THE COURT:  Mr. Fenton?

25                    MR. FENTON:  Nothing here, your Honor.
```

1          THE COURT:  Anyone else?  All right, so

2   we have got our argument date and it sounds like

3   everything is riding on what happens there.  We'll

4   see what happens then.

5          All right.  Well, thank you all very

6   much.  I do appreciate you all coming in.  Have a

7   great Fourth of July weekend.

8          (Proceeding concluded 2:10.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2          I certify that the foregoing is a correct

3    transcript from the record of proceedings in the

4    above-entitled matter.

5

6                              9/15/17

7                               Date

8

9                     /S/   Sharon Montini

10                       Official Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25