**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MICHAEL HALLORAN, et al., | : | DOCKET NO. 3:16-CV-00133-VAB |
| | : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | |
| | : | |
| HARLEYSVILLE PREFERRED | : | |
| INSURANCE CO., et al., | : | |
| | : | |
| Defendants. | : | APRIL 6, 2018 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**TRUMBULL INSURANCE COMPANY'S MOTION TO DISMISS**

Respectfully submitted by:

Thomas O. Farrish (ct26917)
John W. Cerreta (ct28919)
Daniel J. Raccuia (ct29535)
Jennifer L. Shukla (ct30204)
Day Pitney LLP
242 Trumbull Street
Hartford, CT  06103

Michael P. Mullins (ct29746)
Day Pitney LLP
One International Place
Boston, MA 02110

Attorneys for the Defendant,
Trumbull Insurance Company

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ...................................................................................................... 1

II.   BACKGROUND ...................................................................................................... 2

    A.    Ms. Gribbon's Allegations About Her House ........................................... 2

    B.    Ms. Gribbon's Trumbull Policy .................................................................. 3

III.  DISCUSSION .......................................................................................................... 4

    A.    The Legal Standards ..................................................................................... 4

        1.    Rule 12(b)(6) .................................................................................... 4

        2.    Principles of Insurance Policy Interpretation ............................... 5

    B.    The Contract Breach Claim In Count Nineteen Should Be Dismissed ................. 7

        1.    Ms. Gribbon has not pled a plausible claim for collapse coverage under the Trumbull Policy ........................................ 7

        2.    Trumbull's collapse provision is unambiguous ......................... 10

            a.    Connecticut's principles of insurance policy interpretation compel the conclusion that Trumbull's collapse provision is unambiguous .............................. 11

            b.    The authorities unanimously hold that Trumbull's form of collapse coverage unambiguously bars coverage for cracking basement claims .............................. 13

            c.    Ms. Gribbon's other anticipated arguments should be rejected ............................................................ 19

        3.    Ms. Gribbon has not plausibly alleged a loss within the policy period of her lone Trumbull policy ............................... 21

    C.    Counts 83, 129 and 175 Should Also Be Dismissed ............................... 23

    D.    Once All of Ms. Gribbon's Claims Have Been Dismissed, the Case Must Be Dismissed In Its Entirety As to Trumbull .......................... 25

IV.   CONCLUSION ...................................................................................................... 26

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*130 Slade Condo. Ass'n, Inc. v. Millers Capital Ins. Co.*,
  No. CIV.A. CCB-07-1779, 2008 WL 2331048 (D. Md. June 2, 2008)............................16, 17

*2004 Stuart Moldaw Tr. v. XE L.I.F.E., LLC*,
  642 F. Supp. 2d 226 (S.D.N.Y. 2009)........................................................................22

*Alexander v. General Insurance Co. of America*,
  Tr. of July 7, 2016 Hrg., No. 3:16-cv-00059 (SRU) (D. Conn. July 7, 2016)..................13, 20

*Alexander v. General Insurance Co. of America*,
  No. 3:16-cv-00059 (SRU), 2017 WL 188134 (D. Conn. Jan. 17, 2017)........................*Passim*

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................5

*Beach v. Middlesex Mut. Assur. Co.*,
  205 Conn. 246 (1987) ............................................................................................20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................5

*Buell Indus. v. Greater N.Y. Mut. Ins. Co.*,
  259 Conn. 527 (2002) ..............................................................................................6

*Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*,
  308 Conn. 760 (2013) ..............................................................................................5

*Cent. States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*,
  504 F.3d 229 (2d Cir. 2012)....................................................................................25

*Chernosky v. Amica Mut. Ins. Co.*,
  No. 3:17-cv-01047 (VLB), 2018 WL 529956 (D. Conn. Jan. 24, 2018)..............................15

*Conn. Med. Ins. Co. v. Kulikowski*,
  286 Conn. 1 (2008) ..........................................................................................*Passim*

*Cyr v. CSAA Fire & Cas. Ins. Co.*,
  No. 3:16-cv-00085 (DJS), slip op. (D. Conn. Jan. 29, 2018) ..............................................15

*Dalton v. Harleysville Ins. Co.*,
  557 F.3d 88 (2d Cir. 2009)......................................................................................16

*DiLullo v. Joseph*,
   259 Conn. 847 (2002) .............................................................................................20

*England v. Amica Mut. Ins. Co.*,
   No. 3:16-cv-01951 (MPS), 2017 WL 3996394 (D. Conn. Sept. 11, 2017) ....................14, 15

*Geron v. Seyfarth Shaw LLP (In re Thelen LLP)*,
   736 F.3d 213 (2d Cir. 2013) .......................................................................................3

*Harris v. Mills*,
   572 F.3d 66 (2d Cir. 2009) ..........................................................................................5

*Hurlburt v. Massachusetts Homeland Insurance Co.*,
   No. 3:17-cv-00503 (VAB), 2018 WL 1035810 (D. Conn. Feb. 23, 2018) ...................*Passim*

*Jemiola v. Hartford Cas. Ins. Co.*,
   No. TTD-CV15-6008837-S, 2017 WL 1258778 (Conn. Super. Ct. Mar. 2,
   2017) .........................................................................................................................*Passim*

*Kowalshyn v. Excelsior Ins. Co.*,
   No. 3:16-cv-00148 (JAM), 2018 WL 888724, (D. Conn. Feb. 13, 2018) ...........................23

*Lewis v. Casey*,
   518 U.S. 343 (1996) ...................................................................................................25

*Lexington Ins. Co. v. Lexington Healthcare Grp., Inc.*,
   311 Conn. 29 (2014) .........................................................................................6, 11, 12

*Liberty Mut. Ins. Co. v. Lone Star Indus.*,
   290 Conn. 767 (2009) ..................................................................................................5

*Liston-Smith v. CSAA Fire & Cas. Ins. Co.*,
   No. 3:16-cv-00510 (JCH), 2017 WL 6459552 (D. Conn. Dec. 15, 2017) ........................6, 15

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ...................................................................................................25

*Mahon v. Ticor Title Ins. Co.*,
   683 F.3d 59 (2d Cir. 2012) ..........................................................................................26

*Makufka v. CSAA Fire & Cas. Ins. Co.*,
   No. 3:16-cv-00567 (VLB), 2018 WL 465775 (D. Conn. Jan. 18, 2018) ......................10, 15

*Malbco Holding, LLC v. Amco Ins. Co.*,
   629 F. Supp. 2d 1185 (D. Or. 2009) .........................................................................16, 17

*Middlesex Mut. Assur. Co. v. Vaszil*,
   279 Conn. 28 (2006) ...................................................................................................21

*Miller v. First Liberty Ins. Corp.*,
No. 07-1338, 2008 U.S. Dist. LEXIS 47550 (E.D. Pa. June 17, 2008)....................................19

*Mount Zion Baptist Church of Marietta v. Guideone Elite Insurance Co.*,
808 F. Supp. 2d 1322 (N.D. Ga. 2011) ..............................................................................18, 19

*Musgrave v. State Farm Fire & Cas. Co.*,
No. TTD-CV15-6009840-S, 2017 Conn. Super. LEXIS 5209 (Aug. 10, 2017) ....................15

*Nazami v. Patrons Mut. Ins. Co.*,
280 Conn. 619 (2006) ..........................................................................................................25

*Pantoja v. Banco Popular*,
545 F. App'x 47 (2d Cir. 2013) ..........................................................................................21

*Perracchio v. Homesite Insurance Co.*,
No. TTD-CV16-6010324-S, slip op. (Conn. Super. Ct. Mar. 6, 2018) ....................................15

*R.T. Vanderbilt Co., Inc. v. Hartford Accident & Indem. Co.*,
171 Conn. App. 61 (2017) ..................................................................................................22

*Ranger Ins. Co. v. Kovach*,
63 F. Supp. 2d 174 (D. Conn. 1999)......................................................................................6

*Rector Street Food Enterprises, Ltd. v. Fire & Casualty Insurance Co. of Connecticut*,
35 A.D.3d 177 (N.Y. App. Div. 1st Dep't 2006) ..................................................................17

*Residential Management (NY) Inc. v. Federal Insurance Co.*,
884 F. Supp. 2d 3 (E.D.N.Y. 2012) ....................................................................................18

*Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*,
748 F.2d 774 (2d Cir. 1984)................................................................................................4

*Sec. Ins. Co. v. Lumbermens Mut. Cas. Co.*,
264 Conn. 688 (2003) ........................................................................................................22

*Springdale Donuts, Inc. v. Aetna Cas. & Sur. Co.*,
247 Conn. 801 (1999) ..........................................................................................................5

*Squairs v. Safeco National Insurance Co.*,
136 A.D.3d 1393 (N.Y. App. Div. 4th Dep't), *cert. denied*, 27 N.Y.3d 907
(2016)..................................................................................................................................17

*Toomey v. Central Mutual Insurance Co.*,
No. TTD-CV15-6009841-S, 2017 WL 4159820 (Conn. Super. Ct. Aug. 3, 2017) ................................................................................................................................15

*In re Trilegiant Corp.*,
   No. 3:12-cv-00396 (VLB), 2014 U.S. Dist. LEXIS 42570 (D. Conn. Mar. 28,
   2014) ..................................................................................................................26

*Winding Hills Condo. Ass'n, Inc. v. N. Am. Spec. Ins. Co.*,
   752 A.2d 837 (N.J. App. Div. 2000)....................................................................23

*XL Spec. Ins. Co. v. Otto Naumann, Ltd.*,
   No. 12-cv-8224 (DAB), 2015 U.S. Dist. LEXIS 45028 (S.D.N.Y. Mar. 31,
   2015) ..................................................................................................................22

*Zamichiei v. CSAA Fire & Cas. Co.*,
   No. 3:16-cv-00739 (VAB), 2018 WL 950116 (D. Conn. Feb. 20, 2016)..............15

**Rules**

Fed. R. Civ. P. 12.....................................................................................................4, 5

**Other Authorities**

1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 4:28 (13th ed. 2016) ........................26

5 William Rubenstein, *Newberg on Class Actions* § 2:5 (5th ed.) ................................................26

## I.   INTRODUCTION

Pursuant to D. Conn. L. Civ. R. 7(a)1, the defendant Trumbull Insurance Company ("Trumbull") respectfully submits this memorandum of law in support of its motion to dismiss all of the claims asserted against it in the "Fourth Amended Class Action Complaint." ("Compl.") (ECF No. 488).

Of the thirty-one plaintiffs in this case, only one claims to have ever insured her house with Trumbull – Jacqueline Gribbon.  (Compl., Count Nineteen.)  Ms. Gribbon seeks "collapse" coverage for her cracking basement walls.  (*Id.* ¶ 2.)  Trumbull's policy defined "collapse" as "an abrupt falling down or caving in" that renders the house incapable of being "occupied for its current intended purpose."   This is the exact same language that this Court applied to bar coverage for a cracking basement claim in *Hurlburt v. Massachusetts Homeland Insurance Co.,* No. 3:17-cv-00503 (VAB), 2018 WL 1035810 (D. Conn. Feb. 23, 2018).

Like the plaintiffs in *Hurlburt,* Ms. Gribbon has not pled the required elements of a collapse claim.  She does not allege that her house abruptly fell down or caved in, nor does she plead that it is incapable of occupation.  To the contrary, she affirmatively alleges that "falling down" and "caving in" have not happened yet, and she also concedes that she is still occupying the house.  (Compl. ¶¶ 2, 4, 339, 345.)  Because she has not pled any of the elements of a collapse claim under Trumbull's form of insurance policy – and also because she has not plausibly alleged a loss within Trumbull's policy period – Count Nineteen should be dismissed under Rule 12(b)(6).  (*See* discussion, Section III.B *infra.*)

The Court should dismiss Ms. Gribbon's other claims as well.  She seeks a declaratory judgment (Count 83), claims that Trumbull breached the implied covenant of good faith and fair dealing (Count 129), and seeks relief under the Connecticut Unfair Insurance Practices Act

("CUIPA") and Connecticut Unfair Trade Practices Act ("CUTPA") (Count 175).  Each of these counts fails to state a claim, as discussed more fully in the Memorandum of Law in Support of Certain Defendants' Joint Motion to Dismiss Counts 47 to 184 of the Fourth Amended Complaint, which Trumbull joins and incorporates by reference into this memorandum. (ECF No. 497-2 (hereinafter "Joint Brief"); *see also* discussion, Section III.C *infra*.)

The putative class action claims against Trumbull should be dismissed too.  Once the Court dismisses Ms. Gribbon's claims, there will be no plaintiff in the case with any connection to Trumbull.  The putative class claims cannot proceed if there is no such plaintiff.  (*See* discussion, Section III.D *infra*.)  Trumbull should therefore be entirely dismissed from this case.

## II.      BACKGROUND

### A.      Ms. Gribbon's Allegations About Her House

Ms. Gribbon owns the house located at 29 Leo J Lane in Manchester.  (Compl. ¶ 339.) She claims that her concrete basement walls were built with "a sulfide mineral known as pyrrhotite," which "is a destructive chemical that . . . expands and breaks apart the concrete." (*Id.* ¶¶ 342-43.)  This chemical reaction is allegedly "an irreversible condition, which affects the durability and ultimately causes the failure of the concrete."  (*Id.* ¶ 344.)

Importantly, however, Ms. Gribbon does not allege that this condition has caused her house to fall down or cave in.  Her complaint describes a house that is still standing.   In paragraph 2, for example, she alleges that her house "*will fall*" into its basement – her use of the future tense clearly indicating that it has not fallen yet.  (*Id.* ¶ 2) (emphasis added).  Similarly, in paragraph 345 she claims that "the sulfate attack *will continue* to deteriorate the concrete *until* the home caves into its basement," again indicating that it has not caved in yet.  (*Id.* ¶ 345) (emphasis added).

Ms. Gribbon also does not claim that her house is incapable of occupation.  Indeed, she affirmatively alleges that she is still living in it.  (*Id.* ¶ 339) ("Gribbon owns and occupies a residential property located at 29 Leo J Lane"); (*id.* ¶ 14) ("She owns and lives in . . . 29 Leo J Lane").  Nowhere in the 414-page, 3,003-paragraph complaint does Ms. Gribbon allege that her house has fallen down or caved in, or that she cannot live in it.

## B.      Ms. Gribbon's Trumbull Policy

Ms. Gribbon bought her house in 1986.  (*Id.* ¶ 340.)  She insured it with Trumbull for only one of the thirty-two years since then.  (*Id.* ¶ 373.)  Her Trumbull coverage began on February 27, 2015 and ended on February 27, 2016.  (*Id.; see also* Decl. of Sandra Belcourt ("Belcourt Decl.") ¶¶ 4-5 and Ex. A (the "Trumbull Policy").)[1]

The collapse coverage of Ms. Gribbon's lone Trumbull policy reads as follows:

**Collapse**

**a.  This Additional Coverage does not:**

> **(1)  Increase the limit of liability that applies to the damaged covered property; nor**
>
> **(2)  Reduce or eliminate coverage with respect to a loss that was caused by a Peril Insured Against named under Coverage C.**

**b.  With respect to this Additional Coverage:**

> **(1)  Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.**
>
> **(2)  A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.**

---

[1]  In adjudicating a motion to dismiss, a court may consider not only the allegations of the complaint, but also "any document upon which the complaint heavily relies" even if not attached to the complaint.  *Geron v. Seyfarth Shaw LLP (In re Thelen LLP)*, 736 F.3d 213, 219 (2d Cir. 2013).  Following this principle, courts routinely consider insurance policy exhibits when entertaining motions to dismiss in insurance coverage cases.  *E.g., Hurlburt,* 2018 WL 1035810 at *1-2 (considering insurance policy that was not attached to complaint but was provided by movant insurance company as exhibit to motion to dismiss).

**(3)** A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

**(4)** A building or any part of a building that is standing is not considered to be in a state of collapse, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**c.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

**(1)** The Perils Insured Against;

**(2)** Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

**(3)** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse.

**(4)** Weight of contents, equipment, animals or people.

**(5)** Weight of rain which collects on a roof; or

**(6)** Use of defective materials or methods in construction, remodeling or renovation.

**d.** Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under c.(2) through (6) above, unless the loss is a direct result of the collapse of a building or any part of a building.

(Ex. A to Belcourt Decl., at Bates p. TRUM000009-10.)  Ms. Gribbon has not pled a legally sufficient claim for coverage under this provision, as discussed next.

## III.   DISCUSSION

### A.   The Legal Standards

#### 1. *Rule 12(b)(6)*

Rule 12(b)(6) requires dismissal of a complaint if it fails to state a claim upon which relief can be granted.  The purpose of a motion to dismiss under Rule 12(b)(6) is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d

774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F. 2d 636, 639 (2d Cir. 1980)). Thus, for purposes of a motion under Rule 12(b)(6), the court accepts the material facts alleged in the complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Nevertheless, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and must describe a cause of action with enough heft to show that entitlement to relief and "enough facts to state a claim that is plausible on its face." *Twombly*, 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 664, 679. Under the plausibility standard set forth in *Twombly* and *Iqbal*, the complaining party must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

### 2. *Principles of Insurance Policy Interpretation*

Under Connecticut law, "the terms of an insurance policy are to be construed according to the general rules of contract construction." *Liberty Mut. Ins. Co. v. Lone Star Indus.,* 290 Conn. 767, 795 (2009). Those rules instruct courts to discern the intent of the parties "from the four corners of the policy." *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.,* 308 Conn. 760, 773 (2013). They also instruct courts to give the words of the policy "their natural and ordinary meaning." *Id.*

When insurance policy terms are truly ambiguous, they are interpreted in favor of the policyholder. *Id.* A "necessary predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous." *Springdale Donuts, Inc. v. Aetna Cas. & Sur. Co.,* 247 Conn. 801, 806 (1999) (internal quotation marks and citation omitted). "[A] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." *Conn. Med. Ins. Co. v. Kulikowski,* 286 Conn. 1, 6 (2008) (internal quotation marks and citation omitted).

Ms. Gribbon contends that Trumbull's collapse provision is ambiguous (Compl. ¶ 374), but an insurance policy provision does not become ambiguous merely because the policyholder posits an alternate meaning.   "[W]ords do not become ambiguous simply because lawyers or laymen contend for different meanings."   *Buell Indus. v. Greater N.Y. Mut. Ins. Co.,* 259 Conn. 527, 546 (2002); *Ranger Ins. Co. v. Kovach,* 63 F. Supp. 2d 174, 181 (D. Conn. 1999).   Rather, the Connecticut appellate courts have set out some principles to guide trial courts in determining whether a provision is ambiguous – and it is these principles that control the analysis, not a plaintiff's creativity in hypothesizing other meanings.   Three such principles are relevant here:

- First, the proposed alternate meaning must be a reasonable one, because a "policy is ambiguous only if it is *reasonably* susceptible to more than one meaning." *Conn. Med. Ins. Co.,* 286 Conn. at 13 (emphasis in original).

- Second, a proposed alternate construction is *per se* unreasonable if it renders other provisions of the contract inoperative.  *See, e.g., Lexington Ins. Co. v. Lexington Healthcare Grp., Inc.,* 311 Conn. 29, 56-57 (2014) ("To the extent that an interpretation makes another term or provision meaningless, that interpretation should be rejected in favor of an interpretation that preserves meaning.").

- Third, the claimed ambiguity must make some difference under the facts of the case.  *See Conn. Med. Ins. Co.,* 286 Conn. at 13 ("There must be a nexus between the ambiguity and the disputed issue"); *see also Jemiola v. Hartford Cas. Ins. Co.,* No. TTD-CV15-6008837-S, 2017 WL 1258778 at *10 (Conn. Super. Ct. Mar. 2, 2017) (rejecting ambiguity argument in cracking basement case where facts of case did not implicate claimed ambiguity); *Liston-Smith v. CSAA Fire & Cas. Ins.*

*Co.,* No. 3:16-cv-00510 (JCH), 2017 WL 6459552, at *5 (D. Conn. Dec. 15, 2017) (same).[2]

As will be shown in Section III.B.2 below, Ms. Gribbon's claim of ambiguity defies all three of these bedrock principles. For that reason and others, Trumbull is entitled to dismissal of her contract breach claim.

**B.      The Contract Breach Claim In Count Nineteen Should Be Dismissed.**

> ### 1.  *Ms. Gribbon has not pled a plausible claim for collapse coverage under the Trumbull Policy.*

The Trumbull Policy defines a "collapse" as "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose." (Ex. A to Belcourt Decl., at TRUM000009.) For additional clarity, the policy adds that a house that is merely "in danger of falling down or caving in is not considered to be in a state of collapse." (*Id.*) The policy also adds that "[a] building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking." (*Id.*)

Thus, to plead a plausible claim for collapse coverage, Ms. Gribbon must plead at least three things: (1) that her house fell down or caved in; (2) that it did so abruptly; and (3) that the falling down or caving in resulted in the home being incapable of occupation for its intended purposes. It is not enough for her to plead that her house is in danger of falling down or caving in, because the policy makes clear that being in danger of falling down or caving in is not "a state of collapse." (*Id.*) Nor is it enough for her to plead that her still-standing basement walls are

---

[2] Copies of all unreported authorities cited in this memorandum are provided in an Appendix of Authorities.

cracking, because again, a building or part of a building that is still "standing is not considered to be in a state of collapse even if it shows evidence of cracking." (*Id.*)

Ms. Gribbon has not pled any of the three required elements of a collapse claim under the Trumbull Policy. She has not pled the first element – that her house fell down or caved in – because her complaint makes clear that those things have not happened yet. In paragraph 2, she alleges that her house "*will fall*" into its basement – indicating by her use of the future tense that it has not yet fallen. (Emphasis added.) And in paragraph 345 she claims that "the sulfate attack *will continue* to deteriorate the concrete *until* the home caves into its basement." (Emphasis added.) Her complaint clearly describes a house that is still standing, and the Trumbull Policy is equally clear that such a house does not qualify for collapse coverage.

Ms. Gribbon also fails to plead the second element – that her house fell down or caved in *abruptly.* Her complaint describes a gradual deterioration of her basement walls over the course of thirty-two years. To read her description, there is nothing abrupt in what is happening to those walls. She claims that her house was built in 1984 "with concrete containing deleterious iron sulfide materials." (Compl. ¶¶ 2, 14.) She contends that her damage is a product of "oxidization (rusting) of these minerals," and that this oxidation "is a continuous . . . condition." (*Id.* ¶ 2.) And she alleges that the condition was damaging her property as far back as 2004, eleven years before she purchased her lone Trumbull Policy. (*Id.* ¶¶ 346, 351) (alleging insurance with Standard Fire in 2004, and alleging "physical loss" within Standard Fire's policy period). As in *Hurlburt,* Ms. Gribbon's "policy covers only an 'abrupt falling down or caving in of a building,'" and that policy language "cannot reasonably be read to embrace the gradual deterioration of property over time." 2018 WL 1035810, at *4.

Ms. Gribbon also fails to plead the third element – that an abrupt falling down or caving in resulted in her house becoming incapable of occupation "for its current intended purpose." She affirmatively alleges that she still "lives in" and "occupies" the house at 29 Leo J Lane. (Compl. ¶¶ 14, 339.)  She does not claim that it is unsafe to live in.  To the contrary, she says that any threat to safety is in the future:  she alleges that her home will *eventually* . . . be impossible to safely live in."  (*Id.* ¶ 4) (emphasis added).

Connecticut federal courts have not hesitated to dismiss cracking basement complaints in which the plaintiff failed to plead the required elements of a collapse claim.  In *Hurlburt,* for example, this Court dismissed a complaint under the same collapse language found in the Trumbull Policy, because the plaintiffs had not alleged an abrupt falling down or caving in but rather only a "basement" that "is deteriorating."  2018 WL 1035810, at *5.  Moreover, the plaintiffs still "reside[d] in their home and have not alleged that they cannot or do not use it for its 'current intended purpose.'"  *Id.*

Judge Underhill dismissed a similar claim under substantively identical policy language in *Alexander v. General Insurance Co. of America,* No. 3:16-cv-00059 (SRU), 2017 WL 188134 (D. Conn. Jan. 17, 2017) (order on motion for reconsideration of prior oral ruling).  In *Alexander,* as in this case and *Hurlburt,* the insurer's policy defined "collapse" as "an abrupt falling down or caving in of a building or any part of a building," and added that a building that is still standing "is not considered to be in a state of collapse" even if it is cracking.  *Id.* at *1.  The court dismissed the case because "Plaintiffs cannot avoid the fact that their basement walls are still standing," and under the terms of General's – and Trumbull's – policy form, a house that is still standing is a house that has not collapsed.  *Id.* at *2.

Judge Bryant also dismissed a similar claim under identical policy language.  *Makufka v. CSAA Fire & Cas. Ins. Co.,* No. 3:16-cv-00567 (VLB), 2018 WL 465775, at *1 (D. Conn. Jan. 18, 2018).  In *Makufka,* as here, the policy's collapse provision "require[d] 'an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose."  *Id.* at *4.  Judge Bryant dismissed the case under Rule 12(b)(6) because the plaintiffs' complaint raised "no question of fact that the Premises is still standing and lived in by Plaintiffs and has not abruptly fallen down or caved in.  Accordingly, the Policy does not cover Plaintiffs' loss."  *Id.*

This case is exactly like *Hurlburt, Alexander* and *Makufka,* and it should be dismissed for the same reasons.  As in *Hurlburt,* Ms. Gribbon has alleged only a gradually deteriorating basement – not one that abruptly fell down or caved in – and she still "reside[s] in her home and ha[s] not alleged that [she] cannot or do[es] not use it for its 'current intended purpose.'"  Like the plaintiffs in *Alexander,* she "cannot avoid the fact that her basement walls are still standing."  And like the complaint in *Makufka,* her complaint raises "no question of fact that the Premises is still standing and lived in . . . and has not abruptly fallen down or caved in."  Put simply, Ms. Gribbon has not pled any of the required elements of a collapse claim under Trumbull's policy form.  Count Nineteen should be dismissed accordingly.

### 2. *Trumbull's collapse provision is unambiguous.*

Ms. Gribbon has signaled that she will attempt to get around her pleading failures by claiming that Trumbull's collapse provision is ambiguous, (Compl. ¶ 374), but this Court rejected that argument in *Hurlburt* and it should do so again here.  The argument is inconsistent with Connecticut's principles for determining when an ambiguity exists; has been rejected by state and federal courts on nearly two dozen occasions; and has never once been accepted by a Connecticut court.

### a. Connecticut's principles of insurance policy interpretation compel the conclusion that Trumbull's collapse provision is unambiguous.

Under Connecticut law, the interpretation of insurance policies is not a free-for-all, in which the policyholder gets to push her claim past the Rule 12 stage merely by hypothesizing any alternate interpretation of her policy. In Connecticut, the approach is more principled than that. As discussed in Section III.A.2 above, the Connecticut Supreme Court has laid down several principles to guide trial courts in determining whether an insurance policy provision is ambiguous. First, trial courts must reject claims of ambiguity when the proffered alternate interpretation is an unreasonable one; a provision is not ambiguous unless it is susceptible to more than one *reasonable* interpretation. *Conn. Med. Ins. Co.,* 286 Conn. at 13. Second, the proposed alternate interpretation must be rejected if it renders other provisions of the policy meaningless. *Lexington Ins. Co.,* 311 Conn. at 56-57. Third, the claimed ambiguity must make some difference under the facts of the case. *Conn. Med. Ins. Co.,* 286 Conn. at 13. In other words, identifying some abstract ambiguity in a policy provision gets a plaintiff nowhere, if she cannot also show that the adoption of her proposed meaning would make a difference in the outcome of her claim. *Lexington Ins. Co.,* 311 Conn. at 42.

Ms. Gribbon's claim of ambiguity runs afoul of all three of these principles, including the first – that is, the requirement that a policyholder's alternate construction be a reasonable one. She claims to find the word "abrupt" ambiguous, but there is no reasonable construction of "abrupt" that would encompass a course of gradual deterioration extending over at least eleven years before Trumbull's policy began.[3] As this Court noted in *Hurlburt,* in Connecticut "[t]he term 'abrupt' must be 'accorded its natural and ordinary meaning.'" 2018 WL 1035810, at *5

---

[3] Again, Ms. Gribbon affirmatively alleges that her basement walls were being damaged by a "sulfate attack" as far back as 2004, eleven years before the beginning of the Trumbull policy period. (Compl. ¶¶ 346, 351.)

(quoting *Conn. Med. Ins. Co.,* 942 A.2d at 338).  "The ordinary meaning of the word 'abrupt' is 'characterized by or involving action or change without preparation or warning.'" *Id.*  It "cannot reasonably be read to embrace the gradual deterioration of property over time." *Id.* at *4.

Ms. Gribbon's claim of ambiguity would also render other provisions of her policy meaningless.  She evidently contends that because the policy uses the active voice – "falling down" and "caving in" as opposed to "fallen down" and "caved in" – it could reasonably be read to extend collapse coverage to a standing house that is in the process of falling down or caving in.  (Pls.' Memo. in Opp'n to Mots. to Dismiss Subst. 3d Am. Compl., ECF No. 458, at 63.)  But this interpretation cannot be accepted without entirely depriving another provision of meaning – specifically, subparagraph b(4) of the collapse coverage, which makes clear that a house "that is standing is not considered to be in a state of collapse."  (Ex. A to Belcourt Decl., at TRUM000009.)  In construing "falling down or caving in" as affording collapse coverage to a still-standing home, Ms. Gribbon would read subparagraph b(4) out of the policy.  Connecticut's rules of insurance policy interpretation do not permit her to do so.  *Lexington Ins. Co.,* 311 Conn. at 56-57 ("To the extent that an interpretation makes another term or provision meaningless, that interpretation should be rejected in favor of an interpretation that preserves meaning").

The ambiguity that Ms. Gribbon claims – even if it were accepted – also fails to make any difference under the facts of her case.  Ms. Gribbon claims to observe some ambiguity in first part of her policy's collapse definition – the requirement that there be an "abrupt falling down or caving in."  (Compl. ¶ 374.)  This Court has already held in *Hurlburt* that there is no ambiguity in the first part of the definition.  But even if there had been, it would not get Ms. Gribbon past the second part her policy's collapse definition:  the requirement that the abrupt falling down or caving in have the "result that the building or part of the building cannot be

occupied for its current intended purpose." (Ex. A to Belcourt Aff., at TRUM000009.) Ms. Gribbon does not allege that her house cannot be occupied, and indeed she affirmatively pled that she is still living in it. (Compl. ¶¶ 14, 339.) In other words, even if Ms. Gribbon could identify an ambiguity in the first part of the definition, she would still lose on the second part. Her argument therefore presents exactly the sort of abstract claim that lacks any "nexus between the ambiguity and the disputed issue" before the Court. *See Conn. Med. Ins. Co.,* 286 Conn. at 13. Any claimed ambiguity in the first part of Trumbull's collapse definition would make no difference under the facts of Ms. Gribbon's case.

### b. The authorities unanimously hold that Trumbull's form of collapse coverage unambiguously bars coverage for cracking basement claims.

Because Connecticut law affords no basis for finding Trumbull's collapse provision ambiguous, courts in this state have upheld the provision as unambiguous on more than a dozen occasions. They have not found it to be ambiguous even once.

In *Alexander,* Judge Underhill held that a substantively identical provision in General's policy was unambiguous, and granted General's initial motion to dismiss a concrete foundation plaintiff's claim. Tr. of July 7, 2016 Hrg., *Alexander v. Gen. Ins. Co. of Am.,* No. 3:16-cv-00059 (SRU), ECF No. 22 (D. Conn. July 20, 2016). The court noted that the plaintiff's house – like Ms. Gribbon's – was still standing and therefore had not yet "fully submitted to pressure such that the building or part of the building cannot be occupied for its intended purpose." *Id.* at 4. The court acknowledged that the result might have been different had the insurer left the term "collapse" entirely undefined, "but here the term has been expressly defined in a way that eliminates coverage under the allegations of the complaint." *Id.* at 23. In response to the plaintiffs' claim that that definition was ambiguous, the court stated that "it certainly is not ambiguous when there hasn't been any arguably abrupt . . . falling down or caving in." *Id.* at 16.

Judge Cobb of the Connecticut Superior Court reached the same conclusion in another cracking concrete case, expressly agreeing with *Alexander.  Jemiola,* 2017 WL 1258778, at *10. In *Jemiola* the court interpreted the exact same collapse provision that is found in the Trumbull Policy.[4]  The court held that the provision was "unambiguous," and that a cracking foundation claim was not covered "because there has been no sudden or abrupt falling down or caving in." *Id.* at *11.  The court explained that "[t]he word 'abrupt' is unambiguous and the damage to the plaintiff's basement walls was not 'abrupt,' but rather is happening over time." *Id.* Significantly, the court noted that the walls of the plaintiff's home would "eventually give way," but that "this has not happened yet." *Id.*  The court therefore held that "the plaintiff's home and[/]or basement walls are only in danger of falling down or caving in and her home remains standing," and thus she could not satisfy the requirement that there be an "abrupt falling down or caving in," and furthermore, her claim was excluded by the subpart of the definition that clarifies that a building "in danger" of falling down or caving in is not in a state of "collapse." *Id.*  The *Jemiola* court also noted that the plaintiff's house could still be occupied "for its intended current purposes," because it was still standing and she continued to live in it.  *Id.*

After *Alexander* and *Jemiola,* Connecticut state and federal courts have held the same or substantively identical collapse provisions to be unambiguous over a dozen times.  The federal cases include *England v. Amica Mut. Ins. Co.,* No. 3:16-cv-01951 (MPS), 2017 WL 3996394 (D. Conn. Sept. 11, 2017), in which Judge Shea applied the interpretive principles of *Lexington Insurance Co.* in holding that the provision was clear; under that case's "ordinary meaning" rule, a policy that provides coverage for the "abrupt" falling down of a house could not reasonably be

---

[4] Trumbull and the defendant in *Jemiola* are both underwriting companies of The Hartford Financial Services Group, Inc., colloquially known as "The Hartford."  They used the identical collapse coverage form on the dates in question.

read to cover "damage [that] has occurred progressively and continuously." *Id.* at *5. Judge Hall upheld the collapse provision as unambiguous in *Liston-Smith,* 2017 WL 6459552 at *4, and so did Judge Bryant in *Makufka,* 2018 WL 465775 at *4. And, of course, this court likewise rejected a claim of ambiguity in *Hurlburt,* 2018 WL 1035810 at *5-6. *See also Chernosky v. Amica Mut. Ins. Co.,* No. 3:17-cv-01047 (VLB), 2018 WL 529956 (D. Conn. Jan. 24, 2018); *Zamichiei v. CSAA Fire & Cas. Co.,* No. 3:16-cv-00739 (VAB), 2018 WL 950116 (D. Conn. Feb. 20, 2016) (granting summary judgment to insurer); *Cyr v. CSAA Fire & Cas. Ins. Co.,* No. 3:16-cv-00085 (DJS), slip op. (D. Conn. Jan. 29, 2018).

The state courts have also been unanimous. After *Jemiola,* the same collapse provision was held to be unambiguous in *Toomey v. Central Mutual Insurance Co.,* No. TTD-CV15-6009841-S, 2017 WL 4159820 (Conn. Super. Ct. Aug. 3, 2017). In *Toomey,* the court "conclude[d] that the policies' definition of 'collapse,' when applied to the circumstances of this case, is unambiguous, thus, the court finds that the defendants did not breach the policies when it denied the plaintiffs' insurance claim." *Id.* at *7; *accord Musgrave v. State Farm Fire & Cas. Co.,* No. TTD-CV15-6009840-S, 2017 Conn. Super. LEXIS 5209, at *2-3 (Aug. 10, 2017) (adopting *Jemiola*). More recently, Judge Farley rejected a claim of ambiguity in *Perracchio v. Homesite Insurance Co.,* No. TTD-CV16-6010324-S, slip op. (Conn. Super. Ct. Mar. 6, 2018). After a lengthy and thoughtful analysis addressing the few out-of-state cases that are commonly cited by cracking foundation plaintiffs, he concluded that Homesite's identical collapse provision was unambiguous and, "because it is a progressive process at issue," the "abrupt" "element of the collapse definition [was] unsatisfied." *Id.* at 15.

Ms. Gribbon will no doubt cite the same out-of-state cases, but they are all easily distinguishable and none of them can be reconciled with Connecticut's rules for determining

when ambiguities exist in insurance policies.  Indeed, this Court already distinguished three such cases in *Hurlburt* – *Dalton v. Harleysville Ins. Co.,* 557 F.3d 88 (2d Cir. 2009), *130 Slade Condo. Ass'n, Inc. v. Millers Capital Ins. Co.,* No. CIV.A. CCB-07-1779, 2008 WL 2331048 (D. Md. June 2, 2008), and *Malbco Holding, LLC v. Amco Ins. Co.,* 629 F. Supp. 2d 1185 (D. Or. 2009).  *Hurlburt,* 2018 WL 1035810 at *6.

As the Court has previously explained, *Dalton* is distinguishable because it addressed the "different question of whether, as a matter of New York law, collapse must be sudden when a policy does not place any temporal restrictions on the definition of collapse."  *Id.* at *5 (quoting *Adams v. Allstate Ins. Co.,* 276 F. Supp. 3d 1, 5 (D. Conn. 2017)).  It is therefore inapposite to cases like *Hurlburt* and this one, in which "the contract expressly states that a 'collapse means an abrupt falling down or caving in.'"  *Id.* at *6.

*Malbco* and *130 Slade* are likewise distinguishable because both cases involved properties that could not be occupied.  *Malbco,* 629 F. Supp. 2d at 1191 (building official threatened to close property "because of its dangerous physical condition"); *130 Slade,* 2008 WL 2331048 at *1 (building damaged so badly that engineer ordered evacuation).  They therefore involved plaintiffs whose claims satisfied the second part of the collapse definition, that is, the requirement that the building be incapable of occupation for its current intended purposes.  Accordingly, the existence or non-existence of ambiguity in the first part of the definition was arguably a relevant question in their cases.  In this case, by contrast, Ms. Gribbon cannot get by the second part of the definition, because her complaint discloses that she is still occupying her home.  (Compl. ¶ 339.)  The question of whether the first part of the definition is ambiguous is therefore entirely abstract as applied to her, because it would make no difference in the outcome of her case – she would still lose for failure to satisfy the second part.  And whatever the rules for

determining ambiguities may be in Maryland or Oregon, in Connecticut, ambiguities cannot be found in the abstract. *Conn. Med. Ins. Co.,* 286 Conn. at 13.

Even in other states, the authorities overwhelmingly hold that the form of collapse coverage used by Trumbull is entirely unambiguous. In other words, cases like *130 Slade* and *Malbco* are not only easily distinguishable, they are also overwhelmingly in the minority. Courts in New York, for example, have found the language used in the Trumbull Policy to be unambiguous, and to bar coverage for buildings or structures that are merely leaning, sagging, or threatening to fall at some future date. In *Squairs v. Safeco National Insurance Co.,* for example, the Fourth Department held that because "the record establishes that plaintiffs' home was standing when they submitted their claim" to their insurer, "there had been no 'abrupt falling down or caving in.'" 136 A.D.3d 1393, 1394 (N.Y. App. Div. 4th Dep't), *cert. denied*, 27 N.Y.3d 907 (2016). The court held that language to be "unambiguous," and it characterized the plaintiffs' reliance "on the line of cases finding a 'collapse' in situations where the policy failed to define 'collapse'" to be "erroneous[]." *Id.* Similarly, in *Rector Street Food Enterprises, Ltd. v. Fire & Casualty Insurance Co. of Connecticut*, the First Department quickly dispatched a policyholder's collapse claim for a building that had not fallen down but was only "sinking, out of plumb, and leaning." 35 A.D.3d 177, 178 (N.Y. App. Div. 1st Dep't 2006). While the building may have been leaning, "it was indisputably standing in the hours before its demolition by its owner." *Id.* The loss was therefore "not covered by the provision of defendant insurer's policy insuring against loss attributable to 'abrupt' collapse." *Id.* The court added that "[t]he policy language is unambiguous and, absent any showing of a statutory requirement to that effect, plaintiff's argument that public policy mandates that insurers who provide coverage for collapse must be required to also cover imminent collapse is without merit." *Id.*

-17-

A New York federal court reached a similar conclusion in *Residential Management (NY) Inc. v. Federal Insurance Co.,* 884 F. Supp. 2d 3 (E.D.N.Y. 2012).  In that case, a New York City rooftop water tank was found to be "leaning" because a support had rusted, but it nevertheless "remained standing."  *Id.* at 6.  Like the Trumbull Policy, the insurer's policy "define[d] 'collapse' as an 'abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.'"  *Id.* at 7.  The court granted summary judgment for the insurer in part because "[t]he undisputed evidence before this Court establishes the steel support frame and water tank remained standing, although in a leaning condition, and did not abruptly fall down or cave in at any point."  *Id.* at 9.

New York is not the only state whose courts have held that this language unambiguously bars collapse coverage for buildings that have yet to fall to the ground.  In *Mount Zion Baptist Church of Marietta v. Guideone Elite Insurance Co.,* for example, a Georgia federal district court granted summary judgment to an insurer whose collapse language was substantially identical to the Trumbull Policy.  808 F. Supp. 2d 1322, 1323 (N.D. Ga. 2011).  In *Mount Zion,* a church building experienced "outwardly bowed sidewalls and a sagging roof" that had "likely been occurring for 15 years."  *Id.*  The church hired an engineer, who opined that the bowing and sagging were due to a defect in the initial design and construction – specifically, an "inadequate" "truss system."  *Id.*  The church building nevertheless "continued to stand," and furthermore it stood until the church decided to have it demolished.  *Id.* at 1323-24.  The court granted summary judgment to the insurer because the "Plaintiff is unable to prove that the sanctuary 'collapsed' within the meaning of the policy."  *Id.* at 1325.  "[T]he building was standing at the time of the event.  . . .  [a]s a result, the building had not collapsed because 'a building that is

standing or any part of a building that is standing is not considered to be in a state of collapse' according to the terms of the policy." *Id.* (internal citation and quotations mark omitted).; *accord Miller v. First Liberty Ins. Corp.*, No. 07-1338,  2008 U.S. Dist. LEXIS 47550, at *13 (E.D. Pa. June 17, 2008) ("Because plaintiff presents no evidence of a sudden and entire falling down or caving in of a building or any part of a building, I find there was no 'collapse' under the clear and unambiguous terms of the Policy.").   In summary, the courts of other states – like the Connecticut state and federal courts – overwhelmingly hold that the form of collapse coverage found in the Trumbull Policy is not ambiguous.

### c.   Ms. Gribbon's other anticipated arguments should be rejected.

As the Court knows, Trumbull moved to dismiss this case once before, when the plaintiffs' "Substitute Third Amended Class Action Complaint" was the operative complaint. (ECF No. 387.)  The plaintiffs amended their complaint rather than see that motion all the way through, but not before they filed an opposition.  (ECF No. 458.)  From that brief, Trumbull can anticipate some of the arguments that Ms. Gribbon will make in opposition to this motion.  Each such argument should be rejected.

Ms. Gribbon will no doubt claim, for example, that Trumbull's collapse provision renders coverage "illusory," but this argument must fail.  A policy's coverage is illusory only if it is written in such a way that it could never be called upon to pay a claim.  *See, e.g., Conn. Ins. Guar. Ass'n v. Drown*, 134 Conn. App. 140, 153-54 (2012); *Interline Brands, Inc. v. Chartis Spec. Ins. Co.,* 749 F.3d 962, 967 (11th Cir. 2014).  A policy is not illusory if it covers some claims, just not the plaintiff's particular claim.  *See id.*  And here, the Trumbull Policy still provides coverage for abrupt collapses that render the home uninhabitable, provided that they result from a covered cause.   At oral argument in the *Alexander* case, Judge Underhill provided

a colorful example of a situation in which the "abrupt collapse" formulation would provide

coverage, even in a long-term decay scenario:

> Let's use insect damage.  There's termites in the house.  No
> collapse.  They're eating away; every day they're eating away.  No
> collapse.  They keep eating away.  Finally, they eat enough that the
> beam fails. . . . Now there's coverage.  Now you have a collapse or
> falling in.  The fact that it was caused by termites and it was a slow
> process doesn't mean you didn't have an abrupt collapse.  You did,
> when the beam failed and there was literally a falling of the beam,
> a failure of the beam.

Tr. of July 7, 2016 Hrg., *Alexander v. Gen. Ins. Co. of Am.,* No. 3:16-cv-00059 (SRU), ECF No.

22, at 13-14 (D. Conn. July 20, 2016).  Because Trumbull's collapse coverage is not constructed

so that it is incapable of paying a claim, the "illusory coverage" argument must be rejected.

Ms. Gribbon may also urge the Court to apply the doctrine of "economic waste" to the

interpretation of the Trumbull Policy, and hold that she should not have to "await an actual

collapse."  Judge Underhill quickly dispatched this argument in *Alexander,* however, noting that

it is a "policy argument" and "not one that [a district court] can take up."  *Id.* at 21.  And the

Connecticut Supreme Court's "economic waste" jurisprudence entirely supports that view.

While it is true that a court can use the doctrine of economic waste as a tool for interpreting

ambiguous insurance policy provisions, *see Beach v. Middlesex Mut. Assur. Co.,* 205 Conn. 246,

253 n.2 (1987), it cannot be used to substitute a plaintiff's or a court's public policy preferences

for an unambiguous contractual term.  *See DiLullo v. Joseph,* 259 Conn. 847, 851-54 (2002)

(doctrine is a "default rule" that applies only when parties have not "allocate[]d their risks and

coverages by specific agreement"); *Middlesex Mut. Assur. Co. v. Vaszil,* 279 Conn. 28, 34-35

(2006) (parties are "always free" to contract for "a different rule to apply to their, or their

insurers', relationship").

-20-

### 3. Ms. Gribbon has not plausibly alleged a loss within the policy period of her lone Trumbull policy.

The Trumbull Policy insures only those covered losses that occur within its one-year period of insurance.  It expressly provides that "[t]his policy applies only to loss which occurs during the policy period."  (Ex. A to Belcourt Decl., at TRUM000062.)

Ms. Gribbon has not plausibly alleged a loss within Trumbull's policy period.  To be sure, she claims that "[d]irect physical loss occurred during Trumbull Insurance Company's policy period."  (Compl. ¶ 377.)  But she *also* claims that her loss occurred during CSAA's and Standard Fire's policy periods.  (*Id.* ¶¶ 351, 390.)  Standard Fire insured Ms. Gribbon's house for a decade-long period *before* Trumbull did.  (*Id.* ¶ 346.)  Her claims against these other insurers render her allegations against Trumbull implausible.

When an insurance policyholder affirmatively alleges that her loss occurred before the inception of the company's policy, her claim is properly dismissed.  *Pantoja v. Banco Popular,* 545 F. App'x 47, 49 (2d Cir. 2013).  In *Pantoja,* the policyholder's complaint alleged "(1) [the insurer's] policy was effective from August 2008 to August 2010; (2) the policy stated it provided coverage only for losses accruing during the policy period; and (3) the damage to the property occurred in 2007."  *Id.*  Because the policyholder alleged that his loss occurred before the company's period of coverage began, his claim "lack[ed] facial plausibility, because [he] alleged damage predating the policy."  *Id.* (quoting *Iqbal,* 556 U.S. at 678).  Here, Ms. Gribbon has done what the policyholder in *Pantoja* did.  The Trumbull Policy did not incept until 2015 – after the Standard Fire policies – and accordingly, Ms. Gribbon has affirmatively alleged that the loss predated Trumbull's policy period.  (*Compare* Compl. ¶¶ 351 (alleging loss occurred within Standard Fire's policy periods) *with* ¶ 377 (alleging that loss occurred during Trumbull policy period)).

-21-

Ms. Gribbon will no doubt contend that Rule 8(d) entitles her to plead alternatively that she is covered by CSAA, Standard Fire, *or* Trumbull.  Yet while the rule permits her to plead inconsistent *theories*, she is not nearly as free to plead inconsistent *facts*.  "Although Rule 8(d)(3) allows parties to plead alternative legal theories, it does not permit inconsistent assertions of facts within the allegations."  *XL Spec. Ins. Co. v. Otto Naumann, Ltd.,* No. 12-cv-8224 (DAB), 2015 U.S. Dist. LEXIS 45028, at *4 (S.D.N.Y. Mar. 31, 2015) (quoting *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 407 (S.D.N.Y. 2001)).  At best, "a pleader may assert contradictory statements of fact only when legitimately in doubt about the facts in question."  *2004 Stuart Moldaw Tr. v. XE L.I.F.E., LLC,* 642 F. Supp. 2d 226, 240 (S.D.N.Y. 2009) (quoting *Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996)).  Here, Ms. Gribbon could not legitimately be in doubt about the date of her claim.  She alleges that her house collapsed, (Compl. ¶¶ 373-74), and no homeowner could plausibly claim not to know the date of such an event.  Put simply, Ms. Gribbon pled an implausible claim against Trumbull when she affirmatively pled that her loss happened before Trumbull's policy began, and she cannot save that claim from dismissal by appealing to Rule 8(d).

Ms. Gribbon may also contend that she can plausibly plead claims against all three of her insurers under the so-called "continuous trigger" theory,[5] but Judge Meyer has already rejected

---

[5]     The "continuous trigger" theory is a special rule for certain "long-tail toxic tort" claims under liability insurance policies.  *R.T. Vanderbilt Co., Inc. v. Hartford Accident & Indem. Co.,* 171 Conn. App. 61, 158 (2017).  When, say, an asbestos worker breathes in asbestos particles in 1960, but his asbestos-related disease does not manifest itself until 1980, the "continuous trigger" theory would allow the asbestos manufacturer to invoke all liability insurance policies in force from 1960 to 1980.  *See Sec. Ins. Co. v. Lumbermens Mut. Cas. Co.,* 264 Conn. 688, 698 n.12 (2003) (describing operation of various liability insurance "trigger" theories). The theory is inapplicable to first-party property insurance policies. *See, e.g., Winding Hills Condo. Ass'n, Inc. v. N. Am. Spec. Ins. Co.,* 752 A.2d 837, 839-40 (N.J. App. Div. 2000) (state appellate court that applies continuous trigger to liability insurance cases nevertheless "reject[s] . . . the thesis that the continuous trigger rule applies to first-party property coverage").  Thus, if Ms. Gribbon were to appeal to the continuous trigger theory, her appeal should be rejected for the additional reason that the continuous trigger is inapplicable to property insurance.

that claim, and for good reason. *Kowalshyn v. Excelsior Ins. Co.,* No. 3:16-cv-00148 (JAM), 2018 WL 888724, at *3 (D. Conn. Feb. 13, 2018). The continuous trigger "applies to the distinct problem of long-tail toxic tort claims" – in other words, disease claims where a toxin "continually reinjure[s] the body for decades after initial exposure." *Id.* (quotation marks and citation omitted). "But unlike cases involving gradual environmental contamination or gradual progression of a disease, coverage for defective concrete foundation cases is not triggered until there is a 'collapse." *Id.* at *4. "The 'collapse' itself did not occur innumerable times over the years, unlike the injuries or losses in environmental or disease cases." *Id.* Stated differently, courts sensibly view a collapse as happening at a distinct point in time – in contrast to toxic tort claims, which some courts view as happening continuously over years. Because a collapse happens at a distinct time, Ms. Gribbon cannot plausibly claim that her collapse happened in 2004 *and* 2011 *and* 2015, as she apparently attempts to do against Standard Fire and Trumbull in Counts Seventeen, Eighteen and Nineteen.

To summarize, the contract breach claim asserted against Trumbull in Count Nineteen should be dismissed. The claims in that count are indistinguishable from the claims that courts dismissed in *Alexander, Jemiola, Hurlburt,* and numerous other cases. Ms. Gribbon's claim clearly falls outside the Trumbull Policy's definition of "collapse," because her pleading describes a gradual process – not an "abrupt falling down or caving in" – and because it acknowledges that she is still occupying her house. And, as noted above, she has not plausibly pled a loss within the policy period of the Trumbull Policy.

### C.    Counts 83, 129 and 175 Should Also Be Dismissed.

The contract breach claim attempted in Count Nineteen is not the only claim that Ms. Gribbon asserts against Trumbull. She also seeks a declaratory judgment of coverage (Count 83), and alleges that Trumbull breached the covenant of good faith and fair dealing (Count 129)

and CUTPA and CUIPA (Count 175).  These claims should be dismissed for the reasons stated in the Joint Brief.  (ECF No. 497-2.)

There are additional reasons, specific to Trumbull, why the CUTPA/CUIPA claim in Count 175 should be dismissed.  In that count, Ms. Gribbon complains about the Insurance Services Office's policy language change, by which the words "abrupt falling down or caving in" came to be part of that organization's form.  (Compl. ¶ 2824.)  But as her lone Trumbull Policy shows, that change did not happen while Ms. Gribbon was insured by Trumbull.  She had one and only one policy with Trumbull, (*id.* ¶ 373), and it had the "abrupt falling down or caving in" language.  (Ex. A to Belcourt Decl., at TRUM000009.)  Her complaint about the policy language change therefore cannot properly be directed at Trumbull.

Ms. Gribbon claims that Trumbull violated CUTPA and CUIPA when it allegedly sold her "ephemeral coverage," (Compl. ¶¶ 2826-27), but this claim must fail too.  In Section II.B.2 above, Trumbull explained why its coverage is not ephemeral.  But there another reason as well.  Ms. Gribbon's "ephemeral coverage" claim is based exclusively on those provisions of CUIPA that bar insurers from misrepresenting their policies.  (Compl. ¶¶ 2826-27) (citing Conn. Gen. Stat. §§ 38a-816(1) and (6)(A)).  The Connecticut Supreme Court has held that a complaint under CUIPA's misrepresentation provisions is legally insufficient unless the plaintiff alleges all of the elements of the common law tort of misrepresentation – that is, "(1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result."  *Nazami v. Patrons Mut. Ins. Co.,* 280 Conn. 619, 625-26 (2006).  Ms. Gribbon, however, has not alleged that Trumbull made any *representation* to her, let alone a *mis*representation.  To plead a plausible CUTPA/CUIPA misrepresentation claim against

-24-

Trumbull, Ms. Gribbon would have had to plead, at a minimum, that Trumbull told her that its policy would cover cracking basements in homes that are still standing; that it did so knowing that the policy would not respond; and that she reasonably relied on Trumbull's statement in deciding which policy to purchase.  Count 175 says none of those things, and it should be dismissed for that additional reason.

### D.   Once All of Ms. Gribbon's Claims Have Been Dismissed, the Case Must Be Dismissed In Its Entirety As to Trumbull.

Ms. Gribbon purports to bring her claims not only in her own right, but also "on behalf of all similarly-situated homeowners in Connecticut."  (Compl., ¶¶ 1337, 1967, 2836.)  Once the Court dismisses her claims, however, Trumbull should be dismissed from the case in its entirety.  No other named plaintiff claims to have had a policy with Trumbull.  (*Id.*, Counts 1-18 and 20-46.)  By extension, no remaining named plaintiff has standing to represent these allegedly "similarly situated homeowners" in claims against Trumbull.

"Standing," it has long been recognized, "is not dispensed in gross."  *Lewis v. Casey,* 518 U.S. 343, 358 n.6 (1996).  "[F]or every named defendant" included in a case "there must be at least one named plaintiff who can assert a claim directly against that defendant."  *Cent. States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC,* 504 F.3d 229, 241 (2d Cir. 2012).  That is to say, there must be at least one named plaintiff who has "suffered an injury in fact" that is "traceable to the challenged action" of the particular defendant and "will be redressed by a favorable decision."  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) (citation omitted).

This rule applies with full force to complaints styled as putative class actions.  *Mahon v. Ticor Title Ins. Co.,* 683 F.3d 59, 64 (2d Cir. 2012); *see* 5 William Rubenstein, *Newberg on Class Actions* § 2:5 (5th ed.) ("[C]lass representatives do not have standing to sue defendants

who have not injured them even if those defendants have allegedly injured other class members."); 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 4:28 (13th ed. 2016) ("In contract actions a named plaintiff has standing to sue only as to agreements to which it is a party and thus has rights to assert.").  Simply put, "a plaintiff's injury resulting from the conduct of one defendant" has no "bearing on her Article III standing to sue other defendants, even if they engaged in similar conduct that injured other parties."  *Mahon,* 683 F.3d at 65; *see also LIBOR-Based Fin. Instruments Antitrust Litig.,* 27 F. Supp. 3d 447 (S.D.N.Y. 2014); *In re Trilegiant Corp.,* No. 3:12-cv-00396 (VLB), 2014 U.S. Dist. LEXIS 42570 (D. Conn. Mar. 28, 2014).

These principles compel the dismissal of Trumbull from this litigation once the individual claims of Ms. Gribbon are out of the case.  It is Ms. Gribbon, and only Ms. Gribbon, who claims to have been injured by Trumbull's alleged failure to pay under the terms of an insurance contract.  Aside from her individual claims, there is no other named plaintiff in this case who purchased insurance from Trumbull.  (Compl., Counts 1-18 and 20-46) (claims of other thirty plaintiffs, alleging insurance with other companies).  With Ms. Gribbon out of the case, then, it is "impossible for this Court to find that the Plaintiffs have stated a concrete, particularized, and actual injury that is traceable to [Trumbull's] conduct."  *In re Trilegiant Corp.,* 2014 U.S. Dist. LEXIS 42570 at *15.  The Court should therefore dismiss Trumbull from the case entirely.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant Trumbull's motion, dismiss Counts Nineteen, 83, 129 and 175, and dismiss Trumbull from the case entirely.

DEFENDANT, TRUMBULL
INSURANCE COMPANY,

By:  ___*/s/ Thomas O. Farrish*___
          Thomas O. Farrish (ct26917)
          *tofarrish@daypitney.com*
          John W. Cerreta (ct28919)
          *jcerreta@daypitney.com*
          Daniel J. Raccuia (ct29535)
          *draccuia@daypitney.com*
          Jennifer L. Shukla (ct30204)
          *jshukla@daypitney.com*
          Day Pitney LLP
          242 Trumbull Street
          Hartford, CT  06103-3499
          (860) 275-0100
          (860) 275-0343 (fax)

          Michael P. Mullins (ct29746)
          *mmullins@daypitney.com*
          Day Pitney LLP
          One International Place
          Boston, MA 02110
          (617) 345-4600
          (617) 345-4745

          Its Attorneys

## **CERTIFICATION**

I hereby certify that on the above date a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

          ___*/s/ Thomas O. Farrish*___
          Thomas O. Farrish