UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL HALLORAN, et al., | : | DOCKET NO. 3:16-CV-00133-VAB |
| | : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | |
| | : | |
| HARLEYSVILLE PREFERRED | : | |
| INSURANCE CO., et al., | : | |
| | : | |
| Defendants. | : | APRIL 6, 2018 |

**MEMORANDUM OF LAW IN SUPPORT OF
NEW LONDON COUNTY MUTUAL INSURANCE COMPANY'S
MOTION TO DISMISS**

Respectfully submitted by:

Thomas O. Farrish (ct26917)
John W. Cerreta (ct28919)
Daniel J. Raccuia (ct29535)
Jennifer L. Shukla (ct30204)
Day Pitney LLP
242 Trumbull Street
Hartford, CT  06103

Michael P. Mullins (ct29746)
Day Pitney LLP
One International Place
Boston, MA 02110

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................ 2

III.   THE APPLICABLE LEGAL STANDARDS ..................................................... 5

      A.     Standards Governing Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6) ............ 5

      B.     Standards Governing the Interpretation of Insurance Contracts ............................ 6

IV.   THE CONTRACT BREACH CLAIM ASSERTED IN COUNT 32 IS BARRED
       BY THE "SUIT AGAINST US" CLAUSE OF THE NLC POLICY ................................ 6

      A.     The Suit Limitation Clause Is A Valid Contractual Obligation, and the
            Masciovecchios' Claim Should Be Dismissed for Failure to Comply With
            It ............................................................................................................................ 6

      B.     All of the Masciovecchios' Anticipated Defenses Lack Merit ............................ 11

      C.     Even if the Masciovecchios Were to Claim That Their Suit Limitation
            Period Did Not Begin Running Until December, 2015, Their Action
            Would Still Be Untimely ..................................................................................... 15

      D.     The Masciovecchios Cannot Save Their Untimely Claim By Arguing That
            It "Relates Back" to Their Earlier Filings ............................................................ 18

V.    THE CONTRACT BREACH CLAIM IN COUNT 32 SHOULD ALSO BE
       DISMISSED BECAUSE IT DESCRIBES A CLAIM THAT IS NOT COVERED
       UNDER NLC'S FORM OF POLICY .................................................................. 23

      A.     There Is No Coverage for the Masciovecchios' Claim Under NLC's
            Coverage A .......................................................................................................... 24

      B.     The Masciovecchios Have Not Pled A Plausible "Collapse" Under the
            New Form ............................................................................................................ 25

      C.     The Masciovecchios Have Not Pled A Plausible "Collapse" Under the Old
            Form ..................................................................................................................... 29

VI.   ONCE ALL OF THE MASCIOVECCHIOS' COUNTS HAVE BEEN
       DISMISSED, THE COMPLAINT SHOULD BE DISMISSED IN ITS
       ENTIRETY AS TO NLC .................................................................................... 32

IX.   CONCLUSION ................................................................................................... 34

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alam v. Certain Underwriters at Lloyd's London*, No. 3:10-cv-716 (RNC), 2011
 U.S. Dist. LEXIS 113605 (D. Conn. Sept. 30, 2011) ............................................................9

*Alexander v. General Insurance Co. of America*, No. 3:16-cv-00059 (SRU), 2017
 WL 188134 (D. Conn. Jan. 17, 2017)......................................................................................28

*Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1973)................................................................22

*Arrowood Indem. Co. v. King*, 304 Conn. 179 (2012)..................................................................7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................5

*Austin-Casares v. Safeco Ins. Co. of Am.*, 310 Conn. 640 (2013) ..............................................19

*Bacewicz v. NGM Ins. Co.*, No. 3:08-cv-1530, 2010 U.S. Dist. LEXIS 77682
 (JCH) (D. Conn. Aug. 2, 2010)..........................................................................................15, 32

*Bates v. Cambridge Mutual Fire Insurance Co.*, No. LLI-CV-16-6013380-S, 2016
 Conn. Super. LEXIS 2328 (Aug. 30, 2016)............................................................................13

*Beach v. Middlesex Mutual Assurance Co.*, 205 Conn. 246 (1987) ................................30, 31, 32

*Becker v. Sherb*, No. 3:07-cv-1643 (JCH), 2008 U.S. Dist. LEXIS 48137 (D.
 Conn. June 24, 2008) ..............................................................................................................18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................5

*Belz v. Peerless Ins. Co.*, 204 F. Supp. 3d 457 (D. Conn. 2016) ......................................14, 15, 25

*Bocchino v. Nationwide Mut. Fire Ins. Co.*, 246 Conn. 378 (1998) ....................................*Passim*

*Boerger v. Commerce Ins. Servs.*, No. 04-1337, 2005 U.S. Dist. LEXIS 30239 (D.
 N.J. Nov. 28, 2005)..................................................................................................................19

*Bouchard v. DHL Express (USA)*, 716 F. Supp. 2d 202 (D. Conn. 2010)...................................17

*Boyce v. Allstate Ins. Co.*, 236 Conn. 375 (1996)................................................................10, 12

*Brown v. State Farm Fire & Casualty Co.*, No. 3:10-cv-833 (CFD), 2011 U.S.
 Dist. LEXIS 106738 (D. Conn. Sept. 20, 2011) .......................................................................9

*Burress v. Ind. Farmers Mut. Ins. Grp.*, 626 N.E.2d 501 (Ind. Ct. App. 1993) ...........................15

*Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760 (2013) .......................................6

*Carter v. Harleysville Worcester Insurance Co.*, No. NNI-CV-04-0286830-S,
2005 Conn. Super. LEXIS 2741 (Oct. 11, 2005)....................................................10

*Cent. States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed
Care, LLC*, 504 F.3d 229 (2d Cir. 2012) ...............................................................33

*Cocco v. Preferred Mutual Insurance Co.*,  637 F. Supp. 94 (D. Conn. 1986) ........................9, 16

*Commerce Bank, N.A. v. AMCO Ins. Co.*, No. 08-cv-669-JPG, 2009 U.S. Dist.
LEXIS 21082 (S.D. Ill. Mar. 17, 2009) ....................................................................8

*Cullen v. Margiotta*, 811 F.2d 698 (2d Cir. 1987)......................................................................22

*Double G.G. Leasing, LLC v. Underwriters at Lloyds*, No. AAN-CV-07-5003003,
2008 Conn. Super. LEXIS 1305 (May 16, 2008), *aff'd*, 116 Conn. App. 417
(2009)...........................................................................................................................13, 14

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)...................................................................15

*Ford v. Anderson*, No. HHD-CV-00-0804029-S, 2003 Conn. Super. LEXIS 3041
(Oct. 29, 2003) ...........................................................................................................20

*Gen. State Auth. v. Planet Ins. Co.*, 464 Pa. 162 (1975) ............................................................15

*Geron v. Seyfarth Shaw LLP (In re Thelen LLP)*, 736 F.3d 213 (2d Cir. 2013)...........................4

*Given v. Commerce Ins. Co.*, 440 Mass. 207 (2003) ..................................................................13

*Grimes v. Hous. Auth.*, 242 Conn. 236 (1997).........................................................................22

*Holmes v. Safeco Ins. Co. of Am.*, 171 Conn. App. 597 (2017)....................................................8

*Hurlburt v. Massachusetts Homeland Insurance Co.*, No. 3:17-cv-00503 (VAB),
2018 WL 1035810 (D. Conn. Feb. 23, 2018) ...............................................4, 27, 28

*Jones v. Unum Life Ins. Co. of Am.*, No. 4:06-cv-00547, 2006 U.S. Dist. LEXIS
87384 (E.D. Ark. Nov. 29, 2006) ..............................................................................23

*In re Katrina Canal Breaches Litig.*, No. 05-4182, 2008 U.S. Dist. LEXIS 91384
(E.D. La. Aug. 26, 2008) ........................................................................................20, 21

*Kaufman v. Sirius XM Radio, Inc.*, 980 N.Y.S.2d 276 (Sup. Ct. 2013)......................................22

*Kierstead v. State Farm Fire & Cas. Co.*, 160 N.H. 681 (2010) .................................................14

*Knapp v. New London Cty. Mut. Ins. Co.*, NNH-No. CV-12-6034028-S, 2015
Conn. Super. LEXIS 1527  (June 1, 2015) ................................................................13

*Lacasse v. Burns*, 214 Conn. 464 (1990) ....................................................................16

*Lehman XS Tr. v. Greenpoint Mortg. Funding, Inc.*, No. 12-Civ.-7935, 2017 U.S. Dist. LEXIS 54667 (S.D.N.Y. Mar. 29, 2017) ................................................19, 21

*Lewis v. Casey*, 518 U.S. 343 (1996) ........................................................................33

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-MDL-2262 (NRB), 2016 U.S. Dist. LEXIS 51190 (S.D.N.Y. Apr. 15, 2016) .................................22, 33

*Lichter Real Estate No. Three v. Greater N.Y. Ins. Co.*, 43 A.D.3d 366 (N.Y. App. Div. 1st Dep't 2007) ............................................................................................14

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................33

*Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59 (2d Cir. 2012) .........................................33

*Makufka v. CSAA Fire & Cas. Ins. Co.*, No. 3:16-cv-00567 (VLB), 2018 WL 465775 (D. Conn. Jan. 18, 2018) ..............................................................................28

*Miller v. Holzmann*, No. 95-1231, 2006 U.S. Dist. LEXIS 9165 (D.D.C. Mar. 9, 2006) .......................................................................................................................20

*Monteiro v. Am. Home Assur. Co.*, 177 Conn. 281 (1979) ........................................10

*Morgan Distrib., Inc. v. Unidynamic Corp.*, 868 F.2d 992 (8th Cir. 1989) ................20

*Nida v. State Farm Fire & Casualty Co.*, 454 So. 2d 328 (La. Ct. App. 1984) .....29, 31

*Nurse v. Omega US Ins., Inc.*, 88 Mass. App. Ct. 458 (2015) ....................................14

*O'Donnell v. State*, No. NNH-CV-03-0482928, 2004 Conn. Super. LEXIS 2596 (Sept. 14, 2004) ........................................................................................................19

*P&S Printing, LLC v. Tubelite, Inc.*, No. 3:14-cv-1441 (VAB), 2015 U.S. Dist. LEXIS 93060 (D. Conn. July 17, 2015) .....................................................................5

*Parker v. Worcester Ins. Co.*, 247 F.3d 1 (1st Cir. 2001) .....................................14, 15

*Perfito v. Aetna Cas. & Sur. Co.*, No. HHD-CV-90-0386733-S, 1994 Conn. Super. LEXIS 1150 (May 3, 1994) .......................................................................12

*Police & Fire Ret. Sys. v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013) ................18

*Prudential-LMI Comm'l Ins. Co. v. Super. Ct.*, 51 Cal. 3d 674 (1990) ......................15

*Queen Anne Park Homeowners Ass'n v. State Farm Fire & Casualty Co.*, 352 P.3d 790 (Wash. 2015) ..............................................................................................30

*R.T. Vanderbilt Co. v. Cont'l Cas. Co.*, 273 Conn. 448 (2005) .......................................................6

*In re Rationis Enters., Inc. of Panama*, 45 F. Supp. 2d 365 (S.D.N.Y. 1999)..............................20

*Resolution Tr. Corp. v. Norris*, 830 F. Supp. 351 (S.D. Tex. 1993)..............................................20

*Riggs v. Standard Fire Insurance Co.*, No. HHD-CV-05-4010671-S, 2006 Conn.
    Super. LEXIS 407 (Feb. 7, 2006) ....................................................................................10, 13

*Robb v. Conn. Bd. of Veterinary Med.*, 157 F. Supp. 3d 130 (D. Conn. 2016) ..............................5

*Roberts v. Amica Mut. Ins. Co.*, No. 3:14-cv-1589 (SRU), 2015 U.S. Dist. LEXIS
    158266 (D. Conn. Nov. 24, 2015) ...................................................................................*Passim*

*Seaboard Burner Corp. v. DeLong*, 145 Conn. 300 (1958)...........................................................16

*Smith v. Bayer Corp.*, 564 U.S. 299 (2011) ..................................................................................22

*South v. Saab Cars USA, Inc.*, 28 F.3d 9 (2d Cir. 1994) ........................................................15, 17

*Springdale Donuts, Inc. v. Aetna Cas. & Sur. Co.*, 247 Conn. 801 (1999) ....................................6

*Stevelman v. Alias Research Inc.*, 174 F.3d 79 (2d Cir. 1999) ....................................................19

*Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 808 F. Supp. 1474
    (D. Nev. 1992) ...........................................................................................................................20

*In re Trilegiant Corp.*, No. 3:12-cv-00396 (VLB), 2014 U.S. Dist. LEXIS 42570
    (D. Conn. Mar. 28, 2014).....................................................................................................33, 34

*United States v. Baylor Univ. Med. Ctr.*, 469 F.3d 263 (2d Cir. 2006) .......................................19

*Vincent v. Money Store*, 915 F. Supp. 2d 553 (S.D.N.Y. 2013) ..................................................22

*Voris v. Middlesex Mut. Assur. Co.*, 297 Conn. 589 (2010) ....................................................7, 15

*Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980)................................................................15, 16

*Yollin v. Holland Am. Cruises, Inc.*, 468 N.Y.S.2d 873 (App. Div. 1st Dep't 1983) ...................23

**Statutes**

Conn. Gen. Stat. § 38a-307 .........................................................................................................8, 15

Conn. Gen. Stat. § 38a-308 .........................................................................................................8, 15

Conn. Gen. Stat. § 52-592...............................................................................................................11

**Rules**

D. Conn. L. Civ. R. 7(a)1.................................................................................................1

Fed. R. Civ. P. 3.................................................................................................16, 17

Fed. R. Civ. P. 4(d).................................................................................................17

Fed. R. Civ. P. 4(d)(1).................................................................................................17

Fed. R. Civ. P. 4(d)(4).................................................................................................17

Fed. R. Civ. P. 4(h)(1).................................................................................................17

Fed. R. Civ. P. 12(b)(6).................................................................................................*Passim*

Fed. R. Civ. P. 15.................................................................................................11, 18, 19

Fed. R. Civ. P.15(c).................................................................................................19

Fed. R. Civ. P. 15(c)(1)(A).................................................................................................19

Fed. R. Civ. P. 15(c)(1)(B).................................................................................................18

**Other Authorities**

Charles Alan Wright et al., *Federal Practice and Procedure* § 1497 (3d ed. 2017)....................19

G. Couch, *Insurance* § 22:15 (3d ed. 1995).................................................................................................13

1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 4:28 (13th ed. 2016) ........................33

Kathleen McWilliams, *Class Action Suit Filed On Behalf of Homeowners with Failing Foundations*, Hartford Courant (Feb. 2, 2016) *Available at* www.courant.com/news/.../hc-class-action-lawsuit-concrete-0203-20160202-story.html (last accessed Apr. 4, 2018)..........................................................................................3, 21

5 William Rubenstein, *Newberg on Class Actions* § 2:5 (5th ed.) ................................................33

## I.    INTRODUCTION.

Pursuant to D. Conn. L. Civ. R. 7(a)1, the defendant, New London County Mutual Insurance Company ("NLC"), respectfully submits this memorandum of law in support of its motion to dismiss all of the claims asserted against it in the plaintiffs' "Fourth Amended Class Action Complaint." ("Compl.," ECF No. 488.)

NLC is a small, mutual insurance company based in Norwich.  (*See* Compl. ¶ 44.)  It insured only one of the many homes in this case, the one belonging to Kenneth and Victoria Masciovecchio.  (*Id.* Count 32.)  Although NLC has not insured the Masciovecchios for years – the last policy under which they are suing expired almost a decade ago (*id.* ¶ 616) – they nevertheless claim that NLC breached its policy contract when it declined to pay for cracks in their basement walls that they first discovered in 2015.  (*Id.* Count 32.)  They also seek a declaratory judgment of coverage (Count 67); allege that NLC breached the covenant of good faith and fair dealing (Count 113); and seek relief under the Connecticut Unfair Insurance Practices Act ("CUIPA") and Connecticut Unfair Trade Practices Act ("CUTPA") (Count 159).

The contract breach claim asserted in Count 32 should be dismissed, for two principal reasons.  First, the claim is plainly barred by the one-year "suit limitation" clause in NLC's policy.  The Masciovecchios affirmatively plead that they discovered their loss in September of 2015, (Compl. ¶ 604), but they did not even attempt to assert a contract breach claim against NLC until October 31, 2016.  Their suit is therefore barred under the provision of the NLC policy that requires actions to be "started within one year after the date of loss." *Bocchino v. Nationwide Mut. Fire Ins. Co.,* 246 Conn. 378, 384 (1998); and discussion, Section IV *infra.* Judge Underhill has  dismissed a cracking basement case under strikingly similar circumstances, *Roberts v. Amica Mut. Ins. Co.,* No. 3:14-cv-1589 (SRU), 2015 U.S. Dist. LEXIS 158266 (D.

Conn. Nov. 24, 2015), and this Court should do likewise.  Second, even if the Masciovecchios'

contract breach claim had been timely – and it is not – it would still merit dismissal.  NLC's form

of homeowners policy simply does not cover cracked basement walls.  (*See* discussion, Section

V *infra*.)

The declaratory judgment, "bad faith" and CUTPA/CUIPA counts should likewise be

dismissed for the reasons discussed in the Memorandum of Law in Support of Certain

Defendants' Joint Motion to Dismiss Counts 47 to 184 of the Fourth Amended Complaint, which

NLC joins and incorporates by reference into this memorandum.  (ECF No. 497-2.)  Finally, the

putative class action claims against NLC should be dismissed too.  Once the Court dismisses the

Masciovecchios' claims, there will be no plaintiff in the case who had any connection with NLC.

The putative class claims cannot proceed if there is no such plaintiff.  (*See* discussion, Section VI

*infra.*)  NLC should therefore be entirely dismissed from the case.

## II.   FACTUAL BACKGROUND.

Kenneth and Victoria Masciovecchio own the home located at 54 Portland Drive in

Ashford.  (Compl. ¶ 20.)  They insured the home with Homesite Insurance Company from 2009

to 2016.  (*Id.* ¶ 644.)  The Masciovecchios say that they "discovered damage to their basement

walls" in September of 2015, (*id.* ¶ 651), and accordingly they placed a claim with Homesite

that same month.  (*Id.*.)  After Homesite told them that they were not covered, (*id.* ¶ 652), they

filed suit against it on January 29, 2016.  (Init. Compl., ECF No. 1, Count II.)

The Masciovecchios' suit against Homesite made them two of the first seven plaintiffs in

this case.  (*See id.*)  At that time, it was their counsel's strategy to sue every insurance company

licensed to write homeowners insurance in Connecticut, even if none of the named plaintiffs had

ever had a policy with a given company.  *See* Kathleen McWilliams, *Class Action Suit Filed On*

-2-

*Behalf of Homeowners with Failing Foundations*, Hartford Courant (Feb. 2, 2016) (quoting plaintiffs' counsel as intending to sue every company that "'either write[s] policies or ha[s] homeowners' insurance policies active'" in Connecticut).[1]  In pursuit of this strategy, the then-plaintiffs purported to sue NLC in a First Amended Complaint dated March 17, 2016.  (ECF No. 122.)  No plaintiff – not even the Masciovecchios – claimed to have been insured by NLC in that First Amended Complaint.  (*Id.*)  By extension, there was no claim for breach of contract in that complaint.

Sometime during the next seven months, the Masciovecchios evidently discovered that they had been insured with NLC long ago.  On October 30, 2016, they placed an insurance claim with NLC for the first time, claiming the very same damage for which they had sought coverage from Homesite.  (Compl. ¶ 623 ("The Masciovecchios put NLC on notice of their claim on October 30, 2016"); *see also id.* ¶¶ 618, 630 (confirming that claims against NLC and Homesite were for same damage)).  Only a day later, they attempted to initiate a contract breach suit against NLC.[2]  (Mot. for Leave to Amend, ECF No. 322, Oct. 31, 2016) (adding contract breach claim against NLC to the case for the first time).  At that time, they asserted their contract breach claim against a single policy that had expired almost fourteen years before.  (Prop. 3d Am. Compl., ECF No. 332-1, ¶ 585) (purporting to sue under policy that ran from 2002 to 2003).  Since then, they have decided to try to invoke not just this one policy, but all of the policies that they had with NLC from 1993 to 2009.  (Compl. ¶ 616.)

All of NLC's policies contain a "Suit Against Us" clause that says:  "No action can be brought unless the policy provisions have been complied with and the action is started within one

---

[1]     *Available at* www.courant.com/news/.../hc-class-action-lawsuit-concrete-0203-20160202-story.html (last accessed Apr. 4, 2018).

[2]     NLC uses the word "attempted" because the Masciovecchios did not validly commence suit until July 27, 2017, as will be discussed in Section IV below.

year after the date of loss."  (*See* Ex. 1 to Decl. of Janice Ingarra, at Bates p. NLC-018; Ex. 2 to Ingarra Decl., at Bates p. NLC-042.)[3]  All of the policies also exclude losses caused by defects in construction materials from their principal "Dwelling" coverage, and they exclude losses caused by "expansion, including resultant cracking, of . . . foundations [or] walls" from that coverage as well. (*E.g.,* Ex. 1 to Ingarra Decl. at NLC-014.)

NLC's newer policies contain the type of collapse coverage that this Court considered in *Hurlburt v. Massachusetts Homeland Insurance Co.,* No. 3:17-cv-00503 (VAB), 2018 WL 1035810 (D. Conn. Feb. 23, 2018) – that is, coverage that defines a collapse as "an abrupt falling down or caving in" that renders the house incapable of being "occupied for its current intended purpose."  (Ex. 2 to Ingarra Decl. at NLC-051.)   NLC's older policies exclude "settling, cracking, shrinking, bulging or expansion" from their Additional Coverage for "collapse."  (Ex. 1 to Ingarra Decl. at NLC-012.)  Other relevant factual allegations and policy provisions will be set forth below.

---

[3]     Although the Masciovecchios did not attach their policies to their complaint, the Court can nevertheless consider them on a motion to dismiss under Rule 12(b)(6).  *Geron v. Seyfarth Shaw LLP (In re Thelen LLP),* 736 F.3d 213, 219 (2d Cir. 2013) ("In adjudicating a motion to dismiss, a court may consider . . . any statements or documents incorporated in[to the complaint] by reference, and any document upon which the complaint heavily relies.").  Following this principle, courts routinely consider insurance policy exhibits when entertaining motions to dismiss in insurance coverage cases.  *E.g., Hurlburt,* 2018 WL 1035810 at *1-2 (considering insurance policy that was not attached to complaint but was provided by movant insurance company as exhibit to motion to dismiss).

The Masciovecchios are attempting to claim coverage under sixteen annual NLC policies.  Rather than attach all sixteen, NLC has attached two – the 2002-2003 policy that they referenced in their Substitute Third Amended Complaint, and their final policy for the period 2008-2009 – as Exhibits 1 and 2, respectively, to the Declaration of Janice Ingarra.  All sixteen policies had the form of collapse coverage found in either Exhibit 1 or Exhibit 2.  (Ingarra Decl. ¶ 10.)  NLC would be pleased to provide the other fourteen at the Court's request, or if the Masciovecchios claim in their opposition that these two are somehow not representative.

III.     THE APPLICABLE LEGAL STANDARDS.

A.     Standards Governing Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6).

A claim should be dismissed under Rule 12(b)(6) when it "fail[s] to state a claim upon which relief can be granted."  To avoid dismissal under the rule, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In ruling on a motion to dismiss, courts in the Second Circuit follow a "two-pronged approach." *Robb v. Conn. Bd. of Veterinary Med.,* 157 F. Supp. 3d 130, 137-38 (D. Conn. 2016) (quoting *Iqbal,* 556 U.S. at 679).  First, they begin by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal,* 556 U.S. at 679.  Second, if the complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* A claim is facially plausible if 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *P&S Printing, LLC v. Tubelite, Inc.*, No. 3:14-cv-1441 (VAB), 2015 U.S. Dist. LEXIS 93060,  at *4 (D. Conn. July 17, 2015) (quoting *Iqbal*, 556 U.S. at 678).[4]  When a complaint attempts to plead a claim that, on its face, is barred by a time limitation, it does not state a plausible claim and should be dismissed as a consequence. *See, e.g., Roberts,* 2015 U.S. Dist. LEXIS 158266, at *15-16.

---

[4]     Copies of unreported cases cited in this memorandum of law are attached in an Appendix of Authorities.

B.      **Standards Governing the Interpretation of Insurance Contracts.**

Under Connecticut law, the words of an insurance policy are to be interpreted in accordance with "their natural and ordinary meaning." *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.,* 308 Conn. 760, 773 (2013). Any ambiguities in the contract are ordinarily construed in favor of the insured, *id.,* but "[a] necessary predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous." *Springdale Donuts, Inc. v. Aetna Cas. & Sur. Co.*, 247 Conn. 801, 806 (1999) (internal quotation marks and citation omitted). "[A] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." *R.T. Vanderbilt Co. v. Cont'l Cas. Co.*, 273 Conn. 448, 463 (2005) (internal quotation marks and citation omitted).

IV.   **THE CONTRACT BREACH CLAIM ASSERTED IN COUNT 32 IS BARRED BY THE "SUIT AGAINST US" CLAUSE OF THE NLC POLICY.**

The NLC policies provide that "[n]o action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss." (Ex. 1 to Ingarra Decl., at NLC-018; Ex. 2 to Ingarra Decl., at NLC-042.) The Masciovecchios affirmatively state that they discovered their loss in September of 2015, (Compl. ¶ 604), and they even made an insurance claim with Homesite then. (*Id.* ¶ 635.) Yet they did not file their contract breach complaint until October 31, 2016. The contract breach claim asserted in Count 32 should be dismissed for this reason.

A.      **The Suit Limitation Clause Is A Valid Contractual Obligation, and the Masciovecchios' Claim Should Be Dismissed for Failure to Comply With It.**

Suit limitation provisions in property insurance policies are valid contractual obligations, and the policyholder must comply with them. "[A] provision in a fire insurance policy requiring suit to be brought within one year of the loss is a valid contractual obligation, a failure to comply

therewith is a defense to an action on the policy unless the provision has been waived or unless there is a valid excuse." *Bocchino,* 246 Conn. at 384 (quoting *Monteiro v. Am. Home Assur. Co.,* 177 Conn. 281 (1979)).  Stated differently, "contracting parties are free to adopt an unambiguous contract provision limiting the time in which an insurance claim must be filed," and "when they do so, failure to comply with the terms therein bars recovery." *Voris v. Middlesex Mut. Assur. Co.,* 297 Conn. 589, 600 (2010) (quoting *McGlinchey v. Aetna Cas. & Sur. Co.,* 224 Conn. 133 (1992)) (internal citations and quotation marks omitted).

Suit limitation provisions serve a different purpose than so-called "late notice" provisions, and are therefore even more exactingly enforced.[5]  "A failure to abide by the limitation of action condition in a policy stands on a much different footing than non-compliance with the notice provisions." *Id.* at 599.  A notice provision is designed "to safeguard the insurer from prejudice in processing a claim," and accordingly "where an insurer's interests have not been harmed by a late notice, the reason for the notice condition is lacking." *Id.*  A suit limitation provision, by contrast, is "designed to promote justice by preventing surprises through revival of stale claims, to protect defendants and courts from handling matters in which the search for truth may be impaired by the loss of evidence, to encourage plaintiffs to use reasonable and proper diligence in enforcing their rights, and to prevent fraud." *Id.* at 599-600.  Because suit limitation clauses have these different purposes, "[t]he presence or absence of prejudice is not, nor should it be, a factor in deciding whether an insurer may effectively assert this defense under the policy." *Id.* at 600.

---

[5]      A "late notice" clause governs the time in which the policyholder must provide the insurer with initial notice of her claim.  *See, e.g., Arrowood Indem. Co. v. King,* 304 Conn. 179 (2012).  A suit limitation clause governs the time in which the policyholder must commence a suit to recover under the policy.  *Bocchino,* 246 Conn. at 378.

Because suit limitation clauses "promote justice" and "prevent fraud," the Connecticut legislature affirmatively requires that they be included in property insurance policies. Limitation clauses help prevent stale, difficult-to-investigate claims from driving up the price of property insurance for everyone; as one court has explained, "suit limitations periods allow insurers to charge reduced premiums for the insurance." *Commerce Bank, N.A. v. AMCO Ins. Co.*, No. 08-cv-669-JPG, 2009 U.S. Dist. LEXIS 21082, at *7 (S.D. Ill. Mar. 17, 2009). The legislature therefore requires that suit limitation clauses be included in fire insurance policies, Conn. Gen. Stat. § 38a-307, and also in policies that – like a homeowners policy – cover other risks as well as fire. *Id*. § 38a-308(b)(2)(D) (requiring multi-peril policies to follow suit limitation provision of standard fire policy); *see also Holmes v. Safeco Ins. Co. of Am.,* 171 Conn. App. 597, 604-05 (2017). Today, the legislature requires a two-year suit limitation period. Conn. Gen. Stat. §§ 38a-307 and -308(b)(2)(D) (2017). At the time NLC issued its policies to the Masciovecchios, however, Section 38a-307 required a one-year suit limitation in fire policies. *E.g.,* Conn. Gen. Stat. § 38a-307 (2003) ("The standard form of fire insurance policy of the state of Connecticut" shall include a provision barring suits on the policy "unless commenced within twelve months next after inception of the loss.").

With such strong statutory and public policy support, it is unsurprising that courts in this District regularly enforce suit limitation clauses by dismissing insurance contract breach complaints that are brought outside the limitation period. Indeed, another court in this District has done so in a cracking basement case very much like the Masciovecchios'. *Roberts,* 2015 U.S. Dist. LEXIS 158266, at *15. In that case the plaintiffs' loss "occurred sometime in late October or early November 2012," but they did not serve their suit until February 20, 2015, three months after the expiration of their insurer's two-year suit limitation clause. *Id.* at *7. The court

-8-

dismissed their complaint "on the ground that [they] failed to comply with the contractual suit limitation [provision.]" *Id.* at *15.

Other courts in this District have similarly dismissed claims that were brought outside the limitation period. In *Alam v. Certain Underwriters at Lloyd's London,* for example, Judge Chatigny granted summary judgment to an insurer when the policyholder failed to initiate his suit within the time required by the policy. No. 3:10-cv-716 (RNC), 2011 U.S. Dist. LEXIS 113605, at *4-5 (D. Conn. Sept. 30, 2011). "Connecticut law permits an insurance policy to limit the period within which the insured must file a lawsuit," and the plaintiff's claim failed because he had not started his suit within that period. *Id.* In *Brown v. State Farm Fire & Casualty Co.,* Judge Droney likewise granted summary judgment to an insurer that had been sued outside the limitation period. No. 3:10-cv-833 (CFD), 2011 U.S. Dist. LEXIS 106738, at *10 (D. Conn. Sept. 20, 2011). "Brown's claim for breach of contract against State Farm must have been made within the contractually specified time period," and because he did not do so, the court found "that his action is time-barred." *Id.* And in *Cocco v. Preferred Mutual Insurance Co.,* Judge Zampano granted summary judgment to the insurer even though the policyholder had filed suit within the one-year period, because he did not complete service within the period. 637 F. Supp. 94, 95 (D. Conn. 1986). "[W]hile plaintiff filed suit within one year from the date of the loss, he failed to serve the defendants within that time." *Id.* Because under Connecticut law "a suit is deemed commenced at the time of service, the instant suit must be dismissed as untimely." *Id.* (citation omitted).[6]

---

[6]    NLC acknowledges that some of these cases involved summary judgment motions rather than motions to dismiss under Rule 12(b)(6). But that distinction is immaterial where, as here, the plaintiffs affirmatively pled that they discovered their loss more than a year before commencing suit. (Compl. ¶¶ 604, 635.) *See, e.g., Roberts,* 2015 U.S. Dist. LEXIS 158266 at *7 (dismissing untimely claim at Rule 12 stage where plaintiff pled facts demonstrating untimeliness).

The Connecticut state courts also routinely dismiss insurance contract breach suits that are brought outside the policy's suit limitation period.  In *Carter v. Harleysville Worcester Insurance Co.,* for example, the court granted summary judgment in a case "brought more than one year after the date of loss."  No. NNI-CV-04-0286830-S, 2005 Conn. Super. LEXIS 2741, at *5 (Oct. 11, 2005).  "The policy language is clear and unambiguous and such language is not to be given a tortured interpretation when its plain meaning is apparent."  *Id.* (citing *Heyman Assocs. No. 1 v. Ins. Co. of Pa.,* 231 Conn. 756 (1995)).  In *Riggs v. Standard Fire Insurance Co.,* the court similarly held that the "policy language . . . is clear in requiring that no suit against the insurance company shall be brought unless it is started within one year after the occurrence causing the loss."  No. HHD-CV-05-4010671-S, 2006 Conn. Super. LEXIS 407, at *7 (Feb. 7, 2006).  And even more importantly, the Connecticut Supreme Court has affirmed similar dismissals in several cases.  *Bocchino,* 246 Conn. at 384; *Monteiro,* 177 Conn. at 286-87; *see also Boyce v. Allstate Ins. Co.,* 236 Conn. 375, 388 (1996) (reversing judgment for policyholder and directing entry of judgment for insurer on suit limitation grounds).

Following these authorities, it is clear that the Masciovecchios' contract breach claim against NLC should be dismissed.  The Masciovecchios affirmatively pled that they discovered their loss in September of 2015.  (Compl. ¶ 604.)  And they even placed a claim with Homesite for that loss in September of 2015.  (*Id.* ¶ 635.)  Yet they did not even attempt to start a contract breach suit against NLC until October of 2016.  (*See* Mot. for Leave to Amend, ECF No. 322.)  Moreover, they have no valid excuse for their failure, having been represented by counsel at least since January of 2016.  (*See* Init. Compl., ECF No. 1.)

This Court has already decided a suit limitation issue in this very case, and although the insurer did not prevail then, the Court's reasoning supports the dismissal of the Masciovecchios'

claims against NLC.  As the Court will recall, the defendant Middlesex Mutual Assurance Company opposed the plaintiffs David and Patricia Kandrysawtz's motion to amend their complaint, contending that because the Kandrasawtzes' claims were untimely, amendment would be futile under Rule 15.  (ECF No. 481.)  In ruling on the motion, the Court noted that other judges "in this District have determined that the 'date of loss' for purposes of an insurance policy's 'Suit Against Us' provision is the date on which the insured learned or should have learned of the covered loss."  (Ruling on Pls.' Mot. for Leave to Amend, ECF No. 487, at 14-15.) The Court rejected Middlesex's futility arguments in that instance, because identifying that date would be a "fact-intensive endeavor."  Here, however, the Masciovecchios have affirmatively pled the date on which they "learned . . . of the [allegedly] covered loss,"  (Compl. ¶ 604), and that date is more than a year before they filed their contract breach claim.  Moreover, unlike the Kandrysawtzes, the Masciovecchios admit that they made an insurance claim for this very same damage more than a year before they filed.  (*Id.* ¶ 635) (confirming that they placed a claim with Homesite in September, 2015).  There is no fact-intensive endeavor to undertake in their case, because they have admitted that they discovered their loss more than a year before they sued upon it.

**B.      All of the Masciovecchios' Anticipated Defenses Lack Merit.**

        A number of policyholders have found themselves in the Masciovecchios' predicament over the years, and they have tried a number of different gambits in an effort to avoid dismissal under a suit limitation clause.  Each of these gambits has failed.  If the Masciovecchios attempt any such tactic here, the Court should reject it.

        Some policyholders have claimed, for example, that they can save their untimely suit by appealing to Connecticut's accidental failure of suit statute, Conn. Gen. Stat. § 52-592.  *E.g.,* *Bocchino,* 246 Conn. at 384.  The Connecticut Supreme Court has held, however, that Section

52-592 may be invoked only to avoid a *statute* of limitation, not a contractual limitation period –
and indeed, the court did so in the precise context of a one-year suit limitation provision in a
homeowners insurance policy.  "[T]he accidental failure of suit statute applies only to actions
barred by an otherwise applicable statute of limitations, and not to an applicable contractual
limitation period, irrespective of whether that period was required by a statutory form for an
insurance policy."  *Bocchino.,* 246 Conn. at 382 (citing *Chichester v. N.H. Fire Ins. Co.,* 74
Conn. 510 (1902)).

     Other policyholders have acknowledged the initial validity of the suit limitation clause,
but claimed that the insurer engaged in conduct that estopped it from asserting the clause.  *See,
e.g., Boyce,* 236 Conn. at 380-81; *Perfito v. Aetna Cas. & Sur. Co.,* No. HHD-CV-90-0386733-S,
1994 Conn. Super. LEXIS 1150, at *2 (May 3, 1994).  Policyholders have claimed, for example,
that the insurance company's adjuster "lulled [them] into a false sense of believing that [the]
claim could be settled without suit."  *Id.* at *3-4.  Such a claim has not been and could not be
plausibly asserted against NLC in this case, however.  The Masciovecchios concede that they did
not even report their loss to NLC until it was more than a year old.  (*Compare* Compl. ¶ 604
(damage discovered in September 2015) *with id.* ¶ 623 (NLC not notified until October 2016)).
NLC's claims staff therefore could not have waived or estopped themselves from asserting the
one-year limitation, when they had not even heard about the claim within the one-year period.

     Policyholders have also claimed to observe some ambiguity in the suit limitation clause
that allegedly renders it unenforceable, but this claim has been repeatedly rejected.  In *Roberts,*
for example, the plaintiffs contended "that the term 'started' in the insurance contract is
ambiguous," and arguably could mean filing rather than serving a suit.  2015 U.S. Dist. LEXIS
158266, at *5.  Judge Underhill disagreed.  Noting that "[t]he fact that the parties present two

different interpretations of the contract is insufficient to establish that its language is ambiguous," the court held that "there is only one reasonable interpretation of the term 'started.'" *Id.* at *8, 15.  As a result, the court further held that "the term is unambiguous" and dismissed the plaintiffs' claims.  *Id.* at *15.  Connecticut state courts have likewise rejected the "ambiguity" argument on a number of occasions.  *E.g., Knapp v. New London Cty. Mut. Ins. Co.*, NNH-No. CV-12-6034028-S, 2015 Conn. Super. LEXIS 1527, at *19 (June 1, 2015) ("[N]otwithstanding the plaintiff's attempt to create ambiguity by advancing a differing interpretation of the suit limitation provision, no ambiguity emanates from the language of the provision itself."); *Riggs*, 2006 Conn. Super. LEXIS 407, at *7 ("The policy language here is clear in requiring that no suit against the insurance company shall be brought unless it is started within one year after the occurrence causing the loss.").  In *Bates v. Cambridge Mutual Fire Insurance Co.,* the insurer's suit limitation clause was identical to NLC's:  "No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss."  No. LLI-CV-16-6013380-S, 2016 Conn. Super. LEXIS 2328, at *6 (Aug. 30, 2016).  The court held that "[t]here is no contradictory language in the policy that would render [the] suit provision susceptible to multiple interpretations, thus the policy provision is unambiguous."  *Id.* at *8.[7]

---

[7]      It is also worth noting that, when a suit limitation clause is required by statute, the ordinary rule that ambiguities are interpreted in favor of the policyholder does not apply.  "[T]he usual rule of construction most favorable to the insured does not apply to a provision required by statute."  *Double G.G. Leasing, LLC v. Underwriters at Lloyds*, No. AAN-CV-07-5003003, 2008 Conn. Super. LEXIS 1305, at *8 (May 16, 2008) (surveying cases from appellate courts around the country), *aff'd*, 116 Conn. App. 417 (2009).  As a neighboring state's highest court put it, "because the approved wording of the standard policy is controlled by the Commissioner of Insurance and not by any insurer . . . [the court] do[es] not construe ambiguities against the insurer."  *Given v. Commerce Ins. Co.*, 440 Mass. 207, 210 (2003) (citation omitted); *accord* 2 G. Couch, *Insurance* § 22:15 (3d ed. 1995)  (the customary "rule of construction against the insurer does not apply where . . . the language was prescribed by statute and controlled by [the] Division of Insurance rather than the individual insurer").  "This rule has been implicitly adopted in Connecticut by virtue of the fact that, when confronted with the interpretation or application of policy language derived from the mandatory provisions of" the General Statutes,

Policyholders also sometimes seek to avoid dismissal under a suit limitation clause by disputing the date on which their limitation period began running. *See, e.g., Parker v. Worcester Ins. Co.,* 247 F.3d 1, 4 (1st Cir. 2001). In this case, however, the Masciovecchios' claim is time-barred under any available theory. If the suit limitation period begins running when the loss actually occurs, then the Masciovecchios' claim is barred because they affirmatively allege that their loss occurred no later than when their last NLC policy expired in 2009. (Compl. ¶ 622) (alleging that their "[d]irect physical loss occurred during the [NLC] policy period"). If the limitation period begins running when the loss is discovered, then the Masciovecchios' claim is barred because they admit that they discovered it in September, 2015, more than a year before they filed their contract breach claim. (*Id.* ¶ 604.) And even if the period does not begin to run until the policyholder discovers her damage *and forms the belief that it is covered, cf. Belz v. Peerless Ins. Co.,* 204 F. Supp. 3d 457, 466 n.2 (D. Conn. 2016), the Masciovecchios' claim would still be time-barred because all of those events happened by September of 2015, more than a year before they first filed their contract breach claim against NLC. The Masciovecchios submitted an insurance claim to Homesite in September of 2015 and "asked for coverage for" their basement walls. (Compl. ¶ 635.) They cannot plausibly contend that they did not then believe that they had a covered claim.[8]

---

"Connecticut appellate courts have engaged in statutory construction, not contract interpretation." *Double G.G. Leasing*, 2008 Conn. Super. LEXIS 1305, at *10-11 (citing, *inter alia, Wasko v. Manella*, 269 Conn. 527 (2004)).

[8]    Although the Court does not have to agree with NLC on this point in order to grant this motion – because again, the Masciovecchios' claim is untimely under any theory – the overwhelming majority of state appellate courts across the country have held that suit limitation clauses begin running when the insured's loss *occurs*, not when she claims to discover it. *See, e.g., Nurse v. Omega US Ins., Inc.,* 88 Mass. App. Ct. 458, 462 (2015) ("We see no basis for extending the discovery rule to insurance cases governed by" the suit limitation requirements of Massachusetts' standard fire policy); *Lichter Real Estate No. Three v. Greater N.Y. Ins. Co.,* 43 A.D.3d 366 (N.Y. App. Div. 1st Dep't 2007) (finding "no merit" to claim that limitation period does not begin running until policyholder discovers seriousness of loss); *Kierstead v. State Farm Fire & Cas. Co.,* 160 N.H. 681, 689 (2010) (finding "no authority" for discovery

**C. Even if the Masciovecchios Were to Claim That Their Suit Limitation Period Did Not Begin Running Until December, 2015, Their Action Would Still Be Untimely.**

Even if the Masciovecchios were to argue that their suit limitation period began running on some date after September of 2015 – say, the December, 2015 date on which they claim to have received a report from their engineer (Compl. ¶ 613) – their claim would still be untimely. This is because the Masciovecchios did not validly commence their contract breach claim against NLC until July, 2017.

To explain why this is so, NLC begins with the principle that federal courts sitting in diversity must look to state law when determining the date on which an action was commenced. *Walker v. Armco Steel Corp.,* 446 U.S. 740, 753 (1980); *South v. Saab Cars USA, Inc.,* 28 F.3d 9, 12 n.2 (2d Cir. 1994); *Roberts,* 2015 U.S. Dist. LEXIS 158266, at *10. This rule is a

---

rule); *Gen. State Auth. v. Planet Ins. Co.,* 464 Pa. 162, 167-68 (1975); *Burress v. Ind. Farmers Mut. Ins. Grp.,* 626 N.E.2d 501 (Ind. Ct. App. 1993); *but see Prudential-LMI Comm'l Ins. Co. v. Super. Ct.,* 51 Cal. 3d 674, 699 (1990).

The "occurrence" theory is the only theory that comports with the underlying purposes of suit limitation clauses, and with the statutes that require their use in property insurance policies. Such clauses are designed to "protect defendants and courts from handling matters in which the search for truth may be impaired by the loss of evidence," and to "encourage plaintiffs to use reasonable and proper diligence" in asserting their claims. *Bocchino,* 297 Conn. at 599-600. If a policyholder can sue on a long-ago loss merely by claiming not to have discovered it for years – as the Masciovecchios are attempting to do here – these purposes would be entirely subverted. The statute requiring suit limitation periods in property policies therefore *requires that those periods begin running at the inception of the loss,* not at its discovery. Conn. Gen. Stat. §§ 38a-307 and -308(b)(2)(D) (suits must be brought within specified time "after inception of the loss").

NLC acknowledges that this Court applied a discovery rule in *Belz,* 204 F. Supp. 3d at 466 n.2. In two of the three cases cited by the Court in *Belz,* however – *Roberts* and *Bacewicz v. NGM Ins. Co.,* No. 3:08-cv-1530, 2010 U.S. Dist. LEXIS 77682 (JCH) (D. Conn. Aug. 2, 2010) – the insurers chose not to contest the plaintiffs' "discovery rule" argument because they thought they would win even if the rule were adopted. And in the third case – *Parker v. Worcester Insurance Co.* – the First Circuit admitted that it was only "guess[ing]" at Connecticut law. 247 F.3d 1, 5 (1st Cir. 2001). In cases where the difference between an occurrence rule and a discovery rule has been properly joined and fully litigated, courts have overwhelmingly adopted the occurrence rule. *See* cases cited *supra.* Moreover, NLC respectfully submits that the occurrence rule must be used in Connecticut, in light of the language of General Statutes Sections 38a-307 and -308. Conn. Gen. Stat. §§ 38a-307 (requiring fire policies to include a suit limitation period beginning at the "*inception* of the loss"); 38a-308(b)(2)(D) (requiring same of multi-peril homeowners policies).

necessary implication of the principle, articulated nearly eighty years ago in *Erie Railroad Co. v. Tompkins,* that federal courts should strive to minimize instances in which the outcome of the suit differs depending on whether it was first brought in state or federal court.  304 U.S. 64, 74-75 (1938).  As the Supreme Court explained in *Walker,* "[t]here is simply no reason why, in the absence of a controlling federal rule, an action based on state law which concededly would be barred in the state courts by the state statute of limitations should proceed through litigation to judgment in the federal court solely because of the fortuity that there is diversity of citizenship between the litigants."  446 U.S. at 753.

Under Connecticut state law, an action is commenced when it is served on the defendant, not when it is filed with the court.  "From a very early date in this state the time when the action is regarded as having been brought is the date of service of the writ upon the defendant." *Seaboard Burner Corp. v. DeLong,* 145 Conn. 300, 303 (1958) (quoting *Consol. Motor Lines, Inc. v. M & M Transp. Co.,* 128 Conn. 107 (1941)); *accord Lacasse v. Burns,* 214 Conn. 464, 475-76 (1990) (reaffirming that "the time when the action is regarded as having been brought is the date of service," and rejecting any "distinction between 'commencing' and 'bringing' an action" (internal quotation marks and citation omitted)).

Taking the principles of *Walker* and *Seaboard Burner* together, it is clear that a Connecticut federal court action brought under diversity jurisdiction has not been commenced until it has been served on the defendant.  "Because under Connecticut case law a suit is deemed commenced at the time of service," federal diversity-jurisdiction suits that are served after the running of a limitation period "must be dismissed as untimely."  *Cocco,* 637 F. Supp. at 95. Although Fed. R. Civ. P. 3 might cause an unwary plaintiff to think otherwise – because it provides that "[a] civil action is commenced by filing a complaint with the court" – the Second

Circuit has unambiguously held that Rule 3 "does not apply when jurisdiction is based on diversity of citizenship." *South,* 28 F.3d at 12 n.2 (citing *Walker,* 446 U.S. 740). Thus, notwithstanding Rule 3, plaintiffs filing suit in the District of Connecticut under its diversity jurisdiction "must file a complaint *and* serve process" to properly commence an action and stop the running of a suit limitation period in an insurance policy. *Roberts,* 2015 U.S. Dist. LEXIS 158266, at *4 (emphasis added).

Although federal courts look to Connecticut state law for the substantive principle that only service commences an action, they look to *federal* rules for answers to procedural questions about what constitutes service. *See, e.g., Bouchard v. DHL Express (USA),* 716 F. Supp. 2d 202, 206 (D. Conn. 2010). Under Fed. R. Civ. P. 4(h)(1), corporations like NLC are usually served "by delivering a copy of the summons and the complaint to an officer . . . or any other agent authorized . . . to receive service." A plaintiff may, however, choose to avoid the effort and expense of in-person service by asking the defendant to waive it. *See generally* Fed. R. Civ. P. 4(d). Such a waiver is accomplished by sending a written waiver request to the defendant; having the defendant sign it; and filing the signed waiver with the court. Fed. R. Civ. P. 4(d)(1).

When a plaintiff chooses the waiver-of-service route, her complaint is deemed served under Fed. R. Civ. P. 4(d)(4) at the time she *files* the signed waiver form in court. "When the plaintiff files a waiver, proof of service is not required and these rules apply as if a summons and complaint had been served at the time of filing of the waiver." Fed. R. Civ. P. 4(d)(4). "Thus, when a request to waive service is used, the complaint is served for statute of limitations purposes only when the executed waiver is filed with the court, and not, for example, when the plaintiff mails the request for waiver to defendant." *Bouchard,* 716 F. Supp. 2d at 206. Following this principle, Connecticut federal courts routinely dismiss cases when the plaintiff

fails to file a waiver-of-service form within the applicable limitation period.  *E.g., id.; Roberts,* 2015 U.S. Dist. LEXIS 158266, at *2; *Becker v. Sherb,* No. 3:07-cv-1643 (JCH), 2008 U.S. Dist. LEXIS 48137, at *2 (D. Conn. June 24, 2008).

The Masciovecchios did not file their waiver of service form until July 27, 2017.  (ECF No. 440.)  By necessary implication, they did not commence their contract breach action against NLC until July 27, 2017.  Thus, even if their loss were deemed to have occurred in December, 2015, when their engineer allegedly told them "that their basement walls were substantially impaired," (Compl. ¶ 613), it would still be untimely.  For this additional reason, their contract breach claim should be dismissed.

### D.    The Masciovecchios Cannot Save Their Untimely Claim By Arguing That It "Relates Back" to Their Earlier Filings.

As noted above, the Masciovecchios concede that they discovered their loss in September of 2015.  (Compl. ¶ 604.)  They were therefore required under the NLC policy to bring any contract breach action no later than September of 2016.  (*E.g.,* Ex. 1 to Ingarra Decl., at NLC-018.)  Because they inarguably did not even attempt *a contract breach claim under the NLC policy* until they filed their proposed Third Amended Complaint in October of 2016, (ECF No. 322), they may try to save their untimely claim by arguing that it "relates back" to the claims in their March, 2016 First Amended Complaint.  (First Am. Compl., ECF No. 122.)  This argument would fail because the claims in the Third Amended Complaint simply cannot relate back to the claims in the First.

In limited circumstances, Fed. R. Civ. P. 15 permits plaintiffs to "'relate back' their otherwise untimely claims" to the filing of an earlier version of their complaint.  *See Police & Fire Ret. Sys. v. IndyMac MBS, Inc*., 721 F.3d 95, 101 (2d Cir. 2013).  In order to be eligible for relation back, the amendment must "assert[] a claim . . . that arose out of the conduct,

transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). If the amendment does "no more than restate the original claim with greater particularity or amplify the details of the transaction alleged in the preceding pleading," then relation back is proper and the otherwise time-barred claim may proceed. *United States v. Baylor Univ. Med. Ctr.*, 469 F.3d 263, 268-69 (2d Cir. 2006) (quoting 6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1497 (2d ed. 2006)). But if the original pleading failed to give "adequate notice of the conduct, transaction, or occurrence that forms the basis of the" newly filed claim, then there is no relation back and the new claim remains barred. *Baylor*, 469 F.3d at 270 (quoting Wright et al., *supra*); *see Stevelman v. Alias Research Inc.*, 174 F.3d 79, 86 (2d Cir. 1999) ("Under [Rule] 15(c), the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." (internal quotation marks and citation omitted)).[9]

Here, the Masciovecchios' new claim under their NLC policy provides a textbook example of the introduction of an "entirely different transaction by amendment" – namely, a new claim alleging "the breach of an independent contract." Charles Alan Wright et al., *Federal Practice and Procedure* § 1497 (3d ed. 2017) (citing cases). In case after case, courts have recognized that a "newly-added claim . . . based on a different contract, between different

---

[9]       Rule 15 separately authorizes "[a]n amendment to a pleading [to] relate[] back" when "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). "Here, the suit limitation period, rather than the statute of limitation under state law, governs the situation facing the Court," and as a result "Rule 15(c)(1)[A] is not applicable." *Boerger v. Commerce Ins. Servs.*, No. 04-1337, 2005 U.S. Dist. LEXIS 30239, at *13 (D. N.J. Nov. 28, 2005). Even if it did apply, however, Connecticut law, which governs the interpretation of the parties' contract, applies a "relation back doctrine [that] is akin to rule 15(c) of the Federal Rules of Civil Procedure." *Austin-Casares v. Safeco Ins. Co. of Am.*, 310 Conn. 640, 656 (2013) (internal quotation marks and citation omitted). The same analysis would therefore apply under this sub-paragraph of Rule 15(c) as well. *Id.*; *see O'Donnell v. State*, No. NNH-CV-03-0482928, 2004 Conn. Super. LEXIS 2596, at *8 (Sept. 14, 2004) (in determining whether to "allow this amendment under application of the relation back doctrine . . . we follow federal procedure under Rule 15(c)").

parties" does not relate back to an earlier pleading.  *E.g., Lehman XS Tr. v. Greenpoint Mortg. Funding, Inc.*, No. 12-Civ.-7935, 2017 U.S. Dist. LEXIS 54667, at *27 (S.D.N.Y. Mar. 29, 2017) (new claim for breach of new contract "falls squarely within Wright and Miller's description of claims time barred under Rule 15").  Claims "based on entirely different contracts," these cases recognize, inject new transactions and new occurrences into the litigation. *E.g., Miller v. Holzmann*, No. 95-1231, 2006 U.S. Dist. LEXIS 9165, at *17-18 (D.D.C. Mar. 9, 2006) ("I do not see how it could be said that the . . . claims arose out of the same transaction or occurrence . . . since they are based on entirely different contracts"); *see also Morgan Distrib., Inc. v. Unidynamic Corp.*, 868 F.2d 992, 994 (8th Cir. 1989) (finding no relation back where the original complaint "stated a set of facts involving a different breach, of a different contract, and occurring in a different year than did" the later amendment).[10]  And a complaint that alleges breaches of several insurance policies by several insurance companies does nothing to put a defendant on notice of a new claim "arising out of its own insurance contract" raised for the first time in an amended pleading.  *E.g., In re Katrina Canal Breaches Litig.*, No. 05-4182, 2008 U.S. Dist. LEXIS 91384, at *110 (E.D. La. Aug. 26, 2008) ("While Plaintiff alleges that its claim arises out of the same occurrence as the other plaintiffs' claims, namely property damage caused by Hurricane Katrina, in fact Plaintiff's claim is entirely unique because it arises out of its own insurance contract.").[11]

---

[10]	*See also Resolution Tr. Corp. v. Norris*, 830 F. Supp. 351, 360-61 (S.D. Tex. 1993) (holding newly pleaded claims based on additional loan agreements constituted "distinct conduct, transactions, or occurrences" and did not relate back, notwithstanding plaintiff's assertion that the "claims as to the new loans [were] asserted as part of a grand plan to recoup" losses from related loans); *In re Rationis Enters., Inc. of Panama*, 45 F. Supp. 2d 365, 367 (S.D.N.Y. 1999) ("Each bill of lading is a separate transaction."); *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 808 F. Supp. 1474, 1482 (D. Nev. 1992) ("Amendments to complaints alleging claims arising from different contracts . . . do not 'relate back' to the original complaint.").

[11]	*See also Ford v. Anderson*, No. HHD-CV-00-0804029-S, 2003 Conn. Super. LEXIS 3041, at *8-9 (Oct. 29, 2003) (holding new claims "cannot relate back to the allegation of a different contract").

These established standards compel rejection of any attempt by the Masciovecchios to relate back their untimely breach-of-contract claim against NLC to the filing of the First Amended Complaint in March of 2016.   (ECF No. 122.)   In that earlier pleading, the Masciovecchios alleged that "[i]n September of 2015," they discovered "cracks in the[] basement walls" of their home, and on that basis they sought to recover for this damage under insurance policies issued by "21st Century, Homesite and AIG."   (First. Am. Compl., ECF No. 122, ¶¶ 206-234.)   At no point did the Masciovecchios mention any claim for breach of a separate insurance contract, issued by a separate, unaffiliated insurer, under policies that expired years before they saw any cracking in their foundation.   (*See generally* First Am. Compl., ECF No. 122.)

Indeed, the only mention of NLC anywhere in the First Amended Complaint was a single paragraph noting the company's state of incorporation and principal place of business.   (ECF No. 122, ¶ 128.)   And the only reason NLC was even named as a defendant was to further plaintiffs' then-extant strategy of suing every insurer that "'either write[s] policies or ha[s] homeowners' insurance policies active'" in the State of Connecticut, regardless of whether they ever issued a policy to a named plaintiff in this litigation.   *See* Kathleen McWilliams, *Class Action Suit Filed On Behalf of Homeowners with Failing Foundations*, Hartford Courant (Feb. 2, 2016) (quoting plaintiffs' counsel).   In these circumstances, the Masciovecchios' attempt to inject into this litigation a "newly-added claim . . . based on a different contract" with a different insurer arises from a distinct transaction and cannot relate back to their earlier pleading.   *See Lehman XS Tr.*, 2017 U.S. Dist. LEXIS 54667, at *27; *Katrina Canal Breaches Litig.*, 2008 U.S. Dist. LEXIS 91384, at *110.

Moreover, this point is not affected by Masciovecchios' and other plaintiffs' attempt to style their First Amended Complaint as a class action. (ECF No. 122.) It is certainly true that, for purposes of federal law, the filing of a putative class action tolls the governing statute of limitations for the claims of absent class members, at least until class certification is rejected. *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1973). The Connecticut Supreme Court, moreover, has adopted *American Pipe*'s tolling rule as a matter of state law. *Grimes v. Hous. Auth.*, 242 Conn. 236 (1997). But by its terms, the tolling rule adopted in *American Pipe* and *Grimes* does no more than protect the claims of *absent* putative class "members . . . *who would have be[come] parties* had . . . a class action" been certified. *Grimes*, 242 Conn. at 244 (emphasis added); *see Smith v. Bayer Corp.*, 564 U.S. 299, 314 n.10 (2011) ("[*American Pipe*] demonstrate[s] only that a person *not a party* to a class suit may receive certain benefits (such as the tolling of a limitations period) related to that proceeding."). Nothing in *American Pipe* or *Grimes* suggests that its tolling rule somehow operates to revive the otherwise time-barred claims of a *named* plaintiff who purports to sue on behalf of a class.

In fact, "[t]he policy underlying *American Pipe* makes clear that it is inapplicable to named plaintiffs." *Vincent v. Money Store*, 915 F. Supp. 2d 553, 561 (S.D.N.Y. 2013); *see In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-MDL-2262 (NRB), 2016 U.S. Dist. LEXIS 51190, at *118 (S.D.N.Y. Apr. 15, 2016) ("While plaintiffs argue that *American Pipe* tolling saves their claims, this tolling rule does not apply to named plaintiffs."); *Kaufman v. Sirius XM Radio, Inc.*, 980 N.Y.S.2d 276 (Sup. Ct. 2013) (same). The entire purpose of the tolling rule is to "permit[] an absent class member to rely on a pending class action to toll the statute of limitations as to her individual claim," thereby "obviating the need for her to file a separate action." *Vincent,* 915 F. Supp. 2d at 561; *see Cullen v. Margiotta*, 811 F.2d 698, 719

(2d Cir. 1987) (adopting *American Pipe* tolling to avoid penalizing absent class members for "remain[ing] passive" and "*rely[ing] on the named plaintiffs* to press their claims") (emphasis added) (internal quotation marks and citations omitted).  The rule does not suggest – and provides no basis for holding – that named plaintiffs can employ this tolling doctrine to save time-barred claims that they failed to include in their own original pleading.  For this additional reason, the Court should hold that the Masciovecchios' breach-of-contract claim against NLC is barred by the suit limitation provision in their policy, and it should dismiss Count 32.[12]

## V.   THE CONTRACT BREACH CLAIM IN COUNT 32 SHOULD ALSO BE DISMISSED BECAUSE IT DESCRIBES A CLAIM THAT IS NOT COVERED UNDER NLC'S FORM OF POLICY.

Even if the Masciovecchios' contract breach claim had been timely – and it was not – it would still merit dismissal.  This is so because cracking basement claims simply are not covered under NLC's form of homeowners policy.

To explain why, it will useful to begin with a high-level view of the NLC policy before examining its provisions in detail.  NLC's policy is constructed of several forms and endorsements, the principal one of which is called "Form HO-3."  In that form, the principal coverage for the policyholder's dwelling is provided by a section entitled "Coverage A."  (*E.g.,* Ex. 1 to Ingarra Decl., at NLC-009.)  Other miscellaneous coverages are provided in a section entitled "Additional Coverages."  (*E.g., id.* at NLC-011-13.)  Thus, the coverage analysis of any claim for damage to a dwelling under NLC's form of policy involves (1) analyzing whether that

---

[12]    Even if there were any basis for applying *American Pipe* tolling to the claims of named plaintiffs – and there is not – the tolling rule applies only to statutes of limitations, not contractual limitations provisions of the sort at issue here.  *Jones v. Unum Life Ins. Co. of Am.*, No. 4:06-cv-00547, 2006 U.S. Dist. LEXIS 87384, at *6-7 (E.D. Ark. Nov. 29, 2006) ("[W]hile courts might have power to toll statutes of limitations under *American Pipe*, they generally do not have power to alter contractual agreements").  This provides an independent basis for dismissing the Masciovecchios' untimely breach-of-contract claim. *Id.*; *but see, e.g., Yollin v. Holland Am. Cruises, Inc.*, 468 N.Y.S.2d 873, 874 (App. Div. 1st Dep't 1983) (extending *American Pipe* tolling to contractual limitation period).

claim is covered under Coverage A, and then (2) analyzing whether it is covered under any Additional Coverage.

**A.     There Is No Coverage for the Masciovecchios' Claim Under NLC's Coverage A.**

Cracking basement claims are plainly not covered under NLC's Coverage A.  Among other reasons, Coverage A excludes losses caused by defective materials used in the construction of the home.  (*Id.* at NLC-016) ("We do not insure for loss caused directly or indirectly by . . . [f]aulty, inadequate or defective . . . [m]aterials used in repair, construction, renovation or remodeling.")  Perhaps even more significantly, Coverage A bars coverage for cracking or expansion of a wall.  (*Id.* at NLC-014) ("We do not insure . . . for loss . . . [c]aused by . . . [s]ettling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations [or] walls.").

The Masciovecchios' complaint squarely describes a loss that is excluded under these provisions.  They say that their loss arises out of the fact that their home was "built with concrete containing deleterious iron sulfide materials," (Compl. ¶ 2), but this allegation places their loss plainly outside of Coverage A, since that coverage excludes losses caused by defective construction materials.  The Masciovecchios also allege that the "deleterious . . . minerals" "cause[d] the concrete to swell and crack," (*id.*), but this claim likewise puts their loss outside Coverage A.  That coverage does not extend to losses caused by "expansion, including resultant cracking, of . . . walls."  (Ex. 1 to Ingarra Decl., at NLC-014.)

Moreover, because NLC's Coverage A bars coverage for expansion and cracking of *walls* as well as *foundations,* the Court can conclude that the coverage does not apply without engaging the question of whether the word "foundation" is ambiguous.  While NLC agrees with those insurers who have explained that a home's "foundation" unambiguously includes its basement

walls, *see, e.g., Belz,* 204 F. Supp. 3d at 463, that dispute is not germane to the coverage analysis under NLC's Coverage A.  Whether or not a basement wall is a foundation, it is certainly and unambiguously a wall.  Since NLC's Coverage A bars coverage for expansion and cracking of walls, the Masciovecchios' loss is not covered under it.

Indeed, the case against coverage under Coverage A is so clear that the Masciovecchios evidently do not dispute it.  Their complaint does not identify any provision of Coverage A that NLC allegedly breached.  (*See generally* Count 32.)  Rather, their complaint skips to the second step of the coverage analysis and attempts to invoke one of the "Additional Coverages" – the additional coverage for "collapse."  (Compl. ¶ 618.)  Yet their claim fares no better under this coverage than it does under Coverage A.

NLC provided the Masciovecchios with collapse coverage under both the so-called "old form" (Ex. 1 to Ingarra Decl.) and "new form," (Ex. 2 to Ingarra Decl.), depending on the policy year.  The former covered collapses, but excluded "cracking, shrinking, bulging or expansion" from the ambit of collapse.  (Ex. 1 to Ingarra Decl. at NLC-012.)  The latter defined a "collapse" as an "abrupt falling down or caving in" that renders the house incapable of being "occupied for its current intended purpose."  (Ex. 2 to Ingarra Decl. at NLC-051.)  The Masciovecchios' complaint does not plausibly describe a covered loss under either policy form.  NLC will discuss each form in turn.

**B.    The Masciovecchios Have Not Pled A Plausible "Collapse" Under the New Form.**

As noted, NLC's "new" form of collapse coverage defines a "collapse" as "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose."  (Ex. 2 to Ingarra Decl. at NLC-051.)  For additional clarity, the policy adds that a house that is merely "in danger

-25-

of falling down or caving in is not considered to be in a state of collapse." (*Id.*)  The policy also adds that "[a] building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking." (*Id.*)

Thus, to plead a plausible claim for collapse coverage under the new form, the Masciovecchios must plead at least three things:  (1) that their house fell down or caved in; (2) that it did so abruptly; and (3) that the falling down or caving in resulted in the home being incapable of occupation for its intended purposes.  It is not enough for them to plead that their house is in danger of falling down or caving in, because the policy makes clear that being in danger of falling down or caving in is not "a state of collapse." (*Id.*)  Nor is it enough for them to plead that their still-standing basement walls are cracking, because again, a building or part of a building that is still "standing is not considered to be in a state of collapse even if it shows evidence of cracking." (*Id.*)

The Masciovecchios have not pled any of the three required elements of a collapse claim under the NLC policy.  They have not pled the first element – that their house fell down or caved in – because their complaint makes clear that those things have not happened yet.  In paragraph 2, they allege that their house "*will fall*" into its basement – indicating by their use of the future tense that it has not yet fallen.  (Emphasis added.)  And in paragraph 615 they claim that "the sulfate attack *will continue* to deteriorate the concrete *until* the home caves into its basement." (Emphasis added.)  Their complaint clearly describes a house that is still standing, and the NLC policy is equally clear that such a house does not qualify for collapse coverage.

The Masciovecchios also fail to plead the second element – that their house fell down or caved in *abruptly*.  Their complaint describes a gradual deterioration of their basement walls over the course of thirty-two years.  To read their description, there is nothing abrupt in what is

happening to those walls. They claim that their house was built in 1985 "with concrete containing deleterious iron sulfide materials." (Compl. ¶¶ 2, 20.) They contend that their damage is a product of "oxidization (rusting) of these minerals," and that this oxidation "is a continuous . . . condition." (*Id.* ¶ 2.) And they allege that the condition was damaging their property over the course of twenty-four annual insurance policies. (*Id.* ¶¶ 616, 622 (alleging "direct physical loss" in each of sixteen NLC policy periods) and 628, 634 (alleging "direct physical loss" in each of eight Homesite policy periods).) As in *Hurlburt,* the Masciovecchios' "policy covers only an 'abrupt falling down or caving in of a building,'" and that policy language "cannot reasonably be read to embrace the gradual deterioration of property over time." 2018 WL 1035810, at *4.

The Masciovecchios also fail to plead the third element – that an abrupt falling down or caving in resulted in their house becoming incapable of occupation "for its current intended purpose." They affirmatively allege that they still "live in" and "occupy" the house at 54 Portland Dr. (Compl. ¶¶ 20, 602.) They do not claim that it is unsafe to live in. To the contrary, they say that any threat to safety is in the future: they allege that their home will "*eventually* . . . be impossible to safely live in." (*Id.* ¶ 4) (emphasis added).

Connecticut federal courts have not hesitated to dismiss cracking basement complaints in which the plaintiff failed to plead all of the required elements of a collapse claim. In *Hurlburt,* for example, this Court dismissed a complaint under the same collapse language found in the NLC Policy, because the plaintiffs had not alleged an abrupt falling down or caving in but rather only a "basement" that "is deteriorating." 2018 WL 1035810, at *5. Moreover, the plaintiffs still "reside[d] in their home and have not alleged that they cannot or do not use it for its 'current intended purpose.'" *Id.*

-27-

Judge Underhill dismissed a similar claim under substantively identical policy language in *Alexander v. General Insurance Co. of America*, No. 3:16-cv-00059 (SRU), 2017 WL 188134 (D. Conn. Jan. 17, 2017) (order on motion for reconsideration of prior oral ruling).  In *Alexander,* as in this case and *Hurlburt,* the insurer's policy defined "collapse" as "an abrupt falling down or caving in of a building or any part of a building," and added that a building that is still standing "is not considered to be in a state of collapse" even if it is cracking.  *Id.* at *1.  The court dismissed the case because "Plaintiffs cannot avoid the fact that their basement walls are still standing," and under the terms of General's – and NLC's – policy form, a house that is still standing is a house that has not collapsed.  *Id.* at *2.

Judge Bryant also dismissed a similar claim under identical policy language.  *Makufka v. CSAA Fire & Cas. Ins. Co.,* No. 3:16-cv-00567 (VLB), 2018 WL 465775, at *1 (D. Conn. Jan. 18, 2018).  In *Makufka,* as here, the policy's collapse provision "require[d] 'an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose."  *Id.* at *4.  Judge Bryant dismissed the case under Rule 12(b)(6) because the plaintiffs' complaint raised "no question of fact that the Premises is still standing and lived in by Plaintiffs and has not abruptly fallen down or caved in.  Accordingly, the Policy does not cover Plaintiffs' loss."  *Id.*

This case is exactly like *Hurlburt, Alexander* and *Makufka,* and it should be dismissed for the same reasons.  As in *Hurlburt,* the Masciovecchios have alleged only a gradually deteriorating basement – not one that abruptly fell down or caved in – and they still "reside in their home and have not alleged that they cannot or do not use it for its 'current intended purpose.'"  Like the plaintiffs in *Alexander,* they "cannot avoid the fact that [their] basement walls are still standing."  And like the complaint in *Makufka,* their complaint raises "no question

-28-

of fact that the Premises is still standing and lived in . . . and has not abruptly fallen down or caved in." Put simply, the Masciovecchios have not pled any of the required elements of a collapse claim under NLC's new policy form.

**C.      The Masciovecchios Have Not Pled A Plausible "Collapse" Under the Old Form.**

The result is no different under NLC's old policy form. This is so because that form does not provide collapse coverage unless the policyholder's home experiences something beyond what the Masciovecchios have described in their complaint. NLC's Form HO-3 "insure[s] for direct physical loss to covered property involving collapse of a building," but it defines what a collapse is *not*: "Collapse does not include settling, cracking, shrinking, bulging or expansion." (Ex. 1 to Ingarra Decl., at NLC-012.) Even as described in their complaint, the Masciovecchios' loss fits squarely into what the NLC policy says is *not* a covered collapse. They allege that their basement walls are "swell[ing]" (Compl. ¶ 2) – which is just another word for expansion, and expansion is excluded from the definition of collapse. And they claim that the swelling caused their walls to "crack," (*id.*), but cracking is excluded from NLC's collapse coverage as well.

This language has been tested around the country, and state appellate courts have held that it does not extend collapse coverage to losses that, like the Masciovecchios', are solely due to cracking or expansion. In *Nida v. State Farm Fire & Casualty Co.,* for example, the Louisiana Court of Appeal affirmed a trial court judgment in favor of the insurer, noting that "property insurance policies extending coverage to direct loss caused by 'collapse' of the insured building but excluding loss from settling, cracking, bulging, and the like, have generally been held not to encompass damage to walls, ceilings, and foundations which have in fact settled, cracked, or bulged." 454 So. 2d 328, 334 (La. Ct. App. 1984) (internal quotation marks and citation omitted). And in *Queen Anne Park Homeowners Ass'n v. State Farm Fire & Casualty Co.,* a court that otherwise sided with the policyholder in holding that the term "collapse" was

-29-

ambiguous nevertheless held that, to invoke the coverage, there must be more than cracking or expansion.  352 P.3d 790, 793-94 (Wash. 2015).  In *Queen Anne Park,* the Washington Supreme Court agreed with the policyholder that the term "collapse" could encompass more than the paradigmatic case of a building that suddenly falls to the ground; it could also include any loss that causes a "substantial impairment of structural integrity" in the building.  *Id.*  Even so, the court held that the form of policy then used by State Farm – and used by NLC in 2002-2003 – required more than mere cracking or expansion.  State Farm's policy, like NLC's "old" policy, clarified that the term "collapse does not include settling, cracking, shrinking, bulging or expansion."  *Id.* at 791.  Under such a policy, "collapse" might mean "the substantial impairment of the structural integrity of all or part of a building," but it must also "mean[] more than mere settling, cracking, shrinking, bulging or expansion."  *Id.* at 794.

The Masciovecchios may contend that the "collapse" analysis under NLC's policy form is controlled by the Connecticut Supreme Court's decision in *Beach v. Middlesex Mutual Assurance Co.,* 205 Conn. 246 (1987).  Yet if they were to do so, they would be mistaken, because NLC's policy is very different from the policy that was at issue in *Beach*.  In particular, NLC did not leave the term "collapse" undefined in its policy, as the insurer had done in *Beach*.  To the contrary, NLC's policy clearly explained that "collapse does not include settling, cracking, shrinking, bulging or expansion."  (Ex. 1 to Ingarra Decl., at NLC-012.)  Indeed, the *Beach* court affirmatively pointed to the definition now used by NLC as an example of how an insurer might satisfactorily define the term.

Although *Beach* was decided in 1987, it concerned a homeowners policy that had been issued in the mid-1970s.  *Beach,* 205 Conn. at 247.  Collapse coverage was very different in the 1970s than it is today, or even in the 1980s when the decision was published.  In the 1970s, the

Middlesex Mutual policy affirmatively covered "collapse[s] of a building" that ensued from "cracking, . . . bulging or expansion of . . . foundations [or] walls . . . ."  *Id.* at 248 n.1.  Because Middlesex Mutual had not defined "collapse," the court held that the term was not limited to "'collapse'[s] of a sudden and catastrophic nature" but could also reasonably encompass "any substantial impairment of the structural integrity of a building."  *Id.* at 252.

In the ten years between Mr. Beach's loss and the Supreme Court's decision, however, several insurers had changed their policy to the form that NLC used in the Masciovecchios' 2002-2003 policy – that is, to a policy that defines "collapse" as not including cracking or expansion.  The *Beach* court chided Middlesex Mutual for not having defined the term back in the 1970s, explaining that if Middlesex "wished to rely on a single facial meaning of the term . . . it had the opportunity expressly to define the term to provide for the limited usage it now claims to have intended."  *Id.* at 251.  It then cited an example of how an insurer might define the term to make its underwriting intent clear – and the example to which it pointed was the above-referenced *Nida v. State Farm* case, in which the insurer had the very same collapse language that NLC used in the Masciovecchios' policy.  *Id.*

In other words, the term "collapse" was undefined in the 1970s; the Connecticut Supreme Court expressly invited insurers to define the term to clarify that they only intended to cover sudden, catastrophic collapses; and when the court pointed to an example of how an insurer might successfully define "collapse" to make its underwriting intent clear, it pointed to the very definition that NLC used in the policy it issued to the Masciovecchios.  *Beach* is therefore inapposite to the Masciovecchios' claim against NLC.[13]  For this reason, and for the other reasons set forth above, Count 32 should be dismissed.

---

[13]     NLC acknowledges that there are cases in this District holding otherwise.  *E.g., Bacewicz v. NGM Ins. Co.,* No. 3:08-cv-1530, 2010 U.S. Dist. LEXIS 77682, at *13-14 (D. Conn. Aug. 2, 2010).  Those

**VI.    ONCE ALL OF THE MASCIOVECCHIOS' COUNTS HAVE BEEN DISMISSED, THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY AS TO NLC.**

The Masciovecchios sued not only for contract breach, but also for a declaratory judgment of coverage (Count 67), "bad faith" (Count 113), and alleged violations of CUIPA and CUTPA. (Count 159.) Those claims should be dismissed for the reasons discussed in the Joint Brief. (ECF No. 497-2.) Once all four of the Masciovecchios' claims are dismissed, the Court should dismiss the entire case as against NLC.

The Masciovecchios purport to bring their claims not only in their own right, but also "on behalf of all similarly-situated homeowners in Connecticut." (Compl., ¶¶ 1167, 1699, 2486.) Once the Court dismisses their claims, however, NLC should be dismissed from the case in its entirety. No other named plaintiff claims to have had a policy with NLC. (*Id.*, Counts 1-31 and 33-46.) By extension, no remaining named plaintiff has standing to represent these allegedly "similarly situated homeowners" in claims against NLC.

"Standing," it has long been recognized, "is not dispensed in gross." *Lewis v. Casey,* 518 U.S. 343, 358 n.6 (1996). "[F]or every named defendant" included in a case "there must be at

---

cases are wrongly decided, however. They fail to note that the policy at issue in *Beach* had very different language from the policy in use today.

The two policies use many of the same words, so perhaps some of the confusion is understandable. *But they use those words in precisely the opposite order.* The *Beach* policy excluded cracking of walls, but provided coverage if a collapse "ensue[d]" from a crack. Today's policy form exactly reverses those two ideas. It covers collapses, but excludes cracking from the ambit of collapse.

The difference in word order is important. Mr. Beach's policy had no limiting language after the word "collapse" and, therefore, arguably left him unclear about the insurer's intended meaning. 205 Conn. at 250-51. In the Masciovecchios' policy, by contrast, the word "collapse" was immediately followed by limiting language: "Collapse does not include settling, cracking, shrinking, bulging or expansion." (Ex. 1 to Ingarra Decl. at NLC-012.) Unlike Mr. Beach, the Masciovecchios could not have read their policy and reasonably believed that cracks or bulges were covered under their collapse coverage. The order of the words told them otherwise.

This difference in word order should have produced a different result in cases like *Bacewicz.* Indeed, the Connecticut Supreme Court implicitly said so when it approvingly pointed to *Nida v. State Farm. Beach,* 205 Conn. at 251.

least one named plaintiff who can assert a claim directly against that defendant." *Cent. States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC,* 504 F.3d 229, 241 (2d Cir. 2012). That is to say, there must be at least one named plaintiff who has "suffered an injury in fact" that is "traceable to the challenged action" of the particular defendant and "will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) (citation omitted).

This rule applies with full force to complaints styled as putative class actions. *Mahon v. Ticor Title Ins. Co.,* 683 F.3d 59, 64 (2d Cir. 2012); *see* 5 William Rubenstein, *Newberg on Class Actions* § 2:5 (5th ed.) ("[C]lass representatives do not have standing to sue defendants who have not injured them even if those defendants have allegedly injured other class members."); 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 4:28 (13th ed. 2016) ("In contract actions a named plaintiff has standing to sue only as to agreements to which it is a party and thus has rights to assert."). Simply put, "a plaintiff's injury resulting from the conduct of one defendant" has no "bearing on her Article III standing to sue other defendants, even if they engaged in similar conduct that injured other parties." *Mahon,* 683 F.3d at 65; *see also LIBOR-Based Fin. Instruments Antitrust Litig.,* 27 F. Supp. 3d 447 (S.D.N.Y. 2014); *In re Trilegiant Corp.,* No. 3:12-cv-00396 (VLB), 2014 U.S. Dist. LEXIS 42570 (D. Conn. Mar. 28, 2014).

These principles compel the dismissal of NLC from this litigation once the individual claims of the Masciovecchios are out of the case. It is the Masciovecchios, and only the Masciovecchios, who claim to have been injured by NLC's alleged failure to pay under the terms of an insurance contract. Aside from their individual claims, there is no other named plaintiff in this case who purchased insurance from NLC. (Compl., Counts 1-31 and 33-46) (claims of other thirty plaintiffs, alleging insurance with other companies). With the Masciovecchios out of the

case, then, it is "impossible for this Court to find that the Plaintiffs have stated a concrete, particularized, and actual injury that is traceable to [NLC's] conduct." *In re Trilegiant Corp.,* 2014 U.S. Dist. LEXIS 42570 at *15. The Court should therefore dismiss NLC from the case entirely.

## IX.    CONCLUSION

For the foregoing reasons, the Court should grant NLC's motion and dismiss the entire complaint against it.

DEFENDANT, NEW LONDON COUNTY
MUTUAL INSURANCE COMPANY,


By:   *   /s/ Thomas O. Farrish_____*
           Thomas O. Farrish (ct26917)
           *tofarrish@daypitney.com*
           John W. Cerreta (ct28919)
           *jcerreta@daypitney.com*
           Daniel J. Raccuia (ct29535)
           *draccuia@daypitney.com*
           Jennifer L. Shukla (ct30204)
           *jshukla@daypitney.com*
           Day Pitney LLP
           242 Trumbull Street
           Hartford, CT  06103-3499
           (860) 275-0100
           (860) 275-0343 (fax)

           Michael P. Mullins (ct29746)
           *mmullins@daypitney.com*
           Day Pitney LLP
           One International Place
           Boston, MA 02110
           (617) 345-4600
           (617) 345-4745

           Its Attorneys

## <u>CERTIFICATION</u>

I hereby certify that on the above date a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

_/s/ Thomas O. Farrish_
Thomas O. Farrish