# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL HALLORAN, et al., | : | DOCKET NO. 3:16-CV-00133-VAB |
| | : | |
| Plaintiffs | : | |
| | : | |
| vs. | : | |
| | : | |
| HARLEYSVILLE PREFERRED | : | |
| INSURANCE CO., et al., | : | |
| | : | |
| Defendants. | : | APRIL 6, 2018 |

## MEMORANDUM OF LAW IN SUPPORT OF
## BUNKER HILL INSURANCE COMPANY'S MOTION TO DISMISS

Respectfully submitted by:

Thomas O. Farrish (ct26917)
John W. Cerreta (ct28919)
Daniel J. Raccuia (ct29535)
Jennifer L. Shukla (ct30204)
Day Pitney LLP
242 Trumbull Street
Hartford, CT  06103

Michael P. Mullins (ct29746)
Day Pitney LLP
One International Place
Boston, MA 02110

<u>**TABLE OF CONTENTS**</u>

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ................................................................................ 4

III.    THE APPLICABLE LEGAL STANDARDS .................................................... 5

        A.      Standards Governing Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6) ........... 5

        B.      Standards Governing the Interpretation of Insurance Contracts ........................... 6

IV.     THE COURT SHOULD DISMISS THE CONTRACT BREACH CLAIM IN
        COUNT 40 .......................................................................................................... 7

        A.      The Pawelcyzks Have Failed to Allege A Required Element of the
                Contract Breach Cause of Action – Their Own Compliance With the
                Policy's Terms .................................................................................................... 7

        B.      The Pawelcyzks Have Not Plausibly Pled A Loss Within The Policy
                Period of Any Bunker Hill Policy ...................................................................... 13

        C.      The Loss Described in the Pawelcyzks' Complaint Is Not Covered by the
                Bunker Hill Policy ............................................................................................ 15

V.      THE COURT SHOULD DISMISS THE BAD FAITH CLAIM IN COUNT 116 .......... 21

        A.      The Pawelcyzks' Bad Faith Claim Cannot Survive the Dismissal of Their
                Contract Breach Claim ...................................................................................... 21

        B.      Under the Federal Pleading Standards Articulated in Twombly and Iqbal,
                the Bad Faith Claim Is Not Plausibly Pled ........................................................ 22

VI.     THE COURT SHOULD DISMISS THE CUTPA CLAIM IN COUNT 162 ................ 25

        A.      Like the Bad Faith Claim, the CUTPA Claim Cannot Survive Dismissal of
                the Contract Breach Count ................................................................................ 26

        B.      The Pawelcyzks Have Not Pled and Cannot Plead that Bunker Hill Has a
                "General Business Practice" of Unfair Claim Conduct ....................................... 27

VII.    THE PUTATIVE CLASS CLAIMS SHOULD BE DISMISSED AS TO
        BUNKER HILL .................................................................................................. 30

VII.    CONCLUSION .................................................................................................. 31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2004 Stuart Moldaw Tr. v. XE L.I.F.E., LLC*,
 642 F. Supp. 2d 226 (S.D.N.Y. 2009), *aff'd*, 374 F. App'x 78 (2d Cir. 2010) ........................14

*Abrahams v. Young & Rubicam, Inc.*,
 240 Conn. 300 (1997) ......................................................................................................3, 26

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ........................................................................................................*Passim*

*Bacewicz v. NGM Ins. Co.*,
 No. 3:08-cv-1530, 2010 U.S. Dist. LEXIS 77682 (D. Conn. Aug. 2, 2010) ..........................20

*Beach v. Middlesex Mutual Assurance Co.*,
 205 Conn. 246 (1987) ......................................................................................................19, 20

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ........................................................................................................*Passim*

*Belz v. Peerless Ins. Co.*,
 204 F. Supp. 3d 457 (D. Conn. 2016) ................................................................................17, 29

*Belz v. Peerless Ins. Co.*,
 46 F. Supp. 3d 157 (D Conn. 2014) ........................................................................................29

*Benanti v. Del. Ins. Co.*,
 86 Conn. 15 (1912) ................................................................................................................10

*Bepko v. St. Paul Fire & Marine Ins. Co.*,
 No. 3:04-CV-01996 (PCD), 2005 U.S. Dist. LEXIS 39066 (D. Conn. Nov. 10,
 2005) ......................................................................................................................................23

*Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*,
 308 Conn. 760 (2013) ....................................................................................................6, 7, 21

*Cent. States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*,
 504 F.3d 229 (2d Cir. 2012) ..................................................................................................29

*Corteau v. Teachers Insurance Co.*,
 No. 3:16-cv-580 (MPS), 2017 U.S. Dist. LEXIS 38434 (Mar. 17, 2017) ......................28, 29

*De la Concha of Hartford, Inc. v. Aetna Life Ins. Co.*,
   269 Conn. 424 (2004) ...............................................................................................3, 21, 22

*Finch v. Great Am. Ins. Co.*,
   101 Conn. 332 (1924) ..................................................................................................9, 10, 11

*Gabriel v. Liberty Mut. Fire Ins. Co.*,
   No. 3:14-cv-01435 (VAB), 2015 U.S. Dist. LEXIS 129952 (D. Conn. Sept.
   28, 2015) ............................................................................................................................25, 29

*Gates v. Gov't Emps. Ins. Co.*,
   No. NNH-CV-06-5004852-S, 2008 Conn. Super. LEXIS 972 (Apr. 18, 2008).....................26

*Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*,
   274 Conn. 457 (2005) .................................................................................................................6

*Hartford Roman Catholic Diocesan Corp. v. Interstate Fire & Cas. Co.*,
   No. 3:12-cv-01641 (JBA), (D. Conn. Nov. 19, 2012), ECF No. 1 ...........................................8

*Harty v. Eagle Indem. Co.*,
   108 Conn. 563 (1928) .......................................................................................................*Passim*

*Hubert v. State Dep't of Corr.*,
   No. 14-cv-00476 (VAB), 2016 U.S. Dist. LEXIS 20914 (D. Conn. Feb. 22,
   2016) ........................................................................................................................................24

*Jemiola v. Hartford Cas. Ins. Co.*,
   No. TTD-CV-15-6008837-S, 2017 Conn. Super. LEXIS 473 (Mar. 2, 2017) .................21, 26

*Jones v. Capital Cities/ABC, Inc.*,
   168 F.R.D. 477 (S.D.N.Y. 1996) .............................................................................................29

*Keller v. Beckenstein*,
   117 Conn. App. 550 (2009) ...............................................................................................2, 7, 11

*Kowalshyn v. Excelsior Ins. Co.*,
   No. 3:16-cv-00148 (JAM), 2018 WL 888724 (D. Conn. Feb. 13, 2018) ...............................15

*Lees v. Middlesex Ins. Co.*,
   229 Conn. 842 (1994) .....................................................................................................4, 27, 28

*Lewis v. Casey*,
   518 U.S. 343 (1996)..................................................................................................................29

*LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447 (S.D.N.Y.
   2014) ........................................................................................................................................30

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ...................................................................................................30

*Mahon v. Ticor Title Ins. Co.,*
  683 F.3d 59 (2d Cir. 2012) ........................................................................................30

*McCarthy v. Travelers Indem. Co.,*
  No. FBT-CV-97-0345443-S, 2000 Conn. Super. LEXIS 823 (Mar. 29, 2000) .......................11

*Mead v. Burns,*
  199 Conn. 651 (1986) ................................................................................................27

*Nat'l Publ'g. Co. v. Hartford Fire Ins. Co.,*
  287 Conn. 664 (2008) ............................................................................................8, 12

*Nida v. State Farm Fire & Casualty Co.,*
  454 So. 2d 328  (La. Ct. App. 1984) .................................................................18, 19, 20

*P&S Printing, LLC v. Tubelite, Inc.,*
  No. 3:14-cv-1441 (VAB), 2015 U.S. Dist. LEXIS 93060 (D. Conn. July 17,
  2015) ...................................................................................................................5, 6

*Palkimas v. State Farm Fire & Cas. Co.,*
  150 Conn. App. 655 (2014) ........................................................................................10

*Pantoja v. Banco Popular,*
  545 F. App'x 47 (2d Cir. 2013) .............................................................................13, 14

*Queen Anne Park Homeowners Association v. State Farm Fire & Casualty Co.,*
  352 P.3d 790 (Wash. 2015) ..................................................................................18, 19

*R.T. Vanderbilt Co., Inc. v. Hartford Accident & Indem. Co.,*
  171 Conn. App. 61 (2017) .....................................................................................14, 15

*R.T. Vanderbilt Co. v. Cont'l Cas. Co.,*
  273 Conn. 448 (2005) .................................................................................................7

*Robb v. Conn. Bd. of Veterinary Med.,*
  157 F. Supp. 3d 130 (D. Conn. 2016) ...........................................................................5

*Royal Indem. Co. v. King,*
  532 F. Supp. 2d 404 (D. Conn. 2008), *aff'd sub nom. Arrowood Indem. Co. v.
  King,* 699 F.3d 735 (2d Cir. 2012) ..............................................................................3

*Sec. Ins. Co. v. Lumbermens Mut. Cas. Co.,*
  264 Conn. 688 (2003) ...............................................................................................15

*Springdale Donuts, Inc. v. Aetna Cas. & Sur. Co.*,
   247 Conn. 801 (1999) .................................................................................7

*State v. Acordia, Inc.*,
   310 Conn. 1 (2013) ..................................................................................3, 27

*Torres v. Postmaster General*, No. 3:05-cv-1692 (JCH),
   2006 WL 1525981 (D. Conn. May 26, 2006)......................................12

*In re Trilegiant Corp.*,
   No. 3:12-cv-00396 (VLB), 2014 U.S. Dist. LEXIS 42570 (D. Conn. Mar. 28,
   2014) ........................................................................................30, 31

*Van Dorsten v. Provident Life & Accident Ins. Co.*,
   554 F. Supp. 2d 285 (D. Conn. 2008).............................................22, 29

*Winding Hills Condo. Ass'n, Inc. v. N. Am. Spec. Ins. Co.*,
   752 A.2d 837 (N.J. App. Div. 2000).....................................................15

*XL Spec. Ins. Co. v. Otto Naumann, LTD.*,
   No. 12-cv-8224 (DAB), 2015 U.S. Dist. LEXIS 45028 (S.D.N.Y. Mar. 31,
   2015) ........................................................................................14

*Zulick v. Patrons Mut. Ins. Co.*,
   287 Conn. 367 (2008) .............................................................................3

**Statutes**

Cal. Ins. Code § 2071...................................................................................10

Conn. Gen. Stat. § 38a-307...........................................................................10

Conn. Gen. Stat. § 38a-816(6) ...................................................................4, 27

Conn. Gen. Stat. § 38a-816(6)(A).................................................................28

Conn. Gen. Stat. § 38a-816(6)(F) .................................................................28

Conn. Gen. Stat. § 38a-816(6)(G).................................................................28

Mass. Gen. Laws Ann. Ch. 175, § 99 ..........................................................10

N.Y. Ins. Law § 3404...................................................................................10

**Rules**

D. Conn. L. Civ. R. 7(a)1...............................................................................1

Fed. R. Civ. P. 8..........................................................................................3, 21, 22

Fed. R. Civ. P. 8(d) ..............................................................................................13, 14

Fed. R. Civ. P. 9(c) ..........................................................................................8, 11, 12

Fed. R. Civ. P. 12(b)(6)..............................................................................*Passim*

**Other Authorities**

Black's Law Dictionary 1251-52 (8th ed. 2004) ............................................................9

1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 4:28 (13th ed. 2016) ........................30

5 William Rubenstein, *Newberg on Class Actions* § 2:5 (5th ed.) ................................................30

## I.   INTRODUCTION.

Pursuant to D. Conn. L. Civ. R. 7(a)1, the defendant, Bunker Hill Insurance Company ("Bunker Hill"), respectfully submits this memorandum of law in support of its motion to dismiss all of the claims asserted against it in the plaintiffs' "Fourth Amended Class Action Complaint." ("Compl.," ECF No. 488.)

Bunker Hill insured only one of the many houses in this case, the one belonging to Mark and Felice Pawelcyzk. (*Id.* Count 40.) The Pawelcyzks allege that Bunker Hill breached its policy contract when it declined to pay their claim for cracked basement walls. (*Id.* ¶ 757.) They also seek a declaratory judgment of coverage under the Bunker Hill policy (Count 70); allege that Bunker Hill breached the covenant of good faith and fair dealing (Count 116); and claim a right to relief under the Connecticut Unfair Insurance Practices Act ("CUIPA") and the Connecticut Unfair Trade Practices Act ("CUTPA"). (Count 162).

The Pawelcyzks claim that their house "collapsed" from defective concrete. (*Id.* ¶¶ 739, 750.) Strangely, they claim that their house collapsed *both* in 2001-2002, when they were insured by Allstate, and also in 2012-2013, when they were insured by Bunker Hill. (*Id.*) To resolve this inconsistency, during its claim investigation Bunker Hill asked the Pawelcyzks to fill out a "proof of loss" – an insurance document in which a policyholder states, among other things, the date on which the loss occurred. (*Id.* ¶ 1734) (acknowledging request for proof of loss). The policy inarguably entitles Bunker Hill to a timely, complete proof of loss (*see* discussion, Section IV.A *infra*), but the Pawelcyzks do not even claim to have complied with that requirement. Indeed, they have not even conclusorily alleged "the plaintiffs complied with all terms and conditions of the policy," as insurance policyholders often do.

This is a remarkable omission, and it compels dismissal of the Pawelcyzks' contract breach claim. An action for contract breach has four elements – "an agreement, performance by one party, breach of the agreement by the other party and damages." *Keller v. Beckenstein,* 117 Conn. App. 550, 558 (2009) (internal quotation marks and citation omitted). The Pawelcyzks have entirely failed to plead the second requirement – their own performance of their obligations under the Bunker Hill policy. Nowhere in their 414-page, 3,003-paragraph complaint do they plead that they complied with all of the terms and conditions of the policy. This is a fatal defect in their contract breach claim. (*See* discussion, Section IV.A *infra*.)

Count 40 also suffers from two additional defects. First, the Pawelcyzks have not plausibly pled that their loss occurred within the policy period of any Bunker Hill policy. (*See* discussion, Section IV.B *infra.*) As noted, they affirmatively allege that their loss occurred within the policy period of their earlier insurer, Allstate Insurance Company ("Allstate"). (Compl. ¶ 742.) Second, even if the Pawelcyzks had complied with the policy conditions and had a loss within Bunker Hill's policy period, their claims still would not be covered. Bunker Hill's form of homeowners policy simply does not cover cracked basement walls. (*See* discussion, Section IV.C *infra.*) For these reasons, the Court should dismiss the contract breach claim that the Pawelcyzks attempted in Count 40.

The Pawelcyzks' declaratory judgment, "bad faith" and CUTPA/CUIPA claims should likewise be dismissed, for the reasons discussed in the Memorandum of Law in Support of Certain Defendants' Joint Motion to Dismiss Counts 47 to 184 of the Fourth Amended Complaint, which Bunker Hill joins and incorporates by reference into this memorandum. (ECF No. 497-2) (hereinafter "Joint Brief"). The bad faith claim should also be dismissed for an additional reason unique to Bunker Hill. Such a claim requires pleading and proof not only that

the insurance company wrongfully denied coverage, but also that it did so with an "interested or sinister motive." *De la Concha of Hartford, Inc. v. Aetna Life Ins. Co.,* 269 Conn. 424, 433 (2004) (quoting *Habetz v. Condon*, 224 Conn. 231 (1992)).  And Rule 8 requires the pleading of facts beyond those that are "merely consistent with a defendant's liability."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  Taken together, the substantive Connecticut law of bad faith and the federal pleading rules set the bar for the Pawelcyzks: they must plead facts that, if proven, would be more than "merely consistent with" a sinister motive.  Their complaint does not meet this standard.  Even if they were to prove every fact alleged in Count 116, Bunker Hill's conduct would still be fully explainable as the good-faith actions of an insurer that had asked for, but not received, a completed proof of loss.  (*See* discussion, Section V.B *infra.*)

The CUTPA/CUIPA claim in Count 162 should also be dismissed, both for the reasons cited in the Joint Brief and for reasons unique to Bunker Hill.  To begin with, a CUTPA claim against an insurer cannot survive the dismissal of the policyholder's contract breach claim.  *See State v. Acordia, Inc.,* 310 Conn. 1, 37 (2013); *Zulick v. Patrons Mut. Ins. Co.,* 287 Conn. 367, 378 (2008); *Abrahams v. Young & Rubicam, Inc.,* 240 Conn. 300, 306 (1997).  CUTPA requires an "ascertainable loss" from unfair conduct, and a policyholder whose claim is properly denied has not experienced such a loss as a matter of law.  *Abrahams*, 240 Conn. at 306*; see also Royal Indem. Co. v. King,* 532 F. Supp. 2d 404, 413 (D. Conn. 2008), *aff'd sub nom. Arrowood Indem. Co. v. King*, 699 F.3d 735 (2d Cir. 2012).  Moreover, even if their contract breach claim were somehow to survive this motion, the Pawelcyzks' CUTPA claim against Bunker Hill would still merit dismissal.  In the insurance claim context, a CUTPA claim requires pleading and proof not only that the insurance company handled the policyholder's claim wrongfully, but also that it

mishandled enough *other* policyholders' claims to support the conclusion that the misconduct is a "general business practice" of the company. Conn. Gen. Stat. § 38a-816(6); *Lees v. Middlesex Ins. Co.,* 229 Conn. 842, 849 (1994). Here, the Pawelcyzks do not allege that Bunker Hill mishandled anyone else's claim, except in entirely conclusory allegations that must be disregarded under *Iqbal.*

Finally, the putative class action claims against Bunker Hill should be dismissed too. Once the Court dismisses the Pawelcyzks' claims, there will be no plaintiff in the case who had any connection with Bunker Hill. The putative class claims cannot proceed if there is no such plaintiff. Bunker Hill should therefore be entirely dismissed from this case.

## II.   FACTUAL BACKGROUND.

The Pawelcyzks allege that they own the home located at 44 Evans Crossing in South Windsor. (Compl. ¶ 24.) They say that they discovered damage to their basement walls in July, 2015. (*Id.* ¶ 729.) They placed a claim with Bunker Hill, which had insured the house beginning in April, 2012. (*Id.* ¶¶ 748, 755.) They also placed a claim with Allstate, which had covered the house in 2001, the year that they bought it. (*Id.* ¶¶ 728, 739, 743.) Both companies denied their claim, (*id.* ¶¶ 744, 756), and this suit ensued.

In their suit, the Pawelcyzks claim that their loss occurred in Bunker Hill's "policy periods," although they do not say which one. (*Id.* ¶¶ 754.) Curiously, they *also* claim that their loss occurred eleven years before, during Allstate's 2001-2002 policy period. (*Id.* ¶¶ 739, 742.)

The Pawelcyzks acknowledge that, before they filed their contract breach suit, Bunker Hill requested that they complete a proof of loss. (*Id.* ¶ 1734.) A proof of loss is a tool that an insurance company uses to figure out when a loss occurred, among other things. (*See* Ex. 1 to attached Decl. of Courtland J. Troutman, at BH011) ("Troutman Decl.") (policy provision

requiring policyholder to state in writing "the time and cause of loss").[1]   The Pawelcyzks'

complaint does not allege that they complied with the proof of loss requirement, or with the

conditions of the policy generally.   Other relevant facts will be set forth below.

## III.   THE APPLICABLE LEGAL STANDARDS.

### A.   Standards Governing Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6).

A claim should be dismissed under Rule 12(b)(6) when it "fail[s] to state a claim upon

which relief can be granted."   To avoid dismissal under the rule, a complaint "must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'"

*Iqbal*, 556 U.S. at 678 (citation omitted), and its allegations "must be enough to raise a right to

relief above the speculative level."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In ruling on a motion to dismiss, courts in the Second Circuit follow a "two-pronged

approach."   *Robb v. Conn. Bd. of Veterinary Med.,* 157 F. Supp. 3d 130, 137-38 (D. Conn. 2016)

(quoting *Iqbal,* 556 U.S. at 679).   First, they begin by "identifying pleadings that, because they

are no more than conclusions, are not entitled to the assumption of truth."   *Iqbal,* 556 U.S. at

679.   Second, if the complaint contains "well-pleaded factual allegations, a court should assume

their veracity and then determine whether they plausibly give rise to an entitlement to relief."   *Id.*

"A claim is facially plausible if 'the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged.'"   *P&S Printing,*

*LLC v. Tubelite, Inc.*, No. 3:14-cv-1441 (VAB), 2015 U.S. Dist. LEXIS 93060, at *4 (D. Conn.

July 17, 2015) (quoting *Iqbal*, 556 U.S. at 678).[2]   "'The plausibility standard is not akin to a

---

[1]      For the Court's convenience, Bunker Hill has Bates-numbered the exhibits to Mr. Troutman's declaration.  Page number citations are to the Bates number.

[2]      Copies of unreported cases cited in this memorandum of law are attached in an Appendix of Authorities.

"probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 678).

Importantly for this case, a complaint fails the plausibility test when its factual allegations are as consistent with non-liability as they are with liability.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal,* 556 U.S. at 678 (internal quotation marks and citation omitted).  The facts of *Twombly* illustrate this point.  In *Twombly,* the plaintiff's antitrust monopoly complaint failed to state a claim because its factual allegations were merely consistent with, and not plausibly suggestive of, unlawful monopolistic behavior. *Twombly,* 550 U.S. at 557.  The plaintiff alleged that several "Baby Bell" telephone companies engaged in the same practices at the same time – conduct that could equally be explained by perfectly legal happenstance, or by illegal conspiracy.  *Id.* at 551.  Because the plaintiff failed to allege any facts that, if proven, would establish a conspiracy rather than a happenstance, his claim was properly dismissed.  *Id.*  This point will have important implications for the Pawelcyzks' bad faith claim, as will be discussed in Section V.B below.

**B.      Standards Governing the Interpretation of Insurance Contracts.**

Under Connecticut law, the "[c]onstruction of a contract of insurance presents a question of law for the court."  *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 274 Conn. 457, 462 (2005) (quoting *Bd. of Educ. v. St. Paul Fire & Marine Ins. Co.*, 261 Conn. 37, 40 (2002)); *see also Capstone Bldg. Corp. v. Am. Motorists Ins. Co.,* 308 Conn. 760, 773 (2013) (same).  An insurance policy "must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy."  *Capstone*, 308 Conn. at 773 (quoting *Hartford Cas.*, 274 Conn. at 463).  The words used in the policy must be accorded "their natural and ordinary meaning," and any ambiguities in those words are ordinarily construed in favor of the

insured.  *Id.* (quoting *Hartford Cas.*, 274 Conn. at 463) "A necessary predicate to this rule of construction, however, is a determination that the terms of the insurance policy are indeed ambiguous."  *Springdale Donuts, Inc. v. Aetna Cas. & Sur. Co*., 247 Conn. 801, 806 (1999) (internal quotation marks and citation omitted).   "[A] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." *R.T. Vanderbilt Co. v. Cont'l Cas. Co.*, 273 Conn. 448, 463 (2005) (internal quotation marks and citation omitted).

## IV.   THE COURT SHOULD DISMISS THE CONTRACT BREACH CLAIM IN COUNT 40.

Applying the foregoing principles, the Court should begin by dismissing the contract breach claim that the Pawelcyzks have attempted to plead in Count 40.  The allegations of that Count are missing a required element of the contract breach cause of action; are rendered facially implausible by other, directly contradictory allegations elsewhere in the complaint; and entirely fail to describe a covered claim under the policy.  Bunker Hill will discuss each of these defects in turn.

### A.   The Pawelcyzks Have Failed to Allege A Required Element of the Contract Breach Cause of Action – Their Own Compliance With the Policy's Terms.

Under Connecticut law, a claim for breach of contract has four elements.  "The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." *Keller,* 117 Conn. App. at 558 (internal quotation marks and citation omitted).  The Pawelcyzks have entirely failed to plead the second element.  Nowhere in their complaint do they claim to have performed all of their obligations under their Bunker Hill policies.

This omission is particularly remarkable when one considers how easy it ordinarily is for an insurance policyholder to plead the second element.  Under federal pleading rules, of course, a contract claimant need only "allege generally that all conditions precedent have occurred or been performed."  Fed. R. Civ. P. 9(c).  And under Connecticut state rules, a special rule for insurance policyholders makes it easier for them to plead compliance, in comparison to other contractual claimants.  *See Nat'l Publ'g. Co. v. Hartford Fire Ins. Co.,* 287 Conn. 664, 673 (2008) (describing "uncommon rule" for pleading compliance with insurance policy conditions); *Harty v. Eagle Indem. Co.,* 108 Conn. 563, 565 (1928) (it is "the established law of this State that one instituting an action upon an insurance policy is only obliged to allege in his complaint, in general terms, that the various conditions precedent stated in the policy have been fulfilled").  In other words, whereas a claimant under a sales contract having ten conditions must plead her own performance of each of the ten, a holder of an insurance policy having ten conditions typically must only plead general compliance with the conditions as a group.  *Id.*  Following this "uncommon" approach, insurance policyholders often plead their own performance of a policy's conditions in a single sentence.  *See, e.g.,* Complaint, *Hartford Roman Catholic Diocesan Corp. v. Interstate Fire & Cas. Co.,* No. 3:12-cv-01641 (JBA), at ¶ 52 (D. Conn. Nov. 19, 2012), ECF No. 1 ("The Archdiocese has satisfied all conditions of the Interstate Policies."); *accord* Fed R. Civ. P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed").

With the bar set so low, it says a lot when a policyholder cannot jump it.  And the Pawelcyzks have not jumped it here.  Nowhere in their 414-page, 3,003-paragraph complaint do they say that they satisfied all of the conditions of the Bunker Hill policies – not even in the terse, one-sentence formulation that policyholders often use.  And they did not say it because

they cannot say it.  In particular, the Pawelcyzks did not and cannot allege that they timely and fully complied with Bunker Hill's request for a proof of loss.

A proof of loss is a written statement by the policyholder of the circumstances and amount of her loss.  *See* Black's Law Dictionary 1251-52 (8th ed. 2004).  Bunker Hill's policy clearly requires the Pawelcyzks to complete such a statement on request.  Specifically, the policy provides that "[i]n case of loss to covered property, you must . . . [s]end to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief . . . [t]he time and cause of loss," among other items of information.  (Ex. 1 to Troutman Decl., at BH011.)  Moreover, the policy makes clear that the Pawelcyzks cannot sue to recover under it unless they fully and timely comply with the proof of loss requirement.  (*Id.* at BH013) ("No action can be brought against us unless the policy provisions have been complied with.").  The Pawelcyzks acknowledge that Bunker Hill requested a proof of loss, (Compl. ¶ 1734), but nowhere do they claim to have timely and fully complied with the request.

The requirement that a policyholder submit a proof of loss is not a piece of insurance company "fine print."  Rather, it is an essential component of the claim process in cases where the loss is, for one reason or another, difficult to adjust – for example, when fraud or arson is suspected, or where (as here) the policyholders will not plainly state when their loss occurred.  As the Connecticut Supreme Court has explained in the context of fire insurance policies, "the required process of liquidating the loss is minutely specified with reference to protecting the company against excessive or fraudulent claims; and the filing of proofs of loss by the insured is one step in that process."  *Finch v. Great Am. Ins. Co.,* 101 Conn. 332, 338 (1924).  Indeed, the proof of loss requirement is such an important tool in the adjustment of difficult claims that state legislatures across the country affirmatively require its inclusion in standard fire insurance

policies, lest the cost of adjusting those claims drive up premiums for everyone. *See, e.g.,* Conn. Gen. Stat. § 38a-307; Cal. Ins. Code § 2071; Mass. Gen. Laws Ann. Ch. 175, § 99; N.Y. Ins. Law § 3404.

It is therefore unsurprising that Connecticut courts rigorously enforce the proof of loss requirement. As the Supreme Court said nearly a century ago, "[a] failure to [file a proof of loss] within the time limited may bar the enforcement of the underwriter's obligation." *Finch,* 101 Conn. at 338; *see also Benanti v. Del. Ins. Co.,* 86 Conn. 15, 18 (1912) (to recover under fire policy, plaintiff must prove "compliance with the proofs of loss"). More recently, the Connecticut Appellate Court held that when a policyholder does not "dispute the fact that he failed to submit to the [insurer] a proof of loss as required under the insurance policy," that "concession is fatal" to his claim. *Palkimas v. State Farm Fire & Cas. Co.,* 150 Conn. App. 655, 659-60 (2014). The requirement is so strongly enforced that courts will not even inquire whether the insurer was prejudiced by the policyholder's failure to comply. *See id.* ("[W]e cannot find any case law from our appellate courts that requires an insurer to prove prejudice following an insured's failure to submit a proof of loss under an insurance policy.").

A proof of loss is not only an important claim investigation tool; it also plays a role in determining when otherwise-covered losses become payable. "[P]roofs of loss serve two main purposes; they afford the basis for determining the amount of the loss recoverable under the policy, and they fix a time when such amount becomes payable." *Harty,* 108 Conn. at 566. The Bunker Hill policy, for example, provides that covered losses are "payable 60 days after we receive your proof of loss." (Ex. 1 to Troutman Decl., at BH013.)

Because even covered losses are not payable until after the policyholder submits a proof of loss, it follows that she cannot maintain an action on the policy until she does so. The parties

having agreed "that the loss shall not become payable until sixty days after the insured has performed his part in the process of investigation . . . a default by the insured will prevent the loss from becoming payable, and so it may be said that compliance with the requirements referred to is a condition precedent to the right to payment and, therefore, to an enforceable liability to pay." *Finch,* 101 Conn. at 338-39.  Stated even more simply, "the plaintiff's failure to submit a sworn proof of loss . . . prevent[s] the loss from becoming payable."  *McCarthy v. Travelers Indem. Co.,* No. FBT-CV-97-0345443-S, 2000 Conn. Super. LEXIS 823, at *13 (Mar. 29, 2000).

Here, the Pawelcyzks have not pled that they performed under the contract by complying with all of its terms – not even in the one-sentence formulation that policyholders customarily use.  Because they have not done so, they have failed to allege one of the four elements of a contract breach claim under Connecticut law.  *Keller,* 117 Conn. App. at 558.  Under Rule 9(c), it is the plaintiff's responsibility to "allege generally that all conditions precedent have been performed or have occurred."  Fed. R. Civ. P. 9(c).  The Pawelcyzks' total failure to include any allegation that they have satisfied their policies' conditions precedent plainly violates this standard and mandates dismissal.  *See, e.g., Caren v. Collins*, 696 Fed. Appx. 19, 21 (2d Cir. 2017) (affirming dismissal of breach of contract claim because "Plaintiffs failed to plead adequately their performance of a condition precedent"); *Torres v. Postmaster General*, No. 3:05-cv-1692 (JCH), 2006 WL 1525981, at *2 (D. Conn. May 26, 2006) (dismissing complaint for failure to "satisfy the requirement that it aver generally that all conditions precedent have been performed or have occurred").  Count 40 should be dismissed accordingly.  *Iqbal,* 556 U.S. at 679 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.").

As the Court knows, Bunker Hill pointed out this same defect in the plaintiffs' last complaint.  (ECF Nos. 381, 382.)  Since then, the complaint has been amended in dozens of ways, but tellingly the Pawelcyzks did not cure this defect.  They did not add even a single sentence alleging general satisfaction of the policies' conditions.  Evidently the Pawelcyzks plan to stand on the arguments they made last year in their brief in opposition Bunker Hill's motion to dismiss the prior complaint.  (*See* Pls.' Opp'n to Mots. to Dismiss Substitute Third Am. Compl., ECF No. 458, at 79-82.)  Each of those arguments should be rejected.

In last year's brief, the Pawelcyzks' principal response was to sow confusion about the pleading regime for insurance cases.  They contended that "[t]here is no precedent that an insured must specifically plead that it has complied with the insurer's request for a proof of loss in order to maintain a breach of contract claim," (*id.* at 81), and that is true enough – Federal Rule 9(c), *Harty* and *National Publishing* all teach that an insurance claimant is not required to specifically and separately plead satisfaction of each condition in an insurance policy.  But the Pawelcyzks erred when they reasoned that just because the rules do not require *specific* pleading of *each* policy condition, they are excused from pleading compliance with policy conditions *at all*.  Put differently, when pleading the second element of a contract breach claim, the bar is often lower for insurance policyholders than it is for other contractual claimants – but it does not disappear entirely, as the Pawelcyzks evidently contend.

In last year's brief the Pawelcyzks also claimed to have adequately pled their own performance when they alleged that they "filed a timely claim for coverage in accordance with the terms of their policy with Bunker Hill."  (ECF No. 458, at 80.)  But that allegation pleads compliance with only one policy condition – the requirement that claims be timely reported.  It does not plead compliance with the others, including the proof of loss requirement.  The rules tell

the Pawelcyzks how to plead the second element of the contract breach cause of action in a federal insurance case:  simply allege, in a single sentence, that they have satisfied or performed all conditions of the policies.  Their failure to plead even this much – to jump even this lowest of low bars – is a fatal defect in their contract breach claim.

**B.      The Pawelcyzks Have Not Plausibly Pled A Loss Within The Policy Period of Any Bunker Hill Policy.**

The Bunker Hill policies insured only those covered losses that occurred within their one-year period of insurance.  Specifically, the policy stated that it "applie[d] only to loss . . . which occurs during the policy period."  (*E.g.,* Ex. 1 to Troutman Decl., at BH018.)  The policy periods of the contracts under which the Pawelcyzks have sued ran from April 30, 2012 to April 30, 2017.  (Compl. ¶ 750.)  Thus, to sufficiently allege a covered loss under the Bunker Hill policy, the Pawelcyzks must allege, at a minimum, that their loss occurred between those two dates.

The Pawelcyzks have not plausibly alleged a loss within that period.  To be sure, they contend that "[d]irect physical loss occurred during the Bunker Hill policy period."  (Compl. ¶ 754.)  But they *also* claim that their loss occurred during *Allstate's* earlier policy period, eleven years before.  (*Id.* ¶ 742.)  That claim renders their allegation against Bunker Hill implausible.

When an insurance policyholder affirmatively alleges that her loss occurred before the inception of the company's policy, her claim is properly dismissed.  *Pantoja v. Banco Popular,* 545 F. App'x 47, 49 (2d Cir. 2013).  In *Pantoja,* the policyholder's complaint alleged "(1) [the insurer's] policy was effective from August 2008 to August 2010; (2) the policy stated it provided coverage only for losses accruing during the policy period; and (3) the damage to the property occurred in 2007."  *Id.*  Because the policyholder alleged that his loss occurred before the company's period of coverage began, his claim "lack[ed] 'facial plausibility,' because [he] alleged damage predating the policy."  *Id.*  Here, the Pawelcyzks have done what the

-13-

policyholder in *Pantoja* did – they have affirmatively alleged that their loss predated Bunker Hill's policy period.  (*Compare* Compl. ¶ 742 (alleging loss occurred within Allstate's 2001-2002 policy period) *with* ¶ 750 (conceding that Bunker Hill's coverage did not begin until eleven years later)).

The Pawelcyzks will no doubt contend that Rule 8(d) entitles them to plead alternatively that they are covered by Allstate *or* Bunker Hill.  Yet while the rule permits plaintiffs to plead inconsistent *theories,* they are not nearly as free to plead inconsistent *facts.*  "Although Rule 8(d)(3) allows parties to plead alternative legal theories, it does not permit 'inconsistent assertions of facts within the allegations." *XL Spec. Ins. Co. v. Otto Naumann, LTD.,* No. 12-cv-8224 (DAB), 2015 U.S. Dist. LEXIS 45028, at *4 (S.D.N.Y. Mar. 31, 2015) (internal quotation marks and citation omitted).  At best, "[a] pleader may assert contradictory statements of fact only when legitimately in doubt about the facts in question."  *2004 Stuart Moldaw Tr. v. XE L.I.F.E., LLC,* 642 F. Supp. 2d 226, 240 (S.D.N.Y. 2009) (quoting *Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996)), *aff'd*, 374 F. App'x 78 (2d Cir. 2010).  Here, the Pawelcyzks could not legitimately be in doubt about the date of their claim.  They allege that their house collapsed, (Compl. ¶ 750), and no homeowner could plausibly claim not to know the date of such an event – particularly where, as here, they have engaged a licensed professional engineer to answer all the questions they might have about what happened to their house.  (*See id.* ¶¶ 730-33.)  Put simply, the Pawelcyzks pled an implausible claim against Bunker Hill when they affirmatively pled that their loss happened eleven years before Bunker Hill's policy began, and they cannot save that claim from dismissal by appealing to Rule 8(d).

The Pawelcyzks may also contend that they can plausibly plead claims against more than

one insurer under the so-called "continuous trigger" theory,[3] but Judge Meyer has already rejected that claim, and for good reason. *Kowalshyn v. Excelsior Ins. Co.,* No. 3:16-cv-00148 (JAM), 2018 WL 888724, *3 (D. Conn. Feb. 13, 2018). The continuous trigger "applies to the distinct problem of long-tail toxic tort claims" – in other words, disease claims where a toxin "continually reinjure[s] the body for decades after initial exposure." *Id.* (quotation marks and citation omitted). "But unlike cases involving gradual environmental contamination or gradual progression of a disease, coverage for defective concrete foundation cases is not triggered until there is a 'collapse.'" *Id.* at *4. "The 'collapse' itself did not occur innumerable times over the years, unlike the injuries or losses in environmental or disease cases." *Id.* Stated differently, courts sensibly view a collapse as happening at a distinct point in time – in contrast to toxic tort claims, which some courts view as happening continuously over years. Because a collapse happens at a distinct time, the Pawelcyzks cannot plausibly claim that their collapse happened in 2001 *and* 2012, as they evidently attempt to do in their claims against Allstate (Count 39) and Bunker Hill. (Count 40.)

### C. The Loss Described in the Pawelcyzks' Complaint Is Not Covered by the Bunker Hill Policy.

Even if the Pawelcyzks had alleged compliance with the policy's conditions – and even if they had plausibly alleged a loss within Bunker Hill's policy period – the contract breach claim

---

[3] The "continuous trigger" theory is a special rule for certain "long-tail toxic tort" claims under liability insurance policies. *R.T. Vanderbilt Co., Inc. v. Hartford Accident & Indem. Co.,* 171 Conn. App. 61, 158 (2017). When, say, an asbestos worker breathes in asbestos particles in 1960, but his asbestos-related disease does not manifest itself until 1980, the "continuous trigger" theory would allow the asbestos manufacturer to invoke all liability insurance policies in force from 1960 to 1980. *See Sec. Ins. Co. v. Lumbermens Mut. Cas. Co.,* 264 Conn. 688, 698 n.12 (2003) (describing operation of various liability insurance "trigger" theories). The theory is inapplicable to first-party property insurance policies. *See, e.g., Winding Hills Condo. Ass'n, Inc. v. N. Am. Spec. Ins. Co.,* 752 A.2d 837, 839-40 (N.J. App. Div. 2000) (state appellate court that applies continuous trigger to liability insurance cases nevertheless "reject[s] . . . the thesis that the continuous trigger rule applies to first-party property coverage"). Thus, if the Pawelcyzks were to appeal to the continuous trigger theory, their appeal should be rejected for the additional reason that the continuous trigger is inapplicable to property insurance.

asserted in Count 40 would still have to be dismissed.  This is so because cracking basement claims simply are not covered under Bunker Hill's form of homeowners policy.

To explain why, it will be useful to begin with a high-level view of the Bunker Hill policy before examining its provisions in detail.  Bunker Hill's policy is constructed of several forms and endorsements, the principal one of which is called "Form HO-3."  In that form, the principal coverage for the policyholder's dwelling is provided by a section entitled "Coverage A."  (*See* Ex. 1 to Troutman Decl., at BH004.)  Other miscellaneous coverages are provided in a section entitled "Additional Coverages."  (*See id.* at BH006-08.)  Thus, the coverage analysis of any claim for damage to a dwelling involves (1) analyzing whether that claim is covered under Coverage A, and then (2) analyzing whether it is covered under any Additional Coverage.

Cracking basement claims are plainly not covered under Bunker Hill's Coverage A.  Among other reasons, Coverage A excludes losses caused by defective materials used in the construction of the dwelling.  (*Id.* at BH011) ("We do not insure for loss caused directly or indirectly by . . . [f]aulty, inadequate or defective . . . [m]aterials used in repair, construction, renovation or remodeling.")  Perhaps even more significantly, Coverage A bars coverage for cracking or expansion of a wall.  (*Id.* at BH009) ("We do not insure . . . for loss . . . [c]aused by . . . [s]ettling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations [or] walls.").

The Pawelcyzks' complaint squarely describes a loss that is excluded under these provisions.  They say that their loss arises out of the fact that their house was "built with concrete containing deleterious iron sulfide materials," (Compl. ¶ 2), but this allegation places their loss plainly outside of Coverage A, since that coverage excludes losses caused by defective construction materials.  The Pawelcyzks also allege that the "deleterious . . . minerals" "cause[d]

the concrete to swell and crack," (*id.*), but this claim likewise puts their loss outside Coverage A. That coverage does not extend to losses caused by "expansion, including resultant cracking, of . . . walls." (Ex. 1 to Troutman Decl., at BH009.)

Moreover, because Bunker Hill's Coverage A bars coverage for expansion and cracking of *walls* as well as *foundations,* the Court can conclude that the coverage does not apply without engaging the question of whether the word "foundation" is ambiguous. A number of plaintiffs and insurers have jousted over that question in cracking basement cases. *See, e.g., Belz v. Peerless Ins. Co.,* 204 F. Supp. 3d 457, 463 (D. Conn. 2016). While Bunker Hill agrees with those insurers who have explained that a home's "foundation" unambiguously includes its basement walls, that dispute is not germane to the coverage analysis under Bunker Hill's Coverage A. Whether or not a basement wall is a foundation, it is certainly and unambiguously a wall. Since Bunker Hill's Coverage A bars coverage for expansion and cracking of walls, the Pawelcyzks' loss is not covered under it.

Indeed, the case against coverage under Coverage A is so clear that the Pawelcyzks evidently do not dispute it. Their complaint does not identify any provision of Coverage A that Bunker Hill allegedly breached. (*See* Count 40.) Rather, their complaint skips to the second step of the coverage analysis and attempts to invoke one of the "Additional Coverages" – the additional coverage for "collapse." (Compl. ¶ 750.) Yet their claim fares no better under this coverage than it does under Coverage A.

This is so because Bunker Hill's collapse coverage does not apply unless the policyholder's house experiences something beyond what the Pawelcyzks have described in their complaint. Bunker Hill's Form HO-3 "insure[s] for direct physical loss to covered property involving collapse of a building," but it defines what a collapse is *not*: "Collapse does not

-17-

include settling, cracking, shrinking, bulging or expansion."   (Ex. 1 to Troutman Decl., at BH007.)  Even as described in their complaint, the Pawelcyzks' loss fits squarely into what the Bunker Hill policy says is *not* a covered collapse.  They allege that their basement walls are "swell[ing]" (Compl. ¶ 2) – which is just another word for expansion, and expansion is excluded from the definition of collapse.  And they claim that the swelling caused their walls to "crack," (*id.*), but cracking is excluded from Bunker Hill's collapse coverage as well.

This language has been tested in litigation around the country, and state appellate courts have held that it does not extend collapse coverage to losses that, like the Pawelcyzks', are solely due to cracking or expansion.  In *Nida v. State Farm Fire & Casualty Co.,* for example, the Louisiana Court of Appeal affirmed a trial court judgment in favor of the insurer, noting that "property insurance policies extending coverage to direct loss caused by 'collapse' of the insured building but excluding loss from settling, cracking, bulging, and the like, have generally been held not to encompass damage to walls, ceilings, and foundations which have in fact settled, cracked, or bulged."  454 So. 2d 328, 334 (La. Ct. App. 1984) (internal quotation marks and citation omitted).  And in *Queen Anne Park Homeowners Association v. State Farm Fire & Casualty Co.,* a court that otherwise sided with the policyholder in holding that the term "collapse" was ambiguous nevertheless held that, to invoke the coverage, there must be more than cracking or expansion.  352 P.3d 790, 793-94 (Wash. 2015).  In *Queen Anne Park,* the Washington Supreme Court agreed with the policyholder that the term "collapse" could encompass more than the paradigmatic case of a building that suddenly falls to the ground; it could also include any loss that causes a "substantial impairment of structural integrity" in the building.  *Id.*  Even so, the court held that the form of policy then used by State Farm – and used in the Pawelcyzks' Bunker Hill policies – required more than mere cracking or expansion.  State

-18-

Farm's policy, like Bunker Hill's, clarified that the term "collapse does not include settling, cracking, shrinking, bulging or expansion." *Id.* at 791.  Under such a policy, "collapse" might mean "the substantial impairment of the structural integrity of all or part of a building," but it must also "mean[] more than mere settling, cracking, shrinking, bulging or expansion."  *Id.* at 794.

The Pawelcyzks may contend that the "collapse" analysis under Bunker Hill's policy form is controlled by the Connecticut Supreme Court's decision in *Beach v. Middlesex Mutual Assurance Co.,* 205 Conn. 246 (1987).  Yet if they were to do so, they would be mistaken, because Bunker Hill's policy is very different from the policy that was at issue in *Beach*.  In particular, Bunker Hill did not leave the term "collapse" undefined in its policy, as the insurer had done in *Beach*.  To the contrary, Bunker Hill's policy clearly explained that "collapse does not include settling, cracking, shrinking, bulging or expansion."  (Ex. 1 to Troutman Decl., at BH007.)  Indeed, the *Beach* court affirmatively pointed to the definition used by Bunker Hill as an example of how an insurer might satisfactorily define the term.

Although *Beach* was decided in 1987, it concerned a homeowners policy that had been issued in the mid-1970s.  *Beach,* 205 Conn. at 247.  Collapse coverage was very different in the 1970s than it is today, or even in the 1980s when the decision was published.  In the 1970s, the Middlesex Mutual policy affirmatively covered "collapse[s] of a building" that ensued from "cracking, . . . bulging or expansion of . . . foundations [or] walls."  *Id.* at 248 n.1.  Because Middlesex Mutual had not defined "collapse," the court held that the term was not limited to "collapse[s] of a sudden and catastrophic nature" but could also reasonably encompass "any substantial impairment of the structural integrity of a building."  *Id.* at 252.

-19-

In the ten years between Mr. Beach's loss and the Supreme Court's decision, however, several insurers had changed their policy to the form that Bunker Hill uses – that is, to a policy that defines "collapse" as not including cracking or expansion.   The *Beach* court chided Middlesex Mutual for not having defined the term back in the 1970s, explaining that if Middlesex "wished to rely on a single facial meaning of the term . . . it had the opportunity expressly to define the term to provide for the limited usage it now claims to have intended."   *Id.* at 251.   It then cited an example of how an insurer might define the term to make its underwriting intent clear – and the example to which it pointed was the above-referenced *Nida v. State Farm* case, in which the insurer had the very same collapse language that Bunker Hill used in the Pawelcyzks' policy.   *Id.*

In other words, the term "collapse" was undefined in the 1970s; the Connecticut Supreme Court expressly invited insurers to define the term to clarify that they only intended to cover sudden, catastrophic collapses; and when the court pointed to an example of how an insurer might do so, it pointed to the very definition that Bunker Hill used in the policy it issued to the Pawelcyzks.   *Beach* is therefore inapposite to the Pawelcyzks' claim against Bunker Hill.[4]   For this reason, and for the other reasons set forth above, Count 40 should be dismissed.

---

[4]       Bunker Hill acknowledges that there are cases in this District holding otherwise.  *E.g., Bacewicz v. NGM Ins. Co.,* No. 3:08-cv-1530, 2010 U.S. Dist. LEXIS 77682, at *13-14 (D. Conn. Aug. 2, 2010). Those cases are wrongly decided, however.  They fail to note that the policy at issue in *Beach* had very different language from the policy in use today.

          The two policies use many of the same words, so perhaps some of the confusion is understandable.  *But they use those words in precisely the opposite order*.  The *Beach* policy excluded cracking of walls, but provided coverage if a collapse "ensue[d]" from a crack.  Today's policy form exactly reverses those two ideas.  It covers collapses, but excludes cracking from the ambit of collapse.

          The difference in word order is important.  Mr. Beach's policy had no limiting language after the word "collapse" and, therefore, arguably left him unclear about the insurer's intended meaning.  205 Conn. at 250-51.  In the Pawelcyzks' policy, by contrast, the word "collapse" was immediately followed by limiting language:  "Collapse does not include settling, cracking, shrinking, bulging or expansion." (Ex. 1 to Troutman Decl., at BH007.)  Unlike Mr. Beach, the Pawelcyzks could not have read their policy

## V.      THE COURT SHOULD DISMISS THE BAD FAITH CLAIM IN COUNT 116.

The Pawelcyzks not only contend that Bunker Hill breached the insurance policy contract; they also contend that it did so in bad faith.  (Compl., Count 116.)  This claim should be dismissed, for two principal reasons in addition to those cited in the Joint Brief.  First, the Pawlecyzks' bad faith claim cannot survive the dismissal of their contract breach claim.  *Capstone*, 308 Conn. at 796.  Second, the Pawelcyzks simply have not pled a plausible claim of bad faith.  Under Connecticut law, a bad faith claim does not lie against an insurer unless the insurer denied a claim with a "sinister motive."  *De la Concha,* 269 Conn. at 433.  And under Fed. R. Civ. P. 8, a plaintiff does not plead a plausible claim if she pleads facts that are merely consistent with – rather than plausibly suggestive of – the defendant's liability under the relevant principles of substantive law.  *Twombly,* 550 U.S. at 556-57.  Even if all of the facts alleged in Count 116 were proven true, Bunker Hill's conduct would be fully explainable as the good-faith actions of an insurer whose policyholders had thumbed their noses at the proof of loss requirement.  Count 116 should be dismissed accordingly.

### A.      The Pawelcyzks' Bad Faith Claim Cannot Survive the Dismissal of Their Contract Breach Claim.

Under Connecticut law, no bad faith claim can lie absent a finding of coverage. *Capstone*, 308 Conn. at 796 ("[B]ad faith actions require the denial of benefits under the policy."); *accord Jemiola v. Hartford Cas. Ins. Co.,* No. TTD-CV-15-6008837-S, 2017 Conn. Super. LEXIS 473, at *34 (Mar. 2, 2017) (cracking basement case citing *Capstone* and holding

---

and reasonably believed that cracks or bulges were covered under their collapse coverage.  The order of the words told them otherwise.

This difference in word order should have produced a different result in cases like *Bacewicz.* Indeed, the Connecticut Supreme Court implicitly said so when it approvingly pointed to *Nida v. State Farm.  Beach,* 205 Conn. at 251.

that "[b]ecause the court has found no improper denial of coverage under the policy, the plaintiff cannot prevail on . . . her claim of breach of the covenant of good faith and fair dealing").  Since the Pawelcyzks' coverage claims fail for the reasons described above, their bad faith claim fails too as a matter of law, because there will have been no wrongful denial of benefits owed under their policy.  The Court should therefore dismiss the bad faith claim for this reason alone.

**B.      Under the Federal Pleading Standards Articulated in *Twombly* and *Iqbal*, the Bad Faith Claim Is Not Plausibly Pled.**

The bad faith claim should be dismissed for another reason as well.  Taking the substantive law of bad faith and the *Twombly/Iqbal* pleading requirements together, the Pawelcyzks have failed to plead a plausible claim.  Count 116 should be dismissed for this additional reason.

The bad faith cause of action requires more than a wrongful claim denial – it requires pleading and proof that the claim was denied with an evil motive.  "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive."  *De la Concha,* 269 Conn. at 433 (quoting *Habetz v. Condon*, 224 Conn. 231, 237 (1992)).  Put simply, "[b]ad faith means more than mere negligence; it involves a dishonest purpose."  *De la Concha*, 269 Conn. at 433 (quoting *Habetz*, 224 Conn. at 237).  In the insurance context, "a mere coverage dispute, or even simple negligence on the part of the insurer, does not constitute bad faith on the insurer's part." *Van Dorsten v. Provident Life & Accident Ins. Co.,* 554 F. Supp. 2d 285, 287 (D. Conn. 2008).  Where an insurance claimant alleges a breach of contract, but fails to plead any "factual indication of bad faith, implicitly or explicitly," her bad faith claim is subject to dismissal under

-22-

Rule 12(b)(6).  *Bepko v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-CV-01996 (PCD), 2005 U.S. Dist. LEXIS 39066, at *8 (D. Conn. Nov. 10, 2005).

Moreover, Rule 8 requires that any claim of liability be supported by facts that, if proven, would show that "the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.  A plaintiff does not meet this burden by pleading facts that are equally consistent with liability as with non-liability.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted).  As noted in Section III.A above, this principle is aptly illustrated by the facts of *Twombly*.  In that case, the plaintiff alleged an illegal antitrust conspiracy, but even if he proved all of his supporting factual allegations he would not have shown that the defendants were necessarily liable. *Twombly,* 550 U.S. at 556-57.  He alleged that the defendants engaged in the same conduct at the same time, but since defendants can behave the same way out of innocent coincidence as well as out of an illegal conspiracy, his allegations – even if he proved them – would not have shown that the defendants were liable. *Id.* "A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out [an antitrust] claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory." *Id.* at 557.

Viewing the substantive principles of bad faith and the federal pleading standard together, the Pawelcyzks' burden becomes clear.  They must plead some set of facts that could not be explained as the actions of a good-faith insurer.  Put differently, they must allege some fact that plausibly suggests a "sinister" purpose.  If they fail to do so, they have not brought their claim out of *Twombly's* "neutral territory."

The Pawelcyzks have failed to meet this burden. After their conclusory allegations are disregarded – as they must be under *Twombly* and *Iqbal*[5] – they essentially allege three things. First, they admit that Bunker Hill "detailed the reasons why [it] would not cover" their claim, but complain that its claim letter did not "offer[] . . . factual evidence." (Compl. ¶¶ 1732-35.) Second, they claim that Bunker Hill "ignor[ed]" cases that, they contend, "hold[] that insurers are required to provide coverage for basement walls with defective concrete." (*Id.* ¶ 1741.) And third, they allege that Bunker Hill ignored "an extensive engineering report regarding the presence of . . . oxidizing minerals" in their walls. (*Id.* ¶ 1736.) But even if all these things are true – and they are not[6] – they would not necessarily prove a "sinister" purpose because they are equally explainable as the good-faith conduct of an insurer that had asked for, but not received, compliance with an important policy condition. Even policyholders who claim to have favorable case law must timely fill out a proof of loss when asked. And even policyholders who claim to have "extensive engineering reports" must also fill out a proof of loss when requested to do so. The Pawelcyzks acknowledge that they were asked to complete a proof of loss, (Compl. ¶ 1734),

---

[5]     The Pawelcyzks allege that Bunker Hill "acted in bad faith" and denied their claim "arbitrarily, wantonly, recklessly and with a dishonest purpose towards the Plaintiffs." (Compl. ¶¶ 1745-46.) These allegations must be disregarded. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555); *accord Hubert v. State Dep't of Corr.*, No. 14-cv-00476 (VAB), 2016 U.S. Dist. LEXIS 20914, at *22 (D. Conn. Feb. 22, 2016).

[6]     Bunker Hill acknowledges that the truth of the plaintiffs' non-conclusory factual claims must be imagined on a motion to dismiss under Rule 12(b)(6). With that said, the Court can take judicial notice of court decisions, and therefore does not have to accept – even on a Rule 12(b)(6) motion – the Pawelcyzks' claim that "a growing number of state and federal cases hold[] that insurers are required to provide coverage for basement walls with defective concrete."

        Without conceding that other insurers' cases are relevant to an analysis of Bunker Hill's good or bad faith – after all, each case has its own facts and each insurer has its own policy – it is worth noting that the insurers have won thirty out of the thirty-one cracking basement cases that have gone to judgment. *See* discussion, Joint Br., ECF No. 497-2, at 34 n.24 (listing cases).

but they do not claim – because they cannot claim – that they fully and timely complied with the requirement.

The Pawelcyzks contend that their allegations prove Bunker Hill's bad faith, but again, those allegations are equally explainable as the good-faith actions of a diligent, professional insurance company that had asked for but not received compliance with a key policy provision. It is this point – the failure to plead facts that move the claim out of *Twombly's* "neutral territory" – that distinguishes this case from an earlier cracking basement case in which this Court entertained a motion to dismiss a bad faith claim. *Gabriel v. Liberty Mut. Fire Ins. Co.,* No. 3:14-cv-01435 (VAB), 2015 U.S. Dist. LEXIS 129952 (D. Conn. Sept. 28, 2015). In *Gabriel* the plaintiffs pled that their insurer "ignored state and federal case law concluding that the term 'foundation' is ambiguous, and intentionally cited inapplicable policy language to mislead the Gabriels into thinking that their claim was not covered." *Id.* at *13. Importantly, their complaint did *not* recite that they were asked to comply with a condition of the policy, and then fail to plead whether they complied with it. Here, the Pawelcyzks have done exactly that. They acknowledge that they were asked to comply with the proof of loss requirement, (Compl. ¶ 1734), but fail to plead that they did, in fact, comply. Thus, the factual allegations in their bad faith count do not depict a claim denial that could only be explained by a sinister motive. They portray a claim denial that could equally be explained by good-faith conduct. The allegations are therefore insufficient under *Twombly* and *Iqbal,* and Count 116 should be dismissed as a consequence.

## VI.   THE COURT SHOULD DISMISS THE CUTPA CLAIM IN COUNT 162.

The Pawelcyzks seek relief under CUTPA, but this claim should be dismissed too. In addition to the reasons stated in the Joint Brief, (ECF No. 497-2), the Pawelcyzks' CUTPA claim

should be dismissed because it cannot survive the dismissal of their contract breach claim, and because they have not pled it plausibly.

### A. Like the Bad Faith Claim, the CUTPA Claim Cannot Survive Dismissal of the Contract Breach Count.

Like a bad faith claim, a CUTPA claim against an insurer cannot survive the dismissal of the policyholder's contract breach claim. A CUTPA action only lies if the plaintiff has suffered some injury from the defendant's allegedly wrongful conduct. *See, e.g., Abrahams*, 240 Conn. at 306 ("[I]n order to prevail in a CUTPA action, a plaintiff must establish both that the defendant has engaged in a prohibited act *and* that, 'as a result of' this act, *the plaintiff suffered an injury*.") (second emphasis added); *Gates v. Gov't Emps. Ins. Co.*, No. NNH-CV-06-5004852-S, 2008 Conn. Super. LEXIS 972, at *16 (Apr. 18, 2008) ("In the case of CUTPA, there is no textual or jurisprudential suggestion that it affords standing to a party that has not been injured."). When a policyholder has not been wrongly deprived of an insurance policy benefit, she has not suffered an injury as a result of wrongful insurer conduct and, therefore, has no viable CUTPA claim. *E.g., Jemiola,* 2017 Conn. Super. LEXIS 473, at *34. For this reason, Connecticut courts routinely dismiss CUTPA claims against insurers once they dismiss the policyholder's contract breach claim. *See, e.g., id.* (cracking basement plaintiff's CUTPA claim "must fail in view of the court's finding that there was not coverage under the policy, and, consequently, the plaintiff has not sustained an injury").

The Pawelcyzks' CUTPA claim, like their bad faith claim, is derivative of and dependent on the outcome of their contract claims. Here, for all of the reasons set forth in Section IV above, the Pawelcyzks have not sufficiently pled a covered loss under their policies. By extrapolation, they have not sufficiently pled a CUTPA claim against Bunker Hill. The Court should therefore dismiss Count 116.

**B.     The Pawelcyzks Have Not Pled and Cannot Plead that Bunker Hill Has a "General Business Practice" of Unfair Claim Conduct.**

The CUTPA claim against Bunker Hill should also be dismissed for another reason.  The Pawelcyzks have failed to plead a required element of the cause of action – the so-called "general business practice" requirement.

A policyholder cannot bring a CUTPA claim against its insurer unless the insurer has violated the Connecticut Unfair Insurance Practices Act, or "CUIPA." *Acordia,* 310 Conn. at 37. This is "[b]ecause CUIPA provides the exclusive and comprehensive source of public policy with respect to general insurance practices." *Id.*  Thus, "unless an insurance related practice violates CUIPA or, arguably, some other statute regulating a specific type of insurance related conduct, it cannot be found to violate any public policy and, therefore, it cannot be found to violate CUTPA." *Id.*

An insurer does not violate CUIPA – and, therefore, does not violate CUTPA – by mishandling one plaintiff's claim.  Rather, the insurer must commit CUIPA-violative misconduct on enough *other* policyholders' claims to support the conclusion that the misconduct is part of the insurer's general business practices.  *Mead v. Burns,* 199 Conn. 651, 659 (1986); *Lees,* 229 Conn. at 850-51; *see also* Conn. Gen. Stat. § 38a-816(6) (specifying that unfair claim settlement practices violate CUIPA only if "[c]ommit[ted] or perform[ed] with such frequency as to indicate a general business practice").  The requirement of a "general business practice" "reflects the legislative determination that isolated instances of unfair insurance settlement practices are not so violative of the public policy of this state as to warrant statutory intervention." *Mead*, 199 Conn. at 666.  Indeed, even multiple acts of misconduct in the handling of a single plaintiff's claim are insufficient to establish a general business practice "without any evidence of

misconduct by the defendant in the processing of *any other claim*."  *Lees*, 229 Conn. at 846–49 (emphasis added).

In this case, the Pawelcyzks do not allege that Bunker Hill wrongfully handled any other policyholder's cracking basement claim, except in conclusory allegations that the Court is constrained to ignore under *Twombly* and *Iqbal*.  The only allegations in Count 162 of CUIPA violations by Bunker Hill are allegations that the company (a) "has a general business practice of" of issuing "false and misleading" denials of coverage (Compl. ¶ 2534); (b) "had a general business practice of not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability was reasonably clear" (*id.* ¶ 2535); and (c) "had a general business practice of compelling policy holders such as the Pawelcyzks to institute litigation to recover amounts due to them."  (*Id.* ¶ 2536.)  These allegations, however, are merely cut-and-pasted from the statute.  (*Compare id. with* Conn. Gen. Stat. § 38a-816(6)(A), -(F) and (G).) And *Iqbal* instructs that "a formulaic recitation of the elements of a cause of action will not do." *Iqbal,* 556 U.S. at 678 (internal quotation marks and citation omitted).

Following these principles, other courts in this District have granted motions to dismiss virtually identical CUTPA claims in cracking basement cases.  In *Corteau v. Teachers Insurance Co.*, for example, Judge Shea considered a motion to dismiss a CUTPA claim against a small insurance company, where (as here) the plaintiffs' complaint did not allege a wrongful denial of any other policyholder's claim.  No. 3:16-cv-580 (MPS), 2017 U.S. Dist. LEXIS 38434 (Mar. 17, 2017).  Noting that "[t]o sustain a claim of unfair settlement practices, it is essential that the Complaint allege that the defendant engaged in more than a single unfair act," the court held that the plaintiff's CUTPA claim must be dismissed.  *Id.* at *5-7 (internal quotation marks and citation omitted).  "The Courteaus' CUIPA/CUTPA claim fails for the simple reason that they

-28-

allege only a single unfair coverage denial:  their own."  *Id.* at *6.  The plaintiffs' complaint did not describe "unfair claim settlement practices in the handling of any claims other than their own, or even allege[] generally that other instances exist."  *Id.*  "Plainly, one instance of wrongful conduct, the denial of the claim at issue in this litigation. . . . is insufficient to state a claim under CUIPA."  *Id.* at *7 (internal quotation marks and citation omitted).

The complete absence of non-conclusory allegations about other Bunker Hill policyholders distinguishes this case from the two cases in which this Court allowed CUTPA/CUIPA claims to survive dispositive motions.  In *Gabriel,* this Court denied an insurer's motion to dismiss a CUTPA/CUIPA claim under Rule 12(b)(6) because the policyholder had alleged that the insurer wrongfully "denied coverage in at least four other cases involving similar facts and identical policy language."  *Gabriel,* 2015 U.S. Dist. LEXIS 129952, at *15.  And in *Belz,* the plaintiffs  "allege[d] that Peerless had refused to provide similar coverage in 'at least two (2) separate instances involving other homeowners experiencing the same damage caused by the same mechanism and involving policy language identical to that in the Belzes' policy."  *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 166 (D Conn. 2014).  Here, the Pawelcyzks have not alleged that Bunker Hill wrongfully denied even one other policyholder's claim.[7]  Their CUTPA claim should be dismissed accordingly.

---

[7]     The Pawelcyzks will no doubt argue that they cannot know whether Bunker Hill wrongfully denied other claims unless this motion is denied and they are given access to discovery.  This Court evidently rejected that argument in *Belz,* 46 F. Supp. 3d at 166 (characterizing the argument that plaintiffs should be permitted a "liberal pleading standard" and given "access to discovery" as "an extreme view").  And the argument *should* be rejected.  A plaintiff cannot "file a lawsuit on the basis of a conclusory statement in the hope of finding information during discovery that would validate her supposition."  *Van Dorsten,* 554 F. Supp. 2d at 288.  "[T]he purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists."  *Jones v. Capital Cities/ABC, Inc.,* 168 F.R.D. 477, 480 (S.D.N.Y. 1996) (internal quotation marks and citation omitted).

## VII.   THE PUTATIVE CLASS CLAIMS SHOULD BE DISMISSED AS TO BUNKER HILL.

The Pawelcyzks purport to bring their claims not only in their own right, but also "on behalf of all similarly-situated homeowners in Connecticut." (*E.g.*, Compl., ¶¶ 758, 1748, 2546.) Once the Court dismisses their claims, however, Bunker Hill should be dismissed from the case in its entirety. No other named plaintiff claims to have had a policy with Bunker Hill. (*Id.*, Counts 1-39 and 41-46.) By extension, no remaining named plaintiff has standing to represent these allegedly "similarly situated homeowners" in claims against Bunker Hill.

"Standing," it has long been recognized, "is not dispensed in gross." *Lewis v. Casey,* 518 U.S. 343, 358 n.6 (1996). "[F]or every named defendant" included in a case "there must be at least one named plaintiff who can assert a claim directly against that defendant." *Cent. States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC,* 504 F.3d 229, 241 (2d Cir. 2012). That is to say, there must be at least one named plaintiff who has "suffered an injury in fact" that is "traceable to the challenged action" of the particular defendant and "will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) (citation omitted).

This rule applies with full force to complaints styled as putative class actions. *Mahon v. Ticor Title Ins. Co.,* 683 F.3d 59, 64 (2d Cir. 2012); *see* 5 William Rubenstein, *Newberg on Class Actions* § 2:5 (5th ed.) ("[C]lass representatives do not have standing to sue defendants who have not injured them even if those defendants have allegedly injured other class members."); 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 4:28 (13th ed. 2016) ("In contract actions a named plaintiff has standing to sue only as to agreements to which it is a party and thus has rights to assert."). Simply put, "a plaintiff's injury resulting from the conduct of one defendant" has no "bearing on her Article III standing to sue other defendants, even if they engaged in similar conduct that injured other parties." *Mahon,* 683 F.3d at 65; *see also LIBOR-*

-30-

*Based Fin. Instruments Antitrust Litig.,* 27 F. Supp. 3d 447 (S.D.N.Y. 2014); *In re Trilegiant Corp.,* No. 3:12-cv-00396 (VLB), 2014 U.S. Dist. LEXIS 42570 (D. Conn. Mar. 28, 2014).

These principles compel the dismissal of Bunker Hill from this litigation once the Pawelcyzks' individual claims are out of the case. It is the Pawelcyzks, and only the Pawelcyzks, who claim to have been injured by Bunker Hill's alleged failure to pay under the terms of an insurance contract. Aside from their individual claims, there is no other named plaintiff in this case who purchased insurance from Bunker Hill. (Compl., Counts 1-39 and 41-46) (claims of other twenty-nine plaintiffs, alleging insurance with other companies). With the Pawelcyzks out of the case, then, it is "impossible for this Court to find that the Plaintiffs have stated a concrete, particularized, and actual injury that is traceable to [Bunker Hill's] conduct." *In re Trilegiant Corp.,* 2014 U.S. Dist. LEXIS 42570 at *15. The Court should therefore dismiss Bunker Hill from the case entirely.

## VII. CONCLUSION

For the foregoing reasons, the Court should grant Bunker Hill's motion and dismiss the entire complaint against it.

DEFENDANT, BUNKER HILL
INSURANCE COMPANY,


By:   _/s/ Thomas O. Farrish_____
       Thomas O. Farrish (ct26917)
       *tofarrish@daypitney.com*
       John W. Cerreta (ct28919)
       *jcerreta@daypitney.com*
       Daniel J. Raccuia (ct29535)
       *draccuia@daypitney.com*
       Jennifer L. Shukla (ct30204)
       *jshukla@daypitney.com*
       Day Pitney LLP
       242 Trumbull Street
       Hartford, CT  06103-3499
       (860) 275-0100
       (860) 275-0343 (fax)

       Michael P. Mullins (ct29746)
       *mmullins@daypitney.com*
       Day Pitney LLP
       One International Place
       Boston, MA 02110
       (617) 345-4600
       (617) 345-4745

       Its Attorneys


## **CERTIFICATION**

     I hereby certify that on the above date a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.


       _/s/ Thomas O. Farrish_____
       Thomas O. Farrish