# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Michael and Joyce Halloran, et al., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | **Case No. 3:16-cv-133** |
| | ) | |
| Harleysville Preferred Insurance Co., et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION BY HARLEYSVILLE PREFERRED INSURANCE CO. TO DISMISS
## COUNTS 4, 12, 49, 55,  95, 101, 141, AND 147 OF THE FOURTH AMENDED
## COMPLAINT

Daniel M. Blouin
dblouin@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive
Suite 8000
Chicago, Illinois  60606-6448
Telephone:     (312) 460-5000
Facsimile:      (312) 460-7000

Dated:  April 6, 2018

45635108v.3

**TABLE OF CONTENTS**

INTRODUCTION…………………………………………………………………………………………….2

ARGUMENT………………………………………………………………………………………………….3

I. ALL CLAIMS ASSERTED BY DYER AGAINST HARLEYSVILLE PREFERRED INSURANCE COMPANY SHOULD BE DISMISSED.................................................3

    A. **Factual Background Underlying the Dyer Claim.**............................................ 4

        1. Dyer's Property ....................................................................... 4

        2. Dyer's Claims......................................................................... 4

        3. Dyer's Harleysville Policy ..................................................... 5

    B. **Dyer's Breach of Contract Claim (Count 12) Should Be Dismissed Because The Damage to His Property is Not Covered Under the Harleysville Policy.** ............................................................................... 7

    C. **Dyer's Request for Declaratory Relief (Count 55) Should Be Dismissed.** ....................................................................................... 8

    D. **Dyer's Claim for Breach Of The Implied Covenant Of Good Faith And Fair Dealing Claim (Count 101) Should Be Dismissed**. ......................... 8

    E. **Dyer's CUIPA / CUTPA Claim (Count 147) Should be Dismissed.** .............. 9

II. ALL CLAIMS ASSERTED BY HALLORAN AGAINST HARLEYSVILLE PREFERRED INSURANCE COMPANY SHOULD BE DISMISSED. .........................9

    A. **Factual Background Underlying the Halloran's Claim**................................. 9

        1. Halloran's Property ................................................................. 9

        2. Halloran's Claims................................................................. 10

        3. Halloran's Harleysville Policy ............................................. 10

    B. **Halloran's Breach of Contract Claim (Count 4) Should Be Dismissed Because The Damage to His Property is Not Covered Under the Harleysville Policy.** ............................................................................ 12

        1. Loss to a "foundation" is not covered under the Harleysville Policy............................................................................... 12

45635108v.3

2.    "Cracking" is not a "collapse" covered under the Harleysville Policy. ........................................................................................... 14

C.    **Counts 49, 95, and 141 Should Be Dismissed.** ................................................. 14

CONCLUSION…………………………………………………………………………...15

45635108v.3

## TABLE OF AUTHORITIES

**Cases**                                                     **Page(s)**

*Arrowood Indem. Co. v. King*,
699 F.3d 735 (2d Cir. 2012)............................................................................................4

*Bacewicz v. NGM Insurance Co.*,
No. 3:08-cv-1350 (JCH), 2010 WL 3023882 (D. Conn. Aug. 2, 2010) .........................8, 9, 14

*Beach v. Middlesex Mutual Assurance Co.*,
205 Conn. 246, 532 A.2d 1297 (1987) .................................................................................8, 9

*Conn. Med. Ins. Co. v. Kulikowski*,
286 Conn. 1, 942 A.2d 334 (2008) .....................................................................................4

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991)..................................................................................................6

*Gabriel v. Liberty Mut. Fire Ins. Co.*,
No. 3:14-cv-01435 (VAB), 2015 WL 5684063 (D. Conn. Sept. 28, 2015) ............................14

*Int'l Audiotext v. Am. Telephone & Telegraph*,
62 F.3d. 69 (2d Cir. 1995)...................................................................................................6

*Metro. Life Ins. Co. v. Aetna Cas. & Sur. Co.*,
255 Conn. 295, 765 A.2d 891 (2001) ...................................................................................4

*New London Cnty. Mut. Ins. Co. v. Zachem*,
145 Conn. App. 160, 74 A.3d 525 (2013) ...........................................................................13

*Schilberg Integrated Metals Corp. v. Cont'l Cas. Co.*,
263 Conn. 245, 819 A.2d 773 (2003) ...................................................................................4

*Turner v. State Farm Fire and Cas. Cos.*,
614 So. 2d 1029 (Ala. 1993)................................................................................................14

**Statutes**

Conn. Gen. Stat. § 38a-815, *et seq.*.......................................................................................3

Conn. Gen. Stat. § 42-110a, *et seq.*.......................................................................................4

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ..............................................................................3

http://www.merriam-webster.com/dictionary/foundation ......................................................13

**INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Harleysville Preferred Insurance Co. ("Harleysville") hereby moves to dismiss all counts brought against it in the Fourth Amended Class Action Complaint (Doc. 488) (the "FAC") by Michael Dyer ("Dyer") and Michael and Joyce Halloran ("Halloran").[1]   Harleysville also hereby adopts and fully incorporates the Motion and corresponding Memorandum of Law In Support of Motion by Certain Defendants to Dismiss  Counts 47-184 of the Fourth Amended Complaint filed on April 5, 2018 (Doc. 497) ("Defendants' Joint Motion to Dismiss").

This case centers around Plaintiffs' allegation that their homes were made with concrete that contains a deleterious chemical compound that eventually will cause their homes to fall to the ground. (FAC ¶ 2.)  It is undisputed, however, that Plaintiffs' homes are still standing. (*See*, FAC ¶¶ 2, 53, 96, 97, 257, 258.)

Succinctly stated, there has been no "collapse" as that term is defined in the operative insurance policies, regardless of whether Plaintiffs characterize the condition of their homes a "collapse" or "state of collapse."  Accordingly, Plaintiffs cannot state a viable breach of contract claim against Harleysville.  And Plaintiffs' declaratory judgment claims (Counts 49 and 55) turn on the exact same facts, and seek the exact same relief, as the breach of contract claims that Plaintiffs assert.  Thus, they fail as duplicative as a matter of black-letter law.  Likewise, absent a breach of the underlying policy, Plaintiffs' remaining claims, including the "bad faith claims" and those brought under the Connecticut Unfair Insurance Practices Act ("CUIPA") (Conn. Gen. Stat. § 38a-815, *et seq.*) and Connecticut Unfair Trade Practices Act ("CUTPA") (Conn. Gen. Stat. § 42-110a, *et seq.*) also fail as a matter of law.

---

[1] Halloran and Dyer shall be referred to collectively as ("Plaintiffs.")

45635108v.3

## ARGUMENT[2]

The standards governing interpretation of insurance policies are well established. "[A]n insurance policy is a contract that is construed to effectuate the intent of the parties as expressed by their words and purposes." *Metro. Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 255 Conn. 295, 305, 765 A.2d 891, 896 (2001). "If the terms of the policy are clear and unambiguous, then the [contract] language ... must be accorded its natural and ordinary meaning." *Schilberg Integrated Metals Corp. v. Cont'l Cas*. Co., 263 Conn. 245, 267, 819 A.2d 773, 789 (2003). "In determining whether the terms of an insurance policy are clear and unambiguous, a court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." *Arrowood Indem. Co. v. King*, 699 F.3d 735, 739–40 (2d Cir. 2012) (*quoting Conn. Med. Ins. Co. v. Kulikowski*, 286 Conn. 1, 6, 942 A.2d 334, 338 (2008).)

Here, Harleysville does not have a duty to provide coverage for Plaintiffs' claimed loss. Under the plain and unambiguous terms of the operative policies, mere cracking of walls does not constitute a covered "collapse." Moreover, Plaintiffs' own expert reports highlight that they have not suffered a covered loss.

## I.   ALL CLAIMS ASSERTED BY DYER AGAINST HARLEYSVILLE PREFERRED INSURANCE COMPANY SHOULD BE DISMISSED.

Michael Dyer has asserted a total of 4 claims against Harleysville (Counts 12, 55, 101, 147.)   As discussed below, each of the asserted claims is defective and should be dismissed. Harleysville will address each claim in turn.

---

[2] To avoid unnecessary duplication, Harleysville adopts, and incorporates by reference, the "Legal Standard" section set forth in Defendants' Joint Motion.

45635108v.3

A.      **Factual Background Underlying the Dyer Claim.**

1.      Dyer's Property

In 2015, Michael Dyer purchased residential property located at 83 Bentley Drive in Manchester, Connecticut (the "Dyer Property") (FAC ¶ 11.)  The Dyer Property was built in 1995 and remains standing. (FAC ¶¶ 11, 258.)

2.      Dyer's Claims

Dyer alleges that the "direct physical loss [to the property] occurred during the Harleysville policy period." (FAC ¶ 266.)[3]  Dyer purportedly discovered damage to the property in November, 2015. (FAC ¶ 253.)   On January 25, 2016 Dyer submitted his claim to Harleysville. (FAC ¶ 267.)

Dyer hired William F. Neal ("Neal") a Licensed Professional Engineer and a Licensed Connecticut Home Inspector, to investigate the cause of the purportedly failing concrete in his home.  In the FAC Dyer alleges that "Neal concluded that Dyer, like his fellow Plaintiffs and putative Class Members, had failing basement walls due to a chemical reaction resulting from incompatible materials used in the concrete mix." (FAC ¶ 256).  He further alleges that "Neal told Dyer that the condition 'will continue to deteriorate the concrete and the foundation walls will very likely bulge inward until they structurally fail.'" (FAC ¶ 258.)

Dyer, however, fails to attach to the FAC a copy of the structural engineering report he received from Neal.  Instead, Dyer quotes selected portions of the report and paraphrases other portions of the report.  This is significant in that a review of the actual report submitted by Neal

_____

[3] Harleysville insured the Dyer Property under annual insurance policies, beginning on June 30, 2015 through the present. (Caldwell Decl. ¶ 9.)  A copy of the Caldwell Declaration is attached hereto as Exhibit "A." Because the relevant terms of coverage under the annual Harleysville policies did not change substantially during the operative time period, the policies, though covering discrete periods, are referred to collectively as "the Dyer Harleysville Policy." (Caldwell Decl. ¶¶ 10, 11, Exhs. C, D .)

45635108v.3

highlights that Dyer's selective references from the Neal report are not accurate.[4]   The Neal

report actually provides in relevant part as follows:

> Based solely on my visual observations, much of the cracking is not consistent
> with typical and common cracks found in many foundations.  … The most likely
> cause of the foundation distress is a chemical reaction resulting from incompatible
> materials used in the concrete mix. … **If this defect is present**, it will continue to
> deteriorate the concrete and the foundation walls will very likely bulge inward
> until they structurally fail. … **The basement walls at this time are structurally
> sound… .** I do not recommend testing to determine what type of defect may be
> causing the deterioration. … It is not possible to predict how quickly the
> foundation **may deteriorate** to the point it is structurally dangerous. (*Emphasis
> added).*

The information contained in the Neal report establishes that Dyer does not have a factually

supportable basis to allege his home has been impaired.  To the contrary, at best, Dyer merely

has an "expert" stating that "if this defect is present" his foundation "may deteriorate."

>> 3.      Dyer's Harleysville Policy

Dyer's Harleysville Policy provides in relevant part as follows:

Section I - Additional Coverages

8.      Collapse.    We insure for direct physical loss to covered property
involving collapse of a building or any part of a building caused only by one or
more of the following:

a. Perils Insured Against in Coverage C - Personal Property. These perils apply to
covered building and personal property for loss insured by this additional
coverage;

b. Hidden decay;

\*\*\*

---

[4] A copy of the Neal Report is attached to the Caldwell Declaration as Exhibit E.  The complaint is deemed to include any documents incorporated in it by reference. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).  "When a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." *Int'l Audiotext v. Am. Telephone & Telegraph,* 62 F.3d. 69, 72 (2d Cir. 1995) (*citing Cortec Indus.,* 949 F.2d at 47-48).

45635108v.3

f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building.

***Collapse does not include settling, cracking, shrinking, bulging or expansion.***

SECTION I - PERILS INSURED AGAINST

We ensure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. ***We do not ensure, however, for loss***:

1. Involving collapse, other than as provided in Additional Coverages 8.;

2. Caused by:

\*          \*          \*

e. Any of the following:

(2) Inherent vice, ***latent defect***

\*          \*          \*

(6) ***Settling, shrinking, bulging or expansion, including result and cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings***;

SECTION I - EXCLUSIONS

2. ***We do not insure for loss*** to property described in Coverages A and B ***caused by any of the following***. …

c. ***Faulty, inadequate or defective***:

(2) Design, specifications, workmanship, repair, ***construction***, renovation, remodeling, grading, compaction;

(3) ***Materials used in*** repair, ***construction***, renovation or remodeling.

(See Caldwell Decl. ¶ 9, 10, Exhs. C, D) (*emphasis added.*)

6

**B.     Dyer's Breach of Contract Claim (Count 12) Should Be Dismissed Because The Damage to His Property is Not Covered Under the Harleysville Policy.**

Dyer's claim is premised on the assertion that the basement walls of his home were constructed with deleterious materials that eventually will cause the foundation walls to crumble. As discussed above, however, Dyer has failed to allege sufficient facts in this regard.  For this reason alone, each of his asserted claims should be dismissed.

Even assuming, *arguendo*, that Dyer has alleged sufficient facts regarding the state of his home's foundation, at most, the allegations provide that his foundation has cracks.  Importantly, in the Dyer Harleysville Policy, "collapse" is unambiguously defined to explicitly exclude cracking. *See* Dyer Harleysville Policy at Section I-Additional Coverages, 8. ("Collapse ***does not include*** settling, ***cracking***, shrinking, bulging or expansion.").  By its plain language then, the policy collapse coverage excludes loss that consists of "cracking," which is precisely how Dyer describes the condition affecting his basement walls ("Each Plaintiff and putative Class Member owns real property with basement walls that are crumbling and/or exhibit a pattern of cracking . . . ."). (FAC ¶ 53.)  Succinctly stated, Dyer's situation does not trigger coverage, and the Court simply cannot extend coverage over "cracking" when the Policy specifically excludes it.  Accordingly, Dyer's breach of contract claim against Harleysville should be dismissed.

Harleysville acknowledges *Bacewicz v. NGM Insurance Co.*, No. 3:08-cv-1350 (JCH), 2010 WL 3023882 (D. Conn. Aug. 2, 2010) and other cases have found that similar language in the policies at issue, which stated that "collapse" does not include, *inter alia*, cracking and bulging, was susceptible to more than one reasonable interpretation.  *Bacewicz* found that even if cracking or bulging on its own was not covered, the cracking and bulging the plaintiffs experienced there could be "symptomatic" of a covered collapse, based on the Connecticut Supreme Court's ruling in *Beach v. Middlesex Mutual Assurance Co.*, 205 Conn. 246, 532 A.2d

45635108v.3

1297 (1987).  *Bacewicz*, 2010 WL 3023882, at \*5–6.  Unlike *Beach*, however, here Dyer has not

alleged that the cracks in his foundation are symptomatic of a covered collapse, nor can he.  In

*Beach*, it was uncontested that there was a nine-inch wide crack in the north foundation wall of

the house, "wooden support beams on top of the foundation wall *had pulled apart*," and "the

foundation wall had tipped over into the basement from the top and *was no longer supporting the

house*."  *Beach*, 205 Conn. at 248 (*emphasis added*).  The trial court concluded that the house

"was in *imminent danger of falling over . . . .*"  *Id.* at 249 (*emphasis added*).  In contrast, Dyer

has not (and cannot) allege that his house is no longer standing, unoccupied, unsafe or unfit for

occupancy, or in imminent danger of falling down.  To the contrary, his own expert has

expressly stated that "the basement walls at this time are structurally sound…" (*see, supra* pp.

13-14.)  Accordingly, given the allegations here, the cracking that Dyer is experiencing cannot

be symptomatic of a collapse because no such collapse has occurred.

**C.      Dyer's Request for Declaratory Relief (Count 55) Should Be Dismissed.**

Count 55, which seeks a declaration that the Harleysville Policy mandates coverage,

should be dismissed because the unambiguous language of the Dyer Harleysville Policy, taken

together with Dyer's own expert report, precludes coverage, as discussed above.  The request for

Declaratory Relief should be dismissed for the additional reasons set forth in the Defendants'

Joint Motion to Dismiss.

**D.      Dyer's Claim for Breach Of The Implied Covenant Of Good Faith And Fair Dealing Claim (Count 101) Should Be Dismissed**.

Dyer's asserted bad faith claim cannot stand for several reasons, including the following:

(a) where, as is the case here, Plaintiff cannot assert a legally viable breach of contact claim, his

corresponding bad faith claim necessarily fails as well; (b) reasonable coverage disputes do not

45635108v.3

give rise to a bad faith claim; and (c) Plaintiff's boilerplate pleadings fail to sufficiently allege the necessary elements of a bad faith claim, including a dishonest purpose or sinister motive. For each of these reasons, as well as those set forth in Defendants' Joint Motion to Dismiss, Count 101 should be dismissed.

### E. Dyer's CUIPA / CUTPA Claim (Count 147) Should be Dismissed.

Dyer's claim under CUTPA, which is based on alleged violations of CUIPA (Count 147), must be dismissed for the same reasons applicable to the implied covenant claim. The CUIPA /CUTPA claim should also be dismissed because Dyer has not alleged, with anything approaching sufficient specificity, a "general business practice" by Harleysville, as required under CUIPA. Finally, reasonably disputing coverage does not rise to the level of an unfair insurance practice. For each of these reasons, as well as those set forth in Defendants' Joint Motion to Dismiss, Count 147 should be dismissed.

## II. ALL CLAIMS ASSERTED BY HALLORAN AGAINST HARLEYSVILLE PREFERRED INSURANCE COMPANY SHOULD BE DISMISSED.

Michael and Joyce Halloran have asserted a total of 4 claims against Harleysville (Counts 4, 49, 95, and 141.) As discussed below, each of the asserted claims is defective and should be dismissed. Harleysville will address each claim in turn.

### A. Factual Background Underlying the Halloran's Claim

#### 1. Halloran's Property

In 2004, Michael and Joyce Halloran purchased residential property located at 127 Pinney street in Ellington, Connecticut (the "Halloran Property") (FAC ¶¶ 8, 97.) The Halloran Property was built in 1985 and remains standing. (FAC ¶ 8.)

45635108v.3

2.       Halloran's Claims

Halloran alleges that the "direct physical loss [to the property] occurred during the Harleysville policy period" (FAC ¶ 142.)[5,6] Halloran purportedly did not discover damage to the property until September, 2015. (FAC ¶ 87.)  On January 25, 2016, Halloran submitted his claim to Harleysville. (FAC ¶ 143.)

Halloran "hired a structural engineering firm, Fuss & O'Neill ("F&O") to investigate the cause of the failing concrete in their home." (FAC ¶ 88)  Notably, in its engineering report submitted to Halloran, a copy of which is attached to the FAC as Exhibit A, F&O repeatedly refers to the basement walls of the Halloran Property as "the foundation." (*see discussion, infra* at pp. 7-8.)

3.       Halloran's Harleysville Policy

Halloran's Harleysville Policy HO 03 04 91, as amended by HO 01 06 99, HO 04 76 09 02, Endorsement F-4456 and Endorsement F-4784, provide in relevant part as follows:

SECTION I - ADDITIONAL COVERAGES

8. Collapse.   We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

a.  Perils Insured Against in Coverages A and B. - These perils apply to covered buildings for loss insured by this additional coverable. Perils Insured Against in Coverage C - Personal Property. These perils apply to covered personal property for loss insured by this additional coverage;

b. Hidden decay;

\*\*\*

---

[5] Harleysville insured the Halloran Property under annual insurance policies, beginning on August 27, 2015 through the present. (Caldwell Decl. ¶ 15.)  Because the relevant terms of coverage under the annual Harleysville policies did not change substantially during the operative time period, the policies, though covering discrete periods, are referred to collectively as "the Halloran Harleysville Policy." (Caldwell Decl. ¶¶ 16, 17, Exhs. F, G.)
[6] Notably, in Count 1 of the FAC Halloran alleges that "the direct physical loss occurred during [The Automobile Insurance Company of Hartford, Connecticut] policy period." (FAC ¶ 105.)  Similarly, in Count 2 of the FAC Halloran alleges that "the direct physical loss occurred during the Kemper policy period." (FAC ¶ 117.)

10

f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

***Loss to*** an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, ***foundation***, retaining wall, bulkhead, pier, wharf or dock ***is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building.***

***Collapse does not include settling, cracking, shrinking, bulging or expansion.***

SECTION I - PERILS INSURED AGAINST

We ensure against risk of direct loss to property described in Coverages A, B and C, only if that loss is a physical loss to property. ***We do not ensure, however, for loss***:

c.  Caused by:

\*        \*        \*

(4)  Any of the following:

(b)  Inherent vice, ***latent defect***

\*        \*        \*

(f)  ***Settling, shrinking, bulging or expansion, including result and cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings***;

SECTION I - EXCLUSIONS

2.  ***We do not insure for loss*** to property described in Coverages A and B ***caused by any of the following***. …

c.  ***Faulty, inadequate or defective:***

(2)  Design, specifications, workmanship, repair, ***construction***, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling.

(See, Caldwell Decl. ¶¶ 15, 16, Exhs. F, G) (e*mphasis added.*)

11

**B.      Halloran's Breach of Contract Claim (Count 4) Should Be Dismissed Because The Damage to His Property is Not Covered Under the Harleysville Policy.**

Harleysville has no duty to provide coverage for Halloran's claimed loss because, under the plain and unambiguous terms of the Halloran Harleysville Policy, progressive deterioration caused by the cracking of basement walls is not covered.  Accordingly, the breach of contract claims should be dismissed.

        1.      Loss to a "foundation" is not covered under the Harleysville Policy.

Like the other plaintiffs in this case, the heart of Halloran's Complaint is that his basement walls are in a state of "collapse"; therefore, under the Collapse provision in the Halloran Harleysville Policy, he is entitled to the cost of replacing the basement walls of his home.  However, the concrete basement walls are part of the foundation of Halloran's home. The policy expressly provides that coverage for collapse of a foundation is not provided unless it is the result of the collapse of a building.  Here, there is no allegation that Halloran's home has collapsed thereby causing the basement walls to collapse. Rather, the only allegation is that the basement walls are deteriorating and will eventually result in their homes  collapsing.  For example, Halloran alleges that the "sulfate attack will continue to fracture the concrete until the home caves into its basement."  (FAC ¶ 98.)

Because the term "foundation" is undefined in either of the Halloran Harleysville Policy, it is appropriate to turn to the dictionary definition of the term to determine its common, natural, and ordinary meaning, which must be adopted.  *New London Cnty. Mut. Ins. Co. v. Zachem*, 145 Conn. App. 160, 166, 74 A.3d 525, 530 (2013).  The dictionary definition of foundation is: "a usually stone or concrete structure that supports a building from underneath; . . . an underlying base or support; especially: the whole masonry substructure of a building." http://www.merriam-

webster.com/dictionary/foundation.       Under the layman, ordinary meaning of the term

"foundation,"  Halloran's basement walls are plainly part of the home foundation and, therefore,

not covered by the Halloran Harleysville Policy.

Under these circumstances, Harleysville respectfully disagrees with prior decisions

finding that the term "foundation" is ambiguous, such that it must be construed in favor of

coverage for the insured.  *See, e.g., Bacewicz*, 2010 WL 3023882, at *4; *Gabriel v. Liberty Mut.*

*Fire Ins. Co*., No. 3:14-cv-01435 (VAB), 2015 WL 5684063, at *3–4 (D. Conn. Sept. 28, 2015).

As an initial matter, Harleysville submits that *Bacewicz* and its progeny were wrongly decided

because they all hinged on a factually distinguishable ruling from the Alabama Supreme Court

decision in *Turner v. State Farm Fire and Cas. Cos*., 614 So. 2d 1029 (Ala. 1993).  *See Gabriel*,

2015 WL 5684063, at *3 n.1 (outlining Liberty Mutual's arguments distinguishing *Turner*,

which Harleysville adopts here).

But even if the Court were to find that the term "foundation" was ambiguous in the

Halloran Harleysville Policy, such that it must be construed in favor of the insured, Halloran has

plead himself out of court.  Halloran's own structural engineering firm specifically referred to

the basement walls as part of the homes' "foundation."  (FAC Ex. 1, p. 3.)  The firm noted in its

report that "[t]he foundation walls extend approximately 152 feet around the perimeter of the

basement and are approximately 7 feet in height."  The report further notes that from the exterior,

"light to moderate ***cracking was observed along the foundation walls*** with many cracks located

at the corners of the building."  *Id.*  In the interior, the report again references the basement walls

as part of the foundation, noting that "[s]everal cracks in the foundation wall on the east side of

the house have been repaired with caulk."  *Id.*  The engineers' conclusion—which is the whole

basis for the Halloran's complaint—is that "a chemical reaction of the concrete mix is occurring

13

due to the presence of pyrrhotite and is expected to continue, resulting in increased deterioration and **eventual failure of the *foundation* to function as originally intended."** *Id*. In summary, Halloran's own expert concurs that the basement walls (where the cracking is occurring) is in fact part of the home's foundation. This admission is fatal to Halloran's breach of contact claim against Harleysville.

> 2.  "Cracking" is not a "collapse" covered under the Harleysville Policy.

The operative language of the Halloran Harleysville Policy is similar to the Dyer Harleysville Policy. Accordingly, Harleysville refers the Court to the arguments set forth in section II, B, *supra,* pp. 14-15.

### C.   Counts 49, 95, and 141 Should Be Dismissed.

Counts 49, 95, and 141 of the FAC should be dismissed for the reasons set forth in Defendants' Joint Motion to Dismiss, as addressed in summary fashion above in sections I, D-F, *supra*, pp. 8-9.

45635108v.3

## CONCLUSION

Defendant Harleysville Preferred Insurance Company respectfully request that this Court grant its motion to dismiss Counts 4, 12, 49, 55,  95, 101, 141, and 147 of Plaintiffs' Fourth Amended Complaint.

April 6, 2018                                               Respectfully submitted,

DEFENDANT – HARLEYSVILLE
PREFERRED INSURANCE COMPANY


By  /s/Daniel M. Blouin_____
Daniel M. Blouin, Esq.

Seyfarth Shaw LLP
233 S. Wacker, Suite 8000
Chicago, IL 60606
T: 312 460 5966
Their Attorneys

45635108v.3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 6, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operations of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.


/s/ Daniel M. Blouin

16

45635108v.3