## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| Michael and Joyce Halloran, et al., | ) |
| | ) |
|       **Plaintiffs,** | ) |
| | ) |
| vs. | )    **Case No. 3:16-cv-133** |
| | ) |
| Harleysville Preferred Insurance Co., et al., | ) |
| | ) |
|       **Defendants.** | ) |

### MEMORANDUM OF LAW IN SUPPORT OF
### MOTION BY NATIONWIDE PROPERTY & CASUALTY INSURANCE CO. TO
### DISMISS COUNTS 25, 86, 132, AND 178 OF THE FOURTH AMENDED COMPLAINT

Daniel M. Blouin
dblouin@seyfarth.com
SEYFARTH SHAW LLP
233 South Wacker Drive
Suite 8000
Chicago, Illinois  60606-6448
Telephone:    (312) 460-5000
Facsimile:     (312) 460-7000

Dated:  April 6, 2018

45623091v.3

## TABLE OF CONTENTS

INTRODUCTION……………………………………………………………………………….2

ARGUMENT……………………………………………………………………………………3

I. All Claims asserted by Lesperance against Nationwide should be dismissed…………..5

    A. **Factual Background Underlying Lesperance's Claims.** ............................... 5

        1. Lesperance's Property ................................................................. 5

        2. Lesperance's Claims .................................................................... 5

        3. Lesperance's Nationwide Policy ............................................................ 6

    B. **The Breach of Contract Claim (Count 25) Should Be Dismissed Because The Damage to Lesperance's Property is Not Covered Under the Nationwide Policy.** ........................................................................... 7

        1. The Lesperance Property Has Not "Collapsed." ...................................... 7

    C. **Lesperance's Claims are Time Barred Pursuant to the Policy's "Suits Against Us" Provision.** ......................................................................... 11

    D. **Lesperance's Request for Declaratory Relief (Count 86) Should Be Dismissed.** ............................................................................................... 12

    E. **The Breach Of The Implied Covenant Of Good Faith And Fair Dealing Claim (Count 132) Should Be Dismissed** ......................................... 12

    F. **The CUIPA / CUTPA Claim (Count 178) Should be Dismissed.** ................. 12

CONCLUSION…………………………………………………………………………….....12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexander v. Gen. Ins. Co. of Am.*,
  No. 3:16-CV-59 (SRU), 2017 WL 188134 (D. Conn. Jan. 17, 2017) .................................8, 12

*Arrowood Indem. Co. v. King*,
  699 F.3d 735 (2d Cir. 2012) ...........................................................................................4, 5

*Buell v. Greater New York Mutual Ins. Co.*
  259 Conn. 527, 791 A2d 489 (2002) ....................................................................................10

*Chichester v. New Hampshire Fire Ins. Co.*,
  74 Conn. 510 (1902) ...............................................................................................................11

*Chorches v. Stewart Title Guar. Co.*,
  48 F. Supp. 3d 151 (D. Conn. 2014) ......................................................................................12

*Cocco v. Preferred Mut. Ins. Co.*,
  637 F. Supp. 94 (D. Conn. 1986) ...........................................................................................11

*Conn. Med. Ins. Co. v. Kulikowski*,
  286 Conn. 1, 942 A.2d 334 (2008) ..........................................................................................4

*Jemiola v. Hartford Cas. Ins. Co.*,
  No. CV-15-6008837-S, 2017 WL 1258778 (Conn. Super. Ct. Mar. 2, 2017) ................8, 9, 10

*Metro. Life Ins. Co. v. Aetna Cas. & Sur. Co.*,
  255 Conn. 295, 765 A.2d 891 (2001) ......................................................................................4

*Roberts v. Amica Mut. Ins. Co.*,
  No. 3:14-CV-1589 (SRU), 2015 WL 7458510 (D. Conn. Nov. 24, 2015) .............................11

*Schilberg Integrated Metals Corp. v. Cont'l Cas. Co.*,
  263 Conn. 245, 819 A.2d 773 (2003) ......................................................................................4

**Statutes**

Conn. Gen. Stat. § 38a-290 ...........................................................................................................11

Conn. Gen. Stat. § 38a-815, *et seq.* ...................................................................................4, 10, 12

Conn. Gen. Stat. § 42-110a, *et seq.* ...................................................................................4, 10, 12

**Other Authorities**

*American Heritage College Dictionary* (5th Ed. 2011)...................................................................10

Federal Rule of Civil Procedure 12(b)(6) .........................................................................................3

*Miriam-Webster's Collegiate Dictionary* (11th Ed. 2003).............................................................10

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Nationwide Property & Casualty Insurance Co ("Nationwide") hereby moves to dismiss all counts brought against it in the Fourth Amended Class Action Complaint (Doc. 488) (the "FAC") by Alfred and Jeannette Lesperance and the Lesperance Family Living Trust (collectively "Lesperance" or "Plaintiff"). Nationwide also hereby adopts and fully incorporates the Motion and corresponding Memorandum of Law In Support of Motion by Certain Defendants to Dismiss Counts 47-184 of the Fourth Amended Complaint filed on April 5, 2018 (Doc. 497) ("Defendants' Joint Motion to Dismiss").

This case centers around Lesperance's allegation that his home was made with concrete that contains a deleterious chemical compound that eventually will cause the home to fall to the ground. (FAC ¶ 2.) It is undisputed, however, that Lesperance's home is still standing. (*See*, FAC ¶¶ 2, 53, 477, 478.) Likewise, it is undisputed that the deterioration of his basement walls was not "abrupt" or "sudden." To the contrary, the "deterioration" process, if any, has been gradually occurring since the homes were constructed many years ago. (*Id.*)

Succinctly stated, there has been no "collapse" as that term is defined in the operative insurance policies, regardless of whether Lesperance characterizes the condition of his home as a "collapse" or "state of collapse." Accordingly, Lesperance cannot state a viable breach of contract claim against Nationwide. Lesperance also cannot state a viable breach of contract claim against Nationwide because his claim is barred by the "Suits Against Us" provision of the Nationwide insurance policy. Lesperance's declaratory judgment claim (Count 86) turns on the exact same facts, and seeks the exact same relief as the breach of contract claim that Lesperance asserts. Thus, the declaratory judgment claim also fails as duplicative as a matter of black-letter

3

law.  Likewise, absent a breach of the underlying policy, Lesperance's remaining claims, including the "bad faith claims" and those brought under the Connecticut Unfair Insurance Practices Act ("CUIPA") (Conn. Gen. Stat. § 38a-815, *et seq.*) and Connecticut Unfair Trade Practices Act ("CUTPA") (Conn. Gen. Stat. § 42-110a, *et seq.*) also fail as a matter of law.

## ARGUMENT[1]

The standards governing interpretation of insurance policies are well established.  "[A]n insurance policy is a contract that is construed to effectuate the intent of the parties as expressed by their words and purposes." *Metro. Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 255 Conn. 295, 305, 765 A.2d 891, 896 (2001).  "If the terms of the policy are clear and unambiguous, then the [contract] language ... must be accorded its natural and ordinary meaning." *Schilberg Integrated Metals Corp. v. Cont'l Cas*. Co., 263 Conn. 245, 267, 819 A.2d 773, 789 (2003).  "In determining whether the terms of an insurance policy are clear and unambiguous, a court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." *Arrowood Indem. Co. v. King*, 699 F.3d 735, 739–40 (2d Cir. 2012) (*quoting Conn. Med. Ins. Co. v. Kulikowski*, 286 Conn. 1, 6, 942 A.2d 334, 338 (2008).)

Here, Nationwide does not have a duty to provide coverage for Lesperance's claimed loss.  Under the plain and unambiguous terms of the operative insurance policy, mere cracking of walls does not constitute a covered "collapse."  Moreover, even if one were to assume that the structure was in a "state of collapse," there still is no coverage under the Nationwide policy because the deterioration of the basement walls was not "abrupt" or "sudden."

---

[1] To avoid unnecessary duplication, Nationwide adopts, and incorporates by reference, the "Legal Standard" section set forth in Defendants' Joint Motion.

4

## I. ALL CLAIMS ASSERTED BY LESPERANCE AGAINST NATIONWIDE SHOULD BE DISMISSED

Lesperance has asserted a total of 4 claims against Nationwide (Counts 25, 86, 132 and 178.) As discussed below, each of the asserted claims is defective and should be dismissed. Nationwide will address each claim in turn.

### A. Factual Background Underlying Lesperance's Claims.

#### 1. Lesperance's Property

In 1994, Alfred and Jeannette Lesperance purchased residential property located at 35 Hercules Drive, Manchester, Connecticut (the "Lesperance Property") (FAC ¶ 17.) They transferred ownership to the Lesperance Family Living Trust on June 18, 2012. (*Id.*) The Lesperance Property was built in 1985 and remains standing. (FAC ¶¶ 17, 478.)

#### 2. Lesperance's Claims

Nationwide insured the Lesperance Property under annual insurance policies beginning on May 2, 2007 through May 2, 2009. (Caldwell Decl. ¶ 3.)[2] Lesperance alleges that the "direct physical loss [to the property] occurred during the Nationwide policy periods." (FAC ¶ 486.)[3] Lesperance further alleges that he discovered damage to the property on February 28, 2015. (FAC. ¶ 473.) Taking the allegations of the Fourth Amended Complaint at face value,

---

[2] A copy of the Caldwell Declaration is attached hereto as Exhibit A. Because the relevant terms of coverage under the annual Nationwide policies did not change substantially during the operative time period, the policies, though covering discrete periods, are referred to collectively as "the Lesperance Nationwide Policy." (Caldwell Decl. ¶¶4, 5, Exhs. A, B.) Although Plaintiffs did not attach the operative insurance policies to the FAC, this Court may consider them on this Motion to Dismiss because they are incorporated by reference in the FAC and integral to Plaintiffs' allegations. U.S. ex rel. QSR Steel Corp., LLC v. Safeco Ins. Co. of Am., No.. 3:14-CV-1017 VAB, 2015 WL 4393576, at *4 (D. Conn July 16, 2015) (Bolden, J.).

[3] However, in Count 26 of the FAC, Lesperance also alleges that "the direct physical loss occurred during the Merrimack policy periods." (FAC ¶ 499.) Plaintiff is bound to his allegations in the FAC. "Factual allegations contained in pleadings upon which the cause is tried are considered judicial admissions and hence irrefutable as long as they remain in the case . . . . The admission of the truth of an allegation in a pleading is a judicial admission conclusive on the pleader." *Straw Pond Assoc., LLC v. Fitzpatrick, Mariano & Santos, P.C.*, 167 Conn. App. 691, 708145 A.3d 292, 305 (2016). *See also Brye v. State*, 147 Conn. App. 173, 177–78, 81 A.3d 1198, 1201 (2013) ("A judicial admission dispenses with the production of evidence by the opposing party as to the fact admitted, and is conclusive upon the party making it . . . .")

5

Lesperance thus claims that he failed to notice the allegedly substantial damage to his home for almost six years. On December 12, 2016, almost two years after allegedly first discovering the damage to his property, Lesperance submitted his claim to Nationwide. (FAC ¶ 487.)

3. Lesperance's Nationwide Policy

The Nationwide Policy covers the complete collapse of a building, or any part of a building.  Collapse is defined as an abrupt falling down or caving in of a building.  A building is not deemed to be in a state of collapse if, for example, it is standing but in danger of falling down, even if it shows signs of cracking or bulging.  Moreover, the collapse must be sudden and accidental. (Caldwell Decl. ¶¶4,5 , Exhs. A, B.)

The Lesperance Nationwide Policy expressly, and unambiguously, provides in relevant part as follows:

> 10. "FOUNDATION"  means a building's substructure including substructural walls, i.e., basement walls, crawl space walls, etc.
>
> SECTION I - ADDITIONAL PROPERTY COVERAGES
>
> 12. Collapse. We cover direct physical loss to covered property described in Coverage A, Coverage B and Coverage C caused by the ***complete collapse*** of a building structure or any part of a building structure.  Collapse means ***an abrupt falling down or caving in*** of a building or other structure or any part of a building or other structure with the result that it cannot be occupied for its intended purpose.  A building or other structure or part of a building or other structure is ***not considered in a state of collapse if***:
>
> a) it ***is standing but in danger of falling down or caving in***;
> b) it is standing but has separated from any other part of the building;
> c) it ***is standing even if it shows signs of settling, cracking, shifting, bulging, sagging, bowing, bending, leaning, shrinkage, or expansion***. ***The collapse must be sudden and accidental*** … .

(*See*, Caldwell Decl. ¶¶4 ,5, Exhs. A, B.) (*emphasis added*).

PROPERTY CONDITIONS - SECTION I

8. Suit against us.  No action can be brought against us unless there has been full compliance with the policy provisions.  Any action must be started within one year after the date of loss or damage."

(*Id.*)

### B. The Breach of Contract Claim (Count 25) Should Be Dismissed Because The Damage to Lesperance's Property is Not Covered Under the Nationwide Policy.

#### 1. The Lesperance Property Has Not "Collapsed."

The gravamen of Lesperance's Complaint is that their home is in a state of collapse. *See* (FAC ¶¶ 473-78.)  The Lesperance Nationwide Policy, however, expressly and unambiguously provides that a building is not deemed to be in a state of collapse if it is standing but in danger of falling down, even if it shows signs of cracking or bulging.  Moreover, the collapse must be sudden and accidental.

It is undisputed that the Lesprance Property remains standing.  (FAC ¶¶ 17, 473-78.) Moreover, Lesperance effectively concedes that the purported "collapse" was not sudden or "abrupt." (*Id.*)  Given these undisputed facts, the alleged damage to the Lesperance Property is not covered under the express, unambiguous terms of the Leperance Nationwide Policy. Accordingly, Nationwide did not breach its obligations under the insurance contract when it denied coverage of Lesperance's claim.

This conclusion is consistent with several District of Connecticut court decisions, including several recent rulings issued by this Court.  For example, in *Hurlburt v. Massachusetts Homeland Ins. Co.*, No. 3:17-CV-503 (VAB), 2018 WL 1035810, at *5 (D. Conn. Feb. 23, 2018) this Court found that the same policy language at issue here did not provide coverage for deteriorating basement walls, noting "[t]he contract covers only "abrupt" collapse. By alleging that the concrete in their basement is deteriorating, which may or may not lead to a collapse, the Hurlburts have not alleged an "abrupt collapse.")  This Court reached the same conclusion in

7

*Zamichiei v. CSAA Fire & Cas. Ins. Co.*, No. 3:16-CV-739 (VAB), 2018 WL 950116, at *6 (D. Conn. Feb. 20, 2018), finding no coverage where policy only provided for abrupt collapse and plaintiffs only alleged that there basement walls were deteriorating.

This Court's decisions follow virtually the identical ruling in *Alexander v. Gen. Ins. Co. of Am.*, No. 3:16-CV-59 (SRU), 2017 WL 188134, at *1 (D. Conn. Jan. 17, 2017). In that case Judge Underhill reviewed the same collapse definition at issue here. The court granted defendant's motion to dismiss, finding that coverage was barred given the unambiguous definition of "collapse" contained in the policy. Specifically, the court noted that there had not been an abrupt falling down or caving in of the building. "What we have here is a building that is in danger of falling down, and that is expressly excluded from collapse coverage; and, similarly, there has been cracking, bulging, etc. Those situations are also excluded… ." *Id., citing Jemiola v. Hartford Cas. Ins. Co.*, No. CV-15-6008837-S, 2017 WL 1258778, at *9 (Conn. Super. Ct. Mar. 2, 2017) (quoting Judge Underhill's oral decision issued in *Alexander*.) On reconsideration, the court reaffirmed its decision, stating: "Plaintiffs cannot avoid the fact that their basement walls are still standing." *Alexander*, 2017 WL 188134, at *2.

Numerous other decisions from the District of Connecticut have employed the same reasoning and reached the same conclusion where the policy at issue, like the Lesperance Nationwide Policy, only provides coverage for a "sudden" or "abrupt" collapse and where a plaintiffs' basement walls are indisputably still standing. *See Adams v. Allstate Ins. Co.*, No. 3:16-cv-1360, 2017 WL 3763837, slip op. at 5 (JBA) (D. Conn. Aug. 29, 2017) (granting Allstate's motion to dismiss claims for coverage of cracking concrete damages, which plaintiff admitted was a progressive deterioration over time, under policy that covered "sudden and accidental direct physical loss to property"); *Manseau v. Allstate Ins. Co.*, No. 3:16-cv-1231

8

(MPS), 2017 WL 3821791, at *5 (D. Conn. Aug. 31, 2017) ("[T]he term 'sudden,' used in the context of the phrase 'sudden and accidental' is unambiguous, and must be accorded a temporal quality."); *Agosti v. Merrimack Mut. Fire Ins. Co.*, No. 3:16-cv-1686 (SRU), 2017 WL 3710786, at *4 (D. Conn. Aug. 28, 2017) (noting policy contained "a number of qualifiers, ... which operate to reduce the scope of coverage" and finding that plaintiffs had not shown that their basement walls had undergone an "entire collapse"); *Metsack v. Liberty Mut. Fire Ins. Co.*, No. 3:14-cv-1150, 2017 WL 706599, at *7–8 (D. Conn. Feb. 21, 2017) (holding that Allstate policy that provided coverage for a "sudden and accidental" collapse did not provide coverage when there was no dispute that the deterioration in the basement wall concrete had occurred over time and was not "sudden."); *Lajeunesse v. Allstate Ins. Co.*, 3:16-cv-937 (AVC) (D. Conn. Aug. 31, 2017) ("By any reasonable interpretation, a contract provision requiring a 'sudden' collapse in order to trigger coverage, would not include a barely perceivable chemical reaction that slowly reduces the structural integrity of concrete over a period of years."); *Carlson v. Allstate Ins. Co.*, 3:15-cv-1045 (MPS) (D. Conn. Sept. 27, 2017) ("Because the term 'sudden,' as used in the collapse coverage provision, means temporally abrupt, the Carlsons must point to evidence that the loss for which they seek coverage occurred abruptly, and not merely unexpectedly, for it to be a covered collapse.").

Connecticut state courts have reached the same conclusion when presented with similar policy language and circumstances. In *Jemiola v. Hartford Casualty Insurance Company*, No. CV-15-6008837-S, 2017 WL 1258778 (Conn. Super. Ct. Mar. 2, 2017) (Cobb, J.) the case involved extensive pattern cracking to basement walls purportedly caused by a chemical compound in the concrete provided by the J.J. Mottes Concrete Company. Jemiola filed a multi-count complaint alleging, among other things, that her insurance company breached the

9

homeowner's policy when it denied coverage for the "collapse" of the basement walls of her home and that this breach also constituted a violation of CUTPA / CUIPA.  The definition of "collapse" in the Jemiola insurance policy required "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose." *Jemiola*, 2017 WL 1258778, at *8.  The defendant argued that the claim was not covered under the policy because the house has not "abruptly" "fallen down" or "caved in," rather, it is still standing.  In its Memorandum of Decision dated March 2, 2017, the court agreed with defendant's position. *Id.* at *11.

In doing so, the court expressly found that the definition of "collapse" in the Jemiola policy, which is virtually identical to the Nationwide language at issue here, "is unambiguous as applied to circumstances similar to this case." *Id.* at *10.

> The definition utilizes plain and ordinary language understandable to a layman. "Abrupt" is generally understood to mean "characterized by or involving action or change without preparation or warning." *Miriam-Webster's Collegiate Dictionary* (11th Ed. 2003).  Abrupt is also defined as "unexpectedly sudden." *American Heritage College Dictionary* (5th Ed. 2011). "Sudden" has recently been found to mean "a rapid or otherwise abrupt manner."

*Id.* at *11 (*citing Buell v. Greater New York Mutual Ins. Co.* 259 Conn. 527, 791 A2d 489 (2002).) The court concluded that "[a]pplying the unambiguous 'collapse' provision to the plaintiff's home, there is no genuine issue of material fact that the plaintiff's loss is not covered because there has been no sudden or abrupt falling down or caving in, pursuant to [the policy]." *Id.*  The court further explained that "[t]he word 'abrupt' is unambiguous and the damage to the plaintiff's basement walls was not 'abrupt,' but rather is happening over time." *Id*.  Accordingly,

the court granted the insurer's motion for summary judgment with respect to the breach of contract claim.[4]

In the present case Lesperance simply cannot avoid the fact that his home remains standing.  Moreover, damage to the basement walls, if any, was not abrupt, but rather, at most, is happening over time.  Accordingly, Lesperance's breach of contract claim should be dismissed.

### C. Lesperance's Claims are Time Barred Pursuant to the Policy's "Suits Against Us" Provision.

The Lesperance Nationwide Policy contains a "Suits Against Us" provision that expressly provides as follows: "any action must be started within one year after the date of loss or damage."  The Connecticut Supreme Court has long held that a contractual condition in an insurance policy requiring an action be brought within a particular time period is valid and binding upon the parties.  *Roberts v. Amica Mut. Ins. Co.*, No. 3:14-CV-1589 (SRU), 2015 WL 7458510, at *3 (D. Conn. Nov. 24, 2015) (*citing Chichester v. New Hampshire Fire Ins. Co.*, 74 Conn. 510 (1902)).  *See also* Conn. Gen. Stat. § 38a-290 (one year limitation provision is valid and enforceable); *Cocco v. Preferred Mut. Ins. Co.*, 637 F. Supp. 94, 95 (D. Conn. 1986) (same.)

Here, Lesperance clearly alleges that he became aware of the purported damage to his home on February 28, 2015 (FAC ¶ 473) but did not file his claim with Nationwide until much more than a year had elapsed, December 12, 2016. (FAC ¶ 487).  Given these facts, Lesperance's

---

[4] Courts in other jurisdictions likewise have found that similar language used to define "collapse" is unambiguous. *See Squairs v. Safeco Nat'l Ins. Co.*, 136 A.D.3d 1393, 1394 (N.Y. App. Div. 2016) (the collapse provision was unambiguous and the court concluded there had not been a collapse because the building was still standing); *Residential Mgmt. (N.Y.) Inc. v. Fed. Ins. Co.*, 884 F. Supp. 2d 3, 9 (E.D.N.Y. 2012) (consistent with New York authority, the collapse provision was unambiguous); *N.P.V. Realty Corp. v. Nationwide Mut. Ins. Co.*, No. 8:11-cv-1121, 2011 WL 4948542, at *4 (M.D. Fla. Oct. 17, 2011) (the collapse provision was unambiguous); *Mount Zion Baptist Church of Marietta v. Guideone Elite Ins. Co.*, 808 F. Supp. 2d 1322, 1325 (N.D. Ga. 2011) (definition of collapse was unambiguous); *Miller v. First Liberty Ins. Corp.*, No. 07-1338, 2008 WL 2468605, at *4 (E.D. Penn. June 7, 2008); *Rector St. Food Enter., LTD. v. Fire & Cas. Ins. Co. of Conn.*, 35 A.D.3d 177, 178 (N.Y. App. Div. 2006) (court rejected plaintiffs' public policy argument and held that the collapse provision was unambiguous).

11

claim is barred by the policy's one year "Suits Against Us" provision. For this additional reason, Count 25 should be dismissed.

### D. Lesperance's Request for Declaratory Relief (Count 86) Should Be Dismissed.

Count 86, which seeks a declaration that the applicable Policy mandates coverage, should be dismissed because the unambiguous language of the Lesperance Nationwide Policy precludes coverage, as discussed above. The request for Declaratory Relief should be dismissed for the additional reasons set forth in the Defendants' Joint Motion to Dismiss.

### E. The Breach Of The Implied Covenant Of Good Faith And Fair Dealing Claim (Count 132) Should Be Dismissed.

As discussed in detail in Defendants' Joint Motion to Dismiss, the asserted bad faith claim cannot stand for several reasons, including the following: (a) where, as is the case here, Plaintiff cannot assert a legally viable breach of contact claim, their corresponding bad faith claim necessarily fails as well; (b) reasonable coverage disputes do not give rise to a bad faith claim; and (c) Plaintiff's boilerplate pleadings fail to sufficiently allege the necessary elements of a bad faith claim, including a dishonest purpose or sinister motive. For each of these reasons, Count 132 should be dismissed.

### F. The CUIPA / CUTPA Claim (Count 178) Should be Dismissed.

Lesperance's claim under CUTPA, which is based on alleged violations of CUIPA (Count 178), must be dismissed for the same reasons applicable to the implied covenant claim. The CUIPA /CUTPA claim should also be dismissed because Lesperance has not alleged, with anything approaching sufficient specificity, a "general business practice" by Nationwide, as required under CUIPA. Moreover, reasonably disputing coverage does not rise to the level of an unfair insurance practice. For each of these reasons, as well as those set forth in Defendants' Joint Motion to Dismiss, Count 178 should be dismissed.

## CONCLUSION

Defendant Nationwide Property & Casualty Company respectfully requests that this Court grant its motion to dismiss Counts 25, 86, 132, and 178 of Plaintiffs' Fourth Amended Complaint, with prejudice.

April 6, 2018                                   Respectfully submitted,

DEFENDANT – NATIONWIDE
PROPERTY & CASUALTY INSURANCE
COMPANY


By /s/ Daniel M. Blouin_____
Daniel M. Blouin, Esq.

Seyfarth Shaw LLP
233 S. Wacker, Suite 8000
Chicago, IL 60606
T: 312 460 5966
Its Attorneys

13

45623091v.3

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operations of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ Daniel M. Blouin