## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| MICHAEL AND JOYCE HALLORAN, et al., Individually and on behalf of those similarly situated, <br><br>          Plaintiffs, <br><br>v. <br><br>HARLEYSVILLE PREFERRED INSURANCE CO., *et al.*, <br><br>          Defendants. | NO.:  3:16-cv-00133 <br><br> Date:  May 31, 2018 |

## DEFENDANT AMERICAN COMMERCE INSURANCE COMPANY'S
## REPLY MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS

Defendant American Commerce Insurance Company (hereafter "American Commerce") respectfully submits this second Memorandum of Law in Reply to the Opposition that Plaintiffs have recently filed to its request that this court dismiss the Plaintiffs' claims against it for breach of contract (Counts 7, 23 and 37) and declaratory relief (Counts 82, 85 and 88) pursuant to Fed. R. Civ. P. 12(b)(6).  As set forth below, the arguments that Plaintiffs are making in opposition to American Commerce, to the extent that they apply at all, are without substance or legal or factual basis and cannot survive a motion to dismiss in this case.

American Commerce also joins in the joint Reply Memorandum filed by various insurers with respect to the dismissal of Counts 47-184 as well as the joint Reply Memorandum in support of various defendants' motion to strike the plaintiffs' class allegations.  Said arguments are incorporated by reference by American Commerce as if specifically recited herein.

## LEGAL ARGUMENT

### A.     Plaintiffs' Confusing Characterization of Policy Forms

Plaintiffs misleadingly seek to group the Defendants by reference to the use of the "Old Policy Form," the "Modified Policy Form" and the "New Policy Form."  In fact, each of the American Commerce policies at issue contain a "Special Provisions-Connecticut Endorsement" (HC 01 06)  (FAC ¶¶ 182, 434 and 699) that was filed with and approved by the Connecticut Department of Insurance that set forth the following language with respect to the policies' coverage for "collapse" losses:

**8. Collapse**

    a.    This Additional Coverage does not:

        1.    Increase the limit of liability that applies to the damaged covered property; nor

        2.    Reduce or eliminate coverage with respect to a loss that was caused by a Peril Insured Against named under Coverage C.

    b.    With respect to this Additional Coverage:

        (1)    Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

        (2)    A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

        (3)    A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

        (4)    A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

    c.    We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

        (1)    The Perils Insured Against;

        (2)    Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

        (3)    Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

        (4)    Weight of contents, equipment, animals or people;

        (5)    Weight of rain which collects on a roof; or

        (6)    Use of defective material or methods in construction, remodeling or renovation.

    d.    Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under c.(2) through (6) above, unless the loss is a direct result of the collapse of a building or any part of a building.

It would appear from Plaintiffs' Memorandum, therefore, that the American Policies contained the "New Policy Form."

Furthermore, although Plaintiffs are not consistent in their treatment of American Commerce, it bears repeating that none of the American Commerce policies were renewals. As Plaintiffs have conceded, therefore, their arguments based on Conn. Gen. Stat. §38a-323 and Bulletin PC-66 that impose certain notice obligations on renewal carriers have no application to American Commerce by reason of the fact that none of the American Commerce policies were renewals of earlier insurance policies that lacked these identical "collapse" wordings. [1]

---

[1] Plaintiffs' Opposition Memorandum, pages 74-85.

B.      **Plaintiffs' Breach of Contract Claims Against "New Policy" Insurers**

Section II of Plaintiffs' Memorandum sets forth four arguments in support of various insureds' claims for breach of contract.  Of these four, Plaintiffs concede the latter three arguments (failure to give statutory notice; trigger of coverage and miscellaneous claims as to other insurers) are not being raised against American Commerce.  Rather, Plaintiffs' contractual claim against American Commerce is solely based upon its contention that its "collapse" wordings are ambiguous and/or in conflict with certain insureds' reasonable expectations of coverage. (Plaintiffs' Opposition Memorandum, pp. 61-74).

### 1.      *Plaintiffs' Allegations of Ambiguity*

At the outset, Plaintiffs contend that the American Commerce policy is ambiguous because the definition of "collapse" as an "abrupt falling down or caving in of a building" could reasonably be read to encompass both events that occur quickly or "without preparation of warning." (Plaintiff's Opposition Memorandum, page 62).  This argument was addressed in Defendant's original Memorandum (pages 9-10) and is clearly at odds with *Zamichiei v. CSAA Fire & Cas. Ins. Co.* 2018 WL 950116 (D. Conn. Feb. 20, 2018) in which this court declared:

> The insurance policy at issue here unambiguously covers only "abrupt" collapse, and the Zamichieis have not shown that their home has collapsed within the meaning of the Policy. The Zamichieis' expert stated that, at the time of inspection, the Property's foundation did not require immediate replacement and was not structurally dangerous. Furthermore, the Zamichieis continue to use the Property for its intended purpose, id. ¶ 32, and it has neither caved in nor fallen down, and it is not in imminent danger of falling down or caving in. Id. ¶¶ 36–37. The Court therefore concludes that CSAA did not breach its contract with the Zamichieis by denying coverage for the cracked concrete in their basement walls.

In the alternative, Plaintiffs argue that even if "abrupt" has a temporal meaning, "there are separate, abrupt instances of caving in each moment that the concrete crumbles from within the

basement walls."  (Plaintiff's Opposition Memorandum, page 63).  This argument is in direct conflict with Subpart (4) of the policies' definition of collapse, which states:

> A building or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

It is, in any event, incongruous to suggest that a process of deterioration that has continued over a period of years can be viewed as "abrupt" by micro-analyzing the process into such tiny increments of time that each takes on a "temporal" connotation.  *See Reichhold Chemicals, Inc.  v. Hartford Acc. & Ind. Co.,* 1999 Conn.  LEXIS 280 (Conn. Super. Feb. 11, 1999)(pollution that occurred over a period of 30 years was not "sudden" without regard to characterization of day to day discharges of pollutants).  *See also  Liberty Mutual Ins. Co. v. SCA Services, Inc.,* 412 Mass. 330, 336, 588 N.E.2d 1346 (1992)(rejecting insured's argument that even though it disposed of barrels of industrial waste at a landfill over a period of years, each individual disposal of a barrel occurred "suddenly"); *Ray Industries, Inc. v. Liberty Mut. Ins. Co.*, 728 F. Supp. 1310, 1318 (E.D. Mich. 1989) (rejecting argument by insured that because "discrete releases occurred each time a barrel was smashed," the releases were therefore sudden); *Guaranty National Ins. Co. v. Vic Manufacturing Co.,* 143 F.3d 192 (5th Cir. 1998)(Texas law)(refusing to microanalyze process of pollution that occurred over a period of years to manufacture a "sudden" cause) and *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.,* 52 F.3d 1522 (10th Cir. 1995)(Utah law)(same).

Plaintiffs also argue that the requirement "that the building or part of the building cannot be occupied for its current intended purpose" is itself ambiguous because the threatened future collapse of these homes is impairing the insureds' ability to "live safely" in their homes or to sell them.  Not only have such arguments not been pleaded in the Fourth Amended Complaint but they conflict with *Zamichiei v. CSAA Fire & Cas. Ins. Co.*  2018 WL 950116 (D. Conn. Feb. 20, 2018)

("Zamichieis continue to use the Property for its intended purpose"); *Liston-Smith v. CSAA Fire & Cas. Co.*, 2017 WL 6459552 (D. Conn. Dec. 15. 2017)(no "collapse" coverage where walls were deteriorating as a result of a progressive condition, remained upright, and home was still inhabitable for its intended purpose); *Chernosky v. Amica Mut. Ins. Co.,* 2018 WL 529956 (D. Conn. Jan. 24, 2018)(no "collapse" where insureds were still living in their home) and *Hurlburt v. Mass. Homeland Ins. Co.,* 2018 WL 1035810 (D. Conn. Feb. 23, 2018)("the Hurlburts reside in their home and have not alleged that they cannot or do not use it for its 'current intended purpose'").

Plaintiffs' efforts to import ambiguity based upon the law of Oregon or other jurisdictions is also unavailing, especially given the fact that the case that Plaintiffs mainly rely on[2] was decided under the law of Oregon, a state whose Supreme Court has rejected the temporal analysis of "sudden" that the Connecticut Supreme Court adopted in *Buell Industries, Inc. v. Greater New York Mut'l Ins. Co.,* 259 Conn. 527 (2002), and that instead has found ambiguity in these wordings. *See St. Paul Fire & Marine Ins. Co. v. McCormick & Baxter Creosoting Co.,*  324 Or. 184, 923 P.2d 1200 (1996)("the word "sudden" as it is used in the pollution exclusions is susceptible to differing interpretations").  As Oregon applies a different rule of interpretation to abrupt events than does Connecticut, *Malbco* is not a reliable predictor of Connecticut law.

American Commerce concedes that there are cases from other states in which courts have taken a contrary view of this language than have the courts of this District, although the majority

---

[2] *Malbco Holdings LLC v. AMCO Ins. Co.*, 629 F. Supp. 1185, 1195 (D. Or. 2009).

of foreign authority has upheld these "collapse" limitations.[3]   However, rather than examining the holdings in each of these various cases to take into account the particular circumstances and peculiar rules of contract interpretation to see if they mirror these claims and the law of Connecticut in their states, it is submitted that this court is better advised to just apply Connecticut law to these Connecticut contracts.

### 2.     *Plaintiffs' Claimed Expectations of Coverage*

Plaintiffs next argue (Plaintiffs' Opposition Memorandum, pp. 67-74) that the interpretation of this language that this court adopted in *Zamichiei v. CSAA Fire & Cas. Ins. Co.* 2018 WL 950116 (D. Conn. Feb. 20, 2018) and that other courts in this District have similarly followed conflicts with the insureds' reasonable expectations of coverage because it would render this property insurance "illusory."   Specifically, Plaintiffs argue Defendants' interpretation of the "collapse" coverage renders it illusory because "the result is that there is no coverage if a home has not yet fallen to the ground but, on the other hand, these same Defendants, and other insurers, might still have the right to deny coverage when the home does eventually fall to the ground as a result of a homeowner's failure to prevent this from happening."   (Plaintiffs' Opposition Memorandum, page 71).

Respectfully, this hypothetical scenario does not provide a present basis for negating the clear and unambiguous terms of the American Commerce policy, nor is American Commerce among the insurers who are identified in the various footnotes as evidence of this feared outcome.

---

[3] *See, e.g.  American Economy Insurance Co. v. CHL LLC,* No. 16-35606, 2018 U.S. App. LEXIS 12159 (9th Cir. May 9, 2018)(insurer held not owe coverage for damage to apartments from hidden decay under its policies' "collapse" provisions because the damage has not rendered the apartment building unfit or unsafe for occupancy) and *Queen Anne Park Homeowners Assoc. v. State Farm Fire & Cas. Co.*, 352 P.3d 790, 793 (Wash. 2015)(upholding collapse language).

In any event, coverage does not become "illusory" merely because of an applicable policy exclusion. *See Connecticut Insurance Guarantee Assoc. v. Drown*, 314 Conn. 161, 37 A.3d 820 (2014) (upholding exclusion for vicarious liability coverage "with respect to injury arising solely out of acts or omissions in the rendering or failure to render professional services by individual physicians" despite contention that doing so rendered the coverage "illusory"). As in *Drown*, a policy is not illusory if an exclusion only applies under particular circumstances and if there are other situations in which the policy would provide coverage for other losses.

### C.    Plaintiff's "Implied Covenant" Claims Against "New Policy" Insurers

In the alternative, Plaintiffs argue that American Commerce has breached the implied covenant of good faith and fair dealing because, like other "New Policy" insurers:

> …if they are successful in precluding coverage, they will have effectively eliminated collapse coverage for hidden decay even though these policies purportedly provide coverage for such loss. By imposing such a construction, the Defendants have made coverage for hidden decay illusory and their suggestion that there is such coverage is nothing more than a misrepresentation.

(Plaintiffs' Opposition Memorandum, page 134)

Specifically, Plaintiffs allege at page 144 that:

> Assuming that the New Policy Coverage is construed by this Court to exclude coverage that would have been provided to the Plaintiffs under the Old Policy Form, the conduct alleged to violate the duty of good faith and fair dealing includes (a) failing to give notice that collapse coverage was being deleted, (b) accepting premiums for "collapse" coverage without providing such coverage, (c) misrepresenting the existence of "collapse" coverage and charging therefore, and (d) imposing inadequate insurance in contravention of Plaintiffs' reasonable expectations.

American Commerce adopts by reference the response to these "New Insurer" claims as set forth in the insurer's Joint Reply Memorandum in support of their motions to dismiss. Additionally, it makes the following response:

### 1.    Illusory Coverage

Plaintiffs' initial argument is that American Commerce breached the implied covenant of good faith and fair dealing by selling insurance policies containing "collapse" wordings that did not meet the insured's expectations and that is therefore "illusory."  As the Connecticut Supreme Court ruled in *Drown*, however, not all limitations to coverage render a policy illusory.  Just because an insurance policy does not cover every conceivable loss under all conceivable circumstances does not render it an "egregiously unsuitable product."  (Plaintiffs' Opposition Memorandum, page 145).

### 2.    Accepting Premiums for "Collapse" Coverage

In the alternative, Plaintiffs contend that American Commerce acted in bad faith in failing to give notice of the reduced scope of its collapse coverage in these polices in violation of the alleged notice requirements of Conn. Gen. Stat. §38a-323 and Bulletin PC-66  (Opposition Memorandum, pp. 145-146).  In making this argument, however, Plaintiffs forget that they have earlier acknowledged that none of the American Commerce policies are "renewal" policies and that Conn. Gen. Stat. §38a-323 and Bulletin PC-66 therefore have no application to these policies.

### 3.    Misrepresenting the Existence of "Collapse" Coverage

Plaintiffs also suggest that American Commerce misrepresented the terms of its policies or otherwise engaged in bad faith conduct separate and apart from its adjustment of certain insureds' claims.  Not only are there no factual evidence with respect to any such acts by American Commerce but such claims are clearly refuted by the Joint Memorandum that the insurers have filed in response to said arguments.

### D.    Plaintiff's Statutory Bad Faith Claims Against "New Policy" Insurers

Finally, Plaintiffs assert in Section III of their Opposition Memorandum that their claims under CUIPA/CUTPA are adequately pleaded and should not be dismissed.  American Commerce

adopts by reference the arguments set forth in the insurer's Joint Memoranda concerning these statutory bad faith claims and explaining why they should, indeed, be dismissed.

## CONCLUSION

For the foregoing reasons, American Commerce respectfully renews its request that this Court grant its motion to dismiss Plaintiffs' Fourth Amended Complaint and for such other and further relief as this Honorable Court may deem just and proper.

Respectfully submitted,

AMERICAN COMMERCE INSURANCE COMPANY,

*/s/ Michael F. Aylward*

Michael F. Aylward
Federal Bar No.:  phv08156
Morrison Mahoney LLP
250 Summer Street
Boston, MA  02210
Phone: (617) 439-7556
Fax: (617 342-49123
maylward@morrisonmahoney.com

## CERTIFICATE OF SERVICE

The undersigned certifies that this document, filed through the ECF system, will be electronically served on all counsel who are registered users of ECF on May 31, 2018.

/s/  Michael F. Aylward
Michael F. Aylward