# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MICHAEL AND JOYCE HALLORAN, ET AL,

          Plaintiffs,

    v.

HARLEYSVILLE PREFERRED INSURANCE COMPANY, ET AL.

          Defendants.

CIVIL ACTION NO: 3:16-CV-00133-VAB

---

## REPLY MEMORANDUM IN SUPPORT OF KEMPER'S MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT

Richard L. Fenton, phv08139
Mark L. Hanover, phv08143
Kristen C. Rodriguez, phv08145
DENTONS US LLP
233 S. Wacker Dr., Ste. 5900
Chicago, IL 60606
T: (312) 876-8000
F: (312) 876-7934
richard.fenton@dentons.com
mark.hanover@dentons.com
kristen.rodriguez@dentons.com

Daniel P. Scapellati, ct03855
HALLORAN & SAGE, LLP
225 Asylum Street
Hartford, CT 06103
T: (860) 522-6103
F: (860) 548-0006
scapellati@halloransage.com

*Attorneys for Kemper Independence Insurance Company*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................... 1

    I.    The 2010 Kemper Policy Does Not Provide Coverage. ............................................1

        A.    The Additional Collapse Coverage Does Not Apply.......................................2

            1.    Plaintiffs Have Not Pled a Substantial Impairment of the Structural Integrity of their Basement Walls. .............................................................. 2

            2.    As Part of the "Foundation" of their Home, Plaintiffs' Basement Walls Are Not Covered Under the Additional Collapse Coverage. ................... 4

        B.    Loss from Deterioration, Latent Defect, Inherent Vice, or Expansion Resulting in Cracking is Excluded from Coverage...........................................5

        C.    Plaintiffs Have Failed to Allege a Loss within the 2010 Kemper Policy Period. .........................................................................................................6

    II.    There is No Collapse Coverage Under the Amended Kemper Policy. .......................9

    III.    Enforcing the Kemper Policies to Exclude Coverage Does Not Render the Coverage Illusory. ...............................................................................................13

    IV.    Plaintiffs' Individualized Bad Faith Allegations Against Kemper Do Not State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing. ...........16

    V.    The Remaining Claims Against Kemper Should Be Dismissed...............................17

CONCLUSION............................................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Allstate Ins. Co.*,
    276 F. Supp. 3d 1 (D. Conn. 2017).................................................................................11, 14

*Agosti v. Merrimack Mut. Fire Ins. Co.*,
    279 F.Supp.3d 370 (D. Conn. 2017)................................................................................6, 10

*Allstate Ins. Co. v. Barron*,
    848 A.2d 1165 (Conn. 2004) ................................................................................................12

*Beach v. Middlesex Mut. Assurance Co.*,
    532 A.2d 1297 (Conn. 1987) ..............................................................................................3, 4

*Billie v. Credit Collection Servs., Inc.*,
    No. 16-cv-786 (VAB), 2017 WL 396536 (D. Conn. Jan. 30, 2017) .........................................3

*Carlson v. Allstate Ins. Co.*,
    No. 3:15-cv-01045 (MPS), 2017 WL 4285687 ....................................................................10

*Doheny West Homeowners' Ass'n v. American Guar. & Liab. Ins. Co.*,
    70 Cal. Rptr. 2d 260 (Ct. App. 1997) ...................................................................................4

*Enderle v. Amica Mut. Ins. Co.*,
    3:17cv1510, 2018 WL 2048364 (D. Conn. May 2, 2018).....................................................6

*England v. Amica Mut. Ins. Co.*,
    No. 3:16-cv-1951 (MPS), 2017 WL 3996394 (D. Conn. Sept. 11, 2017)............................6, 9

*Gabriel v. Liberty Mut. Fire Ins. Co.*,
    No. 14-cv-01435-VAB, 2015 WL 5684063 (D. Conn. Sept. 28, 2015)..................................7

*Habetz v. Condon*,
    618 A.2d 501 (Conn. 1992) ................................................................................................16

*Hammer v. Lumberman's Mut. Cas. Co.*,
    573 A.2d 699 (Conn. 1990) ...........................................................................................14, 15

*Hurlburt v. Mass. Homeland Ins. Co.*,
    No. 3:17-cv-503 (VAB), 2018 WL 1035810 (D. Conn. Feb. 23, 2018)..................................5

*Jemiola v. Hartford Cas. Ins. Co.*
    No. CV-15-6008837-S, 2017 WL 1258778 (Conn. Super. Ct. Mar. 2, 2017) .......................11

*Karas v. Liberty Ins. Corp.*,
    33 F. Supp. 3d 110 (D. Conn. 2014)........................................................................7

*Kief Farmers Co-op. Elevator Co. v. Farmland Mut. Ins. Co.*,
    534 N.W.2d 28 (N.D. 1995) ................................................................................8

*Kowalyshyn v. Excelsior Ins. Co.*,
    No. 3:16-cv-00148 (JAM), 2018 WL 888724 (D. Conn. Feb. 13, 2018) ....................7, 8, 16

*Lees v. Allstate Ins. Co.*,
    No. 3:15-cv-1050 (VAB), 2017 WL 5906613 (D. Conn. Nov. 30, 2017)........................10

*Markland v. Homesite Ins. Co.*,
    No. CV166010323S, 2018 WL 1734719 (Conn. Super. Ct. Mar. 6, 2018)......................12

*Northrop v. Allstate Ins. Co.*,
    720 A.2d 879 (Conn. 1998) ................................................................................15

*Ohio Cas. Ins. Co. v. Denteck, Inc.*,
    283 F. Supp. 2d 655 (D. Conn. 2003) ....................................................................13

*Ohio Cas. Ins. Co. v. Gentile*,
    102 F. App'x 737 (2d Cir. 2004) ..........................................................................13

*Progressive Cas. Ins. Co. v. Marnel*,
    587 F. Supp. 622 (D. Conn. 1983)........................................................................15

*Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Co.*,
    352 P.3d 790 (Wash. 2015)..................................................................................3

*Roberts v. Liberty Mut. Fire Ins. Co.*,
    264 F. Supp. 3d 394 (D. Conn. 2017)....................................................................15

*Safeco Ins. Co. of Am. v. Vecsey*,
    Civil No. 3:08cv833 (JBA), 2010 WL 3925126 (D. Conn. Sept. 30, 2010) ....................9

*Strauss v. Chubb Indem. Ins. Co.*,
    771 F.3d 1026 (7th Cir. 2014) ............................................................................8

*Travelers Cas. & Sur. Co. of Am. v. Netherlands Ins. Co.*,
    95 A.3d 1031 (Conn. 2014) ................................................................................8

*XL Specialty Ins. Co. v. Otto Naumann, Ltd.*,
    No. 12-CV-8224 (DAB), 2015 WL 1499208 (S.D.N.Y. Mar. 31, 2015)........................6, 7

*Zamichiei v. CSAA Fire & Cas. Ins. Co.*,
    No. 3:16-cv-739 (VAB), 2018 WL 950116 (D. Conn. Feb. 20, 2018)..........................10

*Zulick v. Patrons Mut. Ins. Co.*,
 949 A.2d 1084 (Conn. 2008) ..................................................................................9

**Statutes**

Connecticut Unfair Insurance Practices Act ...........................................................1, 17

Connecticut Unfair Trade Practices Act .................................................................1, 17

## INTRODUCTION

The allegations by the Hallorans and Zaremba (collectively, the "Plaintiffs") that their basement walls will "continue to deteriorate . . . until the home caves into the basement" do not state a claim for collapse coverage (or any coverage) under either form of the Kemper Policy. Plaintiffs have not properly pled a "substantial impairment of the structural integrity" of their homes, nor have they plausibly pled that the continual chemical reaction occurring in their basement walls amounts to an "abrupt falling down or caving in."

Plaintiffs' sprawling opposition attempts to import ambiguity where there is none, rehashes arguments considered and rejected countless times by the Connecticut courts, and relies on the misplaced notions of illusory coverage and reasonable expectations. All of these arguments stretch the common-sense understanding of "collapse" beyond any rational bounds. However sympathetic these Plaintiffs' circumstances may be, they are not covered under their Kemper policies. This Court should decline Plaintiffs' request to rewrite the Kemper Policies to provide coverage Plaintiffs did not purchase.[1]

## ARGUMENT

**I.     The 2010 Kemper Policy Does Not Provide Coverage.**

Kemper policy form VS1154, as amended by Endorsement AK3923 (03 06) (the "2010 Kemper Policy"), which Plaintiffs refer to as the "Old Policy Form," does not provide Additional Collapse Coverage for Plaintiffs because Plaintiffs have not properly pled a "substantial impairment of the structural integrity" of their homes, despite Plaintiffs' repeated incantation of that refrain in their Fourth Amended Complaint ("FAC"). Moreover, loss to a foundation is excluded from the Additional Collapse Coverage and Plaintiffs' basement walls are plainly part

---

[1] In further support of this Reply Memorandum, Kemper incorporates by reference Defendants' Joint Reply in Support of Certain Defendants' Motion to Dismiss Plaintiffs' Claims for Declaratory Judgment, Breach of the Implied Covenant of Good Faith and Fair Dealing, and Violations of the Connecticut Unfair Trade Practices Act and the Connecticut Unfair Insurance Practices Act, ECF No. 545.

of the home's foundation under any lay understanding of that word.  Without coverage under the Additional Collapse Coverage of the 2010 Kemper Policy, Plaintiffs' Opposition concedes that there is no coverage at all under the 2010 Policy.  Finally, and in all events, Plaintiffs have failed to plausibly plead a loss occurring in the 2010 Kemper Policy period in light of their inconsistent allegations about the timing of their loss across multiple different policies and insurers.

**A.      The Additional Collapse Coverage Does Not Apply.**

**1.      Plaintiffs Have Not Pled a Substantial Impairment of the Structural Integrity of their Basement Walls.**

The Additional Collapse Coverage in the 2010 Kemper Policy makes it clear that a "[c]ollapse does not include settling, cracking, shrinking, bulging or expansion."  (Mem. of Law in Supp. of Kemper's Mot. to Dismiss the Fourth Am. Compl., ECF No. 511 ("Mem. "), Ex. 1 at pp. 9 (p. 6 of 37), 41 (p. 1 of 3).)[2]  In their Response Brief, Plaintiffs claim this exclusion from collapse coverage has no application to their loss because "[a]lthough [their] basement walls have cracked, those cracks do not constitute the 'collapse' *per se*."  (Pls. ' Combined Opp'n to Defs.' Mot. To Dismiss, ECF No. 544 ("Opp'n") at 54.)[3]  "Rather," Plaintiffs argue, "the 'collapse' at issue here is the 'substantial impairment of the structural integrity' of the basement walls, of which the cracks and bulges are the superficial symptoms . . . ."  (*Id.*)

Even reading Plaintiffs' FAC in the most charitable light to encompass those allegations, the problem with that argument is that Plaintiffs have not plausibly alleged the "substantial impairment of the structural integrity" of their basement walls.  Rather, all that Plaintiffs have done is repeatedly parrot that standard in various paragraphs of their FAC.  Such conclusory allegations are not entitled to a presumption of truth at the motion to dismiss stage.  *See, e.g.*,

---

[2] Citations to the Kemper Policies are to the page of the exhibit followed by a parenthetical indicating the page number found on the policy itself.

[3] Citations to page numbers of previously filed memoranda refer to the ECF page numbers.

*Billie v. Credit Collection Servs., Inc.*, No. 16-cv-786 (VAB), 2017 WL 396536, at *2-3 (D. Conn. Jan. 30, 2017) (quoting *Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*, 638 Fed. Appx. 100 (2d Cir. 2016)) (bare allegation that debt was incurred "primarily for personal, family, or household purposes" under statute was conclusory and "not entitled to a presumption of truth").  The properly pled factual allegations in the FAC contradict any claim by Plaintiffs that they have alleged a "substantial impairment of structural integrity" because, at most, Plaintiffs plead that state of impairment as an eventuality, not a present reality.  (*E.g.* FAC ¶ 815 (pleading that the basement walls "will continue to deteriorate . . . until the home caves into its basement".)

Moreover, Plaintiffs have no real response to Kemper's argument that the allegations concerning the state of their homes are not even remotely similar to the type of "substantial impairment" the court found could constitute a collapse in *Beach*.  (*See* Mem. at 19-20.)  In *Beach*, the Court found "substantial impairment" because deterioration had progressed to the point where structural failure of the building was imminent, noting that the foundation wall had tipped over into the basement and was no longer supporting the house.  *See Beach v. Middlesex Mut. Assurance Co.*, 532 A.2d 1297, 1299-1300 (Conn. 1987); *see also* Mem. at 19-20.  Despite acknowledging that *Beach* "cit[ed] to cases with those facts" and those "facts [were] present in *Beach*," Plaintiffs nonetheless take the position that *Beach* does not stand for the proposition that a structure must be in imminent danger of falling down and/or unsafe to occupy in order for there to be a "substantial impairment of structural integrity."  (Opp'n at 61.)

However, courts across the country have interpreted that same phrase to mean that a home is in imminent danger of falling down or unsafe to occupy for its intended purpose.  *E.g. Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Co*., 352 P.3d 790, 791,794

(Wash. 2015) (finding a "collapse" occurs when there is a "substantial impairment of the structural integrity of a building or part of a building that renders such building or part of a building unfit for its function or unsafe" and that the impairment must be "so severe as to materially impair a building's ability to remain upright"); *Doheny West Homeowners' Ass'n v. American Guar. & Liab. Ins. Co.*, 70 Cal. Rptr. 2d 260, 265 (Ct. App. 1997) (noting that *Beach* was "decided on facts that indicate imminent danger and a degree of damage that indicates that the building will not stand").  Under that interpretation, Plaintiffs have not remotely pled a substantial impairment of the structural integrity of their homes constituting a "collapse" under any reasonable construction of that term, nor could they in light of the circumstances that they *do* plead, where the home is standing, occupied, and in no imminent danger of falling down.

### 2. As Part of the "Foundation" of their Home, Plaintiffs' Basement Walls Are Not Covered Under the Additional Collapse Coverage.

Kemper does not repeat the arguments from its opening Memorandum as to why Plaintiffs' crumbling basement walls are unambiguously part of the "foundation" of their homes, and therefore excluded from the Additional Collapse Coverage.[4]  Rather, Kemper emphasizes here that there should be little doubt that a layperson would consider a home's foundation to encompass its basement walls.  That is apparent from the very title of the 2016 *New York Times* article to which Plaintiffs themselves cite: "Financial Relief Eludes Connecticut Homeowners with Crumbling **Foundations**."  (Opp'n at 48; emphasis added.)  It is also apparent from the repeated use of the term "foundation" to describe Plaintiffs' basement walls in Plaintiffs' own structural engineering report attached and incorporated into their FAC.  Plaintiffs ask this Court to disregard their own expert's terminology because it is "not scrutinized by the law"  (Opp'n at

---

[4] As noted in Kemper's Opening Memorandum, foundations are excluded from collapse coverage in both Kemper Policies unless the loss to the foundation is the result of the collapse of a building, which has most certainly not occurred.  Plaintiffs' only response to this argument is that they have alleged their homes "will fall into their basement" (Opp'n at 25 n. 13), but that argument only confirms that a collapse of a building has not occurred.

48 n. 15), but that only confirms Kemper's point: a lay understanding of a home's "foundation," not a legal one, plainly includes the basement walls.

**B.    Loss from Deterioration, Latent Defect, Inherent Vice, or Expansion Resulting in Cracking is Excluded from Coverage.**

In its Opening Memorandum, Kemper explained that several exclusions in the main policy barred coverage, including the exclusions for deterioration, latent defects, or defective construction materials, such that the only way Plaintiffs were entitled to coverage was if the Additional Collapse Coverage applied.  (Mem. at 14-16.)  But because no "collapse" has occurred to trigger the Additional Collapse Coverage, Plaintiffs are not entitled to any coverage.[5] Plaintiffs appear to have misunderstood Kemper's and other Defendants' arguments as to these exclusions because they argue that Kemper cannot use these exclusions "to defeat coverage for a collapse . . . ."  (Opp'n at 64.)  But Kemper is not relying upon these exclusions in the main policy to defeat coverage for a *collapse* provided in the Additional Collapse Coverage.  Instead, as Plaintiffs acknowledge, these exclusions "apply to non-collapse losses."  (*Id.*)  Thus, there is no disagreement from Plaintiffs that if no "collapse" has occurred here, then these exclusions operate to preclude coverage under the Kemper policies.  *See, e.g., Hurlburt v. Mass. Homeland Ins. Co.*, No. 3:17-cv-503 (VAB), 2018 WL 1035810, at *7-8 (D. Conn. Feb. 23, 2018) (no coverage for "the cracking of foundations or walls, deterioration, or latent defect" where plaintiffs did not plausibly allege they were entitled to collapse coverage).

In addition, Plaintiffs argue that the exclusion for cracking in the main policy does not apply because "Plaintiffs have not alleged that cracking itself caused their losses."  (Opp'n at 63.)  That is completely at odds with Plaintiffs' actual allegations, even reading the FAC in the light most favorable to Plaintiffs.  Plaintiffs have alleged that their walls contain pyrrhotite, (*e.g.*,

---

[5] These exclusions bar coverage under both the 2010 and Amended Kemper Policies.

FAC ¶¶ 93, 812); that the pyrrhotite is "expand[ing] and break[ing] apart the concrete" of their basement walls, (*e.g.*, *id.* at ¶¶ 94, 813); and that this bulging/expansion/cracking of their basement walls is causing "[t]he failure of the basement walls," which will eventually cause their homes to cave into their basements, (*e.g.*, *id.* at ¶¶ 815, 830).  Thus, if the Additional Collapse Coverage does not apply—which it does not—then Plaintiffs have squarely pled themselves out of court in light of the exclusion for cracking.  *E.g.*, *Enderle v. Amica Mut. Ins. Co.*, 3:17cv1510 (WWE), 2018 WL 2048364, at *3 (D. Conn. May 2, 2018) (motion to dismiss granted when "the alleged chemical reaction cause[d] the concrete to deteriorate and crack" and the policy "unambiguously excluded" coverage for  "loss caused by, *inter alia*, latent defect, deterioration, and cracking"); *England v. Amica Mut. Ins. Co.*, No. 3:16-cv-1951 (MPS), 2017 WL 3996394, at *8 (D. Conn. Sept. 11, 2017) (exclusion for "loss caused by 'deterioration . . . [s]ettling, shrinking, bulging or expansion, including resultant cracking, of . . . foundations, walls'" required dismissal when plaintiffs' alleged loss was "the cracking and deterioration of the basement walls"); *Agosti v. Merrimack Mut. Fire Ins. Co.*, 279 F.Supp.3d 370, 375 (D. Conn. 2017) (finding that "[t]he technical cause of the cracking or bulging is irrelevant" and granting motion to dismiss based on the exclusion for "loss consisting of or caused by . . . settling, cracking, shrinking, bulging or expansion of . . . foundations [or] walls").

## C.  Plaintiffs Have Failed to Allege a Loss within the 2010 Kemper Policy Period.

Plaintiffs admit their FAC alleges a direct physical loss occurred while they were  insured by Kemper, and also while they were insured by other insurers.  (*See, e.g.*, FAC ¶¶ 117, 210, 221, 233, 830; Opp'n at 108-09 (conceding that Plaintiffs' allege "that the occurrence took place within an alleged span of time implicating multiple insurers").)  These inconsistent factual allegations are improper and warrant dismissal.  *See XL Specialty Ins. Co. v. Otto Naumann, Ltd.*, No. 12-CV-8224 (DAB), 2015 WL 1499208, at *2 (S.D.N.Y. Mar. 31, 2015) (internal quotation

omitted) ("[A party] cannot . . . have its cake and eat it too.  Although Rule 8(d)(3) allows parties to plead alternative legal theories, it does not permit inconsistent *assertions of fact* within the allegations.").

Plaintiffs attempt to justify their factually inconsistent allegations by claiming they have "pled enough facts with regard to the time when the loss occurred to raise their right to relief above the speculative level."  (Opp'n at 109.)  But the authorities Plaintiffs cite in support are inapposite.  For example, Plaintiffs cite *Gabriel v. Liberty Mut. Fire Ins. Co.*, a case which did not involve two separate insurers.  No. 14-cv-01435-VAB, 2015 WL 5684063 (D. Conn. Sept. 28, 2015).  The court in *Gabriel* found that plaintiffs had sufficiently alleged that a loss had occurred during the period covered by the single insurer's policy when plaintiffs alleged that the loss occurred "[a]t some point between the date on which the basement walls were poured and the month of May, 2014," and the insurer's policies were in effect during that entire period of time.  *Id.* at *4; *see also Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110, 116 (D. Conn. 2014) (finding allegations against single insurer sufficient where loss was alleged to occur sometime during the policy period).

Plaintiffs also cite *Kowalyshyn v. Excelsior Ins. Co.*, No. 3:16-cv-00148 (JAM), 2018 WL 888724 (D. Conn. Feb. 13, 2018), in which the insureds sought coverage for deterioration of their basement walls from two different insurers.  *Id.* at *1.  The court granted summary judgment to one of the insurers because the plaintiffs failed to present any evidence that the "substantial impairment" to their walls occurred during the periods of the policies issued by that insurer.  *Id.* at *3-4.[6]  Here, Plaintiffs have failed to allege facts showing that any collapse occurred during the Kemper Policy period, as opposed to the policy period of some other insurer.

---

[6] The Court denied summary judgment to Kemper in *Kowalyshyn* because there was sufficient evidence for a reasonable jury to find that a loss had occurred during the Kemper period.

Additionally, Plaintiffs argue that they are entitled to coverage from multiple insurers and multiple policies because they suffered "continuous and progressive property damage . . . over the course of years." (Opp'n at 108.) But the only court to consider this issue under Connecticut law has rejected Plaintiffs' invitation to apply a continuous trigger theory to the sudden and accidental entire collapse coverage at issue here. *See Kowalyshyn*, 2018 WL 888724 at *4. In *Kowalyshyn*, the court explained that "unlike cases involving gradual environmental contamination or gradual progression of a disease, coverage for defective concrete foundation cases is not triggered until there is a 'collapse' . . . ." *Id.* Thus, the court concluded multiple policy periods were not triggered because "[t]he 'collapse' itself did not occur innumerable times over the years, unlike the injuries or losses in environmental or disease cases." *Id.*

Plaintiffs claim *Kowalyshyn* was wrongly decided, but fail to identify any authority supporting their position that an insured can obtain coverage under multiple policies for an alleged "collapse." Rather, the cases cited by Plaintiffs dealt with different types of policies and different types of alleged damages. (*See* Opp'n at 89-91, 93.) None of these cases applied a continuous trigger theory to find that insureds could state a claim against multiple insurance companies based on a single occurrence. *See, e.g.*, *Travelers Cas. & Sur. Co. of Am. v. Netherlands Ins. Co.*, 95 A.3d 1031, 1052-54 (Conn. 2014) (determining CGL policy, which provided coverage for property damage occurring during the policy period, was triggered when damage occurred, not when water intrusion began); *Kief Farmers Co-op. Elevator Co. v. Farmland Mut. Ins. Co.*, 534 N.W.2d 28, 35 (N.D. 1995) (concluding that damage that commenced during the policy period triggered coverage, irrespective of when the damage is discovered); *Strauss v. Chubb Indem. Ins. Co.*, 771 F.3d 1026, 1033 (7th Cir. 2014) (multiple

policies provided coverage where there was recurring damage to the property during different policy periods).

## II.      There is No Collapse Coverage Under the Amended Kemper Policy.

Plaintiffs' Opposition offers no reason for this Court to depart from its prior decisions regarding the "abrupt falling down or caving in" policy term appearing in later versions of Endorsement AK3923 (the "Amended Kemper Policy"), which Plaintiffs categorize as the "New Policy Form." (Opp'n at 43.) [7] Each of Plaintiffs' attempts to establish an ambiguity in the Additional Collapse Coverage provided in the Amended Kemper Policy has either been rejected by prior well-reasoned decisions, or simply does not raise an "equally reasonable" interpretation that would entitle Plaintiffs to move past the pleading stage.

*First*, Plaintiffs' argument that "abrupt" can be reasonably interpreted to mean "unexpected" easily falls apart. In support of their position, Plaintiffs cite to a definition used in *England v. Amica*, but that case actually found that the term "abrupt" was *not* ambiguous as applied to crumbling concrete allegations, and granted defendant's motion to dismiss. 2017 WL 3996394 at *5. In any event, Plaintiffs' cited definition of "abrupt" as "by or involving action or change without preparation or warning" (Opp'n at 84) is not materially different than the definitions advanced by Kemper and therefore does not establish that "abrupt" is "reasonably susceptible to more than one reading." *Zulick v. Patrons Mut. Ins. Co.*, 949 A.2d 1084, 1089 (Conn. 2008); *see also Safeco Ins. Co. of Am. v. Vecsey*, Civil No. 3:08cv833 (JBA), 2010 WL

---

[7] Plaintiff is simply wrong to assert that Kemper did not "attack th[e] legal requirement of notice related to a significant reduction in coverage" that Plaintiffs allege is required by Connecticut Department of Insurance Bulletin PC-66 to make the Amended Kemper Policy effective as to these Plaintiffs. (Opp'n at 97.) Kemper specifically incorporated the analysis on this issue from the Joint Motion to Dismiss in the body of its Opening Memorandum. (*See* Mem. at 27.) To be clear, Kemper also incorporates the Joint Reply on the Bulletin notice issue as if stated herein as part of its breach of contract arguments. Plaintiffs' misunderstanding here underscores the difficulty in proceeding with this many insurers in one purported class action. Despite Defendants' best efforts to coordinate and consolidate arguments, there is still an apparent lack of understanding by Plaintiffs as to the structure of Defendants' arguments, which in turn creates confusion for this Court that would not exist in individual actions.

3925126, at *9-10 (D. Conn. Sept. 30, 2010) (finding term unambiguous despite several "interrelated dictionary definitions").

*Second*, Plaintiffs argue that even if this Court follows the courts before it to interpret "abrupt" as having a temporal requirement, they have nonetheless alleged an abrupt falling down or caving in because there are "separate, abrupt instances of caving in each moment that the concrete crumbles from within the basement walls" as a result of the ongoing "sulfate attack." (Opp'n at 85.)  But again, other courts, including this one, have rejected similar arguments.  *See, e.g., Zamichiei v. CSAA Fire & Cas. Ins. Co.,* No. 3:16-cv-739 (VAB), 2018 WL 950116 at *4 (D. Conn. Feb. 20, 2018) ("gradual deterioration" in failing basement walls not covered by a policy defining collapse as "an abrupt falling down or caving in of a building"); *Agosti,* 279 F. Supp. 3d at 378 (rejecting argument that collapse coverage applied because chemical reaction in cement was "sudden and accidental"); *Lees v. Allstate Ins. Co.*, No. 3:15-cv-1050 (VAB), 2017 WL 5906613, at *5-6 (D. Conn. Nov. 30, 2017) (finding no coverage and rejecting insured's argument that "an ongoing, gradual chemical reaction eating away at the concrete does not preclude acute, sudden 'release events' that resulted in 'the widespread map cracking condition'").

In any event, the only "separate and abrupt instances of caving in" that Plaintiffs point to are the separate appearances of each crack in the walls.  (*See* Opp'n at 85 ("Each 'crack' means that a piece of the wall—a part of the building—continues to cave.").)  But whether each crack appears abruptly is irrelevant and provides no basis for coverage because the Kemper Policy makes it clear that part of a building is not in a state of collapse "even if it 'shows evidence of cracking' . . . ."  (Mem., Ex. 2 at p.2 (2 of 5).)  *See Carlson v. Allstate Ins. Co.*, No. 3:15-cv-01045 (MPS), 2017 WL 4285687 at *8 ("Because the Carlsons point to no evidence in the record

that the damage to their home was *both* sudden *and* something other than settling, cracking, shrinking, bulging, or expansion, they are not entitled to collapse coverage under the Policies.").

Given that the "abrupt" term is in no way ambiguous under a lay, common sense understanding of that word, Plaintiffs then point to a purported ambiguity in the structure of the collapse coverage itself, citing to out-of-circuit district court decisions that did not involve allegations of crumbling defective concrete. (Opp'n at 86-89.) But the reasoning in all of these cases has already been rejected by courts when considered in the context of crumbling concrete cases. For example, in *Jemiola v. Hartford Cas. Ins. Co.*, Judge Cobb considered all of these same cases cited by Plaintiffs and found them to be unpersuasive because the finding of ambiguity was "based upon its application to the particular building and facts at issue in those cases, which are distinguishable from this [crumbling concrete] case." No. CV-15-6008837-S, 2017 WL 1258778, at *10 (Conn. Super. Ct. Mar. 2, 2017). *See also Adams v. Allstate Ins. Co.*, 276 F. Supp. 3d 1 (D. Conn. 2017) (considering and rejecting the same out-of-circuit cases cited by Plaintiffs here).

Even assuming, without conceding, that the structure of the Additional Collapse Coverage in the Amended Policy may be ambiguous under certain circumstances, it is not ambiguous when applied to the facts alleged—and that is what matters. "In interpreting contracts, '[t]he ambiguous language must render the policy ambiguous as to the *relevant* issue.'" *Jemiola*, at *10 (quoting *Connecticut Medical Ins. Co., v. Kulikowski*, 286 Conn. 1, 15, 942 A.2d 334 (2008)) (emphasis added). Here, there has been a "gradual" deterioration of Plaintiffs' basement walls, not an "abrupt" one. The home is still standing, and, at the very most, Plaintiffs' homes may possibly be in "*danger of* falling down or caving in," but the home has certainly not fallen down or caved in at this point.

*Third*, Plaintiffs also make a passing argument that because the terms "falling in" and "caving in" are in an active voice, the policy must "connote something that is occurring as opposed to something that has already occurred." (Opp'n at 85.)  But those terms are preceded by "an," which therefore connotes a singular occurrence.  (Mem., Ex. 2 at p. 2 (2 of 5).)  A "falling in" or "caving in" simply cannot occur multiple, separate times, but that is what Plaintiffs implausibly advocate here.

*Finally*, Plaintiffs offer several creative interpretations of the Amended Policy's requirement that a state of collapse means that a home "cannot be occupied for its current intended purpose."  (Opp'n at 86.)  For example, Plaintiffs assert that their ability to sell their home without incurring a major financial loss is a "reasonable interpretation of a home's intended purpose."  (*Id.*)  The Policy, however, does not talk about whether the home can be sold; it talks about whether the home can be "occupied."  (Mem., Ex. 2 at p. 2 (2 of 5).)  One "occupies" a home for its intended purpose as a residence.  *See Markland v. Homesite Ins. Co.*, No. CV166010323S, 2018 WL 1734719, at *6 (Conn. Super. Ct. Mar. 6, 2018) (finding home could be "occupied for its intended purpose" at the time of the alleged loss when "plaintiffs have continued to live in the house" and no evidence of a determination otherwise).  While Plaintiffs' circumstances may be unfortunate, Plaintiffs' distorted interpretation of the occupancy standard simply cannot be credited as "equally reasonable" to the more straightforward interpretation of that phrase as meaning, in this context, whether the home is habitable.  *E.g. Allstate Ins. Co. v. Barron*, 848 A.2d 1165, 1173 (Conn. 2004) (alteration in original) (internal citation omitted) (policy ambiguous only if "susceptible of two [equally reasonable] interpretations").  Plaintiffs' own allegations clearly show that their homes *can* be occupied for their intended purpose as a residence, as Plaintiffs continue to live in them.  (*E.g.*, FAC ¶¶ 85, 809.)  Thus, there is no

ambiguity with this phrase and Plaintiffs' desperate argument otherwise does not pass the straight face test.

III.     **Enforcing the Kemper Policies to Exclude Coverage Does Not Render the Coverage Illusory.**

In a truly last ditch argument for coverage, Plaintiffs claim that Defendants' construction of the Additional Collapse Coverage renders the coverage "illusory" and violates their reasonable expectations of coverage.  (Opp'n at 67-68.)  These arguments are unavailing.

To start, Plaintiffs' argument is nothing more than a complaint over the limitations to coverage in their Kemper policies.  But the fact that some events fall "outside the ambit of coverage" does not make coverage illusory.  *See Ohio Cas. Ins. Co. v. Denteck, Inc.*, 283 F. Supp. 2d 655, 662-63 (D. Conn. 2003), *aff'd sub nom. Ohio Cas. Ins. Co. v. Gentile*, 102 F. App'x 737 (2d Cir. 2004).  "[A] specific exclusion is a recognized and accepted technique for delineating risks."  *Id.*  Given that the risks Kemper agreed to insure are reflected in the plain language of the Kemper Policies, there is no support for a finding of illusory coverage.  *See id.*  (coverage was not illusory because "the possibility of non-coverage of vehicles is plainly set out in the automatic termination provision, which is not complicated or difficult to understand").

Plaintiffs' suggestion that the collapse coverage is illusory because the Kemper Policy imposes a duty to mitigate damages is likewise a non-starter.  Plaintiffs cite to a "Duties After Loss" provision of the Kemper policies that requires insureds to "[p]rotect the property from further damage" including by making "reasonable and necessary repairs."  (Opp'n at 94 & n.52.)  Plaintiffs assert this provision makes coverage illusory because Kemper can deny collapse coverage now on the basis that Plaintiffs' homes have not suffered a collapse—and later, should Plaintiffs' homes collapse, on the basis that Plaintiffs failed to protect their property from further damage by repairing their deteriorating basement walls.  (*Id.* at 94-95 & n.52.)

That, however, is a complete misreading of the Policy.  The Policy's "collapse" coverage was intended to, and does, cover an abrupt collapse of the structure or a portion thereof based on certain perils, such as hidden decay or defective construction.  If the "collapse" is not "abrupt," but instead is the result of a gradual deterioration that can be remedied before an actual "collapse" occurs, no coverage exists.  That does not render coverage "illusory."  It simply means that the known gradual deterioration of Plaintiffs' basement walls is not within the scope of the "collapse" coverage.

Regardless, hypothetical speculation about what an insurance company might argue in the future does not establish that coverage is illusory, nor does it provide a basis to rewrite a policy to provide coverage the parties did not bargain for.  Indeed, courts to consider this issue have noted in passing that "**[i]f** [an insurer] were to raise . . . a defense [based on the Duties After Loss provision] after the eventual and inevitable collapse of the [insured's] house, it **may** render the Policy's promise to provide coverage for sudden collapse illusory."  *Adams v. Allstate Ins. Co.*, 276 F. Supp. 3d 1, 5 n.3 (D. Conn. 2017) (emphasis added).  Despite noting this future possibility, the *Adams* court did not find coverage illusory under the Allstate policy at issue there, and instead granted Allstate's motion to dismiss based on facts identical to those alleged by Plaintiffs here.  *Id.* at 5-6.

Finally, Plaintiffs' assertion that coverage for the deterioration of their basement walls was within their supposed "reasonable expectations" does not authorize the Court to rewrite the Kemper Policies.  *See Hammer v. Lumberman's Mut. Cas. Co.*, 573 A.2d 699, 707-08 (Conn. 1990) ("A court cannot rewrite the policy of insurance or read into the insurance contract that which is not there.").  Plaintiffs have not, and cannot, cite any Connecticut authority to support their assertion that a Court may rewrite an insurance policy based on the purported "reasonable

expectations" of the insured where, as here, the policy is unambiguous.  In fact, the Connecticut

Supreme Court has expressly held that where a policy is unambiguous, "the natural and ordinary

meaning [of] the policy expresses the reasonable expectations of the parties, and therefore a

plaintiff's claims concerning reasonable expectations cannot be considered."  *Id.* at 708 (internal

quotation omitted).  The cases cited by Plaintiffs are not to the contrary and stand for the

unremarkable proposition that courts will construe the language in favor of the insured in

ambiguous policies.  *See, e.g.*, *Northrop v. Allstate Ins. Co.*, 720 A.2d 879, 883 (Conn. 1998)

(adopting interpretation consistent with "reasonable expectations of insured" where there were

"two plausible interpretations of insurance policy language"); *Roberts v. Liberty Mut. Fire Ins.

Co.*, 264 F. Supp. 3d 394, 403-04 (D. Conn. 2017); *Progressive Cas. Ins. Co. v. Marnel*, 587 F.

Supp. 622, 623-24 (D. Conn. 1983) ("Connecticut law would appear to embrace [the doctrine of

reasonable expectations], if at all, only as an aspect of the fundamental principle that ambiguities

are to be construed against the drafters of insurance policies.").[8]  Because Plaintiffs have failed

to identify a material ambiguity, the Court cannot provide coverage that would otherwise be

excluded under the plain language of the Kemper Policies based on Plaintiffs' claimed

expectations.  *See Hammer*, 573 A.2d at 707-08 (quoting *Harris v. John Hancock Mut. Life Ins.

Co.*, 41 N.J. 565, 568, 197 A.2d 863 (1964)) (internal quotation omitted) (alteration in original)

(finding "[t]he average policyholder could not reasonably reach a conclusion of coverage in the

particular circumstances here in the light of and having in mind the language of the [exclusionary

provision]").

---

[8] The only case Plaintiffs cite for the proposition that the reasonable expectations of an insured may be considered irrespective of whether a policy is unambiguous applied Massachusetts, not Connecticut law.  (Opp'n at 92 n. 50 (citing *Priority Finishing Corp. v. Hartford Steam Boiler Inspection & Ins. Co.*, 1998 WL 731081, at \*12 (Conn. Super. Ct. Oct. 6, 1998)).)

**IV.    Plaintiffs' Individualized Bad Faith Allegations Against Kemper Do Not State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.**

Plaintiffs' allegations that Kemper stated to the Hallorans that it "d[id] not disagree with their engineering report" (FAC ¶ 1424), that Kemper "ha[d not] paid any claims" for crumbling concrete, and that "everyone is saying the same thing" (*Id.* ¶ 1422) do not demonstrate "bad faith" in denying Plaintiffs' claim.  "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive . . . .  Bad faith means more than mere negligence; it involves a dishonest purpose."  *Habetz v. Condon*, 618 A.2d 501, 504 (Conn. 1992) (internal quotation and citations omitted).  In contrast to some sinister motive or design to mislead, all that Plaintiffs have pled here is that Kemper consistently interpreted existing law to exclude coverage for homes in the same situation as Plaintiffs' homes, and that Kemper told Plaintiffs it would adhere to that consistent interpretation of the law.  The fact that Plaintiffs may not agree with Kemper's decision to apply a consistent interpretation of the law to the same repeated set of facts is a classic coverage dispute that does not rise to the level of a bad faith claim.  And even though some district courts have denied motions to dismiss and motions for summary judgment based on Kemper's 2010 Policy form, it is not "bad faith for an insurer to rely on an interpretation of a policy that 'has not prevailed so far' in the courts so long as it is not 'unreasonable on its face under existing insurance law.'"  *Kowalyshyn v. Excelsior Ins. Co.*, 2018 WL 888724, at *7 (D. Conn. Feb. 13, 2018) (quoting *Roberts v. Liberty Mut. Fire Ins. Co.*, 264 F.Supp.3d 394, 415 (D. Conn. 2017)).  In light of the lack of controlling authority, Plaintiffs cannot possibly maintain that Kemper's coverage position was unreasonable on its face.  Thus, the Complaint contains no

facts that, if proven, establish that Kemper's actions were undertaken with evil or dishonest

motive or sinister intent and Plaintiffs allege no conduct from which such intent can be inferred.[9]

**V.      The Remaining Claims Against Kemper Should Be Dismissed.**

This Court should also dismiss the claims against Kemper for declaratory judgment and

violations of CUTPA/CUIPA.  With respect to these claims, Kemper also incorporates by

reference all of the arguments made in the Joint Reply in Support of Defendants' Motion to

Dismiss. (ECF No. 545.)

**CONCLUSION**

For all of the foregoing reasons, and those set forth in its Opening Memorandum and the

Joint Motion to Dismiss and supporting memoranda, Kemper respectfully requests that this

Court dismiss the counts directed against Kemper with prejudice, and dismiss Kemper from this

action entirely.

Dated: June 1, 2018                              Respectfully submitted,

                                                 */s/ Richard L. Fenton*
                                                 Richard L. Fenton, phv08139
                                                 Mark L. Hanover, phv08143
                                                 Kristen C. Rodriguez, phv08145
                                                 DENTONS US LLP
                                                 233 S. Wacker Dr., Ste. 5900
                                                 Chicago, IL 60606
                                                 T:  (312) 876-8000
                                                 F:  (312) 876-7934
                                                 richard.fenton@dentons.com
                                                 mark.hanover@dentons.com
                                                 kristen.rodriguez@dentons.com

                                                 Daniel P. Scapellati, ct03855
                                                 HALLORAN & SAGE, LLP
                                                 225 Asylum Street
                                                 Hartford, CT 06103

---

[9] Kemper also incorporates by reference all of the arguments made in the Joint Reply in Support of Defendants'
Motion to Dismiss regarding the remaining boilerplate bad faith allegations alleged against it in Counts 94, 118, 119,
and 127.

T:  (860) 522-6103
F:  (860) 548-0006
scapellati@halloransage.com

*Attorneys for Kemper Independence*
*Insurance Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2018, a copy of the foregoing was filed electronically.

Notice of this filing will be sent by email to all parties by operation of the Court's electronic

filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ Richard L. Fenton

107527539