| | |
|---|---|
| MICHAEL HALLORAN, et al.,<br>    Plaintiffs,<br><br>    v.<br><br>HARLEYSVILLE PREFERRED<br>INSURANCE COMPANY, et al.,<br>    Defendants. | No. 3:16-cv-00133 (VAB) |

## RULING ON PENDING MOTIONS TO DISMISS AND STRIKE

On January 29, 2016, Plaintiffs, homeowners in Hartford, Tolland, and Windham

Counties in Connecticut brought a Class Action Complaint against their homeowners insurance

companies (collectively "Defendants"). ECF No. 1. Following the filing of the Fourth Amended

Complaint, Defendants filed multiple motions to dismiss, as well as a motion to strike class

allegations.

For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART**

Defendants' motions to dismiss, ECF Nos. 497, 499, 502, 505, 508-510, 512, 514, 516, 518, 520,

522, 524, 526, 528, 530, 533, **WITHOUT PREJUDICE TO RENEWAL** following resolution

by the Connecticut Supreme Court of the pending certified questions.

As explained below, a subset of the counts in the Fourth Amended Complaint contain

policy language that, as a matter of law, is unambiguous and does not support a claim for relief.

The Court dismisses each Plaintiff whose entire claim for relief rested on a policy that

unambiguously excluded coverage for abrupt or sudden collapse: Kathy Noblet, Dawn L. Norris,

and Steven and Colleen Swart. Relatedly, the Court dismisses each Defendant whose entire

liability rested on a policy that unambiguously excluded coverage for abrupt or sudden collapse: American Commerce Insurance Company and Allstate Insurance Company. The other Plaintiffs and Defendants remain parties to this action for the reasons stated below. The Court **DENIES** Defendants' motion to strike class allegations. ECF No. 498.

A revised scheduling order with deadlines for the completion of discovery relating to the class allegations only and for the submission of a motion for class certification shall be submitted by **Friday, November 16, 2018,** jointly, if possible, but if the various parties cannot agree, separately. The Court then will hold an in-person status conference on **Thursday, November 29, 2018 at 2:00pm.**

Consistent with this schedule and the Court's inherent authority to manage cases on its docket,[1] the Court will **DENY** any further amendments to the Fourth Amended Complaint, absent unforeseen circumstances not now readily apparent.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs own homes in Hartford, Tolland, and Windham Counties in Connecticut. Fourth Am. Compl. ("FAC") ¶ 1, ECF No. 488. Defendants are multiple insurance companies who each provided homeowners insurance to some of the Plaintiffs. *Id.*

## A.    Factual Allegations

Plaintiffs allegedly bought their homes between 1984 and 2015. *See e.g.* FAC ¶¶ 8–28. They allege that each of these properties has basement walls that are "crumbling and/or exhibiting a pattern of cracking" due to the oxidation of certain minerals contained in the concrete. *Id.* ¶¶ 2, 53. As a result of the deteriorating concrete, Plaintiffs claim that their "basement walls are in a state of collapse . . . ." FAC ¶ 2.

---

[1] *Deitz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) (noting a court's inherent authority to manage its docket with a "view toward the efficient and expedient resolution of cases.").

The Hallorans' home in Ellington, Connecticut, is representative of the type of damage the Plaintiffs allegedly face. Constructed around 1985, their home is a two-story colonial. FAC, Ex. 1: Fuss & O'Neill Report at 1, 3. In 2015, engineers examining the house noted "light to moderate cracking" in the concrete, "with many cracks located at the corners of the building." *Id.* at 3. Several cracks exceeded one eighth of an inch in width; most were between one-sixteenth and one-eighth. Inside the home, "map cracking was observed in the southwest corner." *Id.* at 4. The engineers also took core samples from the concrete, which revealed "significant fracturing" as well as "massive sulfide minerals" later identified as pyrrhotite. *Id.* at 5.

The engineers concluded that "[t]he oxidation (rusting) of pyrrhotite causes swelling and cracking" ultimately resulting "in decreased durability of concrete by changing the chemical nature of the paste and mechanical properties of the concrete." *Id.* at 5. Ultimately, the engineers' "professional engineering judgment" was that the reaction would continue, "resulting in increased deterioration and eventual failure of the foundation to function as originally intended. The structural failure may lead to loss of support of the building structure, loss of support of the soil on the outside of the wall and/or allowance of water intrusion into the basement." *Id.* at 6.

Plaintiffs allege that "after discovering their deteriorating basement walls, Plaintiffs have homes that are practically impossible to sell, practically impossible to refinance and, eventually, will be impossible to safely live in." FAC ¶ 4. As a result, each Plaintiff has "made a claim for coverage with one of the Defendant Insurance Companies" and either been denied coverage or expected to be denied coverage at the time of filing of the Complaint. *See id.* ¶ 56. The cost of replacing the basement walls for these homes "is generally between $100,000.00 and $250,000.00 and the homeowners allege that "[a]fter paying insurance premiums for years, or even decades, Plaintiffs are left to face this massive expense all alone." *Id.* ¶ 83.

### 1. The Insurance Services Office

Plaintiffs allege that "[e]ach of the Defendant Insurance Companies adopted some or all of the language drafted" by a common organization — the Insurance Services Office, Inc. ("ISO"). *See* FAC ¶ 58. Plaintiffs purport that ISO, an insurance industry association, has "peddled" language in standardized policies. *Id.* ¶ 3. Plaintiffs contend that the insurance companies, along with ISO, were aware of the concrete issues in Connecticut "[a]t least as early as 1996" when claims began to be filed. *Id.* ¶ 63. They also allege that ISO and their insurance companies were aware that the Connecticut Supreme Court had defined collapse as a "substantial impairment of the structural integrity of a building." *Id.* ¶ 62 (citing *Beach v. Middlesex Mutual Assurance Co.*, 205 Conn. 246, 252 (1987).

According to Plaintiffs, Defendants and ISO deliberately changed their policies' definitions of 'collapse' to try to avoid or minimize liability for potential claims brought by Plaintiffs. *Id.* ¶ 64. The new language excluded losses to a "foundation" or "retaining wall" and "excluded 'settling, cracking, shrinkage, bulging or expansion" from coverage of collapse. *Id.* ¶ 65. Plaintiffs allege that ISO was not the only organization that did so; the American Association of Insurance Services ("AAIS") adopted similar exclusions. *Id.* ¶ 66.

Ultimately, "[b]esieged by insureds raising this issue the Defendant Insurance Companies kept denying claims," according to Plaintiffs, and they "provid[ed] bogus responses when they knew the claims were good, while at the same time, casting about for a way to try to shore up the language in their policies." *Id.* ¶ 72.

Plaintiffs allege this occurred primarily through "collapse" provisions, which were amended in 1999 and again in 2011. *Id.* ¶¶ 73–74. These changes ultimately narrowed the coverage for Plaintiffs. *Id.* ¶ 77.

## 2. The "Collapse" Provision

The standard insurance policy language produced by ISO, and allegedly adopted by the insurance companies, went through several iterations between 1990 and the present. FAC, Ex. 2.

Originally, the coverage provided for the "direct physical loss to covered property involving collapse of a building or any part of a building" caused by several discrete causes. FAC ¶ 101. These included "hidden decay", "hidden insect or vermin damage", the "use of defective materials or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation[.]" *Id.* The term "collapse" was undefined.[2]

In 1999, ISO language allegedly changed and defined collapse as "an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose." *Id.* The language clarified that a building "in danger of following down or caving in" or that "is standing" is "not considered to be in a state of collapse," even if it "shows evidence of cracking, bulging, sagging bending, leaning, settling, shrinkage or expansion." The policy language changed several more times after 2000, but included an identical collapse provision.

## 3. Notice Allegations

Plaintiffs allege that each Defendant changed the language of their policies over time, and that these unilateral changes "attempted to delete coverage." FAC ¶ 79. They argue that they are "homeowners without the requisite knowledge and resources to make the many intricate observations needed to determine" if their policies would cover certain events. FAC ¶ 81. Plaintiffs claim they "did not and could not negotiate with the Defendant Insurance Companies at

---

[2] This language will be described in this ruling as the"1997 ISO Language." The modified language will be labeled the "1999 ISO Language."

arms' length" but instead trusted the insurance companies. *Id*. They allege that they "relied to their detriment on the Defendant Insurance Companies' superior knowledge and skill in purchasing their homeowners insurance policies[.]" *Id.* ¶ 81.

The homeowners also allege that any changes were "unilateral" and made "without providing adequate notice or adequate disclosure" under Connecticut law. *Id.* ¶ 78.

## B. Procedural History

Plaintiffs filed the first complaint in this case on January 29, 2016. *See* Compl., ECF No. 1. The initial complaint included seven named plaintiffs and more than one hundred defendants, all insurance companies. *Id.* ¶¶ 2. Before Defendants had responded, Plaintiffs filed an amended complaint that included additional defendants and claims on March 17, 2016. *See* First Am. Compl., ECF No. 122. Plaintiffs then moved to certify a class, which they defined as:

> All individuals who own a home in the Connecticut towns of Manchester, Andover, Ellington, Stafford Springs or any other Connecticut town located east of the Connecticut River whose homes are insured by any of the Insurance Defendants, and whose homes have sustained 'pattern cracking' including but not limited to horizontal and vertical cracks on their basement walls, and whose bad foundation claims have been denied or will be denied by the Insurance Defendants, which denials are or will be based on the same standardized language regarding the term 'collapse', the term 'basement', the term 'foundation', the term 'decay', the term 'hidden', and the term 'retaining wall.'

Pls. Mot. for Class Certification, ECF No. 158.

The parties then sought different case management orders. *See* Pls. Proposed Case Management Order, ECF No. 239; Certain Defs. Non-Consented Mot. For Entry of Proposed Case Management Plan, ECF No. 240. The Court, in addressing these motions, provided that any motion for leave to file an amended complaint would be due by May 6, 2016. Order, ECF No. 254. It also denied Plaintiffs' motion for class certification without "prejudice to renewal

following the Court's resolution of any motion to amend, and motions to dismiss directed at the amended complaint." *Id.*

Plaintiffs then moved for leave to file a Second Amended Complaint on May 7, 2016. *See* Pl Mot. for Leave to Amend, ECF No. 290. Plaintiffs sought to add nine additional plaintiffs and four additional defendants, and to remove three defendants. *Id.* at 4-5. Plaintiffs also sought to add additional causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. *Id.* Defendants did not oppose amendment. *See* Defs. Resp., ECF No. 309. The Court granted the motion, noting the lack of objection. Order, ECF No. 323.

The parties then moved to amend the scheduling order, and Plaintiffs stated that they intended to file a third amended complaint. ECF No. 325. The Court granted the request and stayed responsive pleadings regarding the Second Amended Complaint. *See* Order, ECF No. 326.

On October 31, 2016, Plaintiffs moved to amend the Complaint yet again and join additional parties; they sought to add nineteen new plaintiffs and reduce the overall number of defendants to thirty. *See* Pls. Mot. for Leave to Amend., ECF No. 332. Defendant State Farm Fire and Casualty Company opposed amendment, but other parties stated they had no opposition. *Cf.* State Farm Fire and Casualty Co. Mem. of L. in Opp., ECF No. 337 (opposing Plaintiffs' motion for leave) *with* Defs. Resp., ECF No. 338 at 1 ("In the interest of judicial efficiency and economy for all parties and this Court, the Defendants listed in Exhibit 1 do not oppose Plaintiff's Motion insofar as it seeks leave to file a Third Amended Complaint.").

Before the Court addressed the motion, however, Plaintiffs moved for leave to file a substituted third complaint on December 12, 2016. *See* Pl. Mot., ECF No. 339. Plaintiffs stated that the proposed "Substituted Third Amended Complaint" rectified a number of errors, deleted

references to individuals and companies not in the case, corrected a number of errors in dates, damage estimates, and party names, and dropped a number of claims. *Id.* Defendants, in large part, again did not oppose amendment, although they noted that "the proposed Substituted Third Amended Complaint is Plaintiffs' fifth complaint in this case" and "[e]ach such amendment has not only delayed joinder of issues, but has caused Defendants to incur significant and unnecessary expenses in defending themselves." Defs. Resp. to Mot. to Amend/Correct, ECF No. 340, at ¶ 1. Defendants requested, however, that further amendment be barred unless Plaintiffs demonstrated good cause under Federal Rule of Civil Procedure 16. *Id.* ¶ 2.

The Court granted Plaintiffs' motion and allowed the Substituted Third Amended Complaint to be filed. *See* Order on Mot. Amend Compl., ECF No. 350. The Court noted Defendants' consent. *Id.* at 1. The Court denied the Defendants' request to preclude future amendments unless Plaintiffs could show good cause because: "Defendants cite no authority supporting their request that the Court preemptively impose a good cause standard on Plaintiffs' potential future requests to further amend the complaint in this case. The Court will not, therefore, order that Plaintiffs be precluded from any further amendments to the complaint in the absence of good cause." *Id.* at 2. Plaintiffs subsequently filed the Substituted Third Amended Complaint, ECF No. 352.

Defendants then filed numerous motions to dismiss. This included joint motions to dismiss several shared counts, ECF No. 373, and to strike the class allegations, ECF No. 375. Individual defendants also filed separate motions to dismiss. *See* Travelers Defs. Mot. Dismiss, ECF No. 377; Citizens Ins. Co. Mot. Dismiss., ECF No. 379; Bunker Hill Ins. Co., ECF No. 381; New London Cty. Mutual Ins. Co. Mot. Dismiss, ECF No. 384; Trumbull Ins. Co. Mot. Dismiss, ECF No. 387; Allstate Ins. Co. Mot. Dismiss, ECF No. 391; Metropolitan Group Mot. Dismiss,

ECF No. 394; Kemper Independence Ins. Co. Mot. Dismiss, ECF No. 397; Liberty Entities' Mot.

Dismiss, ECF No. 399; Homesite Ins. Co. Mot. Dismiss, ECF No. 401; Amica Ins. Co. Mot.

Dismiss, ECF No. 403; State Farm Mot. Dismiss, ECF No. 405;[3] Merrimack Mutual Fire Ins.

Co. Mot. Dismiss, ECF No. 409; American Commerce Ins. Co. Mot. Dismiss, ECF No. 411;

NGM Ins. Co. Mot. Dismiss, ECF No. 413; CSAA Fire and Cas. Ins. Co. Mot. Dismiss, ECF

No. 415; Nationwide Property and Cas. Ins. Co. and Harleysville Preferred Ins. Co. Mot.

Dismiss, ECF No. 416; Middlesex Mutual Assurance Co. Mot. Dismiss, ECF No. 420. Plaintiffs

responded to these motions on September 15, 2017. *See* Sept. 2017 Pls. Mem. in Opp. re Mot. to

Strike, ECF No. 457; Sept. 2017 Pls. Resp. to Mot. to Dismiss and Mot. to Sever, ECF No. 456;

Sept. 2017 Pls. Mem. in Opp. Combined, ECF No. 458.

Plaintiffs then filed another motion to amend on September 25, 2017, seeking leave to

file a Fourth Amended Complaint, ECF No. 462. They sought leave to delete parties and claims

that are no longer being pursued in light of the issues raised in various motions to dismiss, and to

delete references to individuals and companies not in the case, and to add counts between

existing parties, and to correct errors, missing, or confusing information. *Id.* at 1–2.

Defendants then moved to stay briefing on the pending motions to dismiss until the Court

issued its ruling on the motion to amend. *See* Defs. Mot. to Stay, ECF No. 463. Plaintiffs

opposed the Defendants' motion to stay briefing. Mem. in Opp. re  Mot. to Stay Certain Defs.

Emerg. Mot. to Stay Briefing on Subst. Third Am. Compl., ECF No. 467.

On September 29, 2017, the Court amended the scheduling order. Order on Amen. Sched.

Order, ECF No. 470. The Court ordered Defendants to respond to the motion for leave to file a

Fourth Amended Complaint within forty-five days. *Id.* at 2. Furthermore, the Court ordered that,

---

[3] State Farm also moved to sever. Mot. to Sever by State Farm Fire & Casualty Co, ECF No. 407.

should the Court deny leave to amend, Defendants would have thirty (30) days to file replies to the pending motions or, if the Court granted the motion, Defendants would have forty-five (45) days to answer, move to dismiss, or otherwise respond to the Fourth Amended Complaint. *Id.*

Defendants filed two objections to the leave to amend. First, a group of defendants jointly argued that, while the Court has the discretion to grant leave, it should not do so because granting Plaintiffs' motion would lead to significant delay and increased litigation costs. Certain Defs. Opp. to Pls. Mot. ("Certain Defs. Opp."), ECF No. 480.[4] Second, Middlesex Mutual Assurance Company ("MMAC") filed an additional response to the motion for leave. Middlesex Mutual Assurance Co. Response ("MMAC Resp."), ECF No. 481. MMAC raised individual arguments as to the individual Plaintiffs asserting claims against the company. *Id.*

The Court granted leave to amend and mooted the pending motions to dismiss on February 8, 2018. *See* Order on Pl. Mot. for Leave to Amend ("Leave to Amend Order"), ECF No. 487. The Court determined that it would exercise its discretion because the delay had not yet prejudiced the parties, *id.* at 12, and no claims were futile, *id.* at 12-13. Ultimately, the Court determined "This case is a complex action involving Plaintiffs who seek to represent a class in a suit against multiple defendants, including some claims that relate to the class as a whole and some that relate to the interaction between subsets of plaintiffs and defendants. Some delay is inevitable given the posture of the case." *Id.* at 11. The Court also declined to ban Plaintiffs from

---

[4] Counsel for Liberty Mutual Fire Insurance Company, Peerless Insurance Company, and Safeco Insurance Company of America signed the opposition. Allstate Insurance Co., American Commerce Insurance Company, Bunker Hill Insurance Company, Citizens Insurance Company of America, CSAA Fire & Casualty Insurance Company, Fidelity and Guaranty Insurance Company, Harleysville Preferred Insurance Company, Homesite Insurance Company, Kemper Independence Insurance Co., Merrimack Mutual Fire Insurance Company, Metropolitan Group Property and Casualty Insurance Co., Nationwide Property & Casualty Insurance Company, NGM Insurance Company, New London County Mutual Insurance Company, The Automobile Insurance Company of Hartford, Connecticut, The Standard Fire Insurance Company, The Travelers Home & Marine Insurance Company, The Travelers Indemnity Company of America, and Trumbull Insurance Company joined the opposition. The Court will refer to these parties collectively as "Certain Defendants."

further amendments at that time. *Id.* at 15. The Court directed Plaintiffs to file the Fourth Amended Complaint and set a briefing schedule for a new round of motions to dismiss. *Id.* at 16–17.

Plaintiffs filed the Fourth Amended Complaint on February 14, 2018. FAC. Three-thousand and three paragraphs long, the Fourth Amended Complaint asserts four categories of claims: breach of contract, declaratory judgment, breach of the implied covenant of good faith and fair dealing, and violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), CONN. GEN. STAT. § 42-110(g), and Connecticut Unfair Insurance Practices Act ("CUIPA"), CONN. GEN. STAT. § 38a-815-35. Each Plaintiff asserts multiple counts against the insurer who provided insurance on his or her home, and in some cases an individual Plaintiff alleges unlawful conduct by multiple Defendants.

Plaintiffs also renewed their class allegations. *See id.* ¶ 2994. According to the Fourth Amended Complaint, Plaintiffs seek to bring this case on behalf of:

> All persons who purchased any of the Defendants' homeowners insurance policies that insure property located in Connecticut and which contain coverage for "collapse," and who sought coverage for "collapse" of their basement walls and did not get it; and all persons who will purchase such homeowners insurance policies from any of the Defendants and who will seek such coverage, and who are unaware of the loss at the time of purchase.

*Id.* ¶ 2995. They allege that the proposed class would meet the requirements of Rule 23(b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure. *Id.* ¶ 2995.

Defendants then moved, individually and as a group, to dismiss the Fourth Amended Complaint. *See, e.g.*, Certain Defs. Mot. to Dismiss, ECF No. 497. Additionally, Defendants moved to strike the class allegations. *See* Certain Defs Class Mem., ECF No. 498. Their motion to strike essentially employs each of the sections of Rule 23 of the Federal Rules of Civil

Procedure. They argue that Plaintiffs will not be able to show commonality, and that each claim raises numerous individualized inquires that would defeat the class certification motion. *Id*. at 11. They also argue that the Plaintiffs cannot meet any of the requirements under the subsections of Rule 23(b), and therefore class certification would be inappropriate. *Id*. at 25-35. Plaintiffs responded to these motions on May 11, 2018. *See* May 2018 Pl. Mem. in Opp. re Mot. to Strike, ECF No. 543; May 2018 Pl. Mem. in Opp. Combined, ECF No. 544. The parties filed various reply briefs in May and June of 2018.

Before oral argument on the pending motions, the Court *sua sponte* noted that two other courts in the District had certified the following question to the Connecticut Supreme Court: "What constitutes a 'substantial impairment of structural integrity' for purposes of applying the 'collapse' provision of this homeowners' insurance policy?" Order at 1, ECF No. 572 (citing r *Karas v. Liberty Ins. Corp.*, 3:13-cv-01836 (SRU), 2018 WL 2002480 (D. Conn. 2018); *Vera v. Liberty Ins. Corp.*, No. 3:16-cv-72 (RNC), 2018 WL 3014112 (D. Conn. 2018)). The Court, noting that other courts in this District had subsequently stayed similar cases, requested that the parties "address the impact, if any, on the question certified to the Connecticut Supreme Court on this case and what steps, if any, the Court should take as a result." *Id.*

## II.     STANDARD OF REVIEW

### A.     Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). A court will dismiss any claim that fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), the court applies a "plausibility standard" guided by "[t]wo

working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

At the motion to dismiss stage, all of the factual allegations in the complaint will be taken as true. *Iqbal*, 556 U.S. at 678. The factual allegations will also be viewed in the light most favorable to the plaintiffs, and all inferences will be drawn in favor of the plaintiffs. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), *cert. denied*, 537 U.S. 1089 (2002)).

A court considering motions to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The court may also consider

"matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005). Accordingly, the court may review the homeowners insurance policies in this record, as well as the engineers' report and related documents.

### B.    Motion to Strike under Rule 12(f)

A court may "strike from a pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Resolution of a motion to strike under this rule is within the discretion of the district court, but such motions are generally disfavored and should be infrequently granted. *Tucker v. Am. Int'l Grp.*, 936 F. Supp. 2d 1, 15–16 (D. Conn. 2013).

The Second Circuit has long held that courts "should not tamper with the pleadings unless there is a strong reason for so doing," and that a motion to strike under Rule 12(f) should be denied "unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). A motion to strike is particularly disfavored with class allegations "because it requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (internal alterations and quotation marks omitted).

The party moving to strike thus "bears a heavy burden" and ordinarily must show that "(1) no evidence in support of the allegations would be admissible; (2) the allegations have no

bearing on the issues in the case; and (3) permitting the allegations to stand would result in prejudice to the movant." *Tucker*, 936 F. Supp. at 16.

## III. DISCUSSION

This case, one of many pending in the District, addresses crumbling concrete and collapse coverage. This case differs, however, in one material respect: it is brought as a putative class action. Plaintiffs argue that their express goal is to "bring to an end, once and for all, to insurers' arguments that the policy language does not mean what the Courts have continued to say it means." May 2018 Pl. Mem. in Opp. Combined at 192. The scope, and length, of the Fourth Amended Complaint sweeps far beyond the typical case, with multiple Plaintiffs alleging violations of Connecticut law by Defendants and seeking to represent a class of even greater numbers.

The process for deciding the issues, however, proceeds along a familiar path. Ultimately, the Court must decide if Plaintiffs have sufficiently alleged that one of their homeowners insurance policies would cover the deteriorating condition. The precise language of these policies has been repeatedly addressed by courts in this District. *See, e.g.*, *Zamichie v. CSAA Fire & Cas. Ins. Co.*, No. 3:16-CV-739 (VAB), 2018 WL 950116 (D. Conn. Feb. 20, 2018); *Makufka v. CSAA Fire & Cas. Ins. Co.*, No. 3:16-cv-00567 (VLB), 2018 WL 465775 (D. Conn. Jan. 18, 2018); *Gabriel v. Liberty Mut. Fire Ins. Co.*, No. 3:14-cv-01435 (VAB), 2017 WL 6731713 (D. Conn. Dec. 29, 2017); *Allstate Ins. Co. v. Swaminathan*, No. 3:16-cv-1708 (VAB), 2017 WL 6614092 (D. Conn. Dec. 27, 2017); *Liston-Smith v. CSAA Fire & Cas. Ins. Co.*, No. 3:16-cv-510 (JCH), 2017 WL 6459552, (D. Conn. Dec. 15, 2017); *Lees v. Allstate Ins. Co.*, No. 3:15-cv-1050 (VAB), 2017 WL 5906613 (D. Conn. Nov. 30, 2017); *Manseau v. Allstate Ins. Co.*, No. 3:16-cv-1231 (MPS), 2017 WL 3821791 (D. Conn. Aug. 31, 2017); *Adams v. Allstate Ins. Co.*, 276 F.

Supp. 3d 1 (D. Conn. 2017); *Clough v. Allstate Ins. Co. et al.*, No. 3:17-cv-140 (JBA) (D. Conn. Aug. 29, 2017); *Agosti v. Merrimack Mut. Fire Ins. Co.*, No. 3:16-cv-1686 (SRU), 2017 WL 3710786 (D. Conn. Aug. 28, 2017); *Valls v. Allstate Ins. Co.*, No. 3:16-cv-1310 (VAB), 2017 WL 4286301 (D. Conn. Sept. 27, 2017); *Metsack v. Liberty Mut. Fire Ins. Co.*, 3:14-cv-1150 (VLB), 2017 WL 706599 (D. Conn. Feb. 21, 2017).

As in similar cases, and because the breach of contract claims will be determinative of many other claims, the Court will begin by addressing the policy language and Plaintiffs' breach of contract claims.

### A.    Breach of Contract Claims

Counts One through Forty-Six of the Fourth Amended Complaint allege breach of contract claims. FAC ¶¶ 84–852. Each Defendant argues that the breach of contract claims—factual allegations alleging substantial impairments to the homes falling short of total cave-ins—fail to state a claim covered by the insurance policies. *See e.g.*, Certain Defs. Mot. to Dismiss.

Under Connecticut law, the terms of an insurance policy are "construed according to the general rules of contract construction." *Liberty Mutual Ins. Co. v. Lone Star Indus.*, 290 Conn. 767, 795 (2009) (internal quotations and citations omitted). While contracts are strictly construed in favor of the insured, "the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." *Id*. at 796. Insurance contract "language should be construed in favor of the insured unless it has 'a high degree of certainty' that the policy language clearly and unambiguously excludes the claim." *Id*. (quoting *Kelly v. Figueiredo*, 223 Conn. 31, 37 (1992)). Courts should construe insurance contracts as laypeople would. *Kim v. State Farm Fire & Cas. Ins. Co.*, No. 17-2304-

CV, 2018 WL 4847195, at *1 (2d Cir. Oct. 5, 2018)(summary order), citing *Vt. Mut. Ins. Co. v. Walukiewwicz*, 966 A.2d 672, 678 (Conn. 2009) (internal quotation marks and citations omitted).

The Second Circuit recently addressed insurance contract interpretation in a concrete case involving plaintiff-appellants Gueng-Ho Kin and Jae Kim ("the Kims"). *Kim*, 2018 WL 4847195. The Kims' State Farm insurance policy expressly excluded "any loss . . . [due to]. . . . settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings . . . . [and any loss due to] defect, weakness, inadequacy, fault or unsoundness in . . . materials used in construction or repair." *Id*. at *4. Because the policy language "explicitly excludes coverage for the collapse of an insured dwelling that was caused by foundation concrete cracking because of the use of defective materials in the construction . . . . the language is not ambiguous." *Id*. Since the contract language would be clear to a layperson, the district court affirmed summary judgment.

This recent decision is consistent with decisions throughout the District of Connecticut. Plaintiffs whose policies do not include collapse provisions[5] cannot recover when clear policy language has disclaimed liability for "any loss" related to concrete movement or disintegration, including eventual collapse. By contrast, when plaintiffs' policies include collapse provisions, courts must determine if these provisions cover crumbling concrete. Such policies almost universally exempt cracking or deterioration of materials from coverage, but also include a separate "collapse" provision. The issue therefore is whether the damage alleged amounts to a "collapse" within the terms of a given policy. That inquiry requires examination of the definition of collapse.

---

[5]As the district court noted, State Farm had deleted the collapse provision of the Kim's policy. *Kim v. State Farm Fire & Cas. Co.*, 262 F. Supp. 3d 1, 2–3 (D. Conn. 2017), *aff'd sub nom. Kim v. State Farm Fire & Cas. Ins. Co.*, No. 17-2304-CV, 2018 WL 4847195 (2d Cir. Oct. 5, 2018).

### 1.    The Collapse Provision in Connecticut Law

Courts in this District now draw a distinction between and among "collapse" provisions in insurance policies involving concrete claims. The distinction turns on whether the term "collapse," as defined in the policy, stands alone or is modified by other terms indicating some temporal quality. *Compare Hurlburt v. Mass. Homeland Ins. Co.*, No. 3:17-CV-503 (VAB), 2018 WL 1035810, at *5 (D. Conn. Feb. 23, 2018) (interpreting policy that defined "collapse" as "an abrupt falling down," and stated that the policy covered "sudden and accidental direct physical loss" to be unambiguous and "require[] a temporal quality"), *with Roberts v. Liberty Mut. Fire Ins. Co*., 264 F. Supp. 3d 394, 404 (D. Conn. 2017) (holding, at summary judgment, that a policy that includes a collapse provision but "does not define the term 'collapse'" would be evaluated under the Connecticut Supreme Court's definition in *Beach v. Middlesex Mutual Assurance Co.*, 205 Conn. 246 (1987)).

When the collapse term is undefined or unqualified, courts in this District generally apply the Connecticut Supreme Court's decision in *Beach. See, e.g.*, *Roberts v. Liberty Mut. Fire Ins. Co.*, 264 F. Supp. 3d 394, 404; *Karas v. Liberty Ins. Corp*., 33 F. Supp. 3d 110, 114 (D. Conn. 2014) (applying *Beach* and noting "[w]ith respect to the breach of the agreement, the Karases allege that the basement walls suffered a substantial impairment to their structural integrity, which constitutes a collapse.");[6] *Belz v. Peerless Ins. Co*., 46 F. Supp. 3d 157, 163 (D. Conn. 2014), *reconsideration denied*, No. 3:13-CV-01315 (VAB), 2016 WL 6542828 (D. Conn. Nov. 3, 2016) (applying *Beach* standard and denying motion to dismiss).

---

[6] In *Karas*, the court subsequently certified the question to the Connecticut Supreme Court: "What constitutes a 'substantial impairment of structural integrity' for purposes of applying the 'collapse' provision of this homeowners' insurance policy?" *Karas v. Liberty Ins. Corp*., No. 3:13-cv-01836 (SRU), 2018 WL 2002480, at *5 (D. Conn. Apr. 30, 2018). The Court noted that it found the *Beach* standard was "relatively clear" but certified because the definition raised "important issues of public policy" and was "likely—indeed, almost certain—to recur . . . ." *Id.* at *2 (internal quotations and citations omitted).

In *Beach*, the plaintiffs noticed a crack in the foundation wall of a building they owned, and sought coverage under an insurance policy that included coverage for "collapse" but excluded coverage for damages arising from "settling, cracking, shrinkage, bulging or expansion." *Beach*, 205 Conn. at 248. There, the insurance company argued that "collapse" should be interpreted one of two ways: first, a "sudden and complete catastrophe" or, second, that reading the policy as a whole, a "casualty of a sudden and cataclysmic nature." *Id*. at 250–51. The Connecticut Supreme Court rejected those definitions, instead holding that when collapse was not defined in an insurance policy, the term "include[s] coverage for any substantial impairment of the structural integrity of a building." *Id*. The insurance company then could be held "liable even though no actual caving-in occurred and the structure was not rendered completely uninhabitable." *Id*. at 253. The Court explained that "[r]equiring the insured to await an actual collapse would not only be economically wasteful, but would also conflict with the insured's contractual and common law duty to mitigate damages." *Id*. at 253 n.2.

Applying the *Beach* definition, courts in this District have regularly found the "collapse" provision of insurance policies ambiguous and denied motions to dismiss as a result. *See, e.g.*, *Agosti v. Merrimack Mut. Fire Ins. Co.*, No. 3:16-cv-01686 (SRU), 2017 WL 3710786, at *4 (D. Conn. Aug. 28, 2017) ("For the reasons stated by the Connecticut Supreme Court *in Beach v. Middlesex Mutual Assurance Co.*, and subsequently followed by many judges of this court, I conclude that the term 'collapse,' standing alone, 'is sufficiently ambiguous to include coverage for any substantial impairment of the structural integrity of a building.'").

In contrast, when collapse is modified by terms such as "sudden and accidental" or "abrupt," courts in this District have held that the terms of the policy are unambiguous and that the plaintiffs in concrete cases have not alleged such a collapse. *See, e.g.*, *Valls v. Allstate Ins.*

*Co.*, No. 3:16-cv-01310 (VAB), 2017 WL 4286301, at *5 (D. Conn. Sept. 27, 2017) ("The

Vallses' policy, however, explicitly requires that any collapse be 'a sudden and accidental direct

physical loss' and a 'complete collapse.' As addressed above, they have not alleged a sudden

collapse."); *Manseau v. Allstate Insurance Co.*, No. 3:16-cv-1231 (MPS), 2017 WL 3821791, at

*5 (D. Conn. Aug. 31, 2017) ("Regardless of whether the loss is characterized as a collapse or a

chemical reaction, Plaintiffs fail to allege that any loss occurred suddenly, that is, temporally

abruptly, as required for coverage to apply."); Hurlburt, 2018 WL 1035810, at *5 ("Here, the

contract language is unambiguous; the limiting term 'sudden' requires a temporal quality.").

The Court must therefore look to the specific language of the policy to determine whether

the *Beach* definition applies and the term "collapse" is ambiguous, or whether the term is

modified and therefore unambiguous.

### 2. 1997 ISO Language

The first set of claims here arise under language adopted by ISO in 1997. The policies

provide for coverage of "direct physical loss to covered property involving collapse of a building

or any part of a building" when the result of several different causes, including "hidden decay"

and the "use of defective material or methods in construction, remodeling or renovation." *See,*

*e.g.*, May 2018 Pl. Mem. in Opp. Combined at 19.

This language is identical to the language addressed in several other cases in this District,

and these cases have found the "collapse" term to be ambiguous. *See, e.g.*, *Roberts*, 264 F. Supp.

3d at 404; *Karas*, 33 F. Supp. 3d at 114; *Belz*, 46 F. Supp. 3d at 163. Under Connecticut law, the

ambiguity must be resolved in favor of coverage; Plaintiffs with claims arising under the older

policy language have therefore properly alleged a "collapse" that could be covered under the

policies.

For these sets of claims, the Court must turn to several of the alterative arguments raised by Defendants. All of these arguments have either been addressed by courts in the context of concrete cases, or implicate factual determinations that are more appropriate for summary judgment.

### a.    Imminence Requirement

Several Defendants argue that *Beach* actually had an implicit "imminence" requirement. Homesite Mem. in Supp. Mot. to Dismiss, ECF 519; Citizens Ins. Mot. to Dismiss, ECF No. 509, at 12–15; Standard Fire Ins. Co. et al. Mot. to Dismiss, ECF No. 508, at 24. This Court previously rejected this argument in *Gabriel*. *See Gabriel v. Liberty Mut. Fire Ins. Co*., No. 3:14-CV-01435-VAB, 2017 WL 6731713, at *5–6 (D. Conn. Dec. 29, 2017). Alternatively, one party urges the Court to adopt the definition of "collapse" that the Supreme Court of Washington adopted in *Queen Anne Park Homeowners Assoc. v. State Farm Fire and Cas. Co*., 352 P.3d 790 (Wash. 2015). *See* Bunker Hill Ins. Co. Mem. in Supp. Mot. to Dismiss, ECF No. 506, at 18. The Court finds *Queen Anne* unpersuasive.

As the Court previously noted, the Connecticut Supreme Court rejected the view that "'collapse' unmistakably connotes a sudden falling in, loss of shape, or flattening into a mass of rubble," characterizing this view as one in "the distinct minority." *Gabriel*, 2017 WL 6731713 at *6 (*citing Beach*, 205 Conn. at 252). The Court reminded those plaintiffs of the Connecticut Supreme Court's underlying rationale that "[r]equiring the insured to await an actual collapse would not only be economically wasteful, but would also conflict with the insured's contractual and common law duty to mitigate damages." *Id*. at 253 n.2. The Court noted that the Connecticut Supreme Court joined with the "more persuasive authorities" in its *Beach* holding "that the term "collapse" is sufficiently ambiguous to include coverage for any substantial impairment of the

structural integrity of a building." *Id.* at 252 (citations omitted). While *Beach* provides a narrow path to recovery consistent with Connecticut law, *Queen Anne* does not comport with Connecticut law.

In *Queen Anne Park Homeowners Assoc. v. State Farm Fire and Casualty Co.*, the Supreme Court of Washington defined "collapse" following certification of a question from the Ninth Circuit. It decided that "[c]ollapse" in the Policy means the "substantial impairment of structural integrity of a building or part of a building that renders such building or part of a building unfit for its function or unsafe in a manner that is more than mere settling, cracking, shrinkage, bulging, or expansion." *Queen Anne Park,* 352 P.3d at 794.

Connecticut state courts and federal courts interpreting Connecticut law "have consistently declined to follow the reasoning of *Queen Anne* and like cases." *Roberts*, 264 F. Supp. 3d at 407; *see also Belz*, 204 F. Supp. 3d at 464; *see also Metsack*, 2017 WL 706599, at *5 (finding "no reason to deviate" from approach in *Belz*.). In *Roberts*, Judge Underhill found no reason to adopt Washington state law when the standard in Connecticut is relatively clear following the *Beach* decision. Further, Judge Underhill noted that "[t]he facts in *Beach* also indicate that the *Queen Anne* standard is inapposite. The Beaches' "house never actually caved in," and "the plaintiffs continued in occupancy during the period ... [of] needed structural repairs." *Roberts*, 264 F. Supp. 3d at 407 (citing *Beach*, 205 Conn. at 248). Most Connecticut cases are factually closer to *Beach* than *Queen Anne*. Further, until the Connecticut Supreme Court decides otherwise, Connecticut law concerning "substantial impairment" to a home's "structural integrity" does not align with the law as described in *Queen Anne*.

### b.     Policy Exclusions for "Cracking" and Deterioration

Several Defendants argue that the type of damage alleged by Plaintiffs is explicitly excluded under language stating that the "collapse" provision "does not include settling, cracking, shrinking, bulging or expansion." *See,* e.g., Kemper Independence Ins. Co. Mot. Dismiss at 11; Bunker Hill Ins. Co. Mem. in Supp. Mot. to Dismiss at 18. Others point to language that excludes the coverage for deterioration, latent defect, or vice. See Kemper Independence Ins. Co. Mot. Dismiss at 10. The Court notes, however, that Plaintiffs' claims go beyond simply cracking or bulging; Plaintiffs allege substantial impairment. Identical claims have regularly survived motions to dismiss. *See e.g.*, *Belz*, 204 F. Supp. 3d at 465; *Roberts*, 264 F. Supp. 3d at 407.

### c.     "Foundation" and "Retaining Wall" Exceptions

The policies at issue in this case frequently exclude coverage for the "foundation," and several Defendants argue that the claimed damage to basement walls would qualify as damage to the foundation. *See, e.g.*, Mem. of Law in Supp. of New London Co. Mut. Ins. Co. Mot. to Dismiss, ECF. No. 503, at 24; Bunker Hill Ins. Co. Mem. in Supp. Mot. to Dismiss, ECF No. 506, at 17; Standard Fire Ins. Co. et al. Mot. to Dismiss at 20; Liberty Entities Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 517, at 15; Homesite Mem. of Law in Supp. of Mot. to Dismiss at 20; Amica Mut. Ins. Co., Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 521, at 18. This Court, however, has previously determined that "foundation" in nearly identical language to the 1997 ISO Language "is ambiguous because it is reasonably susceptible to the . . . interpretation to mean footings under the basement walls that support the entire structure or the lowest-load bearing part of the building . . . [or] a concrete structure, including basement walls,

that supports a building from underneath." *Gabriel v. Liberty Mut. Fire Ins. Co.*, No. 3:14-CV-01435-VAB, 2015 WL 5684063, at *4 (D. Conn. Sept. 28, 2015).

In *Gabriel*, the Court noted that each similar case in the District had been decided the same way, and determined that the term "foundation" is ambiguous. *See Bacewicz v. NGM Ins. Co.*, No. 3:08-cv-1530 (JCH), 2010 WL 3023882, at *1-4 (D. Conn. Aug. 2, 2010) (in a case involving cracks in concrete basement walls caused by chemical compound within concrete, Judge Underhill held that the term "foundation" in identical policy language was "reasonably susceptible to more than one reading"); *Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110, 115-16 (D. Conn. 2014) (in a case involving nearly identical facts, policy language, and arguments, Judge Underhill held that the terms "foundation" and "retaining wall" were ambiguous, and denied the motion to dismiss the breach of contract claim). Such ambiguity must be resolved in favor of the Plaintiffs at this stage. *See, e.g., Agosti v. Merrimack Mut. Fire Ins. Co.*, No. 3:16-cv-01686 (SRU), 2017 WL 3710786, at *4 (D. Conn. Aug. 28, 2017) ("For the reasons stated by the Connecticut Supreme Court *in Beach v. Middlesex Mutual Assurance Co.*, and subsequently followed by many judges of this court, I conclude that the term 'collapse,' standing alone, 'is sufficiently ambiguous to include coverage for any substantial impairment of the structural integrity of a building.'").

### d.      Timing Considerations

Multiple Defendants raise arguments related to the timing of claims, alleging that the claims are barred by the suit limitations provisions of each policy. *See e.g.,* Certain Defs. Mot. to Dismiss at 22, fn 13.

As the Court has previously noted in this case, suit limitations under Connecticut law do not function in the same way as a statute of limitations. *See* Leave to Amend Order *at 13-14*;

*Roberts v. Amica Mut. Ins. Co.*, No. 3:14-cv-1589 (SRU), 2015 WL 7458510, at *3 (D. Conn. Nov. 24, 2015) ("Though the contractual suit limitation is enforceable, it 'does not operate as a statute of limitations.'") (quoting *Monteiro v. American Home Assurance Co.*, 177 Conn. 281, 283 (1979). Ultimately, suit limitation provisions are affirmative defenses that require a review of the record and are more appropriately dealt with at summary judgment. *See Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 268 F.R.D. 160, 166 (E.D.N.Y. 2010) (granting leave to amend because "the determination" of a statute of limitation defense "requires a consideration of the merit of both parties' claims and defenses" and is "better addressed on a motion for summary judgment or at the time of trial.").

Relatedly, New London contends that the Masciovecchios were required to bring suit by September 2016 under the terms of their policy and that they cannot relate the allegations of the Fourth Amended Complaint back to earlier filings. Mem. of Law in Supp. of New London Mot. to Dismiss at 25. The Court disagrees.

The Federal Rules of Civil Procedure permit relation back of an amendment to an earlier pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." FED. R. CIV. P. 15(c)(B). Rule 15 permits relation back when a defendant "(i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." FED. R. CIV. P. 15 (c)(C)(i-ii). In a case involving a single plaintiff and known defendant(s), the Second Circuit typically limits relation back to cases of "'mistake' concerning the identity of the parties. . . ." *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466,

470 (2d Cir. 1995), *modified*, 74 F.3d 1366 (2d Cir. 1996). But in more complex cases, the Court must consider Rule 15 and Rule 21 in concert. Fed. R. Civ. P. 15, 21.

Rule 15(a) provides that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This license, however, is not unlimited. The Court should deny "motions to amend . . . in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 126 (2d Cir. 2008) (citation omitted). Rule 21 provides that a party may be added "at any stage of the action and on such terms as are just." Fed. R. Civ. P. 21. Under either Rule 15 or 21, district courts have discretion to give or deny leave to amend a complaint. *Lego A/S v. Best-Lock Const. Toys, Inc.*, 886 F. Supp. 2d 65, 71 (D. Conn. 2012) (noting that Rules 15(a), 20(a) and 21 "all leave the decision whether to permit or deny amendment to the district court's discretion") (quoting *Oneida Indian Nation of N.Y. State v. Cty. Of Oneida*, 199 F.R.D. 61, 72 (N.D.N.Y. 2000)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Masciovecchios' were original Plaintiffs in this case, which was complex even in its initial filing on January 29, 2016. Compl. New London appeared in the case within months of the original filing and prior to the filing of the First Amended Complaint. ECF Nos. 265–268. On April 31, 2016, New London was served electronically. ECF No. 173. New London was named as a Defendant on May 7, 2016, in the Second Amended Complaint. Sec. Am. Compl., ECF No. 290. Based upon this history, the Court finds that New London had sufficient notice that it was a defendant in the present litigation. Further, New London's role in this litigation is similar to the other Defendants' roles: it is an insurer that denied or will deny homeowners insurance claims related to deficient concrete. For these reasons, the Court finds that the Masciovecchios' claims

against New London in the fourth amended complaint sufficiently relate back to the original Complaint. Compl. The Court will address whether the Masciovecchios' claims are barred by suit limitation provisions at a later stage.

Given the discussion above, the Court divides the counts in the Fourth Amended Complaint into three categories:

i. counts involving a Plaintiff(s) holding a single policy with a Defendant, and the policy does not define collapse using a temporal modifier;

ii. counts involving a Plaintiff(s) holding a single policy with a Defendant, and the policy defines collapse using a temporal modifier (e.g., abrupt, suddenly); and

iii. counts involving a Plaintiff(s) with two or more policies with the same Defendant where the policy language changed over time.

### i. Counts Involving a Plaintiff(s) Holding a Single Policy with a Defendant, and the Policy Does Not Define Collapse Using a Temporal Modifier

Given the discussion above, Connecticut law and numerous cases in this District make it clear that policies that include collapse provisions without temporal modifiers such as "abrupt" are sufficiently ambiguous to survive a motion to dismiss. The Court therefore denies the motions to dismiss with respect to the following breach of contract counts in the Fourth Amended Complaint: 1, 4, 8, 9, 10, 12, 13, 14, 21, 22, 24, 28, 29, 32, 35, and 40. Because the Connecticut Supreme Court will be reviewing this issue, this denial is without prejudice in the event a decision there suggests a different result.

### ii. Counts Involving a Plaintiff(s) Holding a Single Policy with a Defendant, and the Policy Defines Collapse Using a Temporal Modifier (e.g., abrupt, suddenly)

A second category of counts involves Plaintiffs whose policies with single Defendants include temporal modifiers for the collapse provision. These claims include two different types of "collapse" provisions. First, the policy might require the "collapse" to be "abrupt" and the building to be unusable for its normally intended purposes. *See, e.g.*, Mot. to Dismiss by Nationwide Property & Casualty Insurance Company, ECF No. 533, at 1. Second, the language might require the collapse to be "sudden and accidental." *See, e.g.*, Mem. of Law in Support Allstate's Mot. to Dismiss, ECF No. 515, at 13.

Under both sets of policy language, the "collapse" provision is not ambiguous; it requires a temporal element or, as one court in the District described it, a "sudden" collapse. *Adams,* 2017 WL 3763837 at *4 (finding that plaintiffs had failed to allege a sudden collapse); *see also Manseau v. Allstate Insurance Co.*, No. 3:16-CV-1231 (MPS), 2017 WL 3821791, at *5 (D. Conn. Aug. 31, 2017) ("Regardless of whether the loss is characterized as a collapse or a chemical reaction, Plaintiffs fail to allege that any loss occurred suddenly, that is, temporally abruptly, as required for coverage to apply."); *Valls v. Allstate Ins. Co.*, No. 3:16-cv-01310 (VAB), 2017 WL 4286301, at *5 (D. Conn. Sept. 27, 2017) ("The Vallses' policy, however, explicitly requires that any collapse be 'a sudden and accidental direct physical loss' and a 'complete collapse.' As addressed above, they have not alleged a sudden collapse."); *England v. Amica Mut. Ins. Co.,* No. 3:16-CV-1951 (MPS), 2017 WL 3996394, at *5 (D. Conn. Sept. 11, 2017) (holding that policies defining "abrupt" collapse "unambiguously require an abrupt event for collapse coverage to apply" and that "[e]ven when the allegations are construed in the light most favorable to Ms. England, Ms. England does not allege that any collapse occurred abruptly, or that any change occurred to the Property without preparation or warning.").

Several counts here invoke temporally modified language in a single contract between a Plaintiff(s) and Defendant, and those Plaintiffs have not pled a sudden or abrupt collapse in the Fourth Amended Complaint. The motions to dismiss therefore will be granted with respect to those counts: 7, 11, 19, 20, 23, 25, 36, 37, 38, 39, 41, and 44, relating to Defendants, in alphabetical order, Allstate Insurance Company, American Commerce Insurance Company, CSAA Fire & Casualty Insurance Company, Metropolitan Group Property and Casualty Insurance Company, Middlesex Mutual Assurance Company, Nationwide Property & Casualty Insurance Company, Travelers Home & Marine Insurance Company, and Trumbull Insurance Company.

### iii. Counts Involving a Plaintiff(s) with Two or More Policies with the Same Defendant Where the Policy Language Changed Over Time

The remaining counts implicate policies that, over time, adopted more restrictive language. When the claims of one plaintiff invoke multiple policies, courts in this District normally dismiss any claim against a defendant or as to a class of policies that includes the modified language. *See, e.g. Kowalyshyn v. Excelsior Ins. Co.*, No. 3:16-CV-00148 (JAM), 2018 WL 888724, at *1 (D. Conn. Feb. 13, 2018) (granting summary judgment as to one insurer and denying as to another, where plaintiff had different policy language with different insurers at different times).

Plaintiffs with modified coverage argue that "insurers were obligated by Connecticut law—specifically CONN. GEN. STAT. § 38a-323 and Conn. Insurance Bulletin PC-66 (Dec. 21, 2009)—to give adequate notice to their insureds that there were significant reductions in the coverage which the Plaintiffs had come to expect, and the insurers failed to give that notice." May 2018 Pl. Mem. in Opp. Combined at 74. They argue that the alleged lack of notice would

require a revision to the old policies, because Plaintiffs "were not adequately informed as a matter of law and, as a result, the new language is not effective and the Plaintiffs' claims are covered under the prior policy language" *Id.* at 74–75.

The Court need not reach this question at the motion to dismiss stage for two reasons. First, this question requires the factfinder to determine when a given property might be considered "substantially impaired" and therefore in collapse. That determination will then dictate which policy is at issue in a given claim. *Cf. Jemiola v. Hartford Cas. Ins. Co.*, No. CV-15-6008837-S, 2017 WL 1258778, at *7 (Conn. Super. Ct. Mar. 2, 2017) (granting summary judgment where the factual record and expert testimony demonstrated the loss "can be traced to October 2006" and that the policy's changes in the years before the loss precluded coverage) with *Gabriel II*, 2017 WL 6731713, at *7 ("Put another way, Liberty Mutual does not just dispute whether there has been a substantial impairment, but when the damages would have amounted to a substantial impairment. Viewed this way, it is clear that the question of when the damage to the wall rose to the level [of] a substantial impairment is a factual inquiry best left to the jury.").

Second, the notice analysis requires both a dissection of Connecticut law and a determination of fact as to the notice that Plaintiffs actually received. Because it is not necessary to address the matter of law at this point, the Court will decline to do so and address it, if necessary, on a fuller factual record. *Cf. PDK Laboratories Inc. v. U.S. Drug Enforcement Admin.*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) (noting the "cardinal principle of judicial restraint – if it is not necessary to decide more, it is necessary not to decide more . . . .").

As a result, the Court will deny the motions to dismiss with respect to the remaining breach of contract counts: 2, 3, 5, 6, 15, 16, 17, 18, 26, 27, 30, 31, 33, 34, 42, 43, 45, and 46.

**B.      Declaratory Judgment Counts**

Counts 47 through 92 of the Fourth Amended Complaint seek declaratory judgments against each of the Defendants. Plaintiffs characterize these claims in three different ways, depending on which ISO policy language each addresses. *See* May 2018 Pl. Mem. in Opp. Combined at 9–10. First, under the 1997 ISO Form, Plaintiffs argue the terms "foundation" and "retaining wall" are ambiguous and that the policy requires Defendants to pay for the cost of replacing the walls. *Id.* Second, for renewal policies that modified policy language, Plaintiffs seek a declaration that the new language represented "a significant reduction of coverage" without adequate notice, and therefore the new language is not effective and the Defendants "are obligated to cover the costs of replacing the concrete in the Plaintiffs' homes under the previous policy language." May 2018 Pl. Mem. in Opp. Combined at 10. The Court finds that these two categories of claims relate to questions certified to the Connecticut Supreme Court. The Court therefore will not grant declaratory judgment on these claims at this time.

Third, the remaining plaintiffs seek declaratory judgment on the argument that the 1999 ISO language, or similar language containing temporal modifiers, is ambiguous. S*ee e.g.*, FAC ¶ 1391. As discussed above, courts in this District have held that collapse provisions containing the language "sudden and accidental" or "abrupt" are unambiguous. *See, e.g.*, *Valls*, 2017 WL 4286301, at *5; *Manseau*, 2017 WL 3821791, at *5; *Hurlburt*, 2018 WL 1035810, at *5. Because these collapse provisions are unambiguous, the remaining plaintiffs are not entitled to declaratory judgment as a matter of law. The Court therefore must dismiss the following counts: 54, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, and 92, relating to Defendants, in alphabetical order,

Allstate Insurance Company, American Commerce Insurance Company, CSAA Fire & Casualty Insurance Company, Metropolitan Group Property and Casualty Insurance Company, Middlesex Mutual Assurance Company, Nationwide Property & Casualty Insurance Company, Travelers Home & Marine Insurance Company, and Trumbull Insurance Company.

### C. Breach of Implied Covenant of Good Faith and Fair Dealing Claims

Certain Defendants move to dismiss the Breach of Implied Covenant of Good Faith and Fair Dealing Claims ("good faith") claims. *See* Certain Def. Mem. at 12.

In Connecticut, **"**[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Warner v. Konover*, 553 A.2d 1138, 1140 (Conn. 1989). To fulfill its duty, a party may not "do anything that will injure the right of the other to receive the benefits of the agreement." *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 849 A.2d 382, 388 (Conn. 2004) (internal quotation marks and citation omitted). Courts examine "the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." *Id.* "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." *Id.*

The Court must address two categories of good faith claims. First, there are a set of claims for which the Court has dismissed the breach of contract claims. Connecticut law requires a breach of contract in order to plead bad faith. *See, e.g. Capstone Bldg. Corp. v. American Motorists Ins. Co.*, 308 Conn. 760, 798 (2013) (concluding that "bad faith is not actionable apart from a wrongful denial of a benefit under [an insurance] policy."). Because several Plaintiffs have not pled a plausible claim for breach of contract, those claims for breach of the implied

covenant of good faith and fair dealing also fail. *See, e.g.*, *Manseau*, 2017 WL 3821791, at *5 (dismissing breach of implied covenant claim in concrete case after court dismissed breach of contract claim); *Agosti*, 2017 WL 3710786 at *8 (same). The Court therefore must dismiss the following counts: 100, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, and 138, relating to Defendants, in alphabetical order, Allstate Insurance Company, American Commerce Insurance Company, CSAA Fire & Casualty Insurance Company, Metropolitan Group Property and Casualty Insurance Company, Middlesex Mutual Assurance Company, Nationwide Property & Casualty Insurance Company, Travelers Home & Marine Insurance Company, and Trumbull Insurance Company.

The remaining counts, however, relate to claims where the breach of contract counts will proceed to discovery for now. Certain Defendants move to dismiss these remaining counts because the claims allegedly fail to assert bad faith and/or fail to include individualized allegations with respect to each Defendant. Certain Defs. Mot. to Dismiss at 15–29.

Plaintiffs argue that they have properly alleged facts that demonstrate bad faith. May 2018 Pl. Mem. in Opp. Combined at 136. They allege that Defendants here have consistently denied claims even though the companies should have known the claims were covered based on previous court cases. *Id.* at 136 n.88. They also note that they allege Defendants' participation in ISO, and that the Defendants changed their policies to try to avoid coverage. *Id.* at 136. Plaintiffs claim that "[t]hese allegations, taken together and presumed to be true for purposes of this motion, support a claim of actual or constructive fraud or a design by the Defendants to mislead or deceive their policyholders in an effort to avoid their obligations." *Id.* at 136–137.

In the Fourth Amended Complaint, Plaintiffs allege that Defendants knew that Plaintiffs' claims were covered. Plaintiffs claim participation in this malfeasance by ISO, *see* FAC ¶ 58,

and Plaintiffs further allege that Defendants conspired to limit coverage they knew they should have provided. *Id.* ¶¶ 62–64. Plaintiffs allege that Defendants misled Plaintiffs in order to receive their premiums without provided the requisite coverage. *Id.* at ¶ 77. Plaintiffs contend that their insurance companies "provid[ed] bogus responses when they knew the claims were good, while at the same time, casting about for a way to try to shore up the language in their policies." *Id.* ¶ 72.

In short, the allegations raise the inference of bad faith. Similar allegations have sustained similar claims in this District beyond a motion to dismiss. *See, e.g.*, *Belz*, 46 F. Supp. 3d at 165; *Gabriel*, 2015 WL 5684063, at *5 ("Read in the light most favorable to the Gabriels, these allegations state a claim for breach of the implied covenant of good faith and fair dealing because they give rise to a plausible inference that Liberty Mutual acted to mislead the Gabriels, or neglected to fulfill a duty to provide coverage out of a self-interested motive."); *Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110, 116–17 (D. Conn. 2014) ("These factual allegations describe the failure of Liberty Mutual to conduct an adequate investigation, accompanied by its intent to mislead the insured and a motive to benefit itself."). For these reasons, the Court denies the motions to dismiss the remaining good faith claims for now.

### D.     CUIPA/CUTPA Claims

Finally, Certain Defendants move to dismiss claims arising under CUIPA/CUTPA. CUIPA defines a number of actions as "unfair methods of competition and unfair and deceptive acts or practices in the business of insurance. . . ." CONN. GEN. STAT. § 38a-816. Included in CUIPA's prohibited acts are "[u]nfair claim settlement practices" such as "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become

reasonably clear." *Kim v. State Farm Fire & Cas. Co.*, No. 3:15-CV-879 (VLB), 2015 WL 6675532, at *5 (D. Conn. Oct. 30, 2015).

Under Connecticut law, plaintiffs may assert a CUTPA claim based on a violation of CUIPA. *Karas*, 33 F. Supp. 3d at 117 (citing *McCulloch v. Hartford Life & Acc. Ins. Co.*, 363 F. Supp. 2d 169, 181 (D. Conn. 2005) and *Mead v. Burns*, 199 Conn. 651, 663 (1986)). To prevail on such a claim, a plaintiff must show that a defendant engaged in an act prohibited by CUIPA and that the act proximately caused the plaintiff's harm. *Belz*, 46 F. Supp. 3d at 165 (citing *McCulloch*, 363 F. Supp. 2d at 181). "A claim of unfair settlement practice under CUIPA/CUTPA requires the plaintiff to allege that the defendant has committed the alleged proscribed act with sufficient frequency to indicate a general business practice. . . . The plaintiff must show more than a single act of insurance misconduct . . . ." *Karas*, 33 F. Supp. 3d at 117 ("A claim of unfair settlement practice under CUIPA/CUTPA requires the plaintiff to allege that the defendant has committed the alleged proscribed act with sufficient frequency to indicate a general business practice. . . . The plaintiff must show more than a single act of insurance misconduct . . . ."). Prohibited acts include "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue . . . not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear [and] attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of the insured . . ." among others. CONN. GEN. STAT. § 38a-816(6)(A),(F), (I).

Plaintiffs pursue two separate theories of liability under CUIPA/CUTPA. First, they argue that Defendants who adopted newer policy language did so without proper notice. May 2018 Pl. Mem. in Opp. Combined at 159 (citing CONN. GEN. STAT. § 38a-823). Second, for

Defendants who sold the New Policy Form, they argue that these policies were "ephemeral coverage." Plaintiffs contend that this coverage violated CUIPA's "[m]isrepresentations and false advertising of insurance policies" provision or amounted to a general business policy of "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue." *Id.* (citing CONN. GEN. STAT. §§ 38a-816(1), (6)(I).

### 1.    Unfair Settlement Practices

The Fourth Amended Complaint alleges that Defendants participate in ISO, an organization composed mostly of insurance companies that collects data about insurance claims. FAC ¶ 58. Through its participation in ISO, each insurance company would have had knowledge of claims "[a]t least as early as 1996." *Id.* ¶ 63. As noted above, the Fourth Amended Complaint alleges that "[b]esieged by insureds raising this issue the Defendant Insurance Companies kept denying claims," and "provid[ed] bogus responses when they knew the claims were good, while at the same time, casting about for a way to try to shore up the language in their policies." *Id.* ¶ 72.

This particular set of allegations—claim denials for false and misleading reasons, broad denials of similar claims, and participation in ISO—have sustained CUIPA/CUTPA claims on several occasions. *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 165–67 (D. Conn. 2014); *Karas*, 33 F. Supp. 3d at 117; *Gabriel*, 2015 WL 5684063, at *5. The Court sees no reason to deviate from these decisions in this case.[7]

In order to pursue an unfair settlement practices claim, however, "a plaintiff must show that the defendant engaged in an act prohibited by CUIPA's substantive provisions, and that the

---

[7] Defendants' reliance on *Roberts* is misplaced. *See* Defs. Rep. Br. at 16. First, *Roberts* addressed a motion for summary judgment, not a motion to dismiss. *Roberts v. Liberty Mut. Fire Ins. Co.*, 264 F. Supp. 3d 394, 404. Second, *Roberts* turned on the evidence in the record, not the allegations themselves. That is, the *Roberts* plaintiffs failed to put evidence in the record to show there was a disputed issue of material fact.

act proximately caused the harm alleged." *Belz*, 46 F. Supp. 3d at 165. "The requirement that the insurer settle when the insured's liability is 'reasonably clear' means that the existence of liability has to be substantially certain." *Tucker v. AIG*, No. 3:09-cv-1499 (CSH) 2015 WL 403195, at *27, n.48 (D. Conn. Jan. 28, 2015). CUIPA/CUTPA liability therefore is not appropriate where there has not been a breach of contract. For these claims, then, Plaintiffs must assert some other authority.

### 2.     Misrepresentations

In order to rely on information that occurred pre-contract, and therefore would not require a breach, Plaintiffs also pursue two additional separate theories of liability. First, they argue that Defendants who adopted newer policy language did so without proper notice. May 2018 Pl. Mem. in Opp. Combined at 159 (citing CONN. GEN. STAT. § 38a-823). Second, for Defendants who sold the New Policy Form, they argue that these policies "sold ephemeral coverage." This coverage allegedly constituted violation of CUIPA's "[m]isrepresentations and false advertising of insurance policies" provision or amounted to a general business policy of "[m]isrepresenting pertinent facts or insurance policy provisions relating to coverages at issue." *Id.* (citing CONN. GEN. STAT. §§ 38a-816(1), (6)(I).

In order to support a claim for misrepresentation, Plaintiffs argue that Defendants violated CUIPA/CUTPA by first, failing to provide notice as required by Connecticut law and, second, by providing "illusory" coverage. May 2018 Pl. Mem. in Opp. Combined at 183. They provide no support for their proposition, however, and can cite to no authority—even at the trial level, either in state or federal court—that has held that CUIPA/CUTPA is intended to cover the types of conduct alleged here.

Defendants' motions to dismiss therefore will be granted with respect to the same claims addressed previously: 146, 174, 175, 176, 177, 178, 179, 180, 182, and 183, relating to Defendants, in alphabetical order, Allstate Insurance Company, American Commerce Insurance Company, CSAA Fire & Casualty Insurance Company, Metropolitan Group Property and Casualty Insurance Company, Middlesex Mutual Assurance Company, Nationwide Property & Casualty Insurance Company, Travelers Home & Marine Insurance Company, and Trumbull Insurance Company. Defendants' motions to dismiss the remaining claims are denied.

**B.      Certain Defendants Motion to Strike**

Certain Defendants have moved to strike the class allegations. Certain Def. Class Mem., ECF No. 498. Their motion argues that (1) Plaintiffs will not be able to show commonality, and that each claim raises numerous individualized inquiries that would defeat the class certification motion, Def. Mem. at 11, and (2) that the Plaintiffs cannot meet any of the requirements under Rule 23(b)'s subsections and therefore class certification would be inappropriate. Def Mem. at 11, 25–35. At this stage of the case, the Court disagrees.

"A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly." *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993). Courts have "broad discretion to modify the class definition as appropriate." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 CIV. 5450 (NRB), 2018 WL 1229761, at *7 (S.D.N.Y. Feb. 28, 2018). Modifying the class definition may be particularly appropriate at the certification stage, including the certification of subclasses. *See Robidoux*, 987 F.2d at 937; *see also* FED. R. CIV. P. 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule."); FED. R. CIV. P. 23(d)(1)(D) (noting that a court "may issue orders that . . . require that the pleadings be amended

to eliminate allegations about representation of absent persons and that the action proceed accordingly”).

Motions to strike are generally disfavored, and more so when they related to class allegations. *See Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (collecting cases and noting that motions to strike class claims are disfavored before plaintiffs are permitted to complete discovery). A court may, however, exercise its discretion to strike parts of a class allegation at the motion to dismiss stage if those claims could not be maintained as a matter of law. *See, e.g.*, *Davito v. AmTrust Bank*, 743 F. Supp. 2d 114, 115 (E.D.N.Y. 2010) (“Several district courts, however, have held that such motions may be addressed ‘prior to the certification of a class if the inquiry would not mirror the class certification inquiry and if resolution of the motion is clear.’”) (quoting *In re Initial Public Offering Sec. Litig.*, 21 MC 92 (SAS), 2008 WL 2050781, *2 (S.D.N.Y. May 13, 2008)). This limited exception applies to “a motion to strike that addresses issues separate and apart from the issues that will be decided on a class certification motion.” *Chen-Oster*, 877 F. Supp. 2d at 117 (internal quotation marks omitted) (denying motion to strike arguing plaintiffs could not show commonality).

While certain Defendants raise significant arguments, these issues will be better addressed when the motion for class certification is considered, after more development of the record in this case. Defendants’ motion to strike therefore is denied. Nevertheless, while the Court will not strike the class allegations at this time, the Court notes that the numerous amendments of the Complaint have delayed the resolution of this case, for years, such that the Court must ensure that the case moves forward.

District courts have both the authority and an obligation to manage their dockets with a "view toward the efficient and expedient resolution of cases." *Deitz*, 136 S. Ct. at 1892. In service of expedience and justice, courts may disallow further amendment when there is "undue delay, bad faith or dilatory motive on the part of the movant." *Foman*, 371 U.S. at 182; *Cf. Pappas v. Bank of Am. Corp.*, 309 F. App'x 536, 539 (2d Cir. 2009) (summ. order), citing *In re Parmalat Sec. Litig.*, 1:04–md–01653–LAKHBP, slip order at 3 (S.D.N.Y. Sept. 4, 2007) (holding that the district court properly denied plaintiffs leave to file a third amended complaint because "plaintiffs, with their unjustifiably verbose pleadings, . . . contributed more than their share to its extraordinary cost and burden.")

Nearly three years following the filing of the Complaint, class certification remains an unsettled matter and discovery remains open. The Court gave leave for Plaintiffs to file a Third Amended Complaint in December 2016, ECF No. 339, and a Fourth Amended Complaint more than nine months later, in September 2017, ECF No. 462, yet the case has languished. The numerous amendments to the Complaint have occasioned considerable delay and expense. Further, given this case's procedural history, there is a distinct possibility that the case will never be properly and efficiently litigated without direction from the Court. The Court therefore rules that it will not be granting any leave to further amend the Fourth Amended Complaint, which will be the operative complaint for this case, absent unforeseen circumstances not now readily apparent.

As a result of this ruling, and given the continuing issues regarding the viability of a class action as well as the uncertainty regarding the viability of certain claims, the parties shall submit a revised scheduling order with deadlines for the completion of discovery relating to the class allegations only and for the submission of a motion for class certification.

## IV.     CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motions to dismiss, ECF Nos. 497, 499, 502, 504, 508-510, 512, 514, 516, 518, 520, 522, 524, 526, 528, 530, 533, **WITHOUT PREJUDICE TO RENEWAL** following resolution by the Connecticut Supreme Court of the pending certified questions.

As explained above, a subset of the counts in the Fourth Amended Complaint contain policy language that, as a matter of law, is unambiguous and does not support a claim for relief. The Court dismisses each Plaintiff whose entire claim for relief rested on a policy that unambiguously excluded coverage for abrupt or sudden collapse: Kathy Noblet, Dawn L. Norris, and Steven and Colleen Swart. Relatedly, the Court dismisses each Defendant whose entire liability rested on a policy that unambiguously excluded coverage for abrupt or sudden collapse: American Commerce Insurance Company and Allstate Insurance Company. The remainder of Plaintiffs and Defendants remain for the reasons stated above.

The Court **DENIES** Defendants' motion to strike class allegations. ECF No. 498.

A revised scheduling order with deadlines for the completion of discovery relating to the class allegations only and for the submission of a motion for class certification shall be submitted by **Friday, November 16, 2018,** jointly, if possible, but if the various parties cannot agree, separately. The Court then will hold an in-person status conference on **Thursday, November 29, 2018 at 2:00pm.**

**SO ORDERED** at Bridgeport, Connecticut, this 19th day of October, 2018.

 /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge